No. 20-15948

# In the United States Court of Appeals
## for the Ninth Circuit

ANDREW TETER AND JAMES GRELL

*Plaintiffs-Appellants*,

v.

CLARE CONNORS, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII AND AL CUMMINGS, IN HIS OFFICIAL CAPACITY AS THE STATE SHERIFF DIVISION ADMINISTRATOR

*Defendants-Appellees*.

**Appeal from a Judgment of United States District Court
For the District of Hawaii
Civ. No. 19-cv-00183-ACK-WRP
United States District Court Judge Alan C. Kay**

## Appellants' Opening Brief

ALAN ALEXANDER BECK
Attorney at Law
2692 Harcourt Drive
San Diego, California 92123
Telephone: (619) 905-9105
alan.alexander.beck@gmail.com

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. Box 4008
Madison, MS 39130
Telephone: (601) 852-3440
stephen@sdslaw.us

*Attorneys for Appellants, Andrew Teter and James Grell*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

JURISDICTIONAL STATEMENT ............................................................3

STATEMENT OF ISSUES FOR REVIEW ................................................4

STATEMENT OF THE CASE .....................................................................4

I. Hawaii Bans the Ownership and Possession of Butterfly Knives in the Home ......4

II. Procedural History .................................................................................4

   A.  Plaintiffs' Constitutional Challenge to H.R.S. § 134-53 ....................4

   B.  The District Court's Grant of Defendants' Motion for Summary Judgment and Entry of Judgment ........................................................5

     1.  Summary of the District Court's Order ...........................................5

     2.  The District Court's Judgment ........................................................6

SUMMARY OF THE ARGUMENT ...........................................................6

ARGUMENT ................................................................................................6

I. Hawaii's Ban on Butterfly Knives Violates the Second Amendment ...................6

II. Legal Standard .......................................................................................6

III. Knives Are Protected by the Second Amendment .............................7

   A.  Defendants' Evidence Is Inapplicable ...............................................8

   B.  Lacy is Inapplicable to Plaintiffs' Challenge ...................................24

IV. This Court Should Find Hawaii's Butterfly Knife Ban Categorically Unconstitutional ......................................................................................26

   A.  Strict Scrutiny Should Apply ...........................................................29

   B.  The Trial Court Erred in Its Application of Intermediate Scrutiny .............31

   C.  There is not a Reasonable Fit to the Ban and Public Safety .........38

   D.  The Law is Underinclusive ..............................................................45

CONCLUSION ..........................................................................................47

# TABLE OF AUTHORITIES

## CASES

*Albino v. Baca*,
747 F.3d 1162 (9th Cir. 2014) ............................................................6

*Arizona Free Enter. Club's Freedom Club PAC v. Bennett*,
564 U.S. 721 (2011)...........................................................................37

*Avitabile v. Beach*,
368 F. Supp. 3d 404 (N.D.N.Y. 2019)................................................18

*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
492 U.S. 469 (1989)......................................................................44, 45

*Buck Foston's New Brunswick LLC v. Cahill*,
2013 WL 5435289 (D.N.J. Sept. 27, 2013) .......................................37

*Caetano v. Massachusetts*,
136 S. Ct. 1027 (2016)..........................................................................7

*City of Akron v Rasdan*,
663 NE2d 947 (Ohio Ct. App., 1995)................................................20

*City of Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993)............................................................................45

*City of Los Angeles v. Alameda Books, Inc.*,
535 U.S. 425 (2002)................................................................34, 36, 37

*City of Renton v. Playtime Theatres, Inc.*,
475 U.S. 41 (1986)..............................................................................36

*City of Seattle v. Evans*,
366 P.3d 906 (2015)......................................................................18, 19

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ..................................................................... *passim*

*Duncan v. Becerra*,
　2020 U.S. App. LEXIS 25836 (9th Cir. Aug. 14. 2020) ............................ *passim*

*Duncan v. Becerra*,
　366 F. Supp. 3d 1131 (S.D. Cal. 2019)...............................................................44

*Fisher v. Kealoha*,
　855 F.3d 1067 (9th Cir. 2017) ............................................................................29

*Fla. Bar v. Went For It, Inc.*,
　515 U.S. 618 (1995).............................................................................................45

*Friedman v. City of Highland Park*,
　784 F.3d 406 (7th Cir. 2015) .....................................................................11, 40

*Fyock v. City of Sunnyvale*,
　779 F.3d 991 (9th Cir. 2015) .........................................................................7, 9

*Grace v. District of Columbia*,
　187 F. Supp. 3d 124 (D.D.C. 2016)...............................................................36, 38

*Griffin v. State*,
　47 A.3d 487, 2012 Del. LEXIS 319 (Del., June 18, 2012) .................................20

*Heller v. District of Columbia*,
　670 F.3d 1244, 399 U.S. App. D.C. 314 (D.C. Cir. 2011) .................................35

*Heller v. District of Columbia*,
　801 F.3d 264 (D.C. Cir. 2015).............................................................................37

*In re Interest of Doe*,
　73 Haw. 89, 828 P.2d 272 (1992 Haw.) ....................................................4, 17, 23

*Jackson v. City & Cty. of S.F.*,
　746 F.3d 953 (9th Cir. 2014) ..........................................................26, 29, 30, 31

*Lacy v. State*,
　903 N.E.2d 486 (Ind. Ct. App. 2009) ........................................................24, 25

*Lorillard Tobacco Co. v. Reilly*,
    533 U.S. 525 (2001).................................................................33, 34, 45

*Maloney v. Singas*,
    351 F. Supp. 3d (S.D.N.Y. 2018) ...............................................17, 40

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*,
    138 S. Ct. 1719 (2018)........................................................................37

*McDonald v. Chicago*,
    561 U.S. 742 (2010)......................................................................7, 35

*Minority Television Project, Inc. v. F.C.C.*,
    736 F.3d 1192 (9th Cir. 2013) ...........................................................44

*Moore v. Madigan*,
    702 F.3d 933 (7th Cir. 2012) ..............................................................28

*Morris v. United States Army Corps of Eng'rs*,
    60 F. Supp. 3d 1120 (D. Idaho 2014) .................................................28

*New York State Rifle & Pistol Ass'n v. Cuomo*,
    804 F.3d 242 (2d Cir. 2015) .........................................................11, 15

*Palmer v. District of Columbia*,
    59 F. Supp. 3d 173 (D.D.C. 2014).......................................................28

*Parents for Privacy v. Barr*,
    949 F.3d 1210 (9th Cir. 2020) ...........................................................45

*Pena v. Lindley*,
    898 F.3d 969 (9th Cir. 2018) .............................................................46

*People v. Aguilar*,
    2 N.E.3d 321 (Ill. 2013)......................................................................28

*People v. Mitchell*,
    209 Cal. App. 4th 1364 (2012) .....................................................19, 20

*People v. Webb*,
   2019 IL 122951 (March)......................................................................18

*People v. Yanna*,
   824 N.W.2d 241 (Mich. Ct. App. 2012)............................................27

*Ramirez v. Commonwealth*,
   479 Mass. 331, 94 N.E.3d 809 (2018) (Apr. 17, 2018)................................26, 27

*Richmond v. Peraino*,
   128 F. Supp. 3d 415 (D. Mass. 2015)................................................28

*Silvester v. Harris*,
   843 F.3d 816 (9th Cir. 2016) .............................................................31

*State v. DeCiccio*,
   105 A.3d 165 (Conn. 2014) ...............................................................19

*State v. Delgado*,
   692 P.2d 610 (Or. 1984) ...............................................8, 20, 21, 24

*State v. Griffin*,
   2011 Del Super LEXIS 193 (Del Super Ct, May 16, 2011).................................20

*State v. Herrmann*,
   873 N.W.2d 257 (Wis. Ct. App. 2015)............................................18, 24, 32, 33

*State v. Montalvo*,
   162 A.3d 270 (2017) .........................................................................20

*State v. Montalvo*,
   077331, 2017 WL 2471030 (N.J. June 8, 2017)................................28

*State v. Muliufi*
   643 P.2d 546 (1982).........................................................................14

*State v. Murillo*,
   347 P.3d 284 (2015).............................................................22, 23, 32, 33

*Taylor v. McManus*,
   661 F. Supp. 11 (E.D. Tenn. 1986)..................................................................1, 17

*Thomas v. Review Bd. of Ind.do Employment Sec. Div.*,
   450 U.S. 707 (1981)..........................................................................................30

*Turner Broad. Sys., Inc. v. FCC*,
   520 U.S. 180 (1997)..............................................................................32, 34, 41

*United States v. Chovan*,
   735 F.3d 1127 (9th Cir. 2013) ...............................................................2, 3, 29, 31

*United States v. Henry*,
   688 F.3d 637 (9th Cir. 2012) .........................................................................9, 10

*Valle Del Sol Inc. v. Whiting*,
   709 F.3d 808 (9th Cir. 2013) ............................................................................32

*Wesson v. Town of Salisbury*,
   13 F. Supp. 3d (D. Mass. 2014) ........................................................................28

*Worman v. Healey*,
   922 F.3d 26 (1st Cir. 2019)...............................................................................44

*Wrenn v. District of Columbia*,
   864 F.3d 650 (D.C. Cir. 2017)....................................................................28, 36

## CONSTITUTION

U.S. Const. amend. II........................................................................... *passim*

## STATUTES

28 U.S.C. § 1291...............................................................................................3

28 U.S.C. § 1331...............................................................................................3

28 U.S.C. § 1343...............................................................................................3

28 U.S.C. § 2201 ...................................................................................3

28 U.S.C. § 2202 ...................................................................................3

42 U.S.C. § 1983 ...................................................................................3

42 U.S.C. § 1988 ...................................................................................3

Militia Act, 1 STAT. 271-04 (1792) ......................................................8

H.R.S. § 134-53 ...............................................................1, 4, 5, 7, 38

Ind. Code § 35-47-5-2 .........................................................................24

## RULE

Fed. R. App. P. 4(a)(1)(A) ....................................................................3

## OTHER AUTHORITIES

123 Cameron Crandall, Lenora Olson, Lynne Fullerton, et al., Guns and Knives
    in New Mexico: Patterns of Penetrating Trauma, 1978-1993, 4 ACAD.
    EMERGENCY MEDICINE 265 (1997) ...........................................14

American Knife and Tool Institute,
    https://www.akti.org/wp-content/uploads/US-Knives-in-2015.pdf) ..................11

FBI, https://ucr.fbi.gov/crime-in-the-u.s/2018/crime-in-the-u.s.-2018/topic-
    pages/violent-crime ......................................................................14

David B. Kopel, Clayton E. Cramer & Joseph Edward Olsen, Knives and the
    Second Amendment, 47 U. Mich. J.L. Reform 167 (Fall 2013). ...................7, 24

National Shooting Sports Foundation,
    https://www.nssf.org/nssf-releases-firearms-production-figures/ ......................11

Linda E. Saltzman, James A. Mercy, Patrick W. O'Carroll et al., Weapon
    Involvement and Injury Outcomes in Family and Intimate Assaults,
    267 JAMA 3043 (1992) .................................................................13

Jospeh Tussman and Jacobus tenBroek, The Equal Protection of the Laws,
37 Cal. L. Rev. 341 (1949) .................................................................................45

Harwell Wilson & Roger Sherman, Civilian Penetrating Wounds to
the Abdomen, 153 ANNALS OF SURGERY 639 (1961)......................13, 44, 45

## INTRODUCTION

James Grell and Andrew Teter ("Plaintiffs" or "Appellants") moved for summary judgment in their challenge to the State of Hawaii's ban on the possession of butterfly knives.[1] Plaintiffs wished to purchase a butterfly knife for self-defense and other lawful purposes in their home and would acquire, possess, carry and where appropriate use a butterfly knife to protect themselves and their homes. ER137; ER139. The butterfly knife:

> originated in the Philippines several hundred years ago. Although varied in style and design, the Balisong is basically a folding knife with a split handle. In the closed position, the two halves of the handle enclose the blade. To open the knife, the two halves are folded back until they meet and are then secured by a clasp… While the exotic knife has some utilitarian use, it is most often associated with the martial arts and with combat.

*Taylor v. McManus*, 661 F. Supp. 11, 13 (E.D. Tenn. 1986).

H.R.S. § 134-53 provides that "(a) Whoever knowingly manufactures, sells, transfers, possesses, or transports in the State any butterfly knife, being a knife having a blade encased in a split handle that manually unfolds with hand or wrist action with the assistance of inertia, gravity or both, shall be guilty of a misdemeanor." This provision serves to outlaw the possession and use of butterfly knives even within home. As assumed in the district court, butterfly knives are arms

---

[1] Butterfly knives are also known as balisong knives and are referred at some points as balisong knives when referencing other authorities.

protected by the Second Amendment. Thus, this prohibition is a violation of Plaintiffs' Second Amendment rights. Plaintiffs have never been convicted of a crime, either misdemeanor or felony and have never been convicted of a crime of domestic violence. They have never been deemed by mental health professionals to have a mental illness. ER137; ER139.

Burton Richardson ("Richardson") was designated as Plaintiffs' expert. He has been employed as a martial arts and knife fighting instructor on the Island of Oahu. He has decades of experience training with butterfly knives and has extensively studied their history. *See* ER130. In his Declaration, Richardson stated that "because of its design [a butterfly knife] has the slowest speed of opening of any modern self-defense knife." *Id*. at p. 3. Richardson stated that these arms are common arms of the Filipino people. *See* ER132. The State's witness testified that butterfly knives were created in the Philippines. *See* Deposition of Robin Nagamine, *See* ER107.

Defendants-Appellees cross-moved for summary judgment and the district court granted Defendants-Appellees' motion and denied Appellants' motion. The district court applied the two-step inquiry in determining whether the challenged statute is constitutional found in *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013). The district court first determined whether the challenged law burdens conduct protected by the Second Amendment and if so, then applied a tier of

scrutiny. *See* ER021. To determine the correct level of scrutiny, the Ninth Circuit utilizes another two-pronged test. The court determines "how close the law comes to the core of the Second Amendment right," and then proceeds to determine the severity of the law's burden on that right. *Chovan*, 735 F.3d at 1138.

The district court found that butterfly knives are bearable arms. *See* ER023. The district court did not decide if butterfly knives were dangerous and unusual, but "assum[ed] butterfly knives are the types of 'arms' protected by the Second Amendment" and upheld the statute as constitutional. *See* ER025. The district court found that the ban on butterfly knives "undoubtedly extends into the home" and "implicates the core Second Amendment right", but the implication is not "to the same extent as the handguns [in] *Heller*." *See* ER034-ER035. The district court then found the ban on butterfly knives a "modest infringement" and applied intermediate scrutiny. *See* ER039.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

The district court's final judgment was entered on May 13, 2020. *See* ER047. The Appellants timely filed a notice of appeal on May 13, 2020. *See also* Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF ISSUES FOR REVIEW

1. Does Hawaii's restriction on the manufacture, sale, transfer, possession, or transportation in the State of any butterfly knife (H.R.S. § 134-53) comport with the Second Amendment to the United States Constitution?

## STATEMENT OF THE CASE

### I.   Hawaii Bans the Ownership and Possession of Butterfly Knives in the Home

H.R.S. § 134-53 provides that "(a) Whoever knowingly manufactures, sells, transfers, possesses, or transports in the State any butterfly knife, being a knife having a blade encased in a split handle that manually unfolds with hand or wrist action with the assistance of inertia, gravity or both, shall be guilty of a misdemeanor." This provision serves to outlaw the possession and use of butterfly knives even within home.  H.R.S. § 134-53 was enacted in 1999 after the Hawaii Supreme Court ruled that butterfly knives were not switchblades in 1992. *See In re Interest of Doe*, 73 Haw. 89, 91, 828 P.2d 272, 274 (1992 Haw.).

### II.   Procedural History

### A. Plaintiffs' Constitutional Challenge to H.R.S. § 134-53

Plaintiffs filed their Complaint for Declaratory and Injunctive Relief on April 10, 2019 against Defendants-Appellees Clare E. Connors, in her Official Capacity as the Attorney General of the State of Hawaii and Al Cummings, in his Official

Capacity as the State Sheriff Administrator. The Complaint asserted that Hawaii's ban on butterfly knives violates Plaintiffs' Second Amendment rights and sought an Order declaring H.R.S. § 134-53 unconstitutional and violative of the Second Amendment. The Complaint also sought injunctive relief via an Order, preliminarily and permanently enjoining the Defendants and all those in concert with Defendants, from enforcing the offending statute.

## B. The District Court's Grant of Defendants' Motion for Summary Judgment and Entry of Judgment

On January 14, 2020, Plaintiffs filed their Motion for Summary Judgment on all claims. Defendants filed their Motion for Summary Judgment on all claims on January 15, 2020. After briefing and oral argument, *see* ER047-ER079 (hearing transcript), on May 13, 2020, the district court issued an Order granting Defendants' Motion for Summary Judgment, ER004-ER045, and entered judgment in favor of Defendants. *See* ER046.

### 1. Summary of the District Court's Order

The district court upheld H.R.S. § 134-53 applying intermediate scrutiny because the ban "does not severely burden" the Second Amendment and held that the statute survives intermediate scrutiny "because it furthers the State's important interest to promote public safety by reducing access to butterfly knives, which leads to gang related crime." *See* ER045.

2. **The District Court's Judgment**

The district court entered final judgment in favor of Defendants-Appellees on May 13, 2020. *See* ER046.

## SUMMARY OF THE ARGUMENT

The Second Amendment protects butterfly knives because they are bearable arms typically used for lawful purposes. The State of Hawaii's ban on butterfly knives is unconstitutional because under any level of scrutiny that this Court may employ, the State does not have a sufficient government interest to ban them. This is because butterfly knives are less deadly than many legal knives, and knives in general are less dangerous than the handguns that were at issue in *Helle*r. In addition, the law is unconstitutional because it is underinclusive. This Court should find that Hawaii's ban on butterfly knives is unconstitutional.

## ARGUMENT

### I.    Legal Standard

This Court reviews de novo a district court's ruling on summary judgment. *Albino v. Baca*, 747 F.3d 1162, 1173 (9th Cir. 2014).

### II.    Hawaii's Ban on Butterfly Knives Violates the Second Amendment

Plaintiffs wished to purchase a butterfly knife for self-defense and other lawful purposes in their home and would acquire, possess, carry and where

appropriate use a butterfly knife to protect themselves and their homes. ER139; ER140.

H.R.S. § 134-53(a) outlaws the possession and use of butterfly knives even within home. As established below, butterfly knives are arms protected by the Second Amendment. Thus, this prohibition is a violation of Plaintiffs' Second Amendment rights. As stated above, Plaintiffs are not prohibited persons who have lost their Second Amendment rights. Recently the Ninth Circuit in *Duncan v. Becerra*, 2020 U.S. App. LEXIS 25836 (9th Cir. Aug. 14. 2020) found a ban on large capacity magazines unconstitutional despite other magazines being available to own. This Court should use similar logic to find that Hawaii's ban on butterfly knives is unconstitutional.

## III.    Knives Are Protected by the Second Amendment

"[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding," *Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016). In this Circuit, this includes all arms "commonly possessed by law-abiding citizens for lawful purposes". *See Fyock v. City of Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015).

Post-*District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago,* 561 U.S. 742 (2010), Hawaii's ban on butterfly knives cannot withstand constitutional muster. Defendants' witness agreed butterfly knives can be used to

defend yourself. *See* ER106. Knives are "in common use today" for the "lawful purpose" of self-defense. Thus, they are protected by the Second Amendment. "[K]nives have played an important role in American life, both as tools and as weapons. The folding pocketknife, in particular, since the early 18th century has been commonly carried by men in America and used primarily for work, but also for fighting." *State v. Delgado*, 692 P.2d 610 (Or. 1984). The federal Militia Act of 1792 required all able-bodied free white men between 18 and 45 to possess, among other items, "a sufficient bayonet….".[2] This establishes both that knives were common and were arms for militia purposes. In fact, knives are the "most common 'arm' in the United States". *See* David B. Kopel, Clayton E. Cramer & Joseph Edward Olsen, Knives and the Second Amendment, 47 U. Mich. J.L. Reform 167, 183 (Fall 2013). "Only about half of U.S. households possess a firearm, and many of those households have only one or two firearms. In contrast, almost every household possesses at least several knives." *Id.*

### A. Defendants' Evidence Is Inapplicable

Similarly, *Heller* used knives as an example of an arm. *See Heller*, 554 U.S. at 590 (emphasis added) ("In such circumstances the temptation [facing Quaker frontiersmen] to seize a hunting rifle or ***knife*** in self-defense... must sometimes have

---

[2] Militia Act, 1 STAT. 271-04 (1792).

8

been almost overwhelming."). A butterfly knife, as a form of knife, is a protected arm. *Heller* found that handguns, as a class, are constitutionally protected arms. After that, the Supreme Court did not delve into whether the particular handgun Dick Heller possessed was constitutionally protected.[3]  Using this reasoning, butterfly knives and other types of knives must receive constitutional protection. Furthermore, butterfly knives are protected arms because they are arms typically used for lawful purposes. *See Fyock v. City of Sunnyvale*, 779 F.3d 991 (9th Cir. 2015).  As such, they are protected by the Second Amendment. Under any of the tests this Court may apply, Hawaii's ban cannot survive constitutional muster.

As a preliminary matter, butterfly knives are not "dangerous and unusual" weapons.  In *United States v. Henry*, the Ninth Circuit held:

> An object is "dangerous" when it is "likely to cause serious bodily harm." *Black's Law Dictionary* 451 (9th ed. 2009)… The machine gun was first widely used during World War I, where it "demonstrated its murderously effective firepower over and over again." [citation omitted] A modern machine gun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds. [citation omitted] Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns.

---

[3] The handgun Dick Heller wished to register was a High Standard 9-shot revolver in .22 with a 9.5" Buntline-style barrel. *See* https://www.hoffmang.com/firearms/dc-roster/msj-2009-04-13/SJ_SEPERATE_STATEMENT.pdf at *7 (last visited 8/12/2020) and  App. to Pet. for Cert. U.S. Supreme Ct. 07-290 at 119a. This is a fairly uncommon handgun.

> A machine gun is "unusual" because private possession of all new machine guns, as well as all existing machine guns that were not lawfully possessed before the enactment of § 922(o), has been unlawful since 1986. Outside of a few government-related uses, machine guns largely exist on the black market.

*United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012). "A weapon may not be banned unless it is *both* dangerous *and* unusual." *Duncan*, 2020 U.S. App. LEXIS 25836 at 22 (citation omitted). Thus, if it can be demonstrated that an arm is either usual or not dangerous it receives Second Amendment protection. As shown below, butterfly knives are neither dangerous nor unusual.

Unlike machine guns, arms such as knives that are typically owned for lawful purposes receive constitutional protection. Knives are widely owned in every state in the Union. Butterfly knives are a subset of knives and are themselves typically used for lawful purposes. Like the large capacity magazines in *Duncan*, they are protected. Butterfly knives are legal to own in 47 states.[4] And the record demonstrates that they are possessed for self-defense. *See* ER009; ER083; ER133; ER106-ER107. While the record does not provide numerical data, butterfly knives widespread legality and lawful typical use is sufficient to establish they are in

---

[4] Butterfly knives remain illegal in New Mexico, the state of Washington and Hawaii.

common use.[5]  This is especially true here where numerical data simply does not exist because unlike firearms[6] and magazines, there is no single trade group that keeps track of butterfly knife sales.[7]

Moreover, *Heller* holds that once an item is established as an arm, it creates a rebuttal presumption that the arm receives Second Amendment protection: "[t]he Supreme Court held that 'the Second Amendment extends, prima facie, to all

---

[5] "Commonality is determined largely by statistics. But a pure statistical inquiry may hide as much as it reveals.  In the Second Amendment context, protected arms may not be numerically common by virtue of an unchallenged, unconstitutional regulation. Our colleagues in the Third and Seventh Circuits agree. *See ANJRPC*, 910 F.3d at 116 n.15 (common use alone 'is not dispositive' because of an unconstitutional regulation restricting the quantity of protected arms in circulation); *Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015) ('[I]t would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned. A law's existence can't be the source of its own constitutional validity.'). Thus, '[w]hile common use is an objective and largely statistical inquiry, typical possession requires us to look into both broad patterns of use and the subjective motives of gun owners.' *New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 256 (2d Cir. 2015) ("*NYSRPA*") (internal alterations and quotation marks omitted)." *Duncan,* 2020 U.S. App. LEXIS 25836 at 23.

[6] Firearm sales are aggregated by the National Shooting Sports Foundation (NSSF). For example, *see* https://www.nssf.org/nssf-releases-firearms-production-figures/.

[7] The American Knife and Tool Institute (AKTI) compiles some statistics on the overall class of "knives" (see https://www.akti.org/wp-content/uploads/US-Knives-in-2015.pdf), but there has not been any group that has been found which aggregates sales data for butterfly knives specifically.

instruments that constitute bearable arms, *even those that were not in existence at the time of the founding*.'" *Duncan,* 2020 U.S. App. LEXIS 25836 at 22 (citation omitted). There is no dispute that butterfly knives are bearable arms because they can be held by a person to attack another person.[8, 9] *See* ER106. Thus, the burden is on the government to show that they are not usual protected arms. Defendants have never attempted to rebut that presumption. For all these reasons, this Court should find that butterfly knives are not unusual arms.

Even if this Court were to find that butterfly knives are unusual, they still receive Second Amendment protection because an arm must be dangerous <u>and</u> unusual to lose its Second Amendment protection. "A weapon may not be banned unless it is *both* dangerous *and* unusual." *Duncan*, 2020 U.S. App. LEXIS 25836 at 22. And within the context of the dangerous and unusual analysis, butterfly knives are not "dangerous". That is because *Heller* established that handguns are not dangerous enough to be considered "dangerous" for this analysis. And the state has conceded that butterfly knives are less dangerous than handguns. See ER107.

---

[8] *District of Columbia v. Heller*, 554 US 570, 647 (2008), "arms" refer to "weapons of offence, or armour of defence," or "anything that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another[.]"

[9] The State's witness, Lt. Nagamine, agreed that a butterfly knife could be used both to defend yourself with and attack someone.

Moreover, independent studies show that knives are less dangerous than firearms. A study of hospital admissions for abdominal wounds found that abdominal stabbing cases ended in death 3.1 percent of the time, while 9.8 percent of gunshot abdominal wounds were lethal. *See* Harwell Wilson & Roger Sherman, Civilian Penetrating Wounds to the Abdomen, 153 ANNALS OF SURGERY 639, 640 (1961). ER119-126.

An examination of 165 family and intimate assaults ("FIA") in Atlanta, Georgia in 1984 found similar results: firearms-associated FIAs were three times more likely to result in death than "FIAs involving knives or other cutting instruments." *See* Linda E. Saltzman, James A. Mercy, Patrick W. O'Carroll et al., Weapon Involvement and Injury Outcomes in Family and Intimate Assaults, 267 JAMA 3043 (1992). *See* ER110. Another study examined all New Mexico's penetrating traumas ("firearm or stabbing injury") "who presented to either the state Level-1 trauma center or the state medical examiner" from 1978 to 1993.

This study found that while nonfatal injury rates were similar for firearms and stabbing (34.3 per 100,000 person-years for firearms, 35.1 per 100,000 person-years for stabbing), firearm fatality rates were much higher than for knives: 21.9 vs. 2.7 respectively. In other words, 39.0 percent of firearm penetrating traumas were fatal, compared to 7.1 percent of knife penetrating traumas - firearm injuries were 5.5 times more likely to result in death than were knife injuries. But not all the New

Mexico penetrating traumas were criminal attacks - 44 percent of the firearms deaths and 57 percent of the knife deaths were suicides. While 8 percent of the firearms deaths were accidents, so were 3 percent of the knife deaths. *See* 123 Cameron Crandall, Lenora Olson, Lynne Fullerton, et al., Guns and Knives in New Mexico: Patterns of Penetrating Trauma, 1978-1993, 4 ACAD. EMERGENCY MEDICINE 265 (1997). *See* ER116.

In 2018 information collected by the FBI collected regarding types of weapons used in violent crime showed that firearms were used in 72.7 percent of the nation's murders, 38.5 percent of robberies, and 26.1 percent of aggravated assaults. https://ucr.fbi.gov/crime-in-the-u.s/2018/crime-in-the-u.s.-2018/topic-pages/violent-crime (last visited 8/12/2020). Knives and other edged weapons accounted for approximately 10.7% of murders, 8.4% of robberies and 17.3% of aggravated assaults in 2017. *See Id.*

As Defendants' witness testified, butterfly knives are less dangerous than handguns which the *Heller* court found to be the "quintessential self-defense weapon" and thus not dangerous and unusual. *See Heller,* 554 U.S. at 629. *See* ER107. Like nunchucks, butterfly knives, "as used in the martial arts, are socially acceptable and lawful behavior, especially here in Hawaii where the oriental culture and heritage play a very important role in society." *See State v. Muliufi* 643 P.2d 546, 548 (1982).

14

Butterfly knives cannot be legally "dangerous" and lose Second Amendment protection because *Heller* found handguns to be protected. Handguns are both concealable in the pocket and are much more dangerous than any type of knife. Furthermore, even assuming some gang members were found with butterfly knives at the time of their prohibition, it does not follow that butterfly knives typical use is for unlawful purposes. As the Second Circuit observed, *Heller* holds there is a presumption that arms are constitutionally protected, and the burden is on the government to rebut that presumption. "*Heller* emphasizes that 'the Second Amendment extends, prima facie, to all instruments that constitute bearable arms.' *Heller*, 554 U.S. at 582. In other words, it identifies a presumption in favor of Second Amendment protection, which the State bears the initial burden of rebutting." *See New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 257 (2d Cir. 2015). The State has not done so here.

Citation to an unsubstantiated legislative comment is insufficient to rebut this presumption especially in like of the fact Plaintiffs have submitted expert evidence that butterfly knives are typically used for lawful purposes and open more slowly than both a common folding knife and a switchblade. Butterfly knives are legal to own in forty-seven (47) states and case law more than suggests that they are constitutionally protected. Because butterfly knives are neither dangerous nor unusual, they are arms protected by the Second Amendment.

15

Defendants' very own submissions belie their argument that butterfly knives are used for unlawful purposes:

> The Balisong knife is without a doubt one of the most popular knives today... The modern balisong knife has plenty of uses unlike the ancient ones. Today, it is one of the knives with massive fanbase. It has been transformed into a multipurpose knife. Because its blade can be concealed inside the two handles, it has become the easiest to carry knife. So, people prefer carrying it in the pocket as their primary self defense weapon. It works brilliantly as the defense weapon. Since it is quick, the blade can be deployed at once. Hence, the user has every chance to survive against the attacker. The safety of carrying this knife is another factor that has made this knife popular. The blade is concealed and locked inside the two handles. There is no chance that blade accidentally opens in your pocket. Therefore, you can comfortably carry the knife. The modern butterfly knife is lightweight and small, but is sturdy enough.

*See* ER081.  And then from the legislative history:

> However, butterfly knives or "Balisong" are an integral part of the filipino martial art called Escrima. Like Karate, Aikido, or TKacw on Do, Escrima is a martial art that developed and arose out of the country's unique culture. In the case of the Philippines, the blade arts became an essential part of Escrima specifically because the average filipino man needed to carry a knife for hunting, harvesting and general self-defense. Similarly, Indonesia also has a strong tradition of "blade arts." Escrima and Balisong practice were endemic through-out the Philippine Islands even before colonization first by the Spanish, and later by the U.S. Escrima schools here in Hawaii teach Balisong as a legitimate martial art.

*See* ER083.  Further legislative history states:

> Over the past 30 years our school has trained hundreds of people from all walks of life in the weapons-based Filipino Martial Arts that include the Balisong. The Balisong-butterfly knife developed in the Philippines in the 1940's has earned a reputation as a weapon of mystique, but in it's simplest form it is nothing more than any other knife in that it has a point and a cuing edge. I ask that you reconsider, end withdraw the

Balisong-butterfly knife as a prohibited weapon end allow those of us honest citizens to continue to use this weapon as a cultural tool as it should be. I have a copy of SB 606 and see that HB1496 is patterned after SB 606.

In SB606 the outcome was that the Balisong owner was in violation of the law by having in his or her possession a butterfly knife. I ask that you consider not taking the easy way out by merely following HB1496. Instead I hope that you will take the time to research and find a way for those of us to use the Butterfly knife as a cultural instrument can continue to do so. We advocate that stiff penalties should be in effect for those individuals that use these or any other weapon in violent crime, but let us not destroy cultural traditions enjoyed by many because of the actions of a few. Make the criminals pay, not the citizens. Mahalo for your time.

*See* ER082.

This evidence further supports that Defendants' attempts to analogize butterfly knives to switchblades is inappropriate. This Court needs to look no further than the Supreme Court of Hawaii's opinion in *In re Interest of Do*e, 73 Haw. 89, 828 P.2d 272 (1992). In that case, the Supreme Court of Hawaii analyzed *Taylor v. McManus* and held that the butterfly knife was not prohibited under Hawaii's ban on switchblades and that the butterfly knife was not a knife "which [blade] opens automatically … by operation of inertia, gravity, or both[.]". *Id*. Because a butterfly knife isn't the same as a switchblade, attempts to equate them as equal fail.

Federal courts have used a similar analysis to find other self-defense arms are protected by the Second Amendment. In *Maloney v. Singas*, 351 F. Supp. 3d 222 (S.D.N.Y. 2018), the United States District Court for the Southern District of New York struck the State of New York's ban on nunchucks as a violation of the Second

17

Amendment. It found nunchucks are protected by the Second Amendment because they are bearable arms that are typically used for lawful purposes. It then struck New York's ban because the State did not have an important government interest in banning these protected arms. A federal court in northern New York used a similar analysis to strike New York State's ban on electric arms. *See Avitabile v. Beach*, 368 F. Supp. 3d 404 (N.D.N.Y. 2019). *People v. Webb,* 2019 IL 122951 (March) struck Illinois's ban on taser ownership and carry by applying a categorical approach and *Webb* supports the use of a categorical approach in this case.

Knives are typically owned for lawful purposes as Courts have overwhelmingly found. The courts that ruled on this issue agree knives designed for self-defense receive constitutional protection. In *State v. Herrmann*, 873 N.W.2d 257 (Wis. Ct. App. 2015), the Wisconsin Court of Appeals overturned appellant's conviction for possession of a switchblade as unconstitutional. In doing so, the court found that switchblades are protected by the Second Amendment and that Wisconsin's complete ban on their possession was unconstitutional.

In *City of Seattle v. Evans*, 366 P.3d 906 (2015), the Washington Supreme Court evaluated the conviction for carrying a paring knife (a type of kitchen knife). The court found that paring knives are not protected by the Second Amendment because paring knives are not designed to be used for self-defense:

> We hold that the right to bear arms protects instruments that are
> designed as weapons traditionally or commonly used by law-abiding

18

> citizens for the lawful purpose of self-defense. In considering whether a weapon is an arm, we look to the historical origins and use of that weapon, noting that a weapon does not need to be designed for military use to be traditionally or commonly used for self-defense. We will also consider the weapon's purpose and intended function.

*Id.* at 913. Then the court went on to strongly suggest that knives designed for self-defense such as "bowie knives and swords", having been commonly used for self-defense may be considered arms. *Id.* at 906.

In *State v. DeCiccio*, 105 A.3d 165 (Conn. 2014), the Connecticut Supreme Court overturned the conviction for transport of a dirk knife and a baton as a violation of the defendant's Second Amendment rights. In doing so, the court found that dirk knives and batons are protected by the Second Amendment because they are weapons with traditional military utility that are "typically possessed by law-abiding citizens for lawful purposes"; *Id*. at 625; and not "dangerous and unusual weapons." (internal quotation marks omitted.) *Id*., 627. It then applied intermediate scrutiny and held the conviction unconstitutional.

In *People v. Mitchell*, 209 Cal. App. 4th 1364 (2012), a California Court of Appeals held:

> the dirk or dagger concealed carrying restriction does not entirely prohibit the carrying of a sharp instrument for self-defense; rather, it limits the manner of exercising that right by proscribing concealed carrying of a dirk or dagger unless the bearer uses a visible knife sheath or non-switchblade folding or pocketknife. Because the statute regulates but does not completely ban the carrying of a sharp instrument, we subject it to intermediate scrutiny.

*Id*. at 1374. Here, since Hawaii completely bans butterfly knives, *Mitchell* supports the position that Hawaii's ban on butterfly knives is unconstitutional.

In *State v. Montalvo*, 162 A.3d 270 (2017), the New Jersey Supreme Court overturned the conviction for possession of a machete. In doing so, the court found that machete-type knives are protected by the Second Amendment and that a conviction for their possession in the home was unconstitutional. The Delaware Supreme Court has also found knives are protected by the Second Amendment. *See State v. Griffin*, 2011 Del Super LEXIS 193, *26 n62 (Del Super Ct, May 16, 2011) (reversed and remanded on other grounds by *Griffin v. State*, 47 A.3d 487, 2012 Del. LEXIS 319 (Del., June 18, 2012) (holding that the "right to keep and bear arms" under the Delaware Constitution extends to knives, and concluding that the Second Amendment right does the same). The Ohio Supreme Court has found knives are protected under their State Constitution. *See City of Akron v. Rasdan*, 663 NE2d 947 (Ohio Ct. App., 1995) (concluding that the "right to keep and bear arms" under the Ohio Constitution extends to knives). And in *State v. Delgado*, 692 P.2d 610 (1984), the Oregon Supreme Court found that Oregon's ban on the possession of switchblades violated the Oregon Constitution's right to arms:

> In early colonial America the sword and dagger were the most commonly used edged weapons. During the American colonial era every colonist had a knife. As long as a man was required to defend his life, to obtain or produce his own food or to fashion articles from raw materials, a knife was a constant necessity. Around 1650 one form of dagger popular in the colonies was the "plug bayonet," so called

> because it fit into the muzzle of a musket. It was used both as a dagger or as a general utility knife. Other knives became popular during the 17th and 18th centuries. The American frontiersman used a large knife to ward off danger from Indian attacks and to hunt and trap; along with that he carried a smaller knife, the blade being three to four inches long, in his rifle bag.

*State v. Delgado*, 692 P.2d 610, 613-614 (1984). It then found that a switchblade is

constitutionally protected based on these historical antecedents:

> We are unconvinced by the state's argument that the switch-blade is so "substantially different from its historical antecedent" (the jackknife) that it could not have been within the contemplation of the constitutional drafters. They must have been aware that technological changes were occurring in weaponry as in tools generally. The format and efficiency of weaponry was proceeding apace. This was the period of development of the Gatling gun, breach loading rifles, metallic cartridges and repeating rifles. The addition of a spring to open the blade of a jackknife is hardly a more astonishing innovation than those just mentioned.

*Delgado*, 692 P.2d at 614.

Finally, in upholding a criminal conviction for possession of a switchblade,

the New Mexico Court of Appeals found that knives are protected by the Second

Amendment and upheld that specific ban applying intermediate scrutiny. It did so

because:

> the switchblade is "designed for quick use in a knife fight." … It is, 'by design and use, almost exclusively the weapon of the thug and the delinquent.' *Precise Imp. Corp. v. Kelly*, 378 F.2d 1014, 1017 (2d Cir. 1967). The purpose of the legislation—protection of the public from the surprise use of a dangerous weapon utilized in large part for unlawful activity—is an important governmental purpose. Prohibiting the

21

possession of this weapon is, of course, substantially related to this narrow, but important, purpose.

*State v. Murillo*, 347 P.3d 284, 289 (2015).

Butterfly knives are highly distinguishable from the type of knife that was at issue in *Murillo.* Plaintiff's expert Richardson submitted a declaration and an expert report that the butterfly knife was invented by the Filipino people as an arm used for lawful purposes. And it is typically used lawfully as a "self-defense weapon". *See* ER133. This evidence distinguishes it from the first contention of the State in *Murillo*.

The second relevant evidence from Richardson is that butterfly knives are not designed to be opened quickly compared to normal folding knives. "It takes a lot of practice to be able to open the knife quickly and efficiently with one hand, and even with such training, the Balisong is still slower than the most popular self-defense knives that are available and legal to carry." *See* ER091. Richardson provided a video with his expert declaration to demonstrate that a butterfly knife opens much slower than a standard folding knife.[10]

---

[10] Richardson's expert video is available here: https://youtu.be/nL4VpEoaabE and is referenced and included as a part of the record. (last visited August 11, 2020).

As Richardson demonstrates in his video and declaration, the butterfly knife opens far slower than a standard folding knife. The time for the two folding knives that were tested were as follows:

Single handed wave Folding knife clipped to pocket: 1.467 seconds;

2 hand opening, folding knife clipped to pocket: 1.200 seconds; and

Whereas the butterfly knife opened in 2.900 seconds.

*See* ER092.

This testimony is supported by the Hawaii Supreme Court's own observation of the several steps required to open a butterfly knife unlike a folding knife:

> Our examination of the butterfly knife in issue reveals that the knife has a split metal handle which encases a single-edged blade when in a closed position. The knife may be locked in the closed position by using a metal safety clasp at the base of the handle. The clasp keeps the halves of the handle together. In order to open the knife, the clasp must be unlocked; then, both halves are folded away from each other until they meet, exposing the blade. By holding both halves of the handle firmly together, the blade is then in a secured position to be used. The metal clasp, which locks the handle in a closed position, may also be used to lock the handle in the open position.

*In re Interest of Doe*, 73 Haw. 89, 91, 828 P.2d 272, 274 (finding that a butterfly knife is not a switchblade under Hawaii law).

Since butterfly knives are owned for lawful purposes and open slower than common folding knives, *Murillo* supports the proposition that Hawaii's ban on butterfly knives is unconstitutional. But even without the distinctions between *Murillo* and the instant case, Plaintiffs do not concede that the reasoning in *Murillo*

23

controls here. Plaintiffs submit that the holdings in *Delgado* and *Herrmann* are much more persuasive and applicable to the instant case. Further, it does not make logical sense that an arm less dangerous than a handgun can be banned under the framework applied in *Heller*.

### B. Lacy is Inapplicable to Plaintiffs' Challenge

*Lacy v. State*, 903 N.E.2d 486 (Ind. Ct. App. 2009) has no bearing on Plaintiffs' challenge. Lacy was an as-applied challenge to a criminal possession of a *switchblade* outside the home under the Indiana Constitution. "…we pass over Lacy's contention that Ind. Code § 35-47-5-2 is unconstitutional on its face and turn instead to whether its application in this case was unconstitutional". *Id.* at 489. Further, it relied on a faulty premise:

> Lacy quotes *Crowley Cutlery Co. v. U.S.* (7th Cir. 1988) to refute the Oregon Supreme Court's position in *Delgado* that switchblade knives are not intrinsically different from other knives. Crowley argued that switchblade knives "are more dangerous than regular knives because they are more readily concealable and hence more suitable for criminal use." It requires no expert testimony to demonstrate that this claim is incorrect. A switchblade knife's handle, when closed, must be at least as long as the blade. In this respect, it is no different from any folding knife, where the enclosure must be slightly longer than the blade. No switchblade knife can be any more concealable than its non-automatic counterpart.

D. Kopel, Clayton E. Cramer & Joseph Edward Olsen, Knives and the Second Amendment, 47 U. Mich. J.L. Reform 167, 183 (Fall 2013).

Furthermore, butterfly knives are an entirely different type of knife with a different history. And unlike Plaintiffs who challenge Hawaii's in the home possession ban on butterfly knives, Lacy was caught outside the home with a switchblade:

> On September 11, 2004, Indiana Conservation Officer James Schreck noticed three people driving all terrain vehicles without registration decals Officer Schreck attempted to stop the people, but they fled on the vehicles. Officer Schreck patrolled the area and found an all terrain vehicle off the road in the woods. Officer Schreck eventually located Lacy lying down in the grass. Officer Schreck arrested Lacy and patted her down. Officer Schreck discovered a pocketknife and a four-inch long switchblade on Lacy.

*Lacy*, 903 N.E.2d at 488.

Thus, an in the home as-applied challenge to Indiana's ban on switchblade might very well be successful under the Indiana Constitution. Moreover, the Indiana Constitution has a completely different standard of review than the Second Amendment challenge brought by Plaintiffs. Under the Indiana Constitution, "Courts defer to legislative decisions out when to exercise the police power and typically require only that they be rational". *Id.* at 490. *Heller* requires a higher level of scrutiny when evaluating Second Amendment challenge. For all these reasons, *Lacy* is irrelevant to the instant matter.

#### IV. This Court Should Find Hawaii's Butterfly Knife Ban Categorically Unconstitutional

This Circuit employs a two-step test to determine what level of scrutiny to apply to a Second Amendment challenge.

> A law that imposes such a severe restriction on the core right of self-defense that it "amounts to a destruction of the [Second Amendment] right," is unconstitutional under any level of scrutiny. *Heller*, 554 U.S. at 629 (internal quotations omitted). By contrast, if a challenged law does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right, we may apply intermediate scrutiny. *See*, e.g., *Chovan*, 735 F.3d at 1138-39; cf. *Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244, 1257, 399 U.S. App. D.C. 314 (D.C. Cir. 2011) ("[A] regulation that imposes a substantial burden upon the core right of self-defense protected by the Second Amendment must have a strong justification, whereas a regulation that imposes a less substantial burden should be proportionately easier to justify.").

*Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 961 (9th Cir. 2014).

Here, this Court should strike Hawaii's ban on the ownership of butterfly knives applying the categorical approach. This is because Hawaii's ban categorically bans a type of knife which is protected by the Second Amendment. Two state courts have used similar analysis in striking their state's bans on electric arms. In *Ramirez v. Commonwealth*, 479 Mass. 331, 94 N.E.3d 809 (2018) (Apr. 17, 2018), the Massachusetts Supreme Judicial Court stated as follows:

> Having received guidance from the Supreme Court ..., we now conclude that stun guns are "arms" within the protection of the Second Amendment. Therefore, under the Second Amendment, the possession of stun guns may be regulated, but not absolutely banned. Restrictions may be placed on the categories of persons who may possess them,

26

licenses may be required for their possession, and those licensed to possess them may be barred from carrying them in sensitive places, such as schools and government buildings. But the absolute prohibition ... that bars all civilians from possessing or carrying stun guns, even in their home, is inconsistent with the Second Amendment and is therefore unconstitutional.

*Id.* at 337-338.

And in *People v. Yanna*, 824 N.W.2d 241, 246 (Mich. Ct. App. 2012) the

Michigan Court of Appeals held that:

> [b]ecause tasers and stun guns do not fit any of the exceptions to the Second Amendment enumerated in *Heller*, we find that they are protected arms. *Heller* found unconstitutional a law which completely banned the possession of protected arms in the home. [citation omitted] We therefore hold that a complete ban on tasers and stun guns in the home violates the Second Amendment.

This Court should apply a categorical approach in finding that a complete ban on butterfly knives is unconstitutional. This was the approach taken in *District of Columbia v. Heller*, 554 U.S. 570 (2008) when confronted with a complete ban on handguns. Pursuant to *Heller I*, "complete prohibition[s]" of Second Amendment rights are always invalid. *Id.* at 629. It is appropriate to strike down such "total ban[s]" without bothering to apply tiers of scrutiny because no such analysis could ever sanction obliterations of an enumerated constitutional right. *Id.* Per *Heller*, this Court could strike down Hawaii's butterfly knife ban without the need to look to scrutiny analysis. This is the approach that many other courts have taken in other contexts when dealings with severe restrictions on the Second Amendment.

27

The State Supreme Court of New Jersey also applied no scrutiny test in finding a conviction for possession of a machete in the home violated the litigant's Second Amendment right. *See State v. Montalvo*, 077331, 2017 WL 2471030 (N.J. June 8, 2017). In *Wesson v. Town of Salisbury*, 13 F. Supp. 3d 171 (D. Mass. 2014) and *Richmond v. Peraino*, 128 F. Supp. 3d 415 (D. Mass. 2015), the court found that a ban on firearms ownership based on decades old marijuana convictions was unconstitutional without the need to apply scrutiny.

The court in *Morris v. United States Army Corps of Eng'rs,* 60 F. Supp. 3d 1120 (D. Idaho 2014) found the U.S. Corps of Engineers' ban on firearms carry for self-defense was categorically invalid. The 7th circuit also invalidated Illinois' total ban on any carrying of firearms in public as categorically unconstitutional. *Moore v. Madigan*, 702 F.3d 933, 940 (7th Cir. 2012). The Illinois Supreme Court followed suit in *People v. Aguilar*, 2 N.E.3d 321, 327 (Ill. 2013) and found the Class 4 form of section 24-1.6(a)(1), (a)(3)(A), (d) of the Illinois aggravated unlawful use of weapons statute violated the Second Amendment without a scrutiny analysis. Same as to the District of Colombia's ban on handgun carry in *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014). And again, later regarding DC's licensing scheme put in place post-*Palmer* in *Wrenn v. District of Columbia*, 864 F.3d 650, 665 (D.C. Cir. 2017). This Court should follow the lead of these Courts in finding that Hawaii's complete ban on butterfly knives is unconstitutional without

28

the need to look to tiered scrutiny. However, if a level of scrutiny is required, Ninth Circuit precedent suggests that strict scrutiny should be applied.

## A. Strict Scrutiny Should Apply

Post-*Heller*, the Ninth Circuit has developed a body of case law which supports the application of strict scrutiny where a law places a substantial burden on the core right to self-defense of a law-abiding person. This is the implication of the Ninth Circuit's holding in *Fisher v. Kealoha*. "Unlike Fisher, however, Chovan never argued that section [18 U.S.C.] 922(g)(9) was unconstitutional as applied to him because California (Chovan's state of conviction) provided too few of the restoration mechanisms listed in section 921(a)(33)(B)(ii). *See* [*United States v. Chovan*, 735 F.3d 1127, 1137-42 (9th Cir. 2013)]". *Fisher v. Kealoha*, 855 F.3d 1067, 1071 (9th Cir. 2017) . Similarly, if this Court decides not to apply a categorical approach, it should apply strict scrutiny. This position finds support in other Ninth Circuit precedent. In reviewing a ban on the sale, but not possession, of hollow points in *Jackson v. City & County of San Francisco,* the Ninth Circuit stated:

> A ban on the sale of certain types of ammunition does not prevent the use of handguns or other weapons in self-defense. The regulation in this case limits only the manner in which a person may exercise Second Amendment rights by making it more difficult to purchase certain types of ammunition. This is akin to a content-neutral time, place, and manner restriction, such as a regulation which prevents a person from owning a firearm with an obliterated serial number while not barring the possession of an otherwise lawful firearm. *See Marzzarella*, 614 F.3d at 97. Further, section 613.10(g) leaves open alternative channels for self-defense in the home. Jackson may either use fully-jacketed bullets

29

for self-defense or obtain hollow-point bullets outside of San Francisco's jurisdiction. Because section 613.10(g) neither regulates conduct at the core of the Second Amendment right nor burdens that right severely, we review it under intermediate scrutiny.

*Jackson*, 746 F.3d at 968.

Here, Hawaii's butterfly knife ban is more analogous to a content-based speech restriction than the one at issue in *Jackson* because it is a ban on possession, even in the home. Thus, strict scrutiny applies, and the State of Hawaii must demonstrate a compelling government interest to banning these arms that is narrowly tailored to achieve that interest. *See Thomas v. Review Bd. of Ind.do Employment Sec. Div.*, 450 U.S. 707, 718 (1981) ("The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest.").[11]

Recently, the Ninth Circuit in *Duncan* found applied strict scrutiny and held that California's ban on Large Capacity Magazines violated the Second Amendment. It did so despite magazines which hold ten rounds or less are still available and legal. "Section 32310 strikes at the core right of law-abiding citizens to defend hearth and home, and the burden imposed on the core right is substantial. As this court has held, where a burden on the core right is substantial, strict scrutiny is appropriate." *Duncan,* 2020 U.S. App. LEXIS 25836 at 34. Hawaii similarly bans butterfly knives

---

[11] The argument in the intermediate scrutiny section applies to the strict scrutiny section as well.

in the home where "where protections are 'at their zenith.'" *Id.* at 35. And thus, Hawaii's ban imposes a substantial burden on Plaintiffs Second Amendment right to use protected arms for self-defense. Applying *Duncan*, strict scrutiny applies.

Like the magazine ban at issue in *Duncan,* the challenged law in this matter bans possession of a protected type of arm (butterfly knives). And knives, as shown above, are as quintessential to self-defense as handguns. Thus, Circuit precedent supports applying strict scrutiny. However, as shown below even if this Court does apply intermediate scrutiny, Hawaii's butterfly knife ban is unconstitutional.[12]

## B. The Trial Court Erred in Its Application of Intermediate Scrutiny

Even if this Court finds intermediate scrutiny is appropriate to the instant case, Hawaii's ban on butterfly knives cannot withstand constitutional muster. Our intermediate scrutiny test under the Second Amendment requires that "(1) the government's stated objective . . . be significant, substantial, or important; and (2) there . . . be a 'reasonable fit' between the challenged regulation and the asserted objective." *Silvester v. Harris*, 843 F.3d 816, 821-22 (9th Cir. 2016) (quoting *Chovan*, 735 F.3d at 1139). Under the second prong "intermediate scrutiny does not require the least restrictive means of furthering a given end." *Id.* at 827 (quoting *Jackson*, 746 F.3d at 969, concerned only with the purported benefits of a law). Even a dragnet captures *some* people engaged in criminal activity. The question is not

---

[12] The argument below applies fully to the strict scrutiny section as well.

whether there are some nonfalse positives, but whether a law's encroachment on constitutional rights is "more extensive than necessary" to serve the government's interest. *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 816 (9th Cir. 2013). The relevant inquiry is whether the government can meet its burden of proving that its law does not burden "substantially more" constitutionally protected conduct than "necessary to further [its important] interest." *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 214 (1997).

If this Court applies intermediate scrutiny it should rely on *State v. Hermann* and not *State v. Murillo.* For the same reasons that the Wisconsin Court distinguished *Murrilo,* so should this Court:

> *Murillo* is factually distinguishable because, unlike Herrmann, the defendant in *Murillo* did not possess a switchblade in his own home for his protection. Instead, he was convicted of possessing a switchblade after using it in a fight at a Wal-Mart… Accordingly, *Murillo* did not implicate the core Second Amendment right to keep and bear arms in one's own home for self-defense.

*State v. Herrmann*, 873 N.W.2d 257, 263 (Wis. Ct. App. 2015).

Here, Plaintiffs challenged Hawaii's ban on butterfly knives inside the home. Further, Plaintiffs have made efforts to conduct discovery and submit expert testimony[13] and other evidence unlike the litigant in *Murillo.*

> … *Murillo* did not raise his Second Amendment challenge in the trial court and therefore deprived the State of the opportunity to make an evidentiary showing that the challenged statute withstood intermediate

---

[13] The Defendants did not submit any expert report in this matter.

scrutiny… The *Murillo* court nevertheless chose to address the defendant's argument, reasoning, "Other cases have addressed the issue, and, rather than remanding this case to the district court, we can address Defendant's arguments based on case law." *Id*. at 289 n.2. Thus, although the *Murillo* court purported to apply intermediate scrutiny, it did not actually hold the government to its burden of proof, choosing instead to rely on unsupported statements from pre-*Heller* case law about the dangerousness of switchblades and their frequent use by criminals. *See* id. at 288-89. Unlike the *Murillo* court, we do not find these unsupported statements persuasive.

*Herrmann*, 873 N.W.2d at 263. This Court should disregard *Murillo* as inapplicable to Plaintiffs' challenge.

Here, the State does not have an important government interest in banning butterfly knives. While public safety is always a government interest, the government cannot invoke public safety without a specific rationale. Here, the State would at least need to show that less people would be injured or killed with the butterfly knife ban in place than without it. It has not done so and it cannot do so because, as shown above, butterfly knives are no more deadly than legal folding knives. "It takes a lot of practice to be able to open the knife quickly and efficiently with one hand, and even with such training, the Balisong is still slower than the most popular self-defense knives that are available and legal to carry." *See* ER091.

Banning butterfly knives does not reduce injury or death and thus, the State does not have an important government interest in banning them. In any event, for a law to be substantially related to a government interest, the government must demonstrate that the "restriction will in fact alleviate" its concerns. *Lorillard*

*Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001). Government cannot meet that burden by relying on "mere speculation or conjecture." *Id*. Instead, it must offer evidence demonstrating that the restriction it seeks to impose will in fact further its stated interests. *See City of Los Angeles v. Alameda Books*, *Inc*., 535 U.S. 425, 437 (2002). The State cannot "get away with shoddy data or reasoning." *Id*. at 438. Here, the State fell well short of meeting its burden. Yet, the district court wrongly held that the State carried that burden based on the State's proffered "evidence" consisting largely of statements about finding individuals in possession of butterfly knives, but not crimes committed with them, unless of course mere possession is the crime. *See* ER041-ER042.

"[A] court must determine whether the legislature has 'base[d] its conclusions upon substantial evidence.' *Turner II*, 520 U.S. at 196. Even assuming the veracity of the Hawaii legislature "finding" that butterfly knives are favored by gangs, *Heller* rejected the notion that protected arms may be banned on the ground that they are used in crime. *Heller*, 554 U.S. at 636. Furthermore, none of the State's evidence demonstrates that butterfly knives are deadlier than typical folding knives. Thus, there is no net public safety benefit from banning them because criminals are free to own other knives and even butterfly knives themselves because criminals, by definition, don't obey the law. Furthermore, the State's evidence does not demonstrate that the *typical* use of a butterfly knife is criminal. Rather even

accepting the State's evidence as true demonstrates that butterfly knives are popular knives in Hawaii. And because they are popular among the people, they tend to be discovered being used by criminals. As shown above, the record actually shows that butterfly knives are typically owned for lawful purposes.

While the State no doubt has an important interest in promoting public safety and preventing crime, that does not mean that the State necessarily has an important interest in banning an arm that is typically used for lawful purposes that is less deadly than the handguns at issue in *Heller* and *McDonald*. *See McDonald* 561 U.S. at 783 (rejecting the notion that governments may "enact any gun control law that they deem to be reasonable."). After all, "it would be hard to persuasively say that the government has an interest sufficiently weighty to justify a regulation that infringes constitutionally guaranteed Second Amendment rights if the Federal Government and the states have not traditionally imposed—and even now do not commonly impose—such a regulation." *Heller* II, 670 F.3d at 1294 (Kavanaugh, J., dissenting). That is precisely the case here. Butterfly knives are legal to own in 47 states and Hawaii's ban was only enacted in 1999 after a 1992 Hawaii Supreme Court opinion which held that butterfly knives weren't switchblades. If butterfly knives were a big problem in Hawaii, why would it have waited seven years to ban them after realizing they weren't already banned?

Attempting to nakedly suppress the number of butterfly knives owned by law-abiding citizens is "not a permissible strategy"—even if used to further the end of increasing public safety. *Grace v. District of Columbia*, 187 F. Supp. 3d 124, 148 (D.D.C. 2016), *aff'd sub nom. Wrenn v. District of Columbia*, 864 F.3d 650. That conclusion follows directly from the Supreme Court's precedents in the secondary effects area of free speech doctrine. The Supreme Court has held that government restrictions on certain types of expressive conduct—most commonly, zoning ordinances that apply specifically to establishments offering adult entertainment—are subject to merely intermediate scrutiny even though they are content-based. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47–51 (1986). But this lesser scrutiny applies only so long as the *purpose and effect* of the restrictions is to reduce the negative "secondary effects" of the expression—such as the increased crime that occurs in neighborhoods with a high concentration of adult theaters—rather than to suppress the expression itself. *Id.* at 49.

As Justice Kennedy's controlling opinion in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002) makes clear, in defending a restriction as narrowly tailored to further an important or substantial governmental interest, the government may not rely on the proposition "that it will reduce secondary effects by reducing speech in the same proportion." *Id.* at 449. "It is no trick to reduce secondary effects by reducing speech or its audience; but [the government] may not attack secondary

36

effects indirectly by attacking speech." *Id.* at 450; *see also Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 741 (2011) ("[A] 'beggar thy neighbor' approach to free speech—restricting the speech of some elements of our society in order to enhance the relative voice of others—is wholly foreign to the First Amendment." (brackets and quotation marks omitted)); *cf. Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018) ("[T]he government, if it is to respect the Constitution's guarantee of free exercise, cannot impose regulations that are hostile to the religious beliefs of affected citizens . . . ."); *Buck Foston's New Brunswick LLC v. Cahill*, 2013 WL 5435289, at *12 (D.N.J. Sept. 27, 2013) (Government cannot retaliate against or seek to deter protected speech).

Courts have applied similar reasoning in the Second Amendment context. For instance, in *Heller v. District of Columbia (Heller III)*, the D.C. Circuit struck down the District of Columbia's prohibition on registering more than one pistol per month. 801 F.3d 264, 280 (D.C. Cir. 2015). The District defended that ban as designed to "promote public safety by limiting the number of guns in circulation," based on its theory "that more guns lead to more gun theft, more gun accidents, more gun suicides, and more gun crimes." *Id.* But the court rejected that simplistic syllogism, explaining that "taken to its logical conclusion, that reasoning would justify a total ban on firearms kept in the home," and so it simply cannot be right. *Id.*; *see also*

*Grace*, 187 F. Supp. 3d at 148 (reasoning that "it is not a permissible strategy to reduce the alleged negative effects of a constitutionally protected right by simply reducing the number of people exercising the right" (quotation marks omitted)). In other words, the government may not adopt a law with the design and direct effect of limiting the quantity of conduct protected by the Second Amendment.

Here, the State does not present any evidence that its ban on butterfly knives promotes public safety. Even assuming a ban on carrying them outside the home is justified due to their concealability, it does not follow that it promotes *public* safety to ban them in the home.

For the forgoing reasons, the State does not have an important government interest in banning butterfly knives.

## C. There is not a Reasonable Fit to the Ban and Public Safety

The district court erred in its analysis when it held that there was a "reasonable fit between HRS § 134-53(a) and the State's interests in public safety and reducing gang-related crime. An independent examination of the record shows reliable evidence that butterfly knives are closely associated with crime and popular with minors and gang members." ER041. This misstates the evidence in the record though, as this legislative history really demonstrates that the butterfly knife was "popular", but it wasn't *illegal* until 1999 when Hawaii passed the butterfly knife ban. As it stands, being a "gang member" is not in and of itself illegal and there is

no testimony regarding gang members using them to stab people or other criminal activity associated with butterfly knives, only that they possessed them.

Specifically, the Honolulu Police Department's letter to the legislature stated it wanted the Senate "to include transferring of a 'butterfly knife' to a minor as a class C felony." ER085. This is an example of tailoring the law to prohibit individuals from carrying/possessing, but not infringing on other law-abiding citizens' rights. The letter goes on to state that the "Gang Detail has noted an increasing trend in minors and gang members with knives and daggers." *Id*. This letter says nothing about them committing crimes with a butterfly knife.

Likewise, the City and County of Honolulu Prosecuting Attorney's letter speaks of crime only regarding "very young minors" and "concealed carrying" of the knife. ER086. The letter then states that "[g]iven that deadly or dangerous weapons have been defined as instruments closely associated with criminal activity and whose sole design and purpose is to inflict bodily injury or death upon another human being. We believe that there is sufficient justification to prohibit the manufacture, sale or transfer of such weapons to anyone." *Id*. (emphasis in original). This also overstates the position that the knives are used in crimes, other than perhaps carrying concealed (which they state is already illegal). As such, the "evidence"

from the legislative history proves nothing except how common and popular the butterfly knife is.[14]

But assuming arguendo that butterfly knives are carried by gang members or minors, that does not mean that there is a reasonable fit between public safety and banning possession of butterfly knives for law abiding citizens even in the home.  If that was all that was needed, then *Heller* would have been decided the other way. "Handguns also appear to be a very popular weapon among criminals." *District of Columbia v. Heller*, 554 U.S. 570, 698 (Breyer Dissenting). However, the *Heller* majority rejected the dissents position that because criminals may misuse handguns that this was a sufficient rationale to ban handguns under any level of heightened scrutiny.  Even if the State's evidence about possession by criminals is true, the

---

[14] In *Maloney v. Singas*, 351 F. Supp. 3d 222, 230 (E.D.N.Y. 2018), which held that nunchuks could not be banned in New York, the court received testimony that "[b]etween December 14, 2014 and January 11, 2017, there were five prosecutions in Nassau County involving nunchaku: two cases of assault and three cases of possession."  In the instant appeal, Lt. Nagamine testified that from 2012 until his deposition (October 28, 2019), there were approximately 27-30 arrests for possession of a butterfly knife.  ER104.  Lt. Nagamine did not know if the arrests had gone to trial and did not offer any evidence of what crime was committed with the knife.  In other words, it could have been mere possession.  Just like in *Maloney*, the Defendants here have "present[ed] no national data on the unlawful use of [butterfly knives]." *Id*. As such, they cannot establish that the typical use of a butterfly knife is an unlawful one.  *See Duncan,* 2020 U.S. App. LEXIS 25836 at 23 (quoting *Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015)) ("[I]t would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned. A law's existence can't be the source of its own constitutional validity.")

statute is very nearly the definition of a law that burdens "substantially more" constitutionally protected conduct than "necessary to further [its important] interest." *Turner Broad.*, 520 U.S. at 214. The State could theoretically ban possession of butterfly knives by people with a criminal record or by minors. But instead, it bans possession by all citizens including law abiding citizens such as the Plaintiffs in this case.

In reality, there is no reasonable fit between the butterfly knife ban and public safety because there is no evidence butterfly knives are more dangerous than standard folding knives which continue to be legal to own and possess. The lower court claimed that "Plaintiffs have not otherwise provided evidence sufficient to overcome the deference this Court affords to the legislature. It is, after all, up to the legislature and not this Court to 'weigh conflicting evidence and make policy judgments.'" (citations omitted). *See* ER043.

But there is no conflicting evidence. The State does not dispute that butterfly knives are no more dangerous than standard folding knives and they are less dangerous than handguns, which per *Heller*, cannot be banned. The State does not dispute and in fact has submitted its own evidence that demonstrates butterfly knives' typical use is for lawful purposes. The State's and lower court's rationale is even less strong than the one rejected by the *Heller* majority. In *Heller*, the Court was confronted with a ban on handguns which was "tailored to the urban crime

problem in that it is local in scope and thus affects only a geographic area both limited in size and entirely urban; the law concerns handguns, which are specially linked to urban gun deaths and injuries, and which are the overwhelmingly favorite weapon of armed criminals". *District of Columbia v. Heller*, 554 U.S. 570, 681-682, 128 S. Ct. (Breyer Dissenting). The Supreme Court rejected both the District of Colombia's arguments and the dissent's arguments and held that "a complete prohibition of [handgun] use is invalid". *District of Columbia v. Heller*, 554 U.S. 570, 629.

Like the State's argument here, the petitioners in *Heller* argued that it was permissible to ban handguns because citizens could own long arms in the District. The Court found "[i]t is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (*i.e.*, long guns) is allowed. It is enough to note, as we have observed, that the American people have considered the handgun to be the quintessential self-defense weapon. There are many reasons that a citizen may prefer a handgun for home defense." *Id.*

Likewise, it is not permissible to ban butterfly knives simply because other folding knives are legal. There are many reasons that person may prefer butterfly knives over other folding knives. "From a moral standpoint, the Balisong is a unique self-defense knife because it can be use closed as well as open. It has an ethical use of force continuum built-in. When the defender fights back against criminal

aggression with a Balisong, he or she doesn't have to immediately go to deadly force. A closed Balisong can be used as a 'pocket stick', providing less lethal blunt force. Skillful striking with the Balisong while it is still closed can possibly repel an attacker without having to resort to cutting". *See* ER089. And "[t]he Balisong provides the holder with the ability to use an even lower level of force to dissuade an inevitable attack. They can manipulate the Balisong to intimidate the attacker." *See* ER090. "A Balisong practitioner can take out the knife and go through a quick series of flipping maneuvers to turn the tables and intimidate the attacker and convince them to go away. Due to the unique design of the Balisong, a potential injurious situation can be resolved without contact of any kind." Butterfly knives are also safer for the user. "Instead of having a folding knife which needs two hands to open or a fixed blade that needs a sheath, the sheath and handle are one. The handles encase and protect the blade and the user from accidents while allowing the knife to be opened with one hand." *See* ER 130. Butterfly knives are safer to use for the owner and offer several non-deadly options to use to stop an attacker.

The State has not shown that its ban is "not narrowly tailored to achieve the compelling state interests it purports to serve" and "… the means chosen by the state are not substantially related to serving those interests." *Duncan*, 2020 U.S. App. LEXIS 25836 at 65. "As the Supreme Court succinctly noted in a commercial speech case, narrow tailoring requires 'a fit between the legislature's ends and the means

43

chosen to accomplish those ends.'" *Minority Television Project, Inc. v. F.C.C.*, 736 F.3d 1192, 1204 (9th Cir. 2013) (quoting *Bd. of Tr. of the State Univ. of New York v. Fox*, 492 U.S. 469, 480, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989))." *Duncan v. Becerra*, 366 F. Supp. 3d 1131, 1170 (S.D. Cal. 2019).

Rather, the State attempts to demonstrate tailoring by showing that it only bans a certain set of knives. "As is true in many Second Amendment inquiries, our starting point is *Heller*. There, the Court unequivocally rebuffed the argument 'that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed.'" *Worman v. Healey*, 922 F.3d 26, 36 (1st Cir. 2019) (citation omitted). Here, the State bans butterfly knives in the home when *Heller* requires it to allow handgun possession. It does so because it claims that butterfly knives are easier to conceal. Even if that could justify a ban outside the home, what possible rationale could that be to ban constitutionally protected arms inside the home based on their concealability? And accepting the State's position, it could ban every single pocketknife and still survive constitutional muster. That is a nonsensical position when *Heller* precludes a prohibition on handguns. Especially when a host of other knives are legal, deadlier and commonly possessed in most people's kitchens. For example, a butcher knife attack has a 13.3% mortality rate compared to a switchblade (which the State appears to argue is roughly as deadly as a butterfly knife) attack which has 5.9 % mortality rate. *See* Harwell Wilson & Roger

Sherman, Civilian Penetrating Wounds to the Abdomen, 153 ANNALS OF SURGERY 639, 640 (1961) at *4. The State has not demonstrated a valid government public safety interest in banning them and even if there was one a complete ban is not a reasonable fit to fulfill that interest.

### D. The Law is Underinclusive

Underinclusivity is a doctrine that can be used to determine whether a law is properly tailored. In constitutional law, underinclusivity follows necessarily from the evaluation of a fit between means and ends. S*ee Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (2001); *Fla. Bar v. Went For It, Inc*., 515 U.S. 618, 632 (1995); *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989). The assessment of fit looks to the relation between the class that comes within the scope of the regulation's stated objective, and the class actually affected by the regulation. *See, e.g.,* Jospeh Tussman and Jacobus tenBroek, *The Equal Protection of the Laws*, 37 Cal. L. Rev. 341 (1949). Under this standard, what matters is not whether a regulation is specifically overinclusive, but rather by how much it is either over- or underinclusive. *See, e.g., City of Cincinnati v. Discovery Network*, *Inc*., 507 U.S. 410, 428 (1993) (holding a city ordinance intended to advance safety and aesthetic interests unconstitutional because it unjustifiably affected only a small fraction of operating news racks, thus constituting an unreasonable fit between ends and means). *See also Parents for Privacy v. Barr*, 949 F.3d 1210, 1236 (9th Cir. 2020)

("Underinclusiveness is determined with respect to the burdens on religious and non-religious conduct and the interests sought to be advanced by the policy"). In this Circuit, when applying intermediate scrutiny, if the exceptions to the law are "so pervasive or without basis as to make the fit unreasonable" it is unconstitutionally underinclusive. *Pena v. Lindley*, 898 F.3d 969, 981 (9th Cir. 2018).

Here, State law is underinclusive because it does not ban many other knives and other arms that are equally or more dangerous. Notably, the state does not ban handguns. "Handguns also appear to be a very popular weapon among criminals." *District of Columbia v. Heller*, 554 U.S. 570, 698 (Breyer, J. dissenting). It also does not ban other knives that can be opened quicker to use in a "surprise attack". ER043. "Most folders today have a clip on the side of the handle so that the knife can be clipped inside a pocket or waistband. This makes it much more accessible than carrying it inside a pocket, as is necessary with a Balisong. The design makes opening with one hand very easy. The wave feature is a notch added to the back spine of a folding knife that catches on the pant pocket or waistband when drawing. As the handle comes out, the wave feature makes the blade rotate out. The result is that the knife opens as the draw is made. You don't need to draw and then open the latch and then make the manipulation to open the knife as you do with a Balisong. You draw and it is open. It is extremely fast." *See* ER091. For these reasons Hawaii's

46

butterfly knife ban is underinclusive and fails intermediate scrutiny for this reason as well.

## CONCLUSION

This Court should find that Hawaii's ban on the possession of butterfly knives is unconstitutional.

Respectfully submitted,

*s/ Alan Alexander Beck*
ALAN ALEXANDER BECK (HI Bar No. 9145)
Attorney at Law
2692 Harcourt Drive
San Diego, California 92123
Telephone: (619) 905-9105
Email: alan.alexander.beck@gmail.com

*s/ Stephen D. Stamboulieh*
STEPHEN D. STAMBOULIEH
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS 39130
Telephone: (601) 852-3440
Email: stephen@sdslaw.us

## **STATEMENT OF RELATED CASES**

To the best of our knowledge, there are no related cases.

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(f) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 11,932 words and complies with the word limit of Cir. R. 32-1.

2.       This brief complies with the typeface and type size requirements of Fed. R. App. P.32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

Dated: August 21, 2020.

*/s/ Alan Alexander Beck*
Alan Alexander Beck

49

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2020, I filed the foregoing Appellants' Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


*/s/ Alan Alexander Beck*
Alan Alexander Beck