No. 20-15948

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ANDREW TETER and JAMES GRELL,

*Plaintiffs-Appellants,*

v.

CLARE E. CONNORS, in her Official Capacity as the Attorney
General of the State of Hawaiʻi and AL CUMMINGS, in his
Official Capacity as the State Sheriff Division Administrator,

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Hawaiʻi
Honorable Alan C. Kay, Senior United States District Judge
(Civil No. 19-cv-00183-ACK-WRP)

## ANSWERING BRIEF OF DEFENDANTS-APPELLEES
## CLARE E. CONNORS AND AL CUMMINGS

CLARE E. CONNORS
Attorney General of Hawaiʻi

ROBERT T. NAKATSUJI
First Deputy Solicitor General
Department of the Attorney General
State of Hawaiʻi
425 Queen Street
Honolulu, Hawaiʻi 96813
Telephone: (808) 586-1360
Fax: (808) 586-8116
E-mail: Robert.T.Nakatsuji@hawaii.gov

Attorneys for Defendants-Appellees
CLARE E. CONNORS and AL CUMMINGS

# **TABLE OF CONTENTS**

I.    STATEMENT OF JURISDICTION ................................................1

II.   STATEMENT OF AUTHORITIES...............................................1

III.  COUNTER-STATEMENT OF THE CASE .................................1

IV.  SUMMARY OF THE ARGUMENT ...........................................5

V.   STANDARD OF REVIEW .........................................................8

VI.  ARGUMENT................................................................................9

     A.    Ninth Circuit Law on the Second Amendment ...................9

     B.    Haw. Rev. Stat. § 134-53 Qualifies Under the Dangerous and
          Unusual Weapons Exception and the Second Amendment
          Does Not Protect Butterfly Knives .....................................12

          1.    Butterfly Knives Have Uniquely Dangerous
                 Propensities ................................................................13

          2.    Butterfly Knives Are Not Commonly Possessed by
                 Law-Abiding Citizens for Lawful Purposes ............15

     C.    Intermediate Scrutiny Applies to Haw. Rev. Stat. § 134-53
          and the Second Amendment is Not Violated ......................20

          1.    Intermediate Scrutiny Should be Applied to Haw. Rev.
                 Stat. § 134-53 ............................................................20

          2.    Haw. Rev. Stat. § 134-53 Satisfies Intermediate
                 Scrutiny ......................................................................31

     D.    Plaintiffs' Other Arguments are Without Merit..................35

          1.    Plaintiffs' Statistical Argument is Meritless............35

          2.    Plaintiffs' Arguments Regarding Ordinary Pocket
                 Knives and Other Knives are Meritless ...................38

          3.    The Cases Cited by Plaintiffs are Distinguishable and
                 Should Not be Relied Upon .......................................43

VII. CONCLUSION..............................................................................................44

## TABLE OF AUTHORITIES

**Cases**

*Association of New Jersey Rifle and Pistol Clubs, Inc. v.
    Attorney General of New Jersey,*
    910 F.3d 106 (3d Cir. 2018) ............................................................ 22, 25, 26, 27

*Carson v. State,*
    247 S.E.2d 68 (Ga. 1978) ............................................................ 13, 37

*Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.,*
    159 F.3d 412 (9th Cir. 1998) ...................................................... 8, 13, 35

*Crowley Cutlery Co. v. United States,*
    849 F.2d 273 (7th Cir. 1988) .................................................. 14, 37, 43

*Devereaux v. Abbey,*
    263 F.3d 1070 (9th Cir. 2001) (en banc) ............................................. 8

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) ...................................................................... passim

*Duncan v. Becerra,*
    970 F.3d 1133 (9th Cir. 2020) ...................................................... 29, 30

*Fyock v. Sunnyvale,*
    779 F.3d 991 (9th Cir. 2015) ...................................................... 13, 32

*Heller v. District of Columbia,*
    670 F.3d 1244 (D.C. Cir. 2011) .................................................... passim

*In re John Doe, born August 3, 1977,*
    73 Haw. 89, 828 P.2d 272 (1992) ............................................ 14, 18, 39

*Jackson v. City & County of San Francisco,*
    746 F.3d 953 (9th Cir. 2014) ........................................................ passim

*Kolbe v. Hogan,*
    849 F.3d 114 (4th Cir. 2017) ........................................................ passim

*Lacy v. State,*
    903 N.E.2d 486 (Ind. Ct. App. 2009) .................................... 19, 34, 44

iii

*Maloney v. Singas*,
  351 F. Supp. 3d 222 (S.D.N.Y. 2018) ...................................................44

*New York State Rifle and Pistol Ass'n, Inc. v. Cuomo*,
  804 F.3d 242 (2d Cir. 2015) ........................................................ passim

*Pena v. Lindley*,
  898 F.3d 969 (9th Cir. 2018) ....................................................... passim

*People ex rel. Mautner v. Quattrone*,
  260 Cal. Rptr. 44 (Cal. Ct. App. 1989)................................................20

*Petefish v. Richland Correctional Institution*,
  No. 4:13CV1295, 2015 WL 751027 (N.D. Ohio Feb. 23, 2015)........................40

*Precise Imports v. Kelly*,
  378 F.2d 1014 (2d Cir. 1967) ...............................................................44

*Schall v. Martin*,
  467 U.S. 253 (1984).............................................................................35

*Silvester v. Harris*,
  843 F.3d 816 (9th Cir. 2016) ...................................................... 11, 21

*State v. Cattledge*,
  No. 10AP-105, 2010 WL 3972574 (Ohio Ct. App. Oct. 12, 2010) ............. 39, 40

*State v. DeCiccio*,
  105 A.3d 165 (Conn. 2014) ...................................................................44

*State v. Delgado*,
  692 P.2d 610 (Or. 1984) ............................................................... 43, 44

*State v. Giltner*,
  56 Haw. 374, 537 P.2d 14 (1975).........................................................40

*State v. Hermann*,
  873 N.W.2d 257 (Wis. Ct. App. 2015)........................................... 43, 44

*State v. LaChapelle*,
  451 N.W.2d 689 (Neb. 1990) ...............................................................14

iv

*State v. Montalvo*,
162 A.3d 270 (N.J. 2017) ......................................................................44

*State v. Muliufi*,
64 Haw. 485, 643 P.2d 546 (1982) ........................................................17

*State v. Murillo*,
347 P.3d 284 (N.M. Ct. App. 2015) ............................................... passim

*State v. Petefish*,
No. 10 MA 78, 2011 WL 6163971 (Ohio Ct. App. Dec. 7, 2011).....................40

*State v. Rackle*,
55 Haw. 531, 523 P.2d 299 (1974) ............................................... 40, 42

*State v. Riddall*,
811 P.2d 576 (N.M. Ct. App. 1991) .....................................................20

*Taylor v. United States*,
848 F.2d 715 (6th Cir. 1988) ....................................................... 20, 44

*Teter v. Connors*,
Civ. No. 19-00183-ACK-WRP, 2020 WL 2476225 (D. Haw. May 13, 2020)......3

*Turner Broad. Sys., Inc. v. FCC*,
520 U.S. 180 (1997)...............................................................................32

*United States v. Chovan*,
735 F.3d 1127 (9th Cir. 2013) ...................................................... passim

*United States v. Decastro*,
682 F.3d 160 (2012).................................................................................11

*United States v. Henry*,
688 F.3d 637 (9th Cir. 2012) .................................................................13

*United States v. Marzzarella*,
614 F.3d 85 (3d Cir. 2010) .....................................................................11

*United States v. Nelsen*,
859 F.2d 1318 (8th Cir. 1988) ...............................................................43

v

*United States v. One (1) Palmetto State Armory PA-15 Machinegun
   Receiver/Frame, Unknown Caliber Serial No.: LW001804,*
   822 F.3d 136 (3d Cir. 2016) .......................................................................... 26, 29

*Worman v. Healey*,
   922 F.3d 26 (1st Cir. 2019).......................................................................... passim

## Statutes

15 U.S.C. §§ 1241-1242 ...........................................................................................43

15 U.S.C. §§ 1241-1245 ...........................................................................................19

Haw. Rev. Stat. § 134-52 ................................................................................. 2, 18, 44

Haw. Rev. Stat. § 134-53 .................................................................................. passim

## Constitutional Provisions

U.S. Const. amend II......................................................................................... passim

## Legislative History

1999 Haw. Sess. Laws Act 285, § 1 .......................................................................18

Conf. Comm. Rep. No. 88 ............................................................................... 18, 44

H. Stand. Comm. Rep. No. 731 ..............................................................................33

S. Rep. 85-1980, 85th Cong. 2d. Sess. (1958), 1958 U.S.C.C.A.N. 3435 ..............19

S. Stand. Comm. Rep. No. 1389, in 1999 Senate Journal .............................. passim

## Other Authorities

*Black's Law Dictionary* (9th ed. 2009)....................................................................13

Federal Bureau of Investigation, *Crime in the United States (2018)*,
   https://ucr.fbi.gov/crime-in-the-u.s/2018/crime-in-the-u.s.-2018/
   tables/expanded-homicide-data-table-8.xls .........................................................36

International Olympic Committee, *Tokyo 2020*,
   https://www.olympic.org/tokyo-2020...................................................................16

*Obscure*, Macmillan Dictionary (2020),
    https://www.macmillandictionary.com /us/dictionary/
    american/obscure_1 ................................................................................16

*Obscure*, Merriam-Webster Dictionary (2020),
    https://www.merriam-webster.com/dictionary/obscure ......................................16

Wikipedia, *Wushu (sport)*,
    https://en.wikipedia.org/wiki/ Wushu_(sport) ....................................................17

## ANSWERING BRIEF OF DEFENDANTS-APPELLEES
## CLARE E. CONNORS AND AL CUMMINGS

Hawai'i Revised Statutes ("Haw. Rev. Stat.") § 134-53 does not violate the Second Amendment to the U.S. Constitution. The statute represents a reasonable measure enacted by the Hawai'i Legislature to protect public safety and address the increased popularity of butterfly knives among criminal gang members. This lawsuit, by Plaintiffs-Appellants ANDREW TETER and JAMES GRELL (collectively "Plaintiffs"), is an extreme and irresponsible attack on an important statute, and it is unsupported by well-established Second Amendment principles.

## I.    STATEMENT OF JURISDICTION

Defendants-Appellees CLARE E. CONNORS and AL CUMMINGS (collectively "Defendants") do not disagree with Plaintiffs' Statement of Jurisdiction.

## II.    STATEMENT OF AUTHORITIES

Defendants set forth the pertinent constitutional provisions, statutes, and rules in an Addendum attached below.

## III.    COUNTER-STATEMENT OF THE CASE

On April 10, 2019, Plaintiffs filed a Complaint in the U.S. District Court for the District of Hawai'i challenging the constitutionality of Haw. Rev. Stat. § 134-53. Complaint, ER001-ER113. Haw. Rev. Stat. § 134-53 (2011) provides in relevant part:

1

(a) Whoever knowingly manufactures, sells, transfers, possesses, or transports in the State any butterfly knife, being a knife having a blade encased in a split handle that manually unfolds with hand or wrist action with the assistance of inertia, gravity or both, shall be guilty of a misdemeanor.

Plaintiffs alleged that they wanted to purchase or own butterfly knives in Hawaiʻi but were prevented from doing so by state law. Complaint, ER156-ER157. Plaintiffs asserted claims under 42 U.S.C. § 1983 and the Declaratory Judgments Act, and they requested declaratory and injunctive relief. Complaint, ER158-ER160.[1]

Plaintiffs filed their Motion for Summary Judgment and a Concise Statement of Facts on January 14, 2020, and Defendants filed their own Motion for Summary Judgment and a Concise Statement of Facts on January 15, 2020. ECF 33, 34, 36, 37. Plaintiffs filed their Response to the Defendants' Motion and their Response to Defendants' Concise Statement on March 30, 2020, and Defendants filed their Memorandum in Opposition to Plaintiffs' Motion and their Opposition to

---

[1] In layman's terms, a butterfly knife has a blade that is enclosed in a split handle. To deploy the blade, the user flips the handle open, exposing the blade, turns the handle around, and grips it again. In contrast, a switchblade also encloses the blade in the handle, but the blade is usually deployed using a spring mechanism (or sometimes inertia or gravity) rather than a flipping motion. *Compare* Haw. Rev. Stat. § 134-53 *with* Haw. Rev. Stat. § 134-52 (2011). In an ordinary pocket knife, the blade may be enclosed in the handle, but the user generally needs to open the blade with two hands. *See* discussion in Part VI.D.2 below. For other regular knives, like kitchen or chef's knives, the blade does not fold into the handle at all and is always exposed. *See* discussion in Part VI.C.1 below.

Plaintiffs' Concise Statement on April 7, 2020.  ECF 50, 51, 52, 53.  Plaintiffs filed their Reply on April 14, 2020 and Defendants filed their Reply the same day.  ECF 57, 58.

A hearing on the Motions was held on April 28, 2020.  Transcript, ER047-ER079.

On May 13, 2020, the District Court issued its Order Denying Plaintiffs' Motion for Summary Judgment and Granting the State's Motion for Summary Judgment.  May 13, 2020 Order, ER004-ER045.  *See also Teter v. Connors*, Civ. No. 19-00183-ACK-WRP, 2020 WL 2476225 (D. Haw. May 13, 2020) ("*Teter I*"). In an extensive and well-reasoned decision, the District Court upheld Haw. Rev. Stat. § 134-53.  May 13, 2020 Order, ER004-ER045.  The court reviewed the Supreme Court's seminal decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008) ("*Heller I*"), and the subsequent case law.  May 13, 2020 Order, ER016-ER022.  The court declined to address the "dangerous and unusual weapons exception" and assumed without deciding that butterfly knives are within the scope of the Second Amendment.  *Id.*, ER022-ER026.

Moving on to the second step of the Ninth Circuit's two-step analysis, the court held that intermediate scrutiny is the appropriate standard.  *Id.*, ER026-ER039.  The court rejected the "categorical approach" requested by Plaintiffs, noting that *Heller I* differed from the present case in that the statute in *Heller I* was

3

a ban on an entire class of arms and the statute banned handguns, which are the "quintessential self-defense weapon." *Id.*, ER026-ER33.  With respect to the "core" of the Second Amendment, the court held that although Haw. Rev. Stat. § 134-53 does extend into the home, it does not implicate the "core" right to the same extent as the handgun ban in *Heller I.*  May 13, 2020 Order, ER035.  The court also found that the statute does not severely burden the core Second Amendment right.  *Id.*, ER035-ER039.  The court found that it bans only a small subset of knives, does not prohibit an entire class of arms, and does not implicate the special consideration given to handguns.  *Id.*  The court found that Plaintiffs have many alternative channels for self-defense and the statute does not effectively disarm individuals or substantially affect their ability to defend themselves.  *Id.*  The court then applied intermediate scrutiny and found that the important government interest was to protect public safety by reducing access to butterfly knives by criminal gang members.  *Id.*, ER039.  The court found that the statute was a "reasonable fit" with that interest based on an independent examination of the record, which contained reliable evidence from the testimony and reports in the legislative history.  *Id.*, ER040-ER042.  The court also noted that the State had tailored the legislation to specifically address butterfly knives.  *Id.*, ER042-ER043.  Based on all these reasons, the District Court denied Plaintiffs' Motion for Summary Judgment and granted Defendant's Motion.  *Id.*, ER045.

4

A Judgment in favor of Defendants was entered on May 13, 2020. Judgment, ER046. Plaintiffs filed their Notice of Appeal the same day. Notice of Appeal, ER001-ER003.

## IV.  SUMMARY OF THE ARGUMENT

Haw. Rev. Stat. § 134-53 does not violate the Second Amendment and Plaintiffs' arguments are without merit.

Should this Court choose to consider it, butterfly knives satisfy the dangerous and unusual weapons exception to the Second Amendment. Butterfly knives are "dangerous" and possess several qualities that make them "uniquely dangerous" in comparison to regular knives – specifically, their concealability, their quick deployment, their ability to be deployed with one hand, and the intimidating manner in which they can be deployed. Butterfly knives are not "commonly possessed by law-abiding citizens for lawful purposes" because they are a "relatively obscure" weapon that, at most, is used in a single, "relatively obscure" martial art. Rather than being associated with law-abiding, responsible citizens, butterfly knives are associated more with criminal gang members. Because butterfly knives were becoming increasingly popular with minors and gang members, the Hawaiʻi Legislature decided to treat them in the same way as switchblades, which were also popular with criminals. Therefore, butterfly knives should not be protected by the Second Amendment.

5

In the alternative, if this Court chooses to move on to the second step of the Ninth Circuit's two-step analysis, intermediate scrutiny should be applied. Haw. Rev. Stat. § 134-53 barely implicates but does not come "close" to the core of the Second Amendment. Even if in theory one could use butterfly knives for self-defense in the home, they are ill-suited for that task. Concealability does not help within the home, they are slower to deploy than a knife with an already exposed blade, other knives are easier to locate in the home, most people already have other knives, and they must be used close to the target rather than at a distance, like handguns. There is also no evidence that people actually use butterfly knives for self-defense within the home. They are associated more with criminal gang members than the law-abiding, responsible citizens that the core of the Second Amendment protects. And contrary to the clear emphasis in *Heller I*, a ban on butterfly knives does not affect handguns, which are the "quintessential self-defense weapon."

Haw. Rev. Stat. § 134-53 also does not impose a substantial burden on the Second Amendment right. It leaves open abundant "alternative channels for self-defense." Plaintiffs are free to defend themselves using any of a number of alternatives, including handguns, other knives, or any other instruments not otherwise prohibited. It bans only a small subset of a much larger class of arms (knives), or possibly even a subset of a subset (folding knives) of a class of arms

(knives). It does not ban an entire class of arms, like a ban on all knives would, or even ban all folding knives. It does not affect handguns (*Heller I*'s "quintessential self-defense weapon") in any way. A ban on butterfly knives does not effectively disarm individuals or substantially affect their ability to defend themselves.

For these reasons, both parts of the sliding scale are not satisfied and intermediate scrutiny should be applied. Even assuming for the sake of argument that the bare implication of the core of the Second Amendment is enough, the substantial burden prong of the test clearly has not been satisfied. Unless both prongs of the test are satisfied, intermediate scrutiny should be applied. Plaintiffs' assertions that a "categorical approach" or strict scrutiny should be applied are both meritless.

Haw. Rev. Stat. § 134-53 satisfies intermediate scrutiny. The important government interest is to protect public safety by reducing access to butterfly knives by criminal gang members. That government interest was supported by abundant testimony in the legislative history that butterfly knives were associated with gang activity and were increasingly popular among minors and gang members. There was a need to give butterfly knives particular attention, even beyond other deadly and dangerous weapons. Haw. Rev. Stat. § 134-53 represents a reasonable fit with that government interest because reducing access to butterfly knives would be less effectively achieved absent the statute. Moreover, the statute

is tailored to the government interest because it bans only butterfly knives, as specifically defined, rather than all knives.

Furthermore, Plaintiffs' statistical argument is irrelevant because comparing the number of people killed by firearms with the number of people killed by knives has nothing to do with the dangerousness of butterfly knives. And contrary to Plaintiffs' claims, butterfly knives are distinguishable from ordinary pocket knives. It is also up to the Legislature whether to ban other knives, and bans on other knives are not before this Court. Other cases cited by Plaintiffs should not be followed or are distinguishable from this case.

For all of these reasons, Haw. Rev. Stat. § 134-53 is constitutional.

## V.    STANDARD OF REVIEW

A court reviews de novo the constitutionality of a statute. *See United States v. Chovan*, 735 F.3d 1127, 1131 (9th Cir. 2013). An appellate court also reviews a district court's grant of summary judgment de novo. *See Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc).

In reviewing decisions of a District Court, a Court of Appeals may affirm on any ground finding support in the record. *See Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 418 (9th Cir. 1998). If the decision below is correct, it must be affirmed, even if the District Court relied on other reasoning. *See id.*

## VI.   ARGUMENT

**A.    Ninth Circuit Law on the Second Amendment.**

Following the Supreme Court's seminal decision in *Heller I*, most Courts of Appeals, including the Ninth Circuit, have adopted a two-step analysis for Second Amendment cases.  *See Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014).  "The two-step inquiry . . . '(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny.'"  *Id.*

In the first step, the question is "'whether the challenged law burdens conduct protected by the Second Amendment,' based on a 'historical understanding of the scope of the Second Amendment right,' or whether the challenged law falls within a 'well-defined and narrowly limited' category of prohibitions 'that have been historically unprotected.'"  *Id.*  (citations and brackets omitted).  *Heller I* defined the "bearable arms" historically protected by the Second Amendment as "[w]eapons of offence, or armour of defence" and "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another."  *Heller I*, 554 U.S. at 581.  It includes "weapons that were not specifically designed for military use and were not employed in a military capacity."  *Id.*

9

In *Heller I*, the Supreme Court also set forth non-exhaustive categories of

"presumptively lawful regulatory measures" that are not protected by the Second

Amendment:

> Although we do not undertake an exhaustive historical analysis today
> of the full scope of the Second Amendment, nothing in our opinion
> should be taken to cast doubt on longstanding prohibitions on the
> possession of firearms by felons and the mentally ill, or laws
> forbidding the carrying of firearms in sensitive places such as schools
> and government buildings, or laws imposing conditions and
> qualifications on the commercial sale of arms.

*Id.* at 626–27 & n.26. The Court also recognized "the historical tradition of

prohibiting the carrying of 'dangerous and unusual weapons[,]'" noting that "the

sorts of weapons protected [are] those 'in common use at the time.'" *Id.* at 627.

Specifically, the Court held that "the Second Amendment does not protect those

weapons not typically possessed by law-abiding citizens for lawful purposes, such

as short-barreled shotguns." *Id.* at 625.

"If a prohibition falls within the historical scope of the Second Amendment,

[the court] must then proceed to the second step of the Second Amendment inquiry

to determine the appropriate level of scrutiny." *Jackson*, 746 F.3d at 960. When

ascertaining the appropriate level of scrutiny, the court considers: "(1) how close

the law comes to the core of the Second Amendment right and (2) the severity of

the law's burden on the right." *Id.* at 960-61 (internal quotation marks omitted).

"A law that implicates the core of the Second Amendment right and severely

burdens that right warrants strict scrutiny. Otherwise, intermediate scrutiny is appropriate. '[I]f a challenged law does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right,' the court may apply intermediate scrutiny." *Silvester v. Harris*, 843 F.3d 816, 822 (9th Cir. 2016) (citations omitted).

"[T]he core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Chovan*, 735 F.3d at 1138. And in determining whether a burden is substantial, the Ninth Circuit has held that "laws which regulate only the '*manner* in which persons may exercise their Second Amendment rights' are less burdensome than those which bar firearm possession completely." *Jackson*, 746 F.3d at 961 (emphasis in original). Furthermore, "firearm regulations which leave open alternative channels for self-defense are less likely to place a severe burden on the Second Amendment right than those which do not." *Id.* (citing *United States v. Marzzarella*, 614 F.3d 85, 97 (3d Cir. 2010)). *See also United States v. Decastro*, 682 F.3d 160, 168 (2012) ("[A] law that regulates the availability of firearms is not a substantial burden on the right to keep and bear arms if adequate alternatives remain for law-abiding citizens to acquire a firearm for self-defense.").

If a challenged law does not implicate a core Second Amendment right or does not place a substantial burden on the Second Amendment right, then

11

intermediate scrutiny may be applied. *Jackson*, 746 F.3d at 961. Intermediate scrutiny requires (1) a "significant, substantial, or important" government objective, and (2) a "reasonable fit" between the challenged law and the asserted objective. *Id.* at 965. "[I]ntermediate scrutiny does not require the least restrictive means of furthering a given end." *Id.* at 969. Even if there are "less burdensome means," a law can survive intermediate scrutiny. *Id.*

**B.  Haw. Rev. Stat. § 134-53 Qualifies Under the Dangerous and Unusual Weapons Exception and the Second Amendment Does Not Protect Butterfly Knives.**

Initially, it should be noted that whether butterfly knives constitute "bearable arms" is not disputed in this case. *Heller I* defined "arms" as including "[w]eapons of offence" and did not limit them to military weapons. *Heller I*, 554 U.S. at 581. Butterfly knives are clearly weapons. The real question for the first step in the two-step analysis is whether the "dangerous and unusual weapons" exception applies.

The District Court "decline[d] to decide one way or the other whether butterfly knives are 'dangerous and unusual weapons'" and instead "assume[d] without deciding that butterfly knives are protected 'arms' within the scope of the Second Amendment." May 13, 2020 Order, ER025-ER026. However, it is well-settled that in reviewing decisions of a District Court, a Court of Appeals may affirm on any ground finding support in the record. *See Cigna Prop. & Cas. Ins.*

12

*Co.,* 159 F.3d at 418. If the decision below is correct, it must be affirmed, even if the District Court relied on other reasoning. *See id.* Consequently, if this Court believes that butterfly knives qualify under the dangerous and unusual weapons exception, it may affirm on that basis notwithstanding the analytic approach taken by the District Court.

To determine whether a weapon falls within the dangerous and unusual weapons exception, the Ninth Circuit "consider[s] whether the weapon has uniquely dangerous propensities and whether the weapon is commonly possessed by law-abiding citizens for lawful purposes." *Fyock v. Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015) (citing *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012)).

## 1. Butterfly Knives Have Uniquely Dangerous Propensities.

Butterfly knives are clearly "dangerous" because people can be injured or killed by them. "An object is 'dangerous' when it is 'likely to cause serious bodily harm.'" *Henry*, 688 F.3d at 640 (quoting *Black's Law Dictionary* 451 (9th ed. 2009)). Moreover, butterfly knives have "uniquely dangerous" propensities. Because the blade can be folded into the handle, it can be safely concealed within pockets or clothing. Such concealability is a factor in why sawed-off shotguns and switchblades are dangerous as well. *See Carson v. State*, 247 S.E.2d 68, 73 (Ga. 1978) (sawed-off shotgun statute upheld because they are "of a size such as can

13

easily be concealed and which are adapted to and commonly used for criminal purposes"); *State v. LaChapelle*, 451 N.W.2d 689, 691 (Neb. 1990) (upholding ban on machine guns, short rifles, and short shotguns because they are "readily concealed" and used for "a criminal purpose"); *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 278 (7th Cir. 1988) ("Switchblade knives are more dangerous than regular knives because they are more readily concealable and hence more suitable for criminal use."). *See also Heller I*, 554 U.S. at 625 (recognizing that "short-barreled shotguns" are not protected by the Second Amendment).

Butterfly knives are also capable of quick deployment, similar to switchblades. *See State v. Murillo*, 347 P.3d 284, 289 (N.M. Ct. App. 2015) ("[T]he switchblade is designed for quick use in a knife fight" and poses a danger of "potentially-lethal surprise attacks[.]"). Although Plaintiffs claim that butterfly knives are deployed slower than other knives, it is a difference of a fraction of a second,[2] and the Hawai'i Supreme Court's conclusion that butterfly knives can be deployed in "just a few seconds" cannot seriously be disputed. *See In re John Doe, born August 3, 1977*, 73 Haw. 89, 92, 828 P.2d 272, 274 (1992). Butterfly knives are also capable of being deployed with one hand. *See id.* ("[W]e manipulated the

---

[2] In one of Plaintiffs' tests, it allegedly took an average of 1.35 seconds to deploy the butterfly knife but only an average of 0.95 seconds to deploy a pocket knife. Richardson Declaration, SER 66, ER135; Complaint, ER154. Even if we accept this as true for the sake of argument, it is a difference of 0.4 seconds.

14

knife and determined that the blade can be positioned for use with one hand[.]");
Wikipedia, *Butterfly knife*, SER 1; Blade Magazine, *History: The Disputed Origins
of the Butterfly Knife*, SER 10; Richardson Declaration, SER 61, ER130. Clearly,
using one hand is easier than having to use two. And the knife can be opened
using flips and flourishes intended to be intimidating. Richardson Declaration,
SER 62, ER131. Indeed, the legislative testimony supporting the bill that became
Haw. Rev. Stat. § 134-53 specifically mentioned that butterfly knives "are more
intimidating when brandished." Testimony of Captain George McKeague,
Honolulu Police Department, SER 37.

The combination of these factors – concealability, quick deployment,
deployment with one hand, and intimidation – make butterfly knives uniquely
dangerous in comparison to regular knives.

**2.      Butterfly Knives Are Not Commonly Possessed by Law-Abiding
          Citizens for Lawful Purposes.**

Butterfly knives are also not "commonly possessed." The District Court
found that butterfly knives are a "relatively obscure" weapon that cannot be
compared to handguns, which are the "quintessential" self-defense weapon. May
13, 2020 Order, ER032 ("The Court declines to treat the ban on butterfly knives—
***a relatively obscure weapon***—the same way the *Heller* Court viewed the ban on
handguns—the "quintessential" self-defense weapon." (emphasis added)). The
court used the word "obscure," which means something that is "relatively

unknown" or "not well known." *See Obscure*, Merriam-Webster Dictionary (2020), https://www.merriam-webster.com/dictionary/obscure ("relatively unknown"); *Obscure*, Macmillan Dictionary (2020), https://www.macmillandictionary.com /us/dictionary/american/obscure_1 ("not known about, or not well known"). But the fact that not many people know about a weapon is an indication of its popularity. If more people possessed the weapon, then necessarily more people would know about it. Even if there is no evidence in the record of the exact number of butterfly knives in existence, the fact that it is "relatively obscure" indicates that it is not "commonly possessed." It would ***not*** be "relatively obscure" if it ***was*** "commonly possessed."

Plaintiffs' primary argument that butterfly knives are popular comes from their alleged use in martial arts. Opening Brief ("O.B."), at 14, 16-17. However, the only evidence in the record regarding a martial art that uses butterfly knives is a martial art called "Escrima," which comes from the Philippines. Testimony of Ron England, SER 38. Escrima does not appear to be recognized by the Olympic Games. In the Tokyo Olympics (formerly scheduled for 2020, now scheduled for 2021), only Judo, Taekwondo, and Karate are recognized. *See* International Olympic Committee, *Tokyo 2020*, https://www.olympic.org/tokyo-2020 (click on "sports") (last visited 9/10/20). Wushu (aka, Kung Fu) was recognized as a demonstration sport when the International Olympic Committee allowed a Wushu

16

tournament to be scheduled in parallel with the 2008 Beijing Olympics. *See* Wikipedia, *Wushu (sport)*, https://en.wikipedia.org/wiki/ Wushu_(sport) (last visited 9/10/20). In contrast, there is no indication that Escrima shares the same degree of recognition and popularity as these martial arts. Therefore, butterfly knives appear to be a "relatively obscure" weapon that is used in a "relatively obscure" martial art.

Plaintiffs argue that because some cases have protected nunchucks or nunchaku sticks, all weapons used in martial arts should be protected. O.B. at 14. However, in *State v. Muliufi*, 64 Haw. 485, 489 & n.6, 643 P.2d 546, 549 & n.6 (1982), the Hawaiʻi Supreme Court concluded that "nunchaku sticks are widely used in the martial arts" and "approximately twelve different martial arts schools, both Japanese and Chinese, practice their disciplines with the aid of the nunchaku sticks." Consequently, nunchaku sticks are protected because they are indeed commonly possessed for lawful purposes. They are clearly not "relatively obscure," in contrast to butterfly knives.

Butterfly knives are also not generally possessed by "law-abiding citizens for lawful purposes." Abundant testimony in the legislative history of Haw. Rev. Stat. § 134-53 indicates that butterfly knives were "associated with gang activity." S. Stand. Comm. Rep. No. 1389, in 1999 Senate Journal, at 1558, SER 39, 59. Butterfly knives were being sold to very young minors at local flea markets and in

17

Waikiki and there was "sufficient justification to prohibit the manufacture, sale or transfer of such weapons to <u>anyone</u>, not just minors." Testimony of Honolulu Prosecuting Attorney, SER 24, 35. "[The HPD] Gang Detail ha[d] noticed an increasing trend in minors and gang members armed with knives and daggers" and "[b]utterfly knives [we]re preferred as they are easy to conceal and are more intimidating when brandished." Testimony of Captain George McKeague, Honolulu Police Department, SER 37. "Currently, these items are fairly easy for minors to obtain at swap meets and open-air markets." *Id.*

The Legislature felt that "particular attention need[ed] to be given to butterfly knives by setting them apart from other deadly or dangerous weapons" and "[i]n particular, the prohibitions against butterfly knives should be similar to that of switchblade knives." Conf. Comm. Rep. No. 88, SER 47. "[I]t is your Committee's intent to clarify that butterfly knives should be treated in the same manner as switchblade knives." S. Stand. Comm. Rep. No. 1389, in 1999 Senate Journal, at 1559, SER 40, 60.[3]

---

[3] Haw. Rev. Stat. § 134-53 was enacted partly because of the Hawai'i Supreme Court's prior decision in *In re John Doe, born August 3, 1977*. In *Doe*, the Hawai'i Supreme Court held that butterfly knives do not fall within the statutory definition of switchblades in Haw. Rev. Stat. § 134-52. *Doe*, 73 Haw. at 95, 828 P.2d at 275-76. As a result, the Hawai'i Legislature enacted a new and separate section, Haw. Rev. Stat. § 134-53, specifically prohibiting possession of butterfly knives. *See* 1999 Haw. Sess. Laws Act 285, § 1 at 905. This is why the

In *Lacy v. State*, 903 N.E.2d 486, 490 (Ind. Ct. App. 2009), the Indiana Court of Appeals upheld the constitutionality of Indiana's ban on switchblades. The *Lacy* court concluded that "we cannot say that switchblades are typically possessed by law-abiding citizens for self defense purposes." *Id.* at 492. The court cited the "Federal Anti-Switchblade Act" (aka the Federal Switchblade Act), which has long made importation of switchblades illegal under federal law. *Id.* (citing 15 U.S.C. §§ 1241-1245). The *Lacy* court also cited the legislative history of the federal act, which provided that the "problem of the use of switchblades and other quick opening knives for criminal purposes has become acute during recent years – particularly by juvenile delinquents in large urban areas," and that "police chiefs, almost without exception, indicate that these vicious weapons are on many occasions the instruments used by juveniles in the commission of robberies and assaults." *Id.* (quoting S. Rep. 85-1980, 85th Cong. 2d. Sess. (1958), 1958 U.S.C.C.A.N. 3435, 3436-3437). The court held: "[W]e conclude that switchblades are primarily used by criminals[.]" *Id.* at 492. Therefore, like switchblades, butterfly knives are "by design and use, almost exclusively the weapon of the thug and the delinquent." *See Murillo*, 347 P.3d at 289.[4]

---

Legislature stated in the legislative history of Haw. Rev. Stat. § 134-53 that they wanted butterfly knives to be treated like switchblades.

[4] The relationship between butterfly knives and switchblades is even closer in some jurisdictions. The Sixth Circuit interpreted the definition of switchblades in the

The Ninth Circuit previously recognized, in *Chovan*, that the core of the Second Amendment protects "the right of ***law-abiding, responsible citizens*** to use arms in defense of hearth and home." *Chovan*, 735 F.3d at 1138 (emphasis added). Therefore, persons convicted of domestic violence misdemeanors may be prohibited from owning firearms. *Id.* Similar concerns exist here. Butterfly knives are associated more with criminal gang members than with law-abiding, responsible citizens and ownership of them may be prohibited.

For all of these reasons, butterfly knives qualify as dangerous and unusual weapons that do not fall under the protection of the Second Amendment.

## C. Intermediate Scrutiny Applies to Haw. Rev. Stat. § 134-53 and the Second Amendment is Not Violated.

In the alternative, even if this Court chooses not to address the dangerous and unusual weapons exception and proceeds to the second step of the analysis, as the District Court did, this Court should find that intermediate scrutiny applies and the Second Amendment was not violated.

### 1. Intermediate Scrutiny Should be Applied to Haw. Rev. Stat. § 134-53.

---

federal Switchblade Knife Act as encompassing butterfly knives. *See Taylor v. United States*, 848 F.2d 715, 720, (6th Cir. 1988). California and New Mexico have also applied their laws regulating switchblades to butterfly knives. *See People ex rel. Mautner v. Quattrone*, 260 Cal. Rptr. 44, 45-48 (Cal. Ct. App. 1989); *State v. Riddall*, 811 P.2d 576, 577-80 (N.M. Ct. App. 1991).

When ascertaining the appropriate level of scrutiny, the first question is "how close the law comes to the core of the Second Amendment right[.]" *Jackson*, 746 F.3d at 960-61. This test is a sliding scale. *See Silvester*, 843 F.3d at 821. Therefore, it is not just a question of whether the core of the Second Amendment is implicated at all but "***how close***" the challenged law comes to the core of the Second Amendment. *See Jackson*, 746 F.3d at 960 (emphasis added). The core of the Second Amendment is self-defense within the home. *Chovan*, 735 F.3d at 1138.

Butterfly knives do not come "close" to the core right of self-defense within the home. It is true that, as the District Court recognized, butterfly knives could, in theory, be used to defend oneself in the home. But butterfly knives are not well suited for that task. Several federal Courts of Appeals have held that certain assault rifles, semi-automatic weapons, and Large Capacity Magazines ("LCMs") are not well-suited for self-defense within the home. *See Kolbe v. Hogan*, 849 F.3d 114, 138 (4th Cir. 2017) ("[T]here is scant evidence in the record before us that the FSA-banned assault weapons and large-capacity magazines are possessed, or even suitable, for self-protection."); *Heller v. District of Columbia*, 670 F.3d 1244, 1262 (D.C. Cir. 2011) ("*Heller II*") ("[T]he plaintiffs present hardly any evidence that semi-automatic rifles and magazines holding more than ten rounds are well-suited to or preferred for the purpose of self-defense or sport.");

21

*Association of New Jersey Rifle and Pistol Clubs, Inc. v. Attorney General of New Jersey*, 910 F.3d 106, 118 (3d Cir. 2018) ("The record here demonstrates that LCMs are not well-suited for self-defense."). The First Circuit likened the use of semi-automatic assault weapons and LCMs for self-defense within the home to "using a sledgehammer to crack open the shell of a peanut." *Worman v. Healey*, 922 F.3d 26, 37 (1st Cir. 2019).

Butterfly knives are similarly ill-suited to self-defense within the home. Applying an analogy like the First Circuit, using a butterfly knife for self-defense within the home is like entering a locked building by breaking through a window when you could easily enter through the front door with a key. It is inefficient, unnecessary, more associated with criminal behavior, and very unlikely that anyone would actually do it. A major feature of the butterfly knife is that it is concealable; however, concealability does not help within the home. Because you are at home and not in public, concealability does not matter. Because it takes time to deploy the blade, a kitchen or chef's knife, which already has the blade exposed, would actually be more efficient in this context. It is also easier to find a kitchen or chef's knife within the home. Such knives would almost always be found in the same place – the kitchen – thus making them more efficient to utilize. Most people already have a kitchen or chef's knife, while the same cannot be said for a butterfly knife. Furthermore, to use a knife, the owner must get close to the target, whereas

22

a handgun, *Heller I*'s "quintessential self-defense weapon," can be used at a distance. In short, keeping a butterfly knife for home self-defense does not make much sense. And, probably for that very reason, there is no evidence that people actually use butterfly knives for self-defense within the home. *See id.* ("Equally as important is what the record does not show: it offers no indication that the proscribed weapons [semiautomatic assault weapons and LCMs] have been commonly used for home self-defense purposes.").

In addition, as *Chovan* pointed out, the core of the Second Amendment is "the right of ***law-abiding, responsible citizens*** to use arms in defense of hearth and home." *Chovan*, 735 F.3d at 1138 (emphasis added). Butterfly knives, like switchblades, are associated more with criminals and gang members. Consequently, butterfly knives do not come "close" to the core of the Second Amendment, which is to protect law-abiding, responsible citizens rather than criminals and gang members. *See id.* (holding that the "core" of the Second Amendment does not protect domestic violence misdemeanants).

Furthermore, Haw. Rev. Stat. § 134-53 does not affect handguns, which *Heller I* deemed to be the "quintessential self-defense weapon." *See Heller I*, 554 U.S. at 629. *Heller I* emphasized that handguns are "overwhelmingly chosen by American society for that lawful purpose [i.e., self-defense]" and are "the most preferred firearm in the nation to 'keep' and use for protection of one's home and

23

family." *Id.* at 628. Therefore, while a law banning handguns would affect self-defense within the home by virtue of the fact that handguns are overwhelmingly favored for that particular use, the same cannot be said of a law banning butterfly knives.

In short, while butterfly knives might barely implicate the core of the Second Amendment on a theoretical level, they do not come "close" to the core of that right. *See New York State Rifle and Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 258 (2d Cir. 2015) (holding that the challenged laws implicate the Second Amendment but not to the same extent as in *Heller*).

The second question when ascertaining the appropriate level of scrutiny is whether the challenged law "place[s] a substantial burden on the Second Amendment right." *Jackson*, 746 F.3d at 961. Haw. Rev. Stat. § 134-53 does impose a ban on butterfly knives and does not merely regulate the manner in which they may be obtained. *See id*. However, the statute leaves open abundant "alternative channels for self-defense[.]" *Id.* Numerous courts have held that the availability of alternative channels means that the burden is not substantial. In *Kolbe*, the court held:

> The [challenged law] bans only certain military-style weapons and detachable magazines, leaving citizens free to protect themselves with a plethora of other firearms and ammunition. Those include magazines holding ten or fewer rounds, nonautomatic and some semiautomatic long guns, and—most importantly—handguns.

*Kolbe*, 849 F.3d at 138. *See also New York State Rifle and Pistol Ass'n, Inc*, 804

F.3d at 259 ("No 'substantial burden' exists . . . if adequate alternatives remain for

law abiding-citizens to acquire a firearm for self-defense."); *Pena v. Lindley*, 898

F.3d 969, 979 (9th Cir. 2018) (no substantial burden because purchasers have

alternatives available in the form of grandfathered firearms or private transactions);

*Heller II*, 670 F.3d at 1261-62 (no substantial burden because handguns and non-

automatic long guns are still permissible).

Counts have held that merely being unable to purchase a subset of weapons

does not substantially burden the Second Amendment. *See Pena*, 898 F.3d at 978

("[B]eing unable to purchase a subset of semi-automatic weapons, without more,

does not significantly burden the right to self-defense in the home."); *Worman*, 922

F.3d at 37 ("[T]he Act does not ban all semiautomatic weapons and magazines.

Instead, it proscribes only a set of specifically enumerated semiautomatic assault

weapons, magazines of a particular capacity, and semiautomatic assault weapons

that have certain combat-style features."); *Ass'n of New Jersey Rifle and Pistol

Clubs*, 910 F.3d at 117 (restricting "possession of only a subset of magazines that

are over a certain capacity"); *New York State Rifle and Pistol Ass'n, Inc*, 804 F.3d

at 260 ("[B]oth New York and Connecticut ban only a limited subset of

semiautomatic firearms, which contain one or more enumerated military-style

features.").

When the challenged law does not ban "an entire class of 'arms'," unlike the situation in *Heller I*, the burden is much less substantial. *See Ass'n of New Jersey Rifle and Pistol Clubs*, 910 F.3d at 118 ("[U]nlike the ban in *Heller*, the Act is not 'a prohibition of an entire class of 'arms'[.]"); *Kolbe*, 849 at 138 ("[T]he banned assault weapons cannot be fairly said to be a 'class' like that encompassing all firearms[.]"); *New York State Rifle and Pistol Ass'n, Inc*, 804 F.3d at 260 ("[T]he fact that the statutes at issue do not ban 'an entire class of 'arms'' makes the restrictions substantially less burdensome.").

Moreover, courts give special consideration to handguns. *See United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No.: LW001804*, 822 F.3d 136, 144 (3d Cir. 2016). Handguns are "not merely 'an entire class of 'arms'' but [are also] 'an entire class of arms ***that is overwhelmingly chosen by American society for [self-defense]***.'" *Kolbe*, 849 F.3d at 138 (emphasis in original). Where the challenged statute does not implicate handguns, *Heller I*'s "quintessential self-defense weapon," the burden on self-defense within the home will be less. *See Ass'n of New Jersey Rifle and Pistol Clubs*, 910 F.3d at 118 (noting that the challenged law was "unlike the ban in *Heller*[,]" which involved handguns). Ultimately, the question is whether the prohibition "effectively disarm[s] individuals or substantially affect[s] their ability

26

to defend themselves." *See id.*; *Heller II*, 670 F.3d at 1262; *Kolbe*, 849 F.3d at 139.

In the present case, Haw. Rev. Stat. § 134-53 only prohibits butterfly knives, which are specifically defined as "a knife having a blade encased in a split handle that manually unfolds with hand or wrist action with the assistance of inertia, gravity or both[.]" Plaintiffs are free to defend themselves using any of a number of alternatives, including handguns, other knives, or any other instruments not otherwise prohibited. The statute allows abundant self-defense alternatives to the use of butterfly knives. Butterfly knives are a small subset of a much larger class of "arms" (knives). Like switchblades, butterfly knives are "a mere subset of a type of arms (knives) that is itself peripheral to self-defense or home security." *Murillo*, 347 P.3d at 290. In fact, one could consider butterfly knives to be merely a subset of a subset (folding knives) of a class of arms (knives). Haw. Rev. Stat. § 134-53 does not ban an entire class of arms, such as the class consisting of all knives. It does not even ban all folding knives. It only bans knives specifically defined as "having a blade encased in a split handle that manually unfolds with hand or wrist action with the assistance of inertia, gravity or both[.]" It does not affect handguns (the "quintessential self-defense weapon") in any way. A ban on butterfly knives does not effectively disarm individuals or substantially affect their

ability to defend themselves. Therefore, Haw. Rev. Stat. § 134-53 does not impose a substantial burden on the Second Amendment.

Based on the above, the ban on butterfly knives barely implicates but does not come "close" to the core of the Second Amendment. It does not impose a substantial burden on the Second Amendment right. Therefore, both parts of the sliding scale are not satisfied and intermediate scrutiny should be applied. And even assuming for the sake of argument that the bare implication of the core of the Second Amendment is enough, the substantial burden prong of the test clearly has not been satisfied. Unless both prongs of the test are satisfied, intermediate scrutiny should be applied. *See Jackson*, 746 F.3d at 961.

Plaintiffs argue that a "categorical approach" based on *Heller I* should be applied. O.B. at 26-28. What they mean is that, in their view, any law that actually bans weapons rather than merely regulates the manner in which they are obtained should be categorically declared unconstitutional without applying any degree of scrutiny. This approach has been rejected by the vast majority of courts, including the Ninth Circuit, in favor of the two-step analysis set forth above. *See Chovan*, 735 F.3d at 1136-37 (adopting the two-step inquiry followed by a majority of the circuits). Court apply a categorical approach dispensing with tiers of scrutiny only when the challenged law imposes such a severe burden that it would fail "under any level of scrutiny." *See Jackson*, 746 F.3d at 961. Based on

the language in *Heller I*, this would be the case only if the statute imposes a complete ban on "an entire class of arms." *See Kolbe*, 849 F.3d at 138 (citing *Heller I*, 554 U.S. at 628). And courts further emphasize that *Heller I* gave special consideration to handguns, which are "overwhelmingly chosen by American society" as the "quintessential self-defense weapon." *See id.*; *One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame*, 822 F.3d at 144. Because Haw. Rev. Stat. § 134-53 does not completely ban "an entire class of arms" and does not affect handguns at all, the categorical approach does not apply.

Plaintiffs further argue that strict scrutiny should be applied. O.B. at 29-31. However, Plaintiffs ignore the fact that Haw. Rev. Stat. § 134-53 does not come close to the core of the Second Amendment and does not impose a substantial burden on the right of self-defense within the home. *See Jackson*, 746 F.3d at 960-61. Plaintiffs cite the recent decision in *Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020), regarding California's ban on Large Capacity Magazines ("LCMs") containing more than 10 rounds. However, their reliance on *Duncan* is misplaced.

*Duncan* is clearly distinguishable from this case.[5] Although the *Duncan* majority did apply strict scrutiny, they did so expressly and repeatedly because one-half of all the LCMs in the United States would be affected by California's

---

[5] It should also be noted that *Duncan* could still be reversed on en banc review or certiorari. As of the date this brief was filed, the California Attorney General had filed a petition for rehearing en banc.

ban. *Id.* at 1141, 1142, 1147, 1156 & n.15, 1157, 1159, 1161, 1169. Plaintiffs cannot seriously suggest that one-half of all the knives in the United States are butterfly knives. Butterfly knives are a "relatively obscure" weapon. *See* May 13, 2020 Order, ER032. Moreover, the California law banned all LCMs with more than 10 rounds, ***including those for handguns***. *Duncan*, 970 F.3d at 1141-42, 1152. However, Haw. Rev. Stat. § 134-53 does not apply to handguns at all. As mentioned above, *Heller I* gave special consideration to handguns as the "quintessential self-defense weapon." *Heller I*, 554 U.S. at 629. Therefore, in *Duncan,* self-defense within the home was implicated to a much greater degree, while in the present case it was barely implicated at all.

Furthermore, although *Duncan* struck down California's ban on LCMs, it did not affect the general principles set forth in cases like *Kolbe*, *Heller II*, *Worman*, *Pena*, *New York State Rifle and Pistol Ass'n*, and *Jackson*. Those cases also involved other laws, like laws banning certain assault rifles, certain semi-automatic weapons, and types of ammunition, and are still valid with respect to those issues, even if *Duncan* departs from them specifically with respect to LCMs. Therefore, *Duncan* does not undermine the general argument that a law does not substantially burden the Second Amendment if it leaves open alternative channels for self-defense, bans only a subset of a larger class, does not ban an entire class of arms, does not implicate handguns, and does not effectively disarm individuals.

30

*See Kolbe*, 849 F.3d at 138-39; *Heller II*, 670 F.3d at 1261-62; *Worman*, 922 F.3d at 37; *New York State Rifle and Pistol Ass'n*, 894 F.3d at 259-60.  For all of these reasons, *Duncan* is distinguishable and strict scrutiny does not apply.

Our case involves a limited infringement on a small, relatively obscure subset of knives.  In analyzing an analogous statute banning switchblade knives, the New Mexico Court of Appeals chose to apply intermediate scrutiny:

> Viewed from any approach, the switchblade statute is a modest infringement.  Because Section 30–7–8 bans only a small subset of knives, which are themselves a peripheral subset of arms typically used for self-defense or security, the statute effects an unsubstantial burden on the right to keep and bear arms.  *Cf. Heller I*, 554 U.S. at 629, 128 S. Ct. 2783 ("[T]he American people have considered the handgun to be the quintessential self-defense weapon. . . . [H]andguns are the most popular weapon chosen by Americans for self-defense in the home[.]").  And switchblades are designed for uses that are remote from the core of the right to keep and bear arms.

*Murillo*, 347 P.3d at 288.  Intermediate scrutiny should similarly be applied here.

## 2.    Haw. Rev. Stat. § 134-53 Satisfies Intermediate Scrutiny.

Intermediate scrutiny requires (1) a "significant, substantial, or important" government objective, and (2) a "reasonable fit" between the challenged law and the asserted objective.  *Jackson*, 746 F.3d at 965.  In applying intermediate scrutiny, courts "do not impose an 'unnecessarily rigid burden of proof," and [they] allow [the State] to rely on any material 'reasonably believed to be relevant to substantiate its interest in [public] safety and crime prevention."  *Pena*, 898 F.3d at 979.  Courts may consider "the legislative history of the enactment as well as

studies in the record or cited in pertinent case law." *Id.* The Ninth Circuit has

held: "It is important to note that we are weighing a legislative judgment, not

evidence in a criminal trial. . . . Nor do we substitute or own policy judgment for

that of the legislature." *Id.* "[I]n the face of policy disagreements, or even

conflicting legislative evidence, 'we must allow the government to select among

reasonable alternatives in its policy decisions." *Id.* at 980. Courts afford

"substantial deference to the predictive judgments" of the legislature. *Turner*

*Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997); *Pena*, 898 F.3d at 979-80.

"It is self-evident that public safety is an important government interest."

*Jackson*, 746 F.3d at 965. *See also Fyock*, 779 F.3d at 1000 (important

government interest in "promoting public safety and reducing violent crime"). The

testimony in the legislative history of Haw. Rev. Stat. § 134-53 indicated that

butterfly knives were becoming increasingly popular with criminal gang members.

Butterfly knives were "associated with gang activity." S. Stand. Comm. Rep. No.

1389, in 1999 Senate Journal, at 1558, SER 39, 59. Butterfly knives were being

sold to very young minors at local flea markets and in Waikiki and there was

"sufficient justification to prohibit the manufacture, sale or transfer of such

weapons to anyone, not just minors." Testimony of Honolulu Prosecuting

Attorney, SER 24, 35. "[The HPD] Gang Detail ha[d] noticed an increasing trend

in minors and gang members armed with knives and daggers" and "[b]utterfly

knives [we]re preferred as they are easy to conceal and are more intimidating when

brandished." [6]  Testimony of Captain George McKeague, Honolulu Police

Department, SER 37.   "Your Committee finds that particular attention needs to be

given to butterfly knives by setting them apart from other deadly and dangerous

weapons."  H. Stand. Comm. Rep. No. 731, SER 25.  Therefore, the important

government interest was clearly to protect public safety by reducing access to

butterfly knives by criminal gang members.  May 13, 2020 Order, ER039.

Plaintiffs complain that there was not enough evidence supporting this

interest.  O.B. at 34.  However, the evidence comes from the testimony of police

officers and prosecutors in the legislative history, which is permitted under the case

law.  *See Pena*, 898 F.3d at 979.  And although there was competing evidence from

public defenders and practitioners of Escrima, the Legislature was entitled to make

its own policy decisions.  *See id.* at 980.  Plaintiffs are attempting to impose upon

the Legislature an excessively strict evidentiary standard more suited to a criminal

---

[6] Plaintiffs argue that butterfly knives were discovered being used by criminals merely because they were also popular among the general population.  O.B. at 35. There is no evidence supporting this claim.  The legislative history indicates that butterfly knives were "associated with gang activity[,]" *see* S. Stand. Comm. Rep. No. 1389, in 1999 Senate Journal, at 1558, SER 39, 59, and were increasingly popular with "minors and gang members," *see* Testimony of Captain George McKeague, Honolulu Police Department, SER 37.  These findings and testimony should be taken at face value.  Moreover, the fact that butterfly knives are "relatively obscure" indicates that they were not popular among the general population.  *See* May 13, 2020 Order, ER032.

trial court, which is "unnecessarily rigid" and is simply not required under Ninth Circuit law.[7] *See id.* at 979.

To establish the "reasonable fit," the State does not have to establish that it is the "least restrictive means." *Jackson*, 746 F.3d at 966. It only has to show that the statute "promotes a 'substantial government interest that would be achieved less effectively absent the regulation.'" *Pena*, 898 F.3d at 979. The statute banning butterfly knives clearly reduces the ability of criminal gang members to have access to them. Thus, the objective of denying criminal gang members access to butterfly knives would be less effectively achieved absent the statute.

Furthermore, Haw. Rev. Stat. § 134-53 is tailored to the government interest in that it bans only butterfly knives, as specifically defined, rather than all knives. *See Lacy*, 903 N.E.2d at 492 (upholding switchblade law because it is not a complete ban on all knives but only "knives that open automatically or may be

---

[7] Plaintiffs further argue that the legislative testimony was insufficient because being a gang member is not illegal in and of itself and there was no testimony that gang members use butterfly knives to stab people. O.B. at 38-39. However, police officers and prosecutors do not submit testimony to the Legislature regarding harmless social clubs. *See* Testimony of Honolulu Prosecuting Attorney, SER 24, 35 (regarding HPD Gang Detail). They were testifying regarding *criminal* offenses; consequently, the gangs referred to were clearly *criminal* gangs. And criminal gangs do not obtain weapons simply to admire them. Plaintiffs' argument ignores the obvious import of the testimony, applies an unreasonable standard to legislative evidence, and conflicts with common sense. *See Pena*, 898 F.3d at 979-80.

propelled . . . by hand pressure applied to a button, device containing gas, spring, or other device in the handle of the knife"); *Murillo*, 347 P.3d at 289 ("Prohibiting the possession of this weapon [switchblade] is, of course, substantially related to this narrow, but important, purpose" of protecting the public from "the surprise use of a dangerous weapon"). Because the statute is "appropriately tailored" to the important government interest, it is clearly "substantially related" to that interest. *See Jackson*, 746 F.3d at 966 (holding that the challenged ordinance was "substantially related" and "appropriately tailored" to the important government interest).[8]

Haw. Rev. Stat. § 134-53 is supported by its extensive legislative history and satisfies intermediate scrutiny.

## D. Plaintiffs' Other Arguments are Without Merit.

### 1. Plaintiffs' Statistical Argument is Meritless.

Plaintiffs cite a number of statistics in support of their arguments. O.B. at 13-14. They argue that the percentage of murder victims killed by knives (10.7%)

---

[8] For this reason, even if this Court were to apply strict scrutiny, the statute would survive. Public safety is not only an important government interest – it is also a compelling one. *See Schall v. Martin*, 467 U.S. 253, 264 (1984). And since, as demonstrated here, this statute is narrowly tailored, it would survive strict scrutiny as well as intermediate scrutiny. Although Defendants' position is that strict scrutiny does not apply, should this Court decide to apply it, this Court could still affirm under that standard. *See Cigna Prop. & Cas. Ins. Co.*, 159 F.3d at 418.

is less than the percentage killed by firearms (72.7%). *Id.* at 14. They cite similar figures for robberies and aggravated assaults. *Id.* They further argue that a person's chances of dying in a knife attack are less than in a firearm attack. *Id.* at 13. From this, they conclude that knives are less dangerous than firearms, and since handguns cannot be banned under *Heller I*, they argue, butterfly knives cannot be either. *Id.* at 13, 14.

This argument is flawed on many levels. First, their statistics compare firearms to knives in general. But since the statute at issue in this case specifically bans butterfly knives and does not ban all knives, their statistics are inapposite. More importantly, their fundamental premise is wrong. Just looking at the number of people killed by a particular type of weapon indicates nothing. The very same statistics relied on by Plaintiffs, the 2018 FBI statistics, show that out of the 14,123 people murdered in 2018, 6,603 (46.8%) were killed by handguns and only 235 (1.7%) were killed by shotguns. Federal Bureau of Investigation, *Crime in the United States (2018)*, https://ucr.fbi.gov/crime-in-the-u.s/2018/crime-in-the-u.s.-2018/tables/expanded-homicide-data-table-8.xls (last visited 9/10/20). By Plaintiffs' reasoning, because only 1.7% of murder victims were killed by shotguns, shotguns are less dangerous than handguns. Therefore, sawed-off shotguns are not "dangerous" and cannot be banned. However, sawed-off shotguns are the quintessential "dangerous and unusual weapon." They were

expressly mentioned in *Heller I* as an example of that exception. *Heller I*, 554 U.S. at 625 ("[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, ***such as short-barreled shotguns.***" (emphasis added)). Plaintiffs' argument conflicts with *Heller I* and simply does not make sense.

The mere fact that more people are killed by handguns than knives (or shotguns) is irrelevant to determining dangerousness. All it suggests is that handguns are more popular than knives or shotguns, which *Heller I* also recognized. *See Heller I*, 554 U.S. at 628 (handguns "overwhelmingly chosen by American society"). As the sawed-off shotgun example demonstrates, the true comparison to determine dangerousness is between sawed-off shotguns and regular shotguns. *See Carson*, 247 S.E.2d at 73. For switchblades, the correct comparison is between switchblades and regular knives. *See Crowley Cutlery Co.*, 849 F.2d at 278. Accordingly, the comparison in this case should be between butterfly knives and regular knives, not between knives and firearms.

Similarly, the fact that a person has a greater chance of dying when attacked by a handgun as opposed to being attacked by a knife is irrelevant to the dangerousness of butterfly knives. The only thing such statistics suggest is that firearms cause more damage to the human body than knives, which is self-evident.

The correct comparison is between butterfly knives and regular knives, not knives and firearms.

Plaintiffs compare apples to oranges in an attempt to bootstrap the protection afforded to handguns onto butterfly knives. This attempt fails and the statistics cited by Plaintiffs are irrelevant.

### 2. Plaintiffs' Arguments Regarding Ordinary Pocket Knives and Other Knives are Meritless.

Plaintiffs further argue that butterfly knives are no different from and no more dangerous than ordinary folding knives, such as pocket knives. O.B. at 41-45. Therefore, they argue, the State cannot ban butterfly knives without banning pocket knives as well. *Id.* at 42.

Plaintiffs overlook the fact that there are significant differences between butterfly knives and ordinary pocket knives. True, both of them can be safely placed in a pocket and are therefore both concealable. And Plaintiffs argue that pocket knives can be deployed quicker than butterfly knives.[9] Without conceding

---

[9] This claim is highly suspect because (1) it is counter-intuitive and (2) Plaintiffs' tests were performed by someone who clearly was not objective. Moreover, Plaintiffs' test results conflict with each other. In one test, it allegedly took an average of 1.35 seconds to deploy a butterfly knife but only an average of 0.95 seconds to deploy a pocket knife. Richardson Declaration, SER 66, ER135; Complaint, ER154. However, in another test, it allegedly took 2.9 seconds to deploy the butterfly knife and 1.467 seconds to deploy a folding knife with a clip and a "wave feature." Richardson Report, ER092. Not only is the butterfly knife test result inconsistent with the other butterfly knife test, but the result for the

this point, it is ultimately immaterial.  Even if one accepts Plaintiffs' claims for the sake of argument, it is clear that both butterfly knives and pocket knives can be deployed in "just a few seconds."  *See Doe*, 73 Haw. at 92, 828 P.2d at 274.

The difference between butterfly knives and ordinary pocket knives is that butterfly knives can be deployed with one hand and butterfly knives also contain a latch that can lock a blade in the open position.  *See id.*; Wikipedia, *Butterfly knife*, SER 1, 3; Blade Magazine, *History: The Disputed Origins of the Butterfly Knife*, SER 10; Richardson Declaration, SER 61, 63-64, ER130, 132-133.  This indicates that they are designed to be used as weapons.  Pocket knives ordinarily do not contain such features.  *See* Richardson Declaration, SER 61, ER130 ("A tool knife rarely requires a one handed opening except for convenience.").

The Ohio courts have identified several features that distinguish knives that are considered deadly weapons from ordinary pocket knives, including the features at issue in the present case.  In *State v. Cattledge*, No. 10AP-105, 2010 WL 3972574, at *5 (Ohio Ct. App. Oct. 12, 2010), the Ohio Court of Appeals upheld a conviction for carrying a concealed weapon based on the facts that the knife "can

---

folding knife test is also problematic.  According to Plaintiffs, the clip and wave feature are supposed to make the knife "extremely fast."  O.B. at 46.  But that knife was deployed slower than ***both*** the pocket knife ***and*** the butterfly knife in the other test.  SER 66, ER135.  Thus, Plaintiffs' evidence is inconsistent and self-contradictory.  In the end, however, this argument is immaterial anyway.  Clearly, both butterfly knives and pocket knives can be deployed in "just a few seconds."

be opened with one hand using the knob appendage, and has a blade that locks in the open position." The court also found that "[t]he ability to open the knife with one hand either by using the knob or flicking the wrist also takes the knife out of the realm of an 'ordinary' pocket knife." *Id.* The court concluded that "it was designed to be used as a weapon." *Id. See also Petefish v. Richland Correctional Institution*, No. 4:13CV1295, 2015 WL 751027, at \*14-\*15 (N.D. Ohio Feb. 23, 2015); *State v. Petefish*, No. 10 MA 78, 2011 WL 6163971, at \*6-\*8 (Ohio Ct. App. Dec. 7, 2011).

Hawaiʻi law is very much consistent with this approach. *See State v. Rackle*, 55 Haw. 531, 537, 523 P.2d 299, 302 (1974) (defining deadly or dangerous weapons as "instruments closely associated with criminal activity ***whose sole design and purpose is to inflict bodily injury or death upon another human being***" (emphasis added)); *State v. Giltner*, 56 Haw. 374, 375-76, 537 P.2d 14, 16 (1975) (holding that a diver's knife, which is "standard equipment for many divers engaged in deep-sea diving" rather than being designed as a weapon, is not a deadly or dangerous weapon).

Butterfly knives are also capable of being deployed in a manner that is threatening and intimidating. The legislative testimony supporting the bill that became Haw. Rev. Stat. § 134-53 specifically mentioned that butterfly knives "are more intimidating when brandished." Testimony of Captain George McKeague,

Honolulu Police Department, SER 37. Plaintiffs in fact admit that the "flipping maneuvers" used when deploying butterfly knives are intimidating. O.B. at 43. And Plaintiffs' expert stated that "[t]his flourishing is designed to intimidate[.]" Richardson Declaration, SER 62, ER131. Moreover, the fact that butterfly knives are intimidating is related to their ability to be opened with one hand. Fumbling with a pocket knife with two hands would not nearly have the same effect as the flipping and flourishing that is used to open a butterfly knife. *See* Richardson Declaration, SER 62, ER131 ("[The balisong user can produce the knife and go through a routine of opening and closing the knife in a very impressive manner."); Blade Magazine, *History: The Disputed Origins of the Butterfly Knife*, SER 11 ("[T]here's no doubt flippers are mesmerizing to watch.").[10]

Most importantly, butterfly knives were increasingly popular with criminal gang members when Haw. Rev. Stat. § 134-53 was enacted. Testimony of Captain George McKeague, Honolulu Police Department, SER 37; Testimony of Honolulu Prosecuting Attorney, SER 24, 35; S. Stand. Comm. Rep. No. 1389, in 1999 Senate Journal, at 1558, SER 39, 59. There is no indication that ordinary pocket knives presented the same kind of problem. "[T]he state 'must be allowed a reasonable opportunity to experiment with solutions to admittedly serious

---

[10] It should be noted that the time it takes to engage in these flipping maneuvers may explain the alleged delay in Plaintiffs' test results. In any event, whatever is lost in possible slower deployment of the blade is offset by greater intimidation.

problems.'" *Pena*, 898 F.3d at 980. Butterfly knives were specifically identified by the police, prosecutors, and the Legislature as constituting a problem, but ordinary pocket knives were not, and that justifies treating them differently than ordinary pocket knives. *See Rackle*, 55 Haw. at 537, 523 P.2d at 302 (prohibiting "instruments closely associated with criminal activity").

Therefore, butterfly knives can be deployed with one hand, their blades can be locked into place, they are designed to be used as weapons, they are threatening and intimidating when deployed, and they were becoming increasingly popular with criminal gang members. Ordinary pocket knives do not share these attributes. Therefore, banning butterfly knives but not ordinary pocket knives still represents a "reasonable fit."

Plaintiffs also appear to argue that other folding knives are even more dangerous than butterfly knives. O.B. at 46. Plaintiffs claim that some pocket knives contain features that enable them to be deployed faster, such as a clip that enables the knife to be clipped to the outside of clothing and a "wave feature" that pulls the blade open as it clears the pocket or waistband. *Id.* Since Haw. Rev. Stat. § 134-53 does not ban these knives, Plaintiffs argue that the statute is "underinclusive."

However, the Ninth Circuit has held that "underinclusiveness does not doom [a statute] under intermediate scrutiny." *Pena*, 898 F.3d at 981. As the New Mexico Court of Appeals noted with respect to switchblades:

> Defendant also argues that the Legislature acted impermissibly because, in enacting Section 30–7–8, it banned switchblades while leaving unregulated other equally dangerous or more dangerous knives. Whether other knives also warrant regulation is a question for the Legislature. The question we face under intermediate scrutiny is whether the prohibition on switchblade knives serves an important purpose. For reasons we have already stated, we think it does.

*Murillo*, 347 P.3d at 290. Not only is it up to the Legislature whether other knives should be banned, but such a ban is not before this Court. All that matters for the present case is that the ban on butterfly knives survives intermediate scrutiny. Moreover, the availability of these other knives actually undercuts Plaintiffs' argument regarding butterfly knives. These other knives clearly constitute "alternative channels for self-defense." *See Jackson*, 746 F.3d at 961.

### 3. The Cases Cited by Plaintiffs are Distinguishable and Should Not be Relied Upon.

Plaintiffs cite a few cases from other state courts that have invalidated switchblade laws. *See, e.g., State v. Hermann*, 873 N.W.2d 257 (Wis. Ct. App. 2015); *State v. Delgado*, 692 P.2d 610 (Or. 1984). However, importation of switchblades across state lines is still illegal under the federal Switchblade Knife Act, 15 U.S.C. §§ 1241-1242, and federal case law, *see Crowley Cutlery Co.*, 849 F.2d at 278; *United States v. Nelsen*, 859 F.2d 1318, 1320 (8th Cir. 1988); *Precise*

*Imports v. Kelly*, 378 F.2d 1014, 1017 (2d Cir. 1967). Butterfly knives are also

covered under the federal act pursuant to *Taylor*, 848 F.2d at 720. Hawaiʻi law

expressly prohibits switchblades under Haw. Rev. Stat. § 134-52. And the Hawaiʻi

Legislature specifically intended butterfly knives to be treated the same as

switchblades. Conf. Comm. Rep. No. 88, SER 47; S. Stand. Comm. Rep. No.

1389, in 1999 Senate Journal, at 1559, SER 40, 60. Consequently, Defendants

respectfully suggest that this Court follow, as the District Court did, cases like

*Lacy*, *Murillo*, and *Taylor* rather than *Hermann* and *Delgado*. *See* May 13, 2020

Order, ER044 n.9. Other cases cited by Plaintiffs, such as *State v. DeCiccio*, 105

A.3d 165 (Conn. 2014), *State v. Montalvo*, 162 A.3d 270 (N.J. 2017), and *Maloney

v. Singas*, 351 F. Supp. 3d 222 (S.D.N.Y. 2018), are entirely distinguishable

inasmuch as they involve other instruments that do not have the same association

with criminals or gangs that switchblades and butterfly knives have.

## VII.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court

affirm the District Court's May 13, 2020 Order and the Judgment in this case.

DATED:  Honolulu, Hawaiʻi, October 20, 2020.

 s/ Robert T. Nakatsuji
ROBERT T. NAKATSUJI
First Deputy Solicitor General

Attorney for Defendants-Appellees
CLARE E. CONNORS and AL
CUMMINGS

# ADDENDUM

# **ADDENDUM INDEX**

U.S. Constitution, Amendment II ................................................................1

15 U.S.C. § 1241 .........................................................................................1

15 U.S.C. § 1242 .........................................................................................1

15 U.S.C. § 1243 .........................................................................................2

15 U.S.C. § 1244 .........................................................................................2

15 U.S.C. § 1245 .........................................................................................3

Haw. Rev. Stat. § 134-52 ............................................................................4

Haw. Rev. Stat. § 134-53 ............................................................................4

## United States Constitution

### Amendment II (1791)

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

## United States Code

### 15 U.S.C. § 1241.  Definitions

As used in this chapter –

(a) The term "interstate commerce" means commerce between any State, Territory, possession of the United States, or the District of Columbia, and any place outside thereof.

(b) The term "switchblade knife" means any knife having a blade which opens automatically –

(1) by hand pressure applied to a button or other device in the handle of the knife, or

(2) by operation of inertia, gravity, or both.

(Pub. L. 85–623, §1, Aug. 12, 1958, 72 Stat. 562.)

### 15 U.S.C. § 1242.  Introduction, manufacture for introduction, transportation or distribution in interstate commerce; penalty

Whoever knowingly introduces, or manufactures for introduction, into interstate commerce, or transports or distributes in interstate commerce, any switchblade knife, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

(Pub. L. 85–623, §2, Aug. 12, 1958, 72 Stat. 562.)

**15 U.S.C. § 1243.  Manufacture, sale, or possession within specific jurisdictions; penalty**

Whoever, within any Territory or possession of the United States, within Indian country (as defined in section 1151 of title 18), or within the special maritime and territorial jurisdiction of the United States (as defined in section 7 of title 18), manufactures, sells, or possesses any switchblade knife, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

(Pub. L. 85–623, §3, Aug. 12, 1958, 72 Stat. 562.)

**15 U.S.C. § 1244.  Exceptions**

Sections 1242 and 1243 of this title shall not apply to –

(1) any common carrier or contract carrier, with respect to any switchblade knife shipped, transported, or delivered for shipment in interstate commerce in the ordinary course of business;

(2) the manufacture, sale, transportation, distribution, possession, or introduction into interstate commerce, of switchblade knives pursuant to contract with the Armed Forces;

(3) the Armed Forces or any member or employee thereof acting in the performance of his duty;

(4) the possession, and transportation upon his person, of any switchblade knife with a blade three inches or less in length by any individual who has only one arm; or

(5) a knife that contains a spring, detent, or other mechanism designed to create a bias toward closure of the blade and that requires exertion applied to the blade by hand, wrist, or arm to overcome the bias toward closure to assist in opening the knife.

(Pub. L. 85–623, §4, Aug. 12, 1958, 72 Stat. 562 ; Pub. L. 111–83, title V, §562, Oct. 28, 2009, 123 Stat. 2183.)

2

**15 U.S.C. § 1245. Ballistic knives**

**(a) Prohibition and penalties for possession, manufacture, sale, or importation**

Whoever in or affecting interstate commerce, within any Territory or possession of the United States, within Indian country (as defined in section 1151 of title 18), or within the special maritime and territorial jurisdiction of the United States (as defined in section 7 of title 18), knowingly possesses, manufactures, sells, or imports a ballistic knife shall be fined as provided in title 18, or imprisoned not more than ten years, or both.

**(b) Prohibition and penalties for possession or use during commission of Federal crime of violence**

Whoever possesses or uses a ballistic knife in the commission of a Federal crime of violence shall be fined as provided in title 18, or imprisoned not less than five years and not more than ten years, or both.

**(c) Exceptions**

The exceptions provided in paragraphs (1), (2), and (3) of section 1244 of this title with respect to switchblade knives shall apply to ballistic knives under subsection (a) of this section.

**(d) "Ballistic knife" defined**

As used in this section, the term "ballistic knife" means a knife with a detachable blade that is propelled by a spring-operated mechanism.

(Pub. L. 85–623, §7, as added Pub. L. 99–570, title X, §10002, Oct. 27, 1986, 100 Stat. 3207–167 ; amended Pub. L. 100–690, title VI, §6472, Nov. 18, 1988, 102 Stat. 4379.)

**Hawaiʻi Revised Statutes**

**Haw. Rev. Stat. § 134-52.  Switchblade knives; prohibitions; penalty.**  (a) Whoever knowingly manufactures, sells, transfers, possesses, or transports in the State any switchblade knife, being any knife having a blade which opens automatically (1) by hand pressure applied to a button or other device in the handle of the knife, or (2) by operation of inertia, gravity, or both, shall be guilty of a misdemeanor.

(b)  Whoever knowingly possesses or intentionally uses or threatens to use a switchblade knife while engaged in the commission of a crime shall be guilty of a class C felony. [L 1959, c 225, §1; Supp, §264-9; HRS §769-1; ren L 1972, c 9, pt of §1; am L 1990, c 195, §4]

**Haw. Rev. Stat. § 134-53.  Butterfly knives; prohibitions; penalty.**  (a) Whoever knowingly manufactures, sells, transfers, possesses, or transports in the State any butterfly knife, being a knife having a blade encased in a split handle that manually unfolds with hand or wrist action with the assistance of inertia, gravity or both, shall be guilty of a misdemeanor.

(b)  Whoever knowingly possesses or intentionally uses or threatens to use a butterfly knife while engaged in the commission of a crime shall be guilty of a class C felony. [L 1999, c 285, §1]

4

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 20-15948

I am the attorney or self-represented party.

**This brief contains** | 10,706 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

    ◯ it is a joint brief submitted by separately represented parties;

    ◯ a party or parties are filing a single brief in response to multiple briefs; or

    ◯ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Robert T. Nakatsuji | **Date** | Oct 20, 2020

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/2018*

## <u>STATEMENT OF RELATED CASES</u>

Defendants are not aware of any related cases.

DATED:  Honolulu, Hawai'i, October 20, 2020.

       s/ Robert T. Nakatsuji

ROBERT T. NAKATSUJI
First Deputy Solicitor General

Attorney for Defendants-Appellees
CLARE E. CONNORS and AL
CUMMINGS

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the Answering Brief of Defendants-Appellees Clare E. Connors and Al Cummings was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 20, 2020.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED:  Honolulu, Hawaiʻi, October 20, 2020.

 s/ Robert T. Nakatsuji
ROBERT T. NAKATSUJI
First Deputy Solicitor General

Attorney for Defendants-Appellees
CLARE E. CONNORS and AL
CUMMINGS