No. 20-15948

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANDREW TETER and JAMES GRELL,

*Plaintiffs-Appellants,*

v.

CLARE E. CONNORS, in her Official Capacity as the Attorney
General of the State of Hawai'i and AL CUMMINGS, in his
Official Capacity as the State Sheriff Division Administrator,

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Hawai'i
Honorable Alan C. Kay, Senior United States District Judge
(Civil No. 19-cv-00183-ACK-WRP)

## SUPPLEMENTAL EXCERPTS OF RECORD FOR
## DEFENDANTS-APPELLEES CLARE E. CONNORS AND AL CUMMINGS

CLARE E. CONNORS
Attorney General of Hawai'i

ROBERT T. NAKATSUJI
First Deputy Solicitor General
Department of the Attorney General
State of Hawai'i
425 Queen Street
Honolulu, Hawai'i 96813
Telephone: (808) 586-1360
Fax: (808) 586-8116
E-mail: Robert.T.Nakatsuji@hawaii.gov

Attorneys for Defendants-Appellees
CLARE E. CONNORS and AL CUMMINGS

### INDEX TO SUPPLEMENTAL EXCERPTS OF RECORD FOR DEFENDANTS-APPELLEES CLARE E. CONNORS AND AL CUMMINGS

| Date | Description | Pages in District Court (ECF) | Pages in SER |
|---|---|---|---|
| 1/15/20 | Wikipedia, *Butterfly knife* | ECF 37-9 at 1-8 (Defendants' Exhibit "H") | SER 1-8 |
| 1/15/20 | Blade Magazine, *History: The Disputed Origins of the Butterfly Knife* | ECF 37-8 at 1-4 (Defendants' Exhibit "G") | SER 9-12 |
| 1/15/20 | Legislative history for Hawai'i Revised Statutes § 134-53 | ECF 37-6 at 1-46 (Defendants' Exhibit E") | SER 13-58 |
| 1/15/20 | S. Stand. Comm. Rep. No. 1389, in 1999 Senate Journal, at 1558-1559 | ECF 37-5 at 1-2 (Defendants' Exhibit "D") | SER 59-60 |
| 1/14/20 | Declaration of Burton Richardson | ECF 34-4 at 1-10 (Plaintiffs' Exhibit "C") | SER 61-70 |

WIKIPEDIA

# Butterfly knife

A **balisong**, also known as a **fan knife**, **butterfly knife** or **Batangas knife**, is a folding pocketknife. Its distinct features are two handles counter-rotating around the tang such that, when closed, the blade is concealed within grooves in the handles. A balisong typically has the latch on the handle facing the cutting edge, and is commonly called the *bite handle*.[1]

The balisong was commonly used by Filipinos, especially those in the Tagalog region, as a self-defense and pocket utility knife. A common stereotype is that a Batangueño carries one everywhere he or she goes.[2] Hollow-ground balisongs were also used as straight razors before conventional razors were available in the



A butterfly knife in open and closed position.

Philippines. In the hands of a trained user, the knife blade can be brought to bear quickly using one hand. Manipulations, called "flipping", are performed for art or amusement. Blunt versions of these knives, called "trainers", are for sale to practice tricks without the risk of injury.

The knife is now illegal or restricted in some countries, often under the same laws and for the same reasons that switchblades or concealed weapons are restricted, and in their country of origin they are no longer as common in urban areas as they were.[3]

## Contents

Etymology

History

Construction

Parts

Legal status

See also

References

External links

## Etymology

The name "balisong" is likely derived from barangay (village) Balisong, part of the municipality of Taal, Batangas province, which along with the neighboring barangay Pandayan, were the original manufacturing centers of the knives in the Philippines. The two barangays were home to a blacksmith industry that also produced other bladed implements such as bolo knives.[4][5][6] It is also claimed that the meaning of the term *balisong* is derived from the Tagalog words *baling sungay* (literally, "broken/folding horn") as the hilt of the blade were traditionally made from carved carabao and deer

horn, as well as bones.[7][8] The traditional balisong is also known as *veinte y nueve,* or "twenty-nine," in the Philippines, because they are 29 cm (11 in) long when opened. Other names for the knives in English include "fan knives" and "butterfly knives" from the motion, and "click clacks" from the sound they make when they are opened and closed.

# History

The origin of the knives is unclear. Oral histories claim that the knives were first created in the Philippines in 800 AD. However, there is no documentation or archeological evidence to back this. Balisong mass production in the Philippines can only be attested to the early 1900s. Another claim is that balisong were originally an adaptation of a French measuring tool called the *pied du roi* ("foot of the king"), invented between the 1500s to the late 1700s. However, how it was introduced to the Philippines is unknown. There are theories that it may have been introduced by sailors in the Spanish Empire, which was then allied to France.[9][10]

Regardless of the origin, the modern balisong was perfected in the Philippines, where it became much larger and were predominantly used as a weapon and not just a tool. The quick opening techniques ("flipping") were also developed in the Philippines. In contrast, the French *pied du roi* was primarily a folding ruler, with the knife only included in some specimens as a novelty. They were cumbersome to open and unlikely to be used for self-defense, especially since they also commonly included a metal tang at the end of the handle to aid in measuring.[9][10] There were also very similar designs to the balisong produced in England in the late 19th century, presumably also derived from the *pied du roi*. But like the latter they were primarily utilitarian tools.[11]

# Construction

There are two main types of balisong construction: "sandwich construction" and "channel construction".

Sandwich constructed balisong knives are assembled in layers that are generally pinned or screwed together though may sometimes use a ball-bearing system. They allow the pivot pins to be adjusted more tightly without binding. When the knife is closed, the blade rests between the layers.

For a channel constructed balisong, the main part of each handle is formed from one piece of material. In this handle, a groove is created (either by folding, milling, or being integrally cast) in which the blade rests when the knife is closed. This style is regarded as being stronger than sandwich construction.

Some of the blades of traditional butterfly knives in the Philippines were made from steel taken from railroad tracks thus giving them a decent amount of durability and hardness, while others are made from the recycled leaf springs of vehicles.

Some balisongs, such as the Benchmade 51, do not use Tang Pins. Instead, it uses "Zen Pins", which are two small pins embedded in the handles of the balisong which make contact with the bottom of the blade. A balisong with zen pins negates the problem of having the tang pin fall out (as with some cheaper models).

**SER 2**

# Parts

**Bite handle**
    The handle that closes on the sharp edge of the blade, and will cut the user if they are holding the handle when they go to close it. It's the handle that usually has the latch on it.

**Choil**
    The unsharpened portion of the blade just above the kicker, that makes it easier to sharpen the blade.

**Kicker (or Kick)**
    Area on the blade that prevents the sharp edge from touching the inside of the handle and suffering damage. This is sometimes supplanted by an additional tang pin above the pivots.



Parts of a Benchmade 42.

**Latch**
    The standard locking system, which holds the knife closed. Magnets are occasionally used instead. Also keeps it from opening up when the user doesn't want it to.

**Latch, Batangas**
    A latch that is attached to the bite handle.

**Latch, Manila**
    A latch that is attached to the safe handle.

**Latch, Spring**
    A latch that utilizes a spring to propel the latch open when the handles are squeezed.

**Latch gate**
    A block inside the channel of the handles stopping the latch from impacting the blade.

**Pivot joint**
    A pin about which the Tang/Blade/Handle assemblies pivot.

**Safe handle**
    The handle (generally the handle without the latch) that closes on the non-sharpened edge of the blade.

**Swedge**
    Unsharpened spine of the blade. Some balisongs are also sharpened here or on both sides with either a more traditional look or wavy edges similar to a Kris sword.

**Tang**
    The base of the blade where the handles are attached with pivot pins.

**Tang Pin(s)**
    Pin meant to hold the blade away from the handle when closed to prevent dulling; and, in some cases, a second pin to keep the handles from excessively banging together while the butterfly knife is being manipulated.

**Zen Pins**
    Screws mounted inside the handles that collide with the kicker mounted on the tang to prevent the blade from moving around while in the open or closed position.

**Blade**
    The blade is the piece of steel that runs down the center of the knife that is secured by both handles when closed. One edge of the blade is sharp and will cut the user if they are not careful, especially when flipping the knife. The other edge, called the swedge, is blunt and won't cut the user. The swedge commonly impacts the user's hand when flipping.

# Legal status

The balisong has been outlawed in several countries.

- In the Philippines, it is now generally illegal to carry one without identification or a proper permit in the streets of the capital because of their prevalent use in crimes and altercations. One now needs to demonstrate the need in professional livelihood or utilitarian purpose (such as cutting grass, preparing fruits and meats, being a vendor of knives, being martial arts instructors, etc.) to be able to walk around with bladed implements in the urban areas. Another rule of thumb is that the blade of pocket knives must not exceed the length of the palm and must not be openable by one hand in order to be considered as a utility knife as opposed to a weapon (thus, Swiss Army Knives are legal).

- In Australia, balisongs are generally classified as a prohibited weapon, which requires a special legitimate excuse to possess it. Australian Legal Definition: A flick knife (or other similar device) that has a blade which opens automatically by gravity or centripetal acceleration or by any pressure applied to a button, spring or device in or attached to the handle of the knife.[3]

- In Canada, although not specified by name as a prohibited weapon, the balisong knife is often considered by courts to fall under the "gravity knife" or a centripetal classification and is, therefore, prohibited, unless grandfathered in before prohibition.

- In Sweden, it's illegal to carry, import or trade a balisong; legal to own and collect.

- In Hungary, balisongs, switchblades and gravity knives are treated like normal knives, they are legal to possess one regardless of its length, but it's illegal to carry one that's longer than 8 cm (3.14 inches) in public.

- In the United Kingdom, the balisong has been legally classified as an offensive weapon since January 1989.[12] While they are legal to possess, carrying one in public is an offence under the Prevention of Crime Act 1953. Sale, lending, hiring, giving or importing is prohibited by the Criminal Justice Act 1988, as amended by the Offensive Weapons Act 1996. Any imported are liable to be seized and prosecution may follow. An exception is made for knives of this type over 100 years old, which are classed as antiques.

- In the Czech republic, balisongs, switchblades and gravity knives are treated like normal knives.

- In Switzerland, balisongs are illegal to carry, give, lend, buy, or trade.

- In Germany, the balisong was outlawed when the Waffengesetz (weapons law) was tightened in April 2003 in the aftermath of the Erfurt massacre. Thus buying, possessing, lending, using, carrying, crafting, altering and trading it is illegal and is punishable by up to five years imprisonment, confiscation of the knife and a fine of up to €10,000. Using a butterfly knife for crime of any kind – as is any illegal weapon – is punishable by from 1 to 10 years imprisonment.

- In Finland, balisongs are legal to be purchased, sold and possessed, and are treated just like regular knives and befall under the edged weapons law. Carrying one in public is permitted if the person carrying one can prove it is used as a tool.

- In the Republic of Ireland, butterfly knives are illegal offensive weapons.[13][14]

- In Lithuania, balisongs among other knives are legal to possess and carry as they are not considered weapons. This excludes switchblades.[15][16]

- In Poland, balisongs, switchblades and gravity knives are treated like normal knives.

- In Russia, balisongs are legal only if the length of the blade is not more than 90 mm.

- In some United States' states, it is illegal to possess or carry such a knife in public. In certain jurisdictions, balisongs are categorized as a "gravity knife", "switchblade", or "dagger".

  - In California, balisong/switchblade knives are legal to own, buy, sell, and transport if the length of the blade is not more than 2 inches. If the length of the blade is more than 2 inches they are illegal to buy, sell, transfer, or possess in public although it is legal to possess one if kept at home. (Penal Code section 17235 & 21510.)[17]

  - In Hawaii, it is illegal to possess, manufacture, sell, transfer, or transport any balisong/Butterfly-type knife.[18]

**SER 4**

- There were once legal restrictions on butterfly knives in Kansas.[19] However, as of July 2013, the Kansas Comprehensive Knife Rights Act decriminalized the carrying of all types of bladed weapons.[20]

- In Illinois, it is legal to own and carry a butterfly knife.[21] In Chicago it is illegal to carry concealed a knife with a blade longer than 2.5 inches. Concealed carry of a double-edged knife is prohibited. Automatic (switchblade) and gravity knives are prohibited.

- In Indiana it is legal to own and carry a butterfly knife both open or concealed.[22]

- In Kentucky, the balisong is legal for concealed and open carrying anywhere one is not otherwise prohibited from carrying a concealed deadly weapon. Kentucky's constitution and revised statutes prohibit cities and counties from enacting weapons laws and restrictions.

- In Massachusetts, the balisong is legal for concealed and open carrying so long as it does not "[present] an objective threat of danger to a person of reasonable and average sensibility." Restrictions also apply depending on the area of the person carrying the knife (such as within a public school).[23]

- In Michigan, the balisong is legal because it is classified as a "folding knife"

- In New Jersey the criminal law, NJSA 2C:39-1, suggests balisongs are illegal but the question of legality or illegality is an open question.

- In New Mexico, possession of a butterfly knife is illegal, because the butterfly knife is a "switchblade" within the meaning of the statute making possession of switchblades unlawful.[24][25]

- In New York, the balisong has been determined not to be a gravity knife, and therefore not prohibited under the Penal Law [see: People v. Zuniga, 303 A.D.2d 773 (2nd Dept. 2003)[26]] However, the law prohibiting gravity knives was found to be unconstitutional and their possession was decriminalized in 2019.

- In North Carolina, citizens are allowed to carry most pocketknives most of the time. Statute S.14-269, which prohibits the concealed carrying of any "bowie knife, dirk, dagger", or "other deadly weapon of like kind" doesn't apply to an "ordinary pocket knife carried in a closed position".[27]

- In North Dakota, it is legal to own a balisong and carry it openly, however they are illegal to carry concealed, as they are considered to be deadly weapons.

- In Ohio, it is legal to own a balisong and carry it openly, and illegal to carry concealed, as it is considered a deadly weapon.

- in Oklahoma, the balisong is legal for open carry but is illegal to carry concealed.

- In Oregon, it is illegal to carry a concealed balisong.[28]

- In Maine, it is legal to own sell and carry

- In Texas, switchblades are legal as of 1 September 2013.[29]

- In Utah, Balisongs are legal to own and carry as long as you are not a "Restricted Person" as described in Utah State Code §76-10-503 [30].

- In Virginia, the balisong is legal for concealed, and open, carrying according to state law.[31]

- In Washington, the balisong is classified as a "spring blade knife", and under state law one cannot manufacture, sell, dispose of, or possess such knives.[32]

- In France, balisongs are legal to own if you are over 18 years old but it's illegal to carry one around without very special authorization.

- In Italy, balisongs are legal to own if they are not sharpened on both sides, but it's illegal to carry one around without a justified reason.

- In New Zealand, balisongs are illegal.

- In the Netherlands, balisongs are illegal[33].

- In Denmark, butterfly knives are illegal.
- In Belgium, butterfly knives are illegal.
- In Norway, balisongs are illegal.[34]

Balisong trainers feature a special blunt and unsharpened "blade" and are legal in some areas where balisongs are not.

# See also

- Arnis
- Balisword
- Fighting knife
- Filipino martial arts
- Hackman butterfly knife
- Jacob's ladder (knife)
- Knife fighting
- Pantographic knife

# References

1. "Balisong and Butterfly knife tricks and techniques for beginners" (https://www.knifedude.com/pages/balisong-and-butterfly-knife-techniques-for-beginners). *KnifeDude*. Retrieved 2019-10-25.
2. Jaser A. Marasigan (August 3, 2006). "Sublian Festival Batagueño pride" (http://www.knifeup.com/sublian-festival-batagueno-pride/). www.mb.com.ph. Archived from the original (http://www.mb.com.ph/issues/2006/09/03/TOUR2006090373328.html) on 2012-11-28. Retrieved 2007-05-14.
3. "legal possession" (http://www.butterflyknifebutterflyknife.com/Butterfly_Knife_Legal_Status.html). *www.butterflyknifebutterflyknife.com*. Retrieved 2019-10-25.
4. Rivera, D. J. (August 27, 2017). "BATANGAS | Balisong: Few Things About this Famous Knife from Taal" (https://www.pinoytravelogue.com/2017/08/balisong-taal-batangas-famous-knife.html). *Pinoy Travelogue | A Philippine travel blog by DJ Rivera*. Retrieved 2019-10-25.
5. 'The Making of the Batangas (Balisong) Knife' by Dr Jopet Laraya
6. "Balisong" (http://taal.com.ph/index.php/local-products/balisong/). *Taal Heritage Town*. Archived (https://web.archive.org/web/20190413234827/http://taal.com.ph/index.php/local-products/balisong/) from the original on April 13, 2019.
7. Imada, Jeff (1984), *The Balisong Manual*, California: Unique Publications, p. 130, ISBN 0-86568-102-3
8. Shelley Anne Martinez (November 15, 2015). "Balisong Art by Master Ona" (https://journeyunderblueskies.wordpress.com/2015/11/15/balisong-art-by-master-ona/). *Journey Under Blue Skies*. Retrieved 7 January 2019.
9. Brown, Trevor (October 22, 2018). "Butterfly Knife History" (https://blademag.com/knife-history/history-the-disputed-origins-of-the-butterfly-knife). *Blade Magazine*. Retrieved 7 January 2019.
10. Morel, Guillaume. "Between myth & reality" (http://www.balisong.net/en/history.htm). *Balisong.net*. Retrieved 7 January 2019.
11. "The History of the Balisong: What little I know of it" (http://www.balisongcollector.com/history.html). *The Balisong Collector's Page*. Retrieved 7 January 2019.
12. "UK Offensive Weapons Act 1988" (http://www.blades-uk.com/1988ACT.php). Retrieved 2006-11-05.

13. Equality, The Department of Justice and. "Frequently Asked Questions" (http://www.justice.ie/en/J ELR/Pages/FAQ). *www.justice.ie*.

14. (eISB), electronic Irish Statute Book. "electronic Irish Statute Book (eISB)" (http://www.irishstatute book.ie/eli/1991/si/66/made/en/print). *www.irishstatutebook.ie*.

15. "PeiliĹł civilinÄ—s apyvartos teisinis reglamentavimas" (http://knives.lt/gskistatymas). knives.lt. Retrieved 2013-12-21.

16. "Apie asociacijÄ…, peilius ir viskÄ…, kas su tuo susijÄ™..." (http://knives.lt/index.php) knives.lt. Retrieved 2013-12-21.

17. "California Knife and Balisong Law" (http://www.knifeup.com/california-knife-and-balisong-law/). *knifeup.com*. 2013-01-07. Retrieved 28 February 2019.

18. "Deadly weapons and knives" (https://web.archive.org/web/20120317105634/http://www.honolulu pd.org/info/gun134-51-52-53.htm). Honolulu Police Department. Archived from the original (http:// www.honolulupd.org/info/gun134-51-52-53.htm) on 2012-03-17.

19. "Kansas Knife Laws" (http://www.knifeup.com/kansas-knife-laws/). knifeup.com. 2013-02-19. Retrieved 2013-02-12.

20. "Kansas Comprehensive Knife Rights Act" (http://www.kslegislature.org/li/b2013_14/measures/do cuments/hb2033_enrolled.pdf) (PDF). 2013-06-05. Retrieved 2013-06-26.

21. "Illinois Knife Law - KnifeUp" (http://www.knifeup.com/illinois-knife-law/). *www.knifeup.com*.

22. "Indiana Knife Laws - KnifeUp" (http://www.knifeup.com/indiana-knife-laws/). *www.knifeup.com*.

23. "Massachusetts Knife Law | KnifeUp" (http://www.knifeup.com/massachusetts-knife-law/). *www.knifeup.com*. Retrieved 2016-11-07.

24. State of New Mexico v. Riddall (https://www.courtlistener.com/opinion/1120804/state-v-riddall/), 112 N.M. 78, 811 P.2d 576 (N.M. App. 1991).

25. NMSA (https://law.justia.com/codes/new-mexico/2011/chapter30/article7/section30-7-8/) 1978, Section 30-7-8.

26. "Casetext" (https://casetext.com/case/people-v-zuniga-4). *casetext.com*.

27. Welty, Jeff (2015-02-23). "Knives and the Right to Bear Arms" (https://nccriminallaw.sog.unc.edu/k nives-and-the-right-to-bear-arms/). *North Carolina Criminal Law*. Retrieved 2017-03-22.

28. "ORS 166.240 – Carrying of concealed weapons – 2011 Oregon Revised Statutes" (https://www.o regonlaws.org/ors/166.240). Oregonlaws.org. 2012-03-25. Retrieved 2013-12-21.

29. "Texas Legislature Online" (http://www.legis.state.tx.us/BillLookup/History.aspx?LegSess=83R&Bil l=HB1862).

30. *le.utah.gov* https://le.utah.gov/xcode/Title76/Chapter10/76-10-S503.html (https://le.utah.gov/xcod e/Title76/Chapter10/76-10-S503.html). Retrieved 2019-10-25. Missing or empty |title= (help)

31. Thompson v. Commonwealth (https://casetext.com/case/thompson-v-commonwealth-18), 277 Va. 280, 673 S.E.2d 473 (2009)

32. "RCW 9.41.250 Dangerous weapons—Penalty" (http://apps.leg.wa.gov/rcw/default.aspx?cite=9.4 1.250).

33. https://wetten.overheid.nl/jci1.3:c:BWBR0008804&paragraaf=1&artikel=2&z=2020-01- 01&g=2020-01-01

34. "Forskrift om skytevåpen, våpendeler og am § 9.Forbud mot våpen eller lignende som ikke faller innenfor våpenloven § 1" (https://lovdata.no/dokument/SF/forskrift/2009-06-25-904/KAPITTEL_2- 1#§9).

# External links

🔉 Media related to Balisongs at Wikimedia Commons

Retrieved from "https://en.wikipedia.org/w/index.php?title=Butterfly_knife&oldid=934224758"

**This page was last edited on 5 January 2020, at 11:18 (UTC).**

Text is available under the Creative Commons Attribution-ShareAlike License; additional terms may apply. By using this site, you agree to the Terms of Use and Privacy Policy. Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a non-profit organization.

SER 8

Sign in / Join




**Assure You're**

KNIFEMAKING   COLLECTING   HISTORY ▾   TV/MOVIE ▾   BLADE SHOW ▾   SUBSCRIBE ▾   FREE ▾   SHOP ▾

Home › Knife History › History: The Disputed Origins of the Butterfly Knife

# History: The Disputed Origins of the Butterfly Knife

By **Trevor Brown** · October 22, 2018

👁 13150   💬 0

👍 Like 76



*Authentic Filipino balisongs (Image from Balisinger on bladeforums.com)*





## Butterfly Knife History

Butterfly knives, also known as balisongs, are one of the most popular knife styles today. They consist of a blade with two handles that rotate around a pivot and wrap around the blade in the closed position. That much is agreed upon. The origin of butterfly knives is still up for debate.

## Where Were Butterfly Knives Invented?

Butterfly knives have a rich history, though much of it has been left up to speculation. Walk up to a knife enthusiast and ask, "Where did butterfly knives originate?" and you may get two very different answers.

Fuzzy historical records and well worn legends are to blame. The two main countries of











Blade Email Newsletter


EXHIBIT G   SER 9

focus are France and the Philippines. Each has evidence and supporters.

## One Version: Butterfly Knives Came from the Philippines



*Authentic Filipino balisongs (Image from Balislinger on bladeforums.com)*

The Philippines is often cited as the birthplace of butterfly knives, where "balisong" is a more appropriate term. Legend has it that the balisong knife has roots that go back to around 800 AD. This style of knife could be opened quickly with one hand and easily used as a weapon. It proved a common choice for self-defense and utility uses.

A rich balisong tradition has been present in the Philippines for more than a century. Countless stands and stores sell handmade butterfly knives today, and Filipino province of Batangas and the area of Balisong in Taal are known for the blades.



laws map (2020 edition)

× Know Your State's Gun Laws

OPEN

At the very least, the word "balisong" is widely recognized to have come from there. That said, the lack of physical evidence to support a Filipino origin fuels the argument.

## Another Version: Butterfly Knives Came from France



*A vintage example of the Pied Du Roi. (Image from balisong.net)*

Another claim is that the butterfly knife was invented in France between 1500 and 1700. The reason for this is the "Pied Du Roi," which means "foot of the king" and is a French measurement tool that dates to the 1700s. The "Pied Du Roi" greatly resembles a butterfly knife. This tool has been pictured with measurement handles and a blade that folds out on one end. It looks like a butterfly knife, but could it be considered the first one ever made?

Proponents of the French origin argue that Spain, allied with France at the time, adopted the butterfly knife in their tasks and eventually took it to the Philippines as sailors sailed to different countries. Sounds reasonable, but hasn't been proven.

Another supporting argument for the French is that these knives comes from Germany and England, where some butterflies can trace back to prior to 1900. I recently came across a collector's piece made in England with markings dating to 1873. This rules out the

**SER 10**

butterfly knife originating in the early 1900s in the Philippines, but as I said earlier, it has also been claimed to be influenced from similar Filipino knife models as early as 800 AD.

## So Where Did Butterfly Knives Actually Come From?



Due to the popularity of balisongs in the Philippines, it isn't surprising to suspect it started there. The lore passed down from generation to generation also support this idea.

Travel with peace of mind. Free state carry laws map (2020 edition)

USCCA

Know Your State's Gun Laws

**OPEN**

On the other hand, France has pictures and documentation of a measurement device that resembles a butterfly knife and dates back hundreds of years. However, that measurement device likely wasn't used for self-defense, flipping, or other tasks common to butterfly knives today. Could it be considered the same thing? Hard to tell.

Both sides have great arguments. More information is needed to finally determine this unsolved piece of butterfly knife history.

## Butterfly Knives Today

Regardless of history, butterfly knives are rising in popularity due to the fun of "flipping." Flipping involves tossing butterfly knives open to perform all kinds of tricks. Whether it's the danger of it, the community, the collectible appeal, or anything else, there's no doubt flippers are mesmerizing to watch.

Take this Butterfly Knife Showdown from Blade Show 2018 for example.



## Keep Reading:

- Lockback Folders Are 500 Years Old?
- Knives the Vikings Used: The Seax
- PHOTOS: 15 Greatest Bob Loveless Knives of All-Time
- "He Made 'em Famous" – A Tribute to Ken Warner
- (April Fools' Day) Bowie Knife From 1827 Sandbar Fight Found

NEXT STEP: Download Your Free KNIFE GUIDE Issue of BLADE Magazine



SER 11

BLADE's annual Knife Guide Issue features the newest knives and sharpeners, plus knife and axe reviews, knife sheaths, kit knives and a Knife Industry Directory. Get your FREE digital PDF instant download of the annual Knife Guide. No, really!

**Click Here to Get Your Free Issue**

TAGS   Knife History



 Like 76

 Share
  

Previous article
3 Great A.G. Russell Knives

Next article
Dietmar Pohl To Make Two Knives for Rambo 5: Last Blood





### Trevor Brown

https://www.bladehq.com/

Trevor works for Blade HQ and loves all things sharp and pointy. You can find him at the gun range, on the lake or doing his best to stay out of trouble in the great outdoors.

**RELATED ARTICLES**   MORE FROM AUTHOR



Lockback Folders Are 500 Years Old?



Knives the Vikings Used: The Seax



PHOTOS: 15 Greatest Bob Loveless Knives of All-Time

**LEAVE A REPLY**

Log in to leave a comment





About Us   Subscribe   Advertise   Customer Service   BLADE Show
Copyright © 2020 Caribou Media Group | All rights reserved. | Privacy

HB 1496 HD 1 SD 1 CD 1

RELATING TO DEADLY OR DANGEROUS WEAPONS

By Representative(s) SAY (BR)

Companion Bill: SB 932

Subjects: Prosecutors

Keywords: CRIMES AND CRIMINAL PROCEEDINGS, FIREARMS AND WEAPONS, IMPORTS AND
EXPORTS, PENAL CODE, PUBLIC SAFETY

Report Title: Dangerous; Deadly Weapons

Description: Prohibits manufacture, sale, transfer, transport or possession
of butterfly knives. (HB1496 CD1)

| | | |
|---|---|---|
| 1-28-99 | H | Introduced and passed First Reading |
| 2- 1-99 | H | Referred to the committee on JHA, referral sheet 7 |
| 2- 3-99 | H | Bill scheduled to be heard by JHA on Friday, 02-05-99 at 2:00 P.M. in House conference room 325. |
| 2- 5-99 | H | The committee(s) recommends that the measure be deferred. |
| 2-10-99 | H | Bill scheduled for decision making on Friday, 02-12-99 at 3:05 P.M. in House conference room 325. |
| 2-12-99 | H | The committee on JHA recommends that the measure be PASSED, WITH AMENDMENTS. |
| 2-12-99 | H | The votes in JHA were as follows:12 Ayes: Rep.(s) Oshiro, P., Hamakawa, Cachola, Garcia, Hiraki, Kaho`ohalahala, Lee, Takumi, Auwae, Pendleton, Thielen, Whalen; Ayes with reservations: Rep.(s) ; none Noes: Rep.(s) ; and 3 Excused: Rep.(s) Chang, Morita, Yoshinaga |
| 2-19-99 | H | Reported from the committee on JHA (Stand. Com. Rep. No. 731) as amended in (HD 1), recommending passage on Second Reading and placement on the calendar for Third Reading |
| 2-19-99 | H | Passed Second Reading as amended in (HD 1); placed on the calendar for Third Reading with Representative(s) none voting no and Representative(s) Arakaki, Hiraki, Kahikina, Kaho`ohalahala, Morita, Say, Takamine, Meyer excused |
| 2-22-99 | H | Deferred one day |
| 2-23-99 | H | Passed Third Reading as amended in (HD 1) |
| 2-23-99 | H | The vote was as follows:  43 aye(s), with none voting no and Representative(s) Ahu Isa, Cachola, Hiraki, Morihara, Morita, Oshiro, M., Saiki, Suzuki excused |
| 2-23-99 | H | Transmitted to Senate |
| 3- 3-99 | S | Received from House (Hse. Com. No. 27) |
| 3- 3-99 | S | Passed First Reading and referred to JDC |
| 3-10-99 | S | Bill scheduled to be heard by JDC on 03-16-99 at 9:00 a.m. in conference room 229 |


EXHIBIT _E_

SOH 00001
SER 13

| | | |
|---|---|---|
| 3-16-99 | S | The measure is deferred until 03-19-99 at 9:00 a.m. in conference room 229. |
| 3-19-99 | S | The measure is deferred until 03-25-99 at 9:00 a.m. in conference room 229. |
| 3-25-99 | S | The committee on JDC recommends that the measure be PASSED, WITH AMENDMENTS. |
| 3-25-99 | S | The votes in JDC were as follows: 5 Ayes: Senator(s) Chumbley, Matsunaga, Chun Oakland, Ihara, Sakamoto; Ayes with reservations: Senator(s) ; none Noes: Senator(s) ; and 2 Excused: Senator(s) Tanaka, Anderson |
| 4- 6-99 | S | Reported from JDC (Stand. Com. Rep. No. 1389) with recommendation of passage on Second Reading, as amended (SD 1) and placement on the calendar for Third Reading |
| 4- 6-99 | S | Report adopted; Passed Second Reading, as amended (SD 1) |
| 4- 6-99 | S | 48 hours notice |
| 4- 8-99 | S | Passed Third Reading, as amended (SD 1). Ayes, 24. Noes, none (). Excused, 1 (Tanaka). |
| 4- 8-99 | S | Transmitted to House |
| 4- 8-99 | H | Received from Senate (Sen. Com. No. 478) in amended form (SD 1) |
| 4- 9-99 | H | House disagrees with Senate amendment(s) |
| 4-13-99 | S | Received notice of disagreement on 04-09-99, (Hse. Com. No. 459) |
| 4-17-99 | H | House conferees appointed: Oshiro, P. Chairman; Hamakawa, Kaho'ohalahala, Lee, Whalen |
| 4-19-99 | S | Received notice of appointment of House conferees (Hse. Com. No. 618). |
| 4-19-99 | S | Senate Conferees appointed: Chumbley, Matsunaga, (Co-) Chair; Tanaka, Anderson |
| 4-19-99 | H | Received notice of Senate conferees (Sen. Com. No. 743) |
| 4-22-99 | H | Bill scheduled for Conference Committee Meeting on Friday, 04-23-99 at 2:00 P.M. in conference room 325. |
| 4-29-99 | H | Reported from Conference Committee (Conf. Com. Rep. No. 88) as amended in (CD 1) |
| 4-29-99 | S | Reported from Conf. Com. as amended CD 1 (Conf. Com. Rep. No. 88) |
| 4-29-99 | S | 48 Hrs. Notice (as amended CD 1) |
| 4-30-99 | H | Forty-eight (48) hours notice 05-04-99 |
| 5- 4-99 | S | Passed Final Reading, as amended (CD 1). Ayes, 25. Noes, none. Excused, none. |
| 5- 4-99 | H | Passed Final Reading as amended in (CD 1) |
| 5- 4-99 | H | The vote was as follows: 45 aye(s), with none voting no and Representative(s) Hiraki, Morihara, Okamura, Suzuki, Takumi, Yoshinaga excused |
| 5- 5-99 | H | Received notice of Final Reading (Sen. Com. No. 792) |
| 5- 4-99 | S | Received notice of passage on Final Reading in House (Hse. Com. No. 746). |
| 5- 7-99 | H | Transmitted to Governor |
| 7- 7-99 | S | Act 285, 07-06-99, (Gov. Msg. No. 393) |
| 7- 7-99 | H | Act 285, on 07-06-99 (Gov. Msg. No. 260) |

SOH 00002
SER 14

**REPORT TITLE:**
Dangerous; Deadly Weapons

**DESCRIPTION:**
Prohibits manufacture, sale, or transfer of deadly or dangerous weapons. Combines existing provisions relating to deadly and dangerous weapons in new section and makes conforming amendments.

SOH 00003
SER 15

HOUSE OF REPRESENTATIVES        H.B. NO.1496
TWENTIETH LEGISLATURE, 1999
STATE OF HAWAII

_____
_____

A  BILL  FOR  AN  ACT

RELATING TO DEADLY OR DANGEROUS WEAPONS.

**BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF HAWAII:**

1      SECTION 1.  The purpose of this Act is to prohibit the

2 manufacture, sale, transfer, or possession of deadly or dangerous

3 weapons such as dirks, daggers, butterfly knives, blackjacks,

4 slug shots, billy clubs, or metal knuckles.  Currently, unless

5 authorized by law, a person may not carry concealed on the

6 person, or be armed with, a deadly or dangerous weapon or have

7 the deadly or dangerous weapon within a vehicle used or occupied

8 by the person.  However, current law does not prohibit the

9 manufacture, sale, or transfer of deadly or dangerous weapons.

10 Given that deadly or dangerous weapons are defined as instruments

11 closely associated with criminal activity and that their sole

12 design and purpose is to inflict bodily injury or death upon

13 another human being, there appears sufficient reason to also

14 prohibit the manufacture, sale, or transfer of such weapons.

SOH 00004
SER 16

15     In addition, this Act also incorporates existing

16 prohibitions against other dangerous weapons such as electric

17 guns and switchblades.  Presently, the prohibition against the

18 manufacture, sale, transfer, possession, or transportation of

19 switchblade knives is contained in a separate statutory section.


Page 2

                              H.B. NO.1496


1     Furthermore, this Act incorporates current statutory

2 prohibitions against the possession and sale of electric guns and

3 makes it a class C felony to knowingly possess or intentionally

4 use or threaten to use the electric gun while engaged in the

5 commission of a crime.

6     Lastly, although current statutory provisions include

7 pistols in the prohibitions against:  carrying the weapon

8 concealed on the person or within any vehicle used or occupied by

9 the person; or being armed with the weapon, pistols are not

10 enumerated in the prohibitions proposed in this Act because the

11 carrying or possession of firearms, which include pistols, is

12 regulated under other existing statutory sections.

13     SECTION 2.  Chapter 134, Hawaii Revised Statutes, is amended

14 by adding a new section to be appropriately designated and to

15 read as follows:

16     "**§134-     Deadly or dangerous weapons; prohibitions;**

SOH 00005
SER 17

17 <u>penalties.   (a)   Any person, who knowingly manufactures, sells,</u>

18 <u>transfers, possesses, or transports in the State any switchblade</u>

19 <u>knife, electric gun, dirk, dagger, butterfly knife, blackjack,</u>

20 <u>slug shot, billy, metal knuckles, or other deadly or dangerous</u>

21 <u>weapon shall be guilty of a misdemeanor.</u>

22     <u>(b)   Whoever knowingly possesses or intentionally uses or</u>

23 <u>threatens to use a deadly or dangerous weapon while engaged in</u>

Page 3

H.B. NO.1496

1 <u>the commission of a crime shall be guilty of a class C felony.</u>

2     <u>(c)   For the purposes of this section, a switchblade knife</u>

3 <u>is:</u>

4     <u>(1)   Any knife having a blade that opens automatically by</u>

5           <u>hand pressure applied to a button or other device in</u>

6           <u>the handle of the knife; or</u>

7     <u>(2)   Any knife having a blade that opens automatically by</u>

8           <u>operation of inertia, gravity, or both.</u>

9     <u>(d)   In a prosecution under this section for the</u>

10 <u>manufacture, sale, transfer, possession, or transportation of an</u>

11 <u>electric gun, it shall not be a defense that the person is a</u>

12 <u>licensed manufacturer, licensed importer, or licensed dealer of</u>

13 <u>electric guns.</u>

14     <u>(e)   Any deadly or dangerous weapon in violation of</u>

SOH 00006
SER 18

15 <u>subsection (a) or (b) shall be confiscated and disposed of in</u>

16 <u>accordance with section 134-12.5.</u>"

17    SECTION 3.  Section 134-17, Hawaii Revised Statutes, is

18 amended by amending subsection (c) to read as follows:

19    "(c)  Any person who violates section 134-2, 134-4, 134-10,

20 <u>or</u> 134-15[, or 134-16(a)] shall be guilty of a misdemeanor.  Any

21 person who violates section 134-3(b) shall be guilty of a petty

22 misdemeanor and the firearm shall be confiscated as contraband

23 and disposed of, if the firearm is not registered within five

Page 4
                                H.B. NO.1496

 1 days of the person receiving notice of the violation."

 2    SECTION 4.  Section 134-16, Hawaii Revised Statutes, is

 3 repealed.

 4    ["§134-16  Restriction on possession, sale, gift, or

 5 delivery of electric guns.(a)  It shall be unlawful for any

 6 person, including a licensed manufacturer, licensed importer, or

 7 licensed dealer, to possess, offer for sale, hold for sale, sell,

 8 give, lend, or deliver any electric gun.

 9    (b)  Any electric gun in violation of subsection (a) shall

10 be confiscated and disposed of by the chief of police."]

11    SECTION 5.  Section 134-51, Hawaii Revised Statutes, is

12 repealed.

SOH 00007
SER 19

13    ["§134-51  Deadly weapons; prohibitions; penalty.(a)  Any
14 person, not authorized by law, who carries concealed upon the
15 person's self or within any vehicle used or occupied by the
16 person or who is found armed with any dirk, dagger, butterfly
17 knife, blackjack, slug shot, billy, metal knuckles, pistol, or
18 other deadly or dangerous weapon shall be guilty of a misdemeanor
19 and may be immediately arrested without warrant by any sheriff,
20 police officer, or other officer or person.  Any weapon, above
21 enumerated, upon conviction of the one carrying or possessing it
22 under this section, shall be summarily destroyed by the chief of
23 police or sheriff.

Page 5

H.B. NO.1496

1    (b)  Whoever knowingly possesses or intentionally uses or
2 threatens to use a deadly or dangerous weapon while engaged in
3 the commission of a crime shall be guilty of a class C felony."]
4    SECTION 6.  Section 134-52, Hawaii Revised Statutes, is
5 repealed.
6    ["§134-52  Switchblade knives; prohibitions; penalty.(a)
7 Whoever knowingly manufactures, sells, transfers, possesses, or
8 transports in the State any switchblade knife, being any knife
9 having a blade which opens automatically (1) by hand pressure
10 applied to a button or other device in the handle of the knife,

SOH 00008
SER 20

11 or (2) by operation of inertia, gravity, or both, shall be guilty

12 of a misdemeanor.

13     (b)  Whoever knowingly possesses or intentionally uses or

14 threatens to use a switchblade knife while engaged in the

15 commission of a crime shall be guilty of a class C felony."]

16     SECTION 7.  Statutory material to be repealed is bracketed.

17 New statutory material is underscored.

18     SECTION 8.  This Act shall take effect upon its approval.

19

20                         INTRODUCED BY:_____

SOH 00009
SER 21

   2/3/99 4:30 PM 1/1

**HB 1496 Committee on Judiciary and Hawaiian Affairs - OPPOSED (as written)**

Collectors of militaria in the state need to have a distinction drawn between dirks and daggers as defined by common dictionaries and collectible military artifacts, such as bayonets, issued knives for troops, ceremonial decorative knives denoting rank, etc. The previous statute language made the distinction in that intent to use the dirk or dagger by carrying it concealed or using it in a crime would given cause for an arrest, but not mere possession, such as in a collection of militaria or at an educational display or exhibition of militaria, such as the Hawaii Historic Arm Association semiannual show. Such collectible artifacts have great value and are of historic and educational interest, and should be made distinct from the class of deadly weapons targeted by this proposed change to the statute. Failure to do so may leave law enforcement officers confused about who should be the intended subjects of the provisions of the law and could well make thousands of militaria owners in the state instant criminals upon passage. Surely this is not the intent of the legislature.

Brian Isaacson, 1659 Kanapuu Drive, Kailua, HI 96734, 263-2189

SOH 00010
SER 22

(

Testimony of Ronette M. Kawakami
Deputy Public Defender, on behalf of
the Office of the Public Defender, State of Hawai'i
to the House Committee on Judiciary and Hawaiian Affairs

February 5, 1999

H. B. NO. 1496:  RELATING TO DEADLY OR DANGEROUS WEAPONS.

Chairperson Oshiro and Members of the Committee:

This bill establishes a misdemeanor offense for any person to knowingly
manufacture, sell, transfer, possess or transport in the State any switchblade knife,
electric gun, dirk, dagger, butterfly knife, black jack, slug shot, billy, metal
knuckles, or other deadly or dangerous weapon.

The first observation about this bill is that it creates a complete prohibition
to possess, for example, a billy, black jack and metal knuckles.  Currently, only
switchblades and electric guns are absolutely prohibited.  Many of the enumerated
prohibited items in this bill are widely available.  Some are likely to be in
collector's personal homes, others may be appropriately used by the public for
self-defense.  It seems rather bizarre that a billy would be absolutely prohibited
by law in all circumstances, and yet far more dangerous items, such as firearms,
are not illegal per se.  One must also wonder how a billy is more dangerous than
a baseball bat.

Current law prohibits deadly or dangerous weapons to be carried concealed
on a person or within any vehicle.  The reasonable focus of the current statute is
to criminalize their possession in locations where the instruments may be used in
a confrontation between persons.  We believe that the current law is better
tailored to addressing the potentiality of harm that these instruments create.  An
absolute prohibition is not a balanced approach to any problem that the current
law is failing to address.

We note that the overbreadth of this legislation is reflected in the various
types of activities that are prohibited: manufactures, sells, transfers, possesses,
or transports in the State.  Since "possession" is prohibited in the bill,
manufacture, sell, transfer and transport are redundant terms, as any of these
latter activities would invariably involve possession.

Thank you for the opportunity to comment on this bill.

SOH 00011
SER 23



DEPARTMENT OF THE PROSECUTING ATTORNEY
# CITY AND COUNTY OF HONOLULU
ALII PLACE
1060 RICHARDS STREET ● HONOLULU HAWAII 96813
PHONE (808) 527 6494 ● FAX (808) 527 6831

PETER B CARLISLE
PROSECUTING ATTORNEY

THE HONORABLE PAUL OSHIRO, CHAIR
HOUSE COMMITTEE ON JUDICIARY
Twentieth State Legislature
Regular Session of 1999
State of Hawaii

February 5, 1999

RE: H.B. 1496; RELATING TO DEADLY OR DANGEROUS WEAPONS.

Chair Oshiro and members of the House Committee on Judiciary, the Department of the Prosecuting Attorney of the City and County of Honolulu submits the following testimony in support of House Bill 1496.

The purpose of this bill is to prohibit the manufacture, sale or transfer of deadly or dangerous weapons to anyone and combines the current provisions of section 134-51, relating to deadly or dangerous weapons, section 134-52, relating to switchblades, and 124-16 relating to electric guns, into a new section.

We are in support of the intent of this bill. Recently, it has been publicized that certain vendors at local flea markets and in Waikiki have been selling butterfly knives to very young minors. Given that the knives are being sold openly, the sales are apparently not illegal since section 134-51 prohibits the concealed carrying of such knives. However, the possession of the butterfly knife becomes illegal when the minor purchases the knife and places it in his or her pocket. Given that deadly or dangerous weapons have been defined as instruments closely associated with criminal activity and whose sole design and purpose is to inflict bodily injury or death upon another human being. We believe there is sufficient justification to prohibit the manufacture, sale or transfer of such weapons to <u>anyone</u>, not just minors.

For this reason, we support House Bill 1496 and respectfully request your favorable consideration of the bill.

Thank you for the opportunity to testify.

SOH 00012
SER 24

STAND. COM. REP. NO. 731

Honolulu, Hawaii
, 1999

RE: H.B. No. 1496
H.D. 1


Honorable Calvin K.Y. Say
Speaker, House of Representatives
Twentieth State Legislature
Regular Session of 1999
State of Hawaii

Sir:

Your Committee on Judiciary and Hawaiian Affairs, to which
was referred H.B. No. 1496 entitled:

"A BILL FOR AN ACT RELATING TO DEADLY OR DANGEROUS WEAPONS,"

begs leave to report as follows:

The purpose of this bill is to:

1.   Prohibit the manufacture, sale, transfer, or possession
     of deadly or dangerous weapons such as dirks, daggers,
     butterfly knives, blackjacks, slug shots, billy clubs,
     electric guns or metal knuckles; and

2.   Remove pistols, which are presently regulated under
     other existing statutory sections, from the current
     statutory provisions that prohibit the carrying of the
     weapon concealed on the person or within any vehicle
     used or occupied by the person.

Your Committee received testimony in support of this bill
from the Honolulu Police Department, the Department of the
Prosecuting Attorney for the City and County of Honolulu, and
concerned individuals.  Comments were received from the Office of
the Public Defender.

Your Committee finds that particular attention needs to be
given to butterfly knives by setting them apart from other deadly
or dangerous weapons.

SOH 00013
SER 25

STAND. COM. REP. NO. 731
Page 2

    Your Committee has amended this bill by deleting the
substance of the bill and inserting the following provisions to:

    1.  Create a misdemeanor offense for the knowing
        manufacture, sale, transfer, possession, or transport
        of a butterfly knife;

    2.  Create a class C felony for the knowing or intentional
        use or threatened use of a butterfly knife while
        engaged in the commission of a crime; and

    3.  Delete "butterfly knife" from the prohibition against
        carrying deadly or dangerous weapons concealed upon a
        person's self or within a vehicle.

    As affirmed by the record of votes of the members of your
Committee on Judiciary and Hawaiian Affairs that is attached to
this report, your Committee is in accord with the intent and
purpose of H.B. No. 1496, as amended herein, and recommends that
it pass Second Reading in the form attached hereto as H.B. No.
1496, H.D. 1, and be placed on the calendar for Third Reading.

                          Respectfully submitted on
                          behalf of the members of the
                          Committee on Judiciary &
                          Hawaiian Affairs,


                          _____
                          PAUL T. OSHIRO, Chair

SOH 00014
SER 26

SOH 00015
SER 27

**REPORT TITLE:**
Dangerous; Deadly Weapons

**DESCRIPTION:**
Prohibits manufacture, sale, transfer, transport or possession of
butterfly knives.  (HB1496 HD1)

SOH 00016
SER 28

1496
HOUSE OF REPRESENTATIVES          H.B. NO.          H.D.1
TWENTIETH LEGISLATURE, 1999
STATE OF HAWAII

_____
_____

A  BILL  FOR  AN  ACT

RELATING TO DEADLY OR DANGEROUS WEAPONS.


**BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF HAWAII:**

1      SECTION 1.  Chapter 134, Hawaii Revised Statutes, is amended

2 by adding a new section to be appropriately designated and to

3 read as follows:

4      "§134-      **Butterfly knives; prohibitions; penalty.**  (a)

5 Whoever knowingly manufactures, sells, transfers, possesses, or

6 transports in the State any butterfly knife, shall be guilty of a

7 misdemeanor.

8      (b)   Whoever knowingly possesses or intentionally uses or

9 threatens to use a butterfly knife while engaged in the

10 commission of a crime shall be guilty of a class C felony."

11      SECTION 2.  Section 134-51, Hawaii Revised Statutes, is

12 amended to read as follows:

13      "§134-51 **Deadly weapons; prohibitions; penalty.**  (a)  Any

14 person, not authorized by law, who carries concealed upon the

15 person's self or within any vehicle used or occupied by the

16 person or who is found armed with any dirk, dagger, [butterfly

17 knife,] blackjack, slug shot, billy, metal knuckles, pistol, or

18 other deadly or dangerous weapon shall be guilty of a misdemeanor

SOH 00017
SER 29

19 and may be immediately arrested without warrant by any sheriff,

20 police officer, or other officer or person.  Any weapon, above

Page 2                                                    1496
                              H.B. NO.        H.D.1


1 enumerated, upon conviction of the one carrying or possessing it

2 under this section, shall be summarily destroyed by the chief of

3 police or sheriff.

4      (b)  Whoever knowingly possesses or intentionally uses or

5 threatens to use a deadly or dangerous weapon while engaged in

6 the commission of a crime shall be guilty of a class C felony."

7      SECTION 3.  This Act does not affect rights and duties that

8 matured, penalties that were incurred, and proceedings that were

9 begun before its effective date.

10      SECTION 4.  Statutory material to be repealed is bracketed.

11 New statutory material is underscored.

12      SECTION 5.  This Act shall take effect upon its approval.

SOH 00018
SER 30

SOH 00019
SER 31

   

**HB 1496 HD1 Senate Judiciary Committee - Support HD1**

Collectors of militaria in the state and state law enforcement officers need to have a
distinction drawn between Butterfly knives and collectible military artifacts, (which may
be dirks and daggers as defined by common dictionaries) such as bayonets, issued
knives for troops, ceremonial decorative knives denoting rank, etc. The original statute
language made the distinction in that intent to use the dirk or dagger by carrying it
concealed or using it in a crime would given cause for an arrest, but not mere
possession, such as in a collection of militaria or at an educational display or
exhibition of militaria, such as the  Hawaii Historic Arm Association semiannual show.
Such collectible artifacts have great value and are of historic and educational interest,
and should be made distinct from the class of deadly weapons and associated
criminal action targeted by this redraft of the original statute. Failure to do so may leave
law enforcement officers confused about who should be the intended subjects of the
provisions of the law and could well make thousands of militaria owners in the state
instant criminals upon passage. Surely it is not the intent of the legislature to increase
the criminal population by criminalizing a legitimate and innocent interest in the
artifacts which have defined our history as personified by the state's militaria
collectors, dealers, and historians. Collectors support laws which seek to punish
criminal intent and activity, and urge you to retain the language limiting the change of
status to butterfly knives of HB1496 HD1. In actual fact, mere possession or
manufacture of any weapon is never a problem, but the criminal use of anything is.

Brian Isaacson, 1659 Kanapuu Drive, Kailua, HI 96734, 263-2189

SOH 00020
SER 32

(

Testimony of Ronette M. Kawakami
Deputy Public Defender, on behalf of
the Office of the Public Defender, State of Hawai'i
to the Senate Committee on Judiciary

March 16, 1999

H. B. NO. 1496, H.D. 1:  RELATING TO DEADLY OR DANGEROUS
WEAPONS.

Chairpersons Chumbley and Matsunaga and Members of the Committee:

This bill establishes a misdemeanor offense for any person to knowingly
manufacture, sell, transfer, possess or transport in the State any butterfly knife
and proposes to impose a Class C felony on any person who possesses or uses a
butterfly knife while engaged in the commission of a crime.  In essence, the
statutory provisions proposed by this bill mimics the current statutory provisions
involving switchblade knives codified in HRS § 134-52.

We question the over-inclusiveness of this bill.  This bill will make butterfly
knives illegal per se, without any legal method of being in possession of such
devices.  Thus, the laws on these knives will be more restrictive than our laws
on possession of firearms which may be possessed subject to permit and other
licensing requirements.

Butterfly knives are commonly thought of having no other purpose but to
inflict bodily injury or death.  However, butterfly knives or "Balisong" are an
integral part of the filipino martial art called Escrima.  Like Karate, Aikido, or
Tae Kwon Do, Escrima is a martial art that developed and arose out of the
country's unique culture.  In the case of the Philippines, the blade arts became an
essential part of escrima specifically because the average filipino man needed to
carry a knife for hunting, harvesting and general self-defense.   Similarly,
Indonesia also has a strong tradition of "blade arts."   Escrima and Balisong
practice were endemic through-out the Philippine Islands even before colonization
first by the Spanish, and later by the U.S..  Escrima schools here in Hawaii teach
Balisong as a legitimate martial art.  Martial arts instructors and enthusiasts should
be allowed to continue the teaching of a cultural heritage.

Butterfly knives are already prohibited from being carried concealed on the
person or within any vehicle.  HRS § 134-51(a).  Such conduct is penalized as a
misdemeanor.  Moreover, if a person uses or is found in possession of a butterfly
knife in the commission of a crime, the person is punished with a Class C felony
penalty.  HRS § 134-51(b).  Thus, penal provisions are in place to prevent and
prohibit the use of butterfly knifes in a dangerous manner.

The scope of this legislation should be narrowed to addressing the improper

manufacture and sale of such knives. An absolute prohibition of these knives will impact collectors and other persons who use them legally. The current law has sufficient penal prohibitions concerning butterfly knives, such that the law may be refined if necessary, rather than implementing a wholesale prohibition. We oppose the passage of this bill in its current form.

Thank you for the opportunity to comment on this bill.

SOH 00022
SER 34

DEPARTMENT OF THE PROSECUTING ATTORNEY

# CITY AND COUNTY OF HONOLULU

ALII PLACE
1060 RICHARDS STREET ■ HONOLULU, HAWAII 96813
PHONE (808) 527-8494 ■ FAX (808) 527-8831

PETER B. CARLISLE
PROSECUTING ATTORNEY



THE HONORABLE AVERY CHUMBLEY, CHAIR
THE HONORABLE MATTHEW MATSUNAGA, CHAIR
SENATE COMMITTEE ON JUDICIARY
Twentieth State Legislature
Regular Session of 1999
State of Hawaii


March 16, 1999


RE:  H.B. 1496, H.D. 1;  RELATING TO DEADLY OR DANGEROUS WEAPONS.


Chair Chumbley, Chair Matsunaga and members of the Senate Committee on Judiciary, the Department of the Prosecuting Attorney of the City and County of Honolulu submits the following testimony in support of House Bill 1496, H.D. 1.

The purpose of this bill is to add a new section to chapter 134.  The new section would make it a misdemeanor offense to knowingly manufacture, sell, transfer, possess or transport a butterfly knife.  In addition, House Bill 1496, H.D. 1 makes it a class C felony to knowingly possess or intentionally use or threaten to use a butterfly knife while engaged in the commission of a crime.

We support this bill, but are suggesting an amendment. Recently, it has been publicized that certain vendors at local flea markets and in Waikiki have been selling butterfly knives to very young minors.  Given that the knives are being sold openly, the sales are apparently not illegal since section 134-51 prohibits the concealed carrying of such knives.  The possession of the butterfly knife becomes illegal when the minor purchases the knife and places it in his or her pocket.  Given that deadly or dangerous weapons have been defined as instruments closely associated with criminal activity and whose sole design and purpose is to inflict bodily injury or death upon another human being.  We believe there is sufficient justification to prohibit the manufacture, sale or transfer of such weapons to <u>anyone</u>.  However, since some of these sales are to very young minors, we are particularly concerned.  For this reason, we are asking that this bill be amended to provide that persons who knowingly or intentionally sell or transfer a

SOH 00023
SER 35

butterfly knife or switchblade knife to a minor be guilty of a class C felony.

For this reason, we support House Bill 1496 H.D. 1 with the suggested amendment and thank you for this opportunity to testify.

SOH 00024
SER 36

POLICE DEPARTMENT

# CITY AND COUNTY OF HONOLULU

801 SOUTH BERETANIA STREET
HONOLULU, HAWAII 96813 - AREA CODE (808) 529-3111
http://www.honolulupd.org

JEREMY HARRIS
MAYOR



LEE D. DONOHUE
CHIEF

WILLIAM B. CLARK
MICHAEL CARVALHO
DEPUTY CHIEFS

OUR REFERENCE   YB-LLC

March 16, 1999

The Honorable Avery B. Chumbley, Co-Chair
The Honorable Matthew M. Matsunaga, Co-Chair
  and Members
Committee on Judiciary
The Senate
State Capitol
Honolulu, Hawaii  96813

Dear Chairs Chumbley and Matsunaga and Members:

Subject:   House Bill No. 1496, H.D. 1, Relating to Deadly or Dangerous
           Weapons

I am George McKeague, Captain of the Criminal Investigation Division of the
Honolulu Police Department, City and County of Honolulu.

The Honolulu Police Department supports the intent of House Bill No. 1496,
H.D. 1, relating to deadly or dangerous weapons.

We would like to ask the Senate to include the transferring of a "butterfly
knife" to a minor as a class C felony.  Our Gang Detail has noticed an
increasing trend in minors and gang members armed with knives and daggers.
Butterfly knives are preferred as they are easy to conceal and are more
intimidating when brandished.  Currently, these items are fairly easy for
minors to obtain at swap meets and open-air markets.  By making it a class C
felony to sell or transfer butterfly knives to a minor, you will have impacted
on the accessibility of such weapons to minors.

Thank you for the opportunity to testify.

Sincerely,

GEORGE MCKEAGUE, Captain
Criminal Investigation Division

APPROVED:

LEE D. DONOHUE
Chief of Police

SOH 00025
SER 37



**LATE TESTIMONY**

March 16, 1999

The Senate
20th Legislature, Regular Session of 1999

Attention: Committee of Judiciary
Senators Chumbley and Matsunaga

Ref: HB1496

Dear Sirs,

I am providing written testimony in concern that responsible tax paying citizens of the State of Hawaii will not be allowed to own Butterfly knives or the "Balisong" as it is commonly referred to. I have studied the Filipino Martial arts for 20 years and have been an instructor for over 10 years. Our school "The Pedoy School of Escrima" was founded by the late Great Grandmaster Brauilo Pedoy in 1961 in Pearl City Hawaii. The Great Grandmaster Pedoy was recognized and awarded the certificate "Escrima Expert" by the 1976 Legislature in HR 633. Over the past 30 years our school has trained hundreds of people from all walks of life in the weapons-based Filipino Martial Arts that include the Balisong. The Balisong-butterfly knife developed in the Philippines in the 1940's has earned a reputation as a weapon of mystique, but in it's simplest form it is nothing more than any other knife in that it has a point and a cutting edge. I ask that you reconsider and withdraw the Balisong-butterfly knife as a prohibited weapon and allow those of us honest citizens to continue to use this weapon as a cultural tool as it should be. I have a copy of SB 606 and see that HB1496 is patterned after SB 606.
In SB606 the outcome was that the Balisong owner was in violation of the law by having in his or her possession a butterfly knife. I ask that you consider not taking the easy way out by merely following HB1496. Instead I hope that you will take the time to research and find a way for those of us that use the Butterfly knife as a cultural instrument can continue to do so. We advocate that **stiff penalties should be in effect for those individuals that use these or any other weapon in violent crime, but let us not destroy cultural traditions enjoyed by many because of the actions of a few. Make the criminals pay, not the citizens.** Mahalo for your time.
Sincerely,

Ron England
Sr. Chief Instr.
Pedoy School of Escrima
(808) 259-6564

SOH 00026
SER 38

STAND. COM. REP. NO. 1389

Honolulu, Hawaii
                , 1999

RE:  H.B. No. 1496
       H.D. 1
       S.D. 1


Honorable Norman Mizuguchi
President of the Senate
Twentieth State Legislature
Regular Session of 1999
State of Hawaii

Sir:

    Your Committee on Judiciary, to which was referred H.B. No.
1496, H.D. 1, entitled:

    "A BILL FOR AN ACT RELATING TO DEADLY OR DANGEROUS WEAPONS,"

begs leave to report as follows:

    The purpose of this bill, as received by your Committee, is
to:

    (1)  Create a new misdemeanor offense to knowingly
         manufacture, sell, transfer, possess or transport a
         butterfly knife;

    (2)  Create a new class C felony offense to knowingly
         possess or intentionally use or threaten to use a
         butterfly knife while engaged in the commission of a
         crime; and

    (3)  Delete "butterfly knife" from the prohibition against
         carrying deadly or dangerous weapons concealed upon a
         person's self or within a vehicle.

    Your Committee finds that certain types of knives,
particularly switchblade and butterfly knives, are associated
with gang activity.  Your Committee believes that butterfly
knives (also known as balisongs or gravity knives) appear to be
covered within the statutory definition of switchblade knives.

SOH 00027
SER 39

However, your Committee further finds that although switchblade

a

STAND. COM. REP. NO. 1389
Page 2

knives are presently illegal, stores openly sell, and minors can readily purchase, butterfly knives.

Your Committee is aware, however, that the Hawaii Supreme Court, in In the Interest of John Doe, (FC-J No. 91-55223), has held that a butterfly knife does not have a blade that opens automatically by operation of inertia, gravity, or both, and thus is not a switchblade knife under section 134-52, Hawaii Revised Statutes. The court reasoned that the legislative history of section 134-52 did not expressly indicate whether the legislature intended to include butterfly knives under this statute. Therefore, it is your Committee's intent to clarify that butterfly knives should be treated in the same manner as switchblade knives.

Testimony in support of this measure was submitted by the Department of the Prosecuting Attorney of the City and County of Honolulu, the Honolulu Police Department, and a private citizen. Testimony in opposition to this measure was submitted by the Office of the Public Defender and the Pedoy School of Escrima.

Upon further consideration, your Committee has amended this bill by:

(1) Retaining existing law, which includes "butterfly knife" in the prohibition against carrying deadly or dangerous weapons concealed upon a person's self or within a vehicle;

(2) Clarifying that butterfly knives are subject to the same prohibitions as switchblade knives; and

(3) Creating a class C felony offense for sales of such knives to minors.

As affirmed by the record of votes of the members of your Committee on Judiciary that is attached to this report, your Committee is in accord with the intent and purpose of H.B. No. 1496, H.D. 1, as amended herein, and recommends that it pass Second Reading in the form attached hereto as H.B. No. 1496, H.D. 1, S.D. 1, and be placed on the calendar for Third Reading.

SOH 00028
SER 40

a

STAND. COM. REP. NO. 1389
Page 3

Respectfully submitted on
behalf of the members of the
Committee on Judiciary,

_____

AVERY B. CHUMBLEY, Co-Chair

_____

MATTHEW M. MATSUNAGA, Co-Chair

a

SOH 00029
SER 41

SOH 00030
SER 42

**REPORT TITLE:**
Dangerous; Deadly Weapons

**DESCRIPTION:**
Makes it a class C felony to knowingly or intentionally sell or
transfer a switchblade knife or butterfly knife to a minor. (SD1)

SOH 00031
SER 43

|  |  | 1496 |
|---|---|---|
| HOUSE OF REPRESENTATIVES | H.B. NO. | H.D. 1 |
| TWENTIETH LEGISLATURE, 1999 |  | S.D. 1 |
| STATE OF HAWAII |  |  |

---

---

A  BILL  FOR  AN  ACT

RELATING TO DEADLY OR DANGEROUS WEAPONS.

**BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF HAWAII:**

1    SECTION 1.  Section 134-51, Session Laws of Hawaii, is

2 amended by amending subsection (a) to read as follows:

3    "(a)  Any person, not authorized by law, who carries

4 concealed upon the person's self or within any vehicle used or

5 occupied by the person or who is found armed with any dirk,

6 dagger, [butterfly knife,] blackjack, slug shot, billy, metal

7 knuckles, pistol, or other deadly or dangerous weapon shall be

8 guilty of a misdemeanor and may be immediately arrested without

9 warrant by any sheriff, police officer, or other officer or

10 person.  Any weapon, above enumerated, upon conviction of the one

11 carrying or possessing it under this section, shall be summarily

12 destroyed by the chief of police or sheriff."

13    SECTION 2.  Section 134-52, Hawaii Revised Statutes, is

14 amended to read as follows:

SOH 00032
SER 44

15      "§134-52  Switchblade <u>and butterfly knives</u>; prohibitions;

16 penalty.(a)  <u>For the purposes of this section, switchblade or</u>

17 <u>butterfly knife means any knife having a blade that opens</u>

18 <u>automatically or manually by:</u>

19        <u>(1)</u>  <u>Hand pressure applied to a button or other device</u>

20                <u>in the handle of the knife; or</u>

Page 2

                           H.B. NO.       1496
                                                   H.D. 1
                                                 S.D. 1

1        <u>(2)</u>  <u>Operation of hand or wrist action in conjunction</u>

2               <u>with inertia, gravity, or both.</u>

3    <u>(b)</u>  Whoever knowingly manufactures, sells, transfers,

4 possesses, or transports in the State any switchblade <u>or</u>

5 <u>butterfly</u> knife [, being any knife having a blade which opens

6 automatically (1) by hand pressure applied to a button or other

7 device in the handle of the knife, or (2) by operation of with

8 inertia, gravity, or both,] shall be guilty of a misdemeanor.

9    [(b)]<u>(c)</u>  Whoever knowingly or intentionally sells or

10 <u>transfers a switchblade or butterfly knife to a minor shall be</u>

11 <u>guilty of a class C felony.</u>

12    <u>(d)</u>  Whoever knowingly possesses or intentionally uses or

13 threatens to use a switchblade <u>or butterfly</u> knife while engaged

14 in the commission of a crime shall be guilty of a class C

15 felony."

SOH 00033
SER 45

16      SECTION 2.  This Act does not affect rights and duties that

17 matured, penalties that were incurred, and proceedings that were

18 begun, before its effective date.

19      SECTION 3.  Statutory material to be repealed is bracketed.

20 New statutory material is underscored.

21      SECTION 4.  This Act shall take effect upon its approval.

SOH 00034
SER 46

CONFERENCE COMMITTEE REPORT NO. 88

Honolulu, Hawaii
, 1999

RE:   H.B. No. 1496
      H.D. 1
      S.D. 1
      C.D. 1

Honorable Calvin K.Y. Say
Speaker, House of Representatives
Twentieth State Legislature
Regular Session of 1999
State of Hawaii

Honorable Norman Mizuguchi
President of the Senate
Twentieth State Legislature
Regular Session of 1999
State of Hawaii

Sir:

    Your Committee on Conference on the disagreeing vote of the
House of Representatives to the amendments proposed by the Senate
in H.B. No. 1496, H.D. 1, S.D. 1, entitled:

    "A BILL FOR AN ACT RELATING TO DEADLY OR DANGEROUS WEAPONS,"

having met, and after full and free discussion, has agreed to
recommend and does recommend to the respective Houses the final
passage of this bill in an amended form.

    Your Committee on Conference finds that particular attention
needs to be given to butterfly knives by setting them apart from
other deadly or dangerous weapons.  In particular, the
prohibitions against butterfly knives should be similar to that
of switchblade knives.

    A review of the case In re: John Doe, born August 3, 1977, 73
Haw. 89 (1992), indicates that the Hawaii Supreme Court has held
that a butterfly knife does not have a blade that opens
automatically by operation of inertia, gravity, or both;
therefore, it is not a switchblade knife under Section 134-52,

SOH 00035
SER 47

Hawaii Revised Statutes (HRS).

CONFERENCE COMMITTEE REPORT NO. 88
Page

Upon close inspection of the switchblade prohibitions of section 134-52, HRS, your Committee on Conference finds that inclusion of butterfly knives into section 134-52, HRS, is hampered by the definition of switchblade knives contained within section 134-52, HRS, which inadequately describes butterfly knives. The prohibitions against butterfly knives contained within section 134-51, HRS, do not define butterfly knives.

Your Committee on Conference has amended this bill by:

1. Creating prohibitions against butterfly knives that are similar to those against switchblade knives, including:

    a. Making it a misdemeanor offense for the knowing manufacture, sale, transfer, possession, or transport of a butterfly knife; and

    b. Making it a class C felony for the knowing or intentional use or threatened use of a butterfly knife while engaged in the commission of a crime;

2. Defining butterfly knife as a knife having a blade encased in a split handle that manually unfolds with hand or wrist action with the assistance of inertia, gravity or both; and

3. Making a technical nonsubstantive revision to conform to drafting style.

Your Committee on Conference is in accord with the intent and purpose of H.B. No. 1496, H.D. 1, S.D. 1, as amended herein, and recommends that it pass Final Reading in the form attached hereto as H.B. No. 1496, H.D. 1, S.D. 1, C.D. 1.

Respectfully submitted,

MANAGERS ON THE PART OF THE          MANAGERS ON THE PART OF THE
        SENATE                                HOUSE

SOH 00036
SER 48

_____          _____
AVERY CHUMBLEY, Co-Chair           PAUL T. OSHIRO, Chair


_____          _____
MATTHEW M. MATSUNAGA, Co-Chair     ERIC G. HAMAKAWA, Member


                        CONFERENCE COMMITTEE REPORT NO. 88
                        Page


_____          _____
JOE TANAKA, Member                 SOL P. KAHO`OHALAHALA, Member


_____          _____
WHITNEY ANDERSON, Member           MARILYN B. LEE, Member


                                   _____
                                   PAUL WHALEN, Member

SOH 00037
SER 49

SOH 00038
SER 50

**REPORT TITLE:**
Dangerous; Deadly Weapons

**DESCRIPTION:**
Prohibits manufacture, sale, transfer, transport or possession of
butterfly knives.  (HB1496 CD1)

SOH 00039
SER 51

1496

| HOUSE OF REPRESENTATIVES | H.B. NO. | H.D. 1 |
|---|---|---|
| TWENTIETH LEGISLATURE, 1999 | | S.D. 1 |
| STATE OF HAWAII | | C.D. 1 |

_____

_____

A  BILL  FOR  AN  ACT

RELATING TO DEADLY OR DANGEROUS WEAPONS.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF HAWAII:

1    SECTION 1.  Chapter 134, Hawaii Revised Statutes, is amended

2 by adding a new section to be appropriately designated and to

3 read as follows:

4    "§134-____    **Butterfly knives; prohibitions; penalty.**  (a)

5 Whoever knowingly manufactures, sells, transfers, possesses, or

6 transports in the State any butterfly knife, being a knife having

7 a blade encased in a split handle that manually unfolds with hand

8 or wrist action with the assistance of inertia, gravity or both,

9 shall be guilty of a misdemeanor.

10    (b)  Whoever knowingly possesses or intentionally uses or

11 threatens to use a butterfly knife while engaged in the

12 commission of a crime shall be guilty of a class C felony."

13    SECTION 2.  Section 134-51, Hawaii Revised Statutes, is

14 amended by amending subsection (a) to read as follows:

15    "(a)  Any person, not authorized by law, who carries

16 concealed upon the person's self or within any vehicle used or

17 occupied by the person or who is found armed with any dirk,

SOH 00040
SER 52

18 dagger, [butterfly knife,] blackjack, slug shot, billy, metal
19 knuckles, pistol, or other deadly or dangerous weapon shall be

Page 2                                                    1496
                           H.B. NO.          H.D. 1
                                             S.D. 1
                                             C.D. 1

1 guilty of a misdemeanor and may be immediately arrested without
2 warrant by any sheriff, police officer, or other officer or
3 person. Any weapon, above enumerated, upon conviction of the one
4 carrying or possessing it under this section, shall be summarily
5 destroyed by the chief of police or sheriff."

6       SECTION 3. This Act does not affect rights and duties that
7 matured, penalties that were incurred, and proceedings that were
8 begun before its effective date.

9       SECTION 4. Statutory material to be repealed is bracketed.
10 New statutory material is underscored.

11      SECTION 5. This Act shall take effect upon its approval.

SOH 00041
SER 53

SOH 00042
SER 54

**REPORT TITLE:**
Dangerous; Deadly Weapons

**DESCRIPTION:**
Prohibits manufacture, sale, transfer, transport or possession of
butterfly knives.  (HB1496 CD1)

SOH 00043
SER 55

HOUSE OF REPRESENTATIVES
TWENTIETH LEGISLATURE, 1999
STATE OF HAWAII

H.B. NO.

1496
H.D. 1
S.D. 1
C.D. 1

_____
_____

A   BILL   FOR   AN   ACT

RELATING TO DEADLY OR DANGEROUS WEAPONS.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF HAWAII:

1      SECTION 1.  Chapter 134, Hawaii Revised Statutes, is amended

2 by adding a new section to be appropriately designated and to

3 read as follows:

4      "§134-____  **Butterfly knives; prohibitions; penalty.**  (a)

5 Whoever knowingly manufactures, sells, transfers, possesses, or

6 transports in the State any butterfly knife, being a knife having

7 a blade encased in a split handle that manually unfolds with hand

8 or wrist action with the assistance of inertia, gravity or both,

9 shall be guilty of a misdemeanor.

10      (b)  Whoever knowingly possesses or intentionally uses or

11 threatens to use a butterfly knife while engaged in the

12 commission of a crime shall be guilty of a class C felony."

13      SECTION 2.  Section 134-51, Hawaii Revised Statutes, is

14 amended by amending subsection (a) to read as follows:

15      "(a)  Any person, not authorized by law, who carries

16 concealed upon the person's self or within any vehicle used or

17 occupied by the person or who is found armed with any dirk,

SOH 00044
SER 56

18 dagger, [butterfly knife,] blackjack, slug shot, billy, metal

19 knuckles, pistol, or other deadly or dangerous weapon shall be

Page 2                                                          1496
                              H.B. NO.              H.D. 1
                                                   S.D. 1
                                                   C.D. 1

1 guilty of a misdemeanor and may be immediately arrested without

2 warrant by any sheriff, police officer, or other officer or

3 person.  Any weapon, above enumerated, upon conviction of the one

4 carrying or possessing it under this section, shall be summarily

5 destroyed by the chief of police or sheriff."

6      SECTION 3.  This Act does not affect rights and duties that

7 matured, penalties that were incurred, and proceedings that were

8 begun before its effective date.

9      SECTION 4.  Statutory material to be repealed is bracketed.

10 New statutory material is underscored.

11     SECTION 5.  This Act shall take effect upon its approval.

SOH 00045
SER 57

SOH 00046
SER 58

(1) Including industrial property under the de minimus structure position discrepancy of 0.25 feet;

(2) Making the owner of the property upon which the improvement is substantially located responsible when the owner who constructed the improvement is not readily identifiable; and

(3) Eliminating the requirement that the structure position discrepancy be in existence on the effective date of Act 131, Session Laws of Hawaii 1997, for the law regarding de minimus encroachments to apply.

Your Committee finds that the current laws applicable to de minimus encroachments on commercial and residential property should, in fairness, apply to industrial property as well.

Testimony in support of this measure was submitted by the Hawaii Association of Realtors, Real Estate Update, Inc., and Title Guaranty of Hawaii, Inc.

Upon further consideration, your Committee has amended this measure by making a technical, non-substantive change for the purposes of clarity and style.

As affirmed by the record of votes of the members of your Committee on Judiciary that is attached to this report, your Committee is in accord with the intent and purpose of H.B. No. 77, H.D. 1, as amended herein, and recommends that it pass Second Reading in the form attached hereto as H.B. No. 77, H.D. 1, S.D. 1, and be placed on the calendar for Third Reading.

Signed by the Co-Chairs on behalf of the Committee.
Ayes, 5. Noes, none. Excused, 2 (Tanaka, Anderson).

SCRep. 1388          Judiciary on H.B. No. 1492

The purpose of this bill is to clarify the definition of contraband as used for the offense of promoting prison contraband in the second degree.

Your Committee finds that section 710-1022, Hawaii Revised Statutes (relating to the offense of promoting prison contraband in the first degree), deals exclusively with dangerous instruments and drugs. However, section 710-1023 (relating to the offense of promoting prison contraband in the second degree) also includes dangerous instruments and drugs within the definition of "contraband," thus causing overlapping of the two offenses.

Your Committee notes that this overlapping between the offenses of promoting prison contraband in the first and in the second degree have restricted the State to charging the lesser offense when dangerous instruments and drugs are involved. Accordingly, your Committee finds that this bill is necessary to clarify the distinctions between the two offenses and to permit the State to charge the higher offense when dangerous instruments and drugs are involved in promoting prison contraband cases.

Testimony in support of this measure was submitted by the Department of Public Safety, the Department of the Prosecuting Attorney for the City and County of Honolulu, and the Honolulu Police Department.

As affirmed by the record of votes of the members of your Committee on Judiciary that is attached to this report, your Committee is in accord with the intent and purpose of H.B. No. 1492 and recommends that it pass Second Reading and be placed on the calendar for Third Reading.

Signed by the Co-Chairs on behalf of the Committee.
Ayes, 5. Noes, none. Excused, 2 (Tanaka, Anderson).

SCRep. 1389          Judiciary on H.B. No. 1496

The purpose of this bill, as received by your Committee, is to:

(1) Create a new misdemeanor offense to knowingly manufacture, sell, transfer, possess or transport a butterfly knife;

(2) Create a new class C felony offense to knowingly possess or intentionally use or threaten to use a butterfly knife while engaged in the commission of a crime; and

(3) Delete "butterfly knife" from the prohibition against carrying deadly or dangerous weapons concealed upon a person's self or within a vehicle.

Your Committee finds that certain types of knives, particularly switchblade and butterfly knives, are associated with gang activity. Your Committee believes that butterfly knives (also known as balisongs or gravity knives) appear to be covered within the statutory definition of switchblade knives. However, your Committee further finds that although switchblade knives are presently illegal, stores openly sell, and minors can readily purchase, butterfly knives.

Your Committee is aware, however, that the Hawaii Supreme Court, in In the Interest of John Doe, (FC-J No. 91-55223), has held that a butterfly knife does not have a blade that opens automatically by operation of inertia, gravity, or both, and thus is not a switchblade knife under section 134-52, Hawaii Revised Statutes. The court reasoned that the legislative history of section 134-52 did not expressly indicate whether the legislature intended to include butterfly knives under this statute. Therefore, it is your Committee's intent to clarify that butterfly knives should be treated in the same manner as switchblade knives.

Testimony in support of this measure was submitted by the Department of the Prosecuting Attorney of the City and County of Honolulu, the Honolulu Police Department, and a private citizen. Testimony in opposition to this measure was submitted by the Office of the Public Defender and the Pedoy School of Escrima.

Upon further consideration, your Committee has amended this bill by:

(1) Retaining existing law, which includes "butterfly knife" in the prohibition against carrying deadly or dangerous weapons concealed upon a person's self or within a vehicle;

(2) Clarifying that butterfly knives are subject to the same prohibitions as switchblade knives; and

(3) Creating a class C felony offense for sales of such knives to minors.

As affirmed by the record of votes of the members of your Committee on Judiciary that is attached to this report, your Committee is in accord with the intent and purpose of H.B. No. 1496, H.D. 1, as amended herein, and recommends that it pass Second Reading in the form attached hereto as H.B. No. 1496, H.D. 1, S.D. 1, and be placed on the calendar for Third Reading.

Signed by the Co-Chairs on behalf of the Committee.
Ayes, 5. Noes, none. Excused, 2 (Tanaka, Anderson).

SCRep. 1390          Judiciary on H.B. No. 72

The purpose of this bill is to amend the campaign spending law with respect to the voluntary expenditure limit and public matching funds provisions. Specifically the bill:

(1) Amends the definition of "qualifying contribution" to clarify that makers of such contributions cannot have contributed more than $100 during any matching payment period;

(2) Deletes the exemption for certain fundraising costs from the voluntary campaign expenditures limit;

(3) Repeals a provision permitting a candidate to withdraw an affidavit of compliance with voluntary spending limits;

(4) Moves the deadline for filing affidavits of compliance to the date of filing nomination papers;

(5) Clarifies that expenditure limits apply to each election;

(6) Changes the time period within which candidates who exceed spending limits must notify all contributors from the same day to thirty days;

(7) Amends the distribution procedure for the Hawaii Election Campaign Fund, if near depletion, to distribution by order in which application filed;

(8) Clarifies that the maximum amount of public matching funds available to any candidate is based on the maximum expenditure limit per election;

(9) Allows the minimum qualifying contributions for each election to be based on the total qualifying contributions to date instead of just those relating to the particular election (primary, general, or special) for which matching funds are sought;

(10) Changes the deadline for application for matching funds from sixty to thirty days after the general election;

(11) Changes the time by which initial public funds checks must be issued from ten to twenty days after application;

(12) Deletes a provision that a candidate less than one percent over expenditure limits need only return twenty-five percent of public funds; and

(13) Clarifies that all unspent public funds must be returned.

Your Committee finds that the changes to the elections law made by this bill will promote fairness in the campaign process, more effective use of public matching funds for their intended purpose, and encourage compliance with voluntary spending limits.

Your Committee's reading of this bill is that it will change the matching fund requirements by allowing candidates to meet the minimum contribution requirement based on their total qualifying contributions collected during any matching payment period, even if



# DECLARATION UNDER PENALTY OF PERJURY OF
# BURTON RICHARDSON

Burton Richardson under penalty of perjury, deposes and states as follows:

*1.*     My name is Burton Richardson. I am making this declaration for submission to the United States District Court for the District of Hawaii in the case of *James Grell and Andrew Teter v. Clare E. Connors, in her official capacity as Attorney General of the State of Hawaii and Al Cummings, in his official capacity as the State Sheriff Division Administrator*.

2.     I am a competent adult over the age of 18 and have personal knowledge of the following facts.

3.     I am an expert on the balisong knives and knfe fighting due to decades of training with knives and other martial arts as fully explained in my attached CV.

4.     The balisong knife was developed on the island of Luzon, Philippines in the province of Taal/Batangas. There is a barangay (neighborhood) in Batangas by the name of Balisong, which is where this unique knife is assumed to have been created. There are varying accounts as to the time line, with some claiming that the design was created over a thousand years ago. But certainly, its presence is well documented throughout the 20th century and the epicenter of production is in Batangas.

When entering Batangas coming from Manila, you quickly come across little roadside stores similar to country fruit stands. But the merchants in Batangas are selling butterfly knives instead of mangoes. It is a local industry which the Batangeunos are very proud of.

The design is ingenious. Instead of having a folding knife which needs two hands to open or a fixed blade that needs a sheath, the sheath and handle are one. The handles encase and protect the blade and the user from accidents while allowing the knife to be opened with one hand. This attribute is important in self-defense as drawing with one hand is essential while the other hand will be occupied warding off attacks. A tool knife rarely requires a one handed opening except for convenience. To open, a latch is unlocked and

*Exhibit "C"*

**SER 61**

one of the handles is pinched. With a circular movement of the wrist and arm, the other handle rotates around and into position while exposing the blade. The handles are grasped together and the knife is ready for various levels of defensive action.

Defensive purposes/three levels of force

A big advantage to the balisong is that the knife can be used in along several levels of force. The first level is the flourish, where no physical contact with the assailant is made. When sufficiently threatened, the balisong user can produce the knife and go through a routine of opening and closing the knife in a very impressive manner. This flourishing is designed to intimidate and dissuade the aggressor from pursuing a physical altercation.

I grew up in the city of Carson, California which had a very large Filipino population. Around 1982, my sister was working at a park a quarter mile from my house. Four Filipinos in their late teens, who had just arrived recently in the states, were playing basketball on the outdoor court. A group of very large Polynesian kids of about the same age started playing on the other end of the court. It didn't take long for the larger boys to start bullying the small newcomers. "FOB" was a common epithet hurled at newly arrive Filipinos, and the big guys used that and others to intimidate their diminutive prey. My sister saw what was going on and was headed over to put an end to it when one of the bullys shoved one of the Filipinos. The small guys all jumped back and pulled their balisongs. They flourished them and the big guys had run off before my sister could get to the court. This is a great example of how the balisong can be used as a deterrent instead of going directly to deadly force. The next level of force is keeping the balisong closed in order to use it as a small striking or locking stick. This method is described in the book "Balisong- Iron Butterfly" (Dragon Books, 1985) by balisong master Cacoy Hernandez. In the introduction, he refers to his balisong as a "deterrent".

One incident illustrates the "Less lethal" option integrated into the balisong. In the book
Balisong- Iron butterfly, the author recounts the time he saw his instructor attacked with a machete on the docks n Manila. The master stepped in and struck the attacker with the butt of the balisong, dropping the aggressor. He countered a machete attack without using the blade of his balisong. This illustrates the defensive nature of the butterfly knife without any cutting.

Mr. Hernandez did cite times when he had to go to a higher level of force, utilizing the blade itself. But every single situation described was defensive. Never did the knife come out prior to an aggressor's formidable attack.

SER 62

In Batangas, the birthplace of the butterfly knife, the use of the balisong is commonly taught to women for self-defense. Whenever I am in the Philippines I strike up conversations with local people hoping to find someone who is trained in the Filipino martial arts. I have gleaned great information and insight from such impromptu interviews from taxi drivers, clerks, and even from a lawyer.

During one visit, I questioned a young lady who was my waitress in an empty restaurant. I learned that she was from Batangas so I asked if she had learned to use the balisong. Sheepishly, she replied "My father taught me, but just a little". After some coaxing, I handed her a butter knife and got her to demonstrate her methods of self-defense on me. I approached from the front, but she said, "No, grab me from behind." I obliged and she suddenly turned, made one lightening quick non-lethal strike, and escaped. On further questioning, she made it clear that what she learned to use the balisong in a defensive nature against an abduction attempt. The goal was to use the balisong to create an opening to escape, not to take someone's life.

Speed of opening
The beauty of the balisong as a self-defense implement is that it can be used at various levels of the force continuum. The downside is that because of its design, it has the slowest speed of opening of any modern self-defense knife.
Here are the steps required to draw and open a balisong compared to opening the most popular type of folding knife that has the "wave opening" feature constructed into the knife. (The wave opening feature is a hook or protuberance which snags on the pocket as the knife is pulled out. This results in the blade opening as soon as the handle clears the pocket.)

The balisong does not clip to the top of a pocket, but instead resides at the bottom of the carrier's pocket. To go from a concealed carry to having the blade in a useable state requires to following steps pocket:
1- thrust hand deep into a pocket
2- grasp the unit
3- pull the hand completely out of the pocket.
4- feel the for the latch and rotate the still closed unit until it is in the proper orientation for opening.
5- use the pinky or thumb (depending upon orientation) to open the latch.
6- pinch one handle between the thumb and forefinger so the other handle is free to move. (This is a very precarious grip in a chaotic self-defense situation which leaves the defender susceptible to dropping the knife.)

SER 63

7- make a circular motion with the hand and wrist to allow the free handle to rotate to the open position. The most common opening involves 3 distinct circular motions to get the knife open. There are lesser known methods that enable the opening in one motion.

8- With the handles now touching, the finger pinch grip transitions to a full finger grasp around both handles.

9- To ensure that the open balisong is as sturdy as possible, the latch needs to be closed. This is involves using the thumb to find and manipulate the latch into the locked position when the balisong is held in reverse grip. When held in standard grip, the free hand must be used to close the latch.

Opening a standard, modern "wave opening" pocket knife has fewer steps and is therefore much faster to deploy. Most pocket knives have a clip so that the knife can be just inside the top of the pocket for easy access. Many pocket knives have the wave opening, a hook or protrusion that snags the lining of the pocket so that the blade opens as the handle is pulled clears the pocket. The steps to opening are:

1- reach the thumb just inside of the pocket along the handle while the middle and/or finger rests along the clip outside the pocket.

2- pinch to grasp the handle.

3- pull the unit out allowing the hook to snag the pocket lining. By the time the handle has cleared the pocket, the blade is openness and locked into place.

4- adjust the grip to have a firm grasp on the handle.

Pocket knives which do not have a hook or protrusion to facilitate the opening often have a circular opening at the top of the blade. In that case, after step 3 the thumb and index finger pinch together in the hole and a snapping motion is made to send the handle away from the blade and into the locked position. Then the transition to a full grip is performed.

==The balisong has a long history as a defensive implement. When I first started learning it in the late 70's, it was always for that purpose; never as an offensive weapon.== The balisong is taught in a manner of starting at the lowest level of force, flourishing to dissuade an attack, then moves to striking with the closed handle as a less lethal option, then escalates to using the edge or point when absolutely necessary, and morally and legally justified. In my opinion, the balisong is the most humane self-defense knife there is because of the ability use various levels of force. I believe that it should be made available to anyone interested in self-protection.

**SER 64**

5.  I live in Hawaii where there is a ban on switch blades and butterfly (Filipino "balisong") knives. Apparently, the reasoning behind these bans is that these types of knives are inherently more dangerous than other legal folding knives due to their rapid, one-hand deployment.

6.  I wondered if this distinction was accurate, so I tested the speed of presentation of five different blades: a Benchmade switch blade, a butterfly knife, a Spyderco Delica 4, a Cold Steel "Espada", and a common pocket knife.

7.  The switch blade was legally owned by a military officer. The butterfly knife was a legal, dull-edged training version, while the others are legal to carry in Hawaii. To deploy a folding knife, one must first pull the blade from a pocket or carrying system before unfolding the knife.

8.  The old argument is that a switch blade or balisong is too dangerous to be entrusted to the public because a citizen can pull and quickly open the blade with one hand. But do these two actually have a decisive advantage on speed of deployment? To test the speeds, I started with the knife in my pocket and my hand grasping the knife in a manner conducive to opening.

9.  The person timing gave the command "draw" while pushing the start button on the stopwatch. The timer hit stop after the blade clicked into the locked position. In reality, a little extra time would be required to achieve a functional grip, but just timing until the locked position was empirically more accurate since the timer would have to visually judge when a proper grip was achieved. Please note that there is certainly some variance due to the impossibility of having the exact same draw stroke each time, but that variance is minimal.

10.  I did only four draws for each knife as I found that the difference per draw was very slight. Also, I did not go at absolute full speed. I did smooth, efficient draw.

11.  Here are the draw times for each knife, starting in the pocket with my hand on the knife and ending when the blade was open and locked in place:

**SER 65**

Switch Blade 0.9, 1.0, 0.9, 1.0 Average = 0.95 seconds

Butterfly knife 1.3, 1.4. 1.2, 1.5 Average = 1.35 seconds

Spyderco 0.9, 0.9, 1.0, 0.9 Average = 0.925 seconds

Cold Steel "Espada" 0.5, 0.7, 0.6, 0.6 Average = 0.6 seconds

Pocket Knife 1.0, 0.9, 1.0, 0.9 Average = 0.95 seconds

12.   The Cold Steel "Espada" was by far the fastest. This was due to the "thumb plate" that can catch on the pocket hem so that the blade opens as the knife is pulled. Very quick and legal.

13.   The Spyderco was second fastest. It has a ring at the top of the blade which is grasped between the thumb and forefinger. As soon as the knife clears the pocket a snap of the wrist locks opens the blade. Very fast and legal.

14.   The switch blade and the pocket knife tied for third. The pocket knife I used did have a stud in the blade so that one can push the blade open with thumb as the blade clears. The switch blade needs to be taken all the way out of the pocket before depressing the button to pop open the knife.

15.   Slowest by far is the much-maligned butterfly knife. I started with the lock open and pinched between my thumb and forefinger for the quickest type of butterfly knife draw. I drew the knife, snapped down and up, the handle swung out and upward into my hand, so I ended with a reverse grip. This is quicker than the more common 3-count opening that most people use. For fun, I timed the 3-count opening and got an average of 1.45 seconds.

The above declaration, given under penalty of perjury, is true and correct to the best of my knowledge information and belief.

Executed: (Oahu, Hawaii)

Dated: April 10, 2019.

Page 6 of 7

Curriculum Vitae

**TABLE OF CONTENTS**

Basic Information:……………………………………………………………………………1

Education:……………………………………………………………………………………2

Professional Positions: ……………………………………………………………………..2

Honors And Awards: …………………………………..…………………………………….2

Books: ……………………………………..………………………………………………3

Videos: ………………………………………..………………………………….…...………3

**BASIC INFORMATION**

| | |
|---|---|
| **NAME**: | Burton Richardson |
| **OFFICE**: | Box 1252 |
| | Kailua, Hawaii 96734 |
| **VOICE**: | 808-220-3243 |
| **E-MAIL**: | burton@jkdunlimited.com |
| **CITIZENSHIP**: | United States |
| **MARITAL STATUS**: | Married, 1 child |
| **LANGUAGES**: | French (Fluent) |
| | Italian (Fluent) |
| | Spanish (Usable) |
| | Portuguese (Usable) |
| | Tagalog (Usable) |

**SER 68**

**EDUCATION:**

> 1977-1980 Carson High School
>
> Carson, California
>
>
> 1980-1984 University of Southern California
>
> Los Angeles, California
>
>
> 1980-1992 Inosanto Academy of Martial Arts
>
> Marina Del Rey, California

**PROFESSIONAL POSITIONS**

Instructor (1987-1992)

> Inosanto Academy of Martial Arts, Marina Del Rey, California

President (1992-Present)

> Jeet Kune Do Unlimited, Los Angeles, California/Honolulu, Hawaii

**HONORS AND AWARDS:**

Science Award (1980) Carson High School

Ephebian Society President (1980) Carson High School

Most Likely To Succeed (1980) Carson High School

Harbor Collegium Fellow (1980) Harbor UCLA Medical Center

Inside Kung Fu Magazine Hall Of Fame (1999)

Inducted into the Black Belt magazine (#1 martial arts magazine in the world) Hall Of Fame (2015)

Black Belt magazine self-defense instructor of the year (2015)

**SER 69**

Has been on the cover of 10 magazines:
Black Belt
Inside Kung Fu
Masters and Styles
Secrets of the Masters
Inside Martial Arts
Budo International (Europe)
Combate (Mexico)
Hiden Budo (Japan)
Martial Arts Hawaii
Visu (France)

**BOOKS:**

JKD Unlimited - Unique Publications (1993)
In The Footsteps Of Bruce Lee – Budo international (1999)
Choke Em Out – Paladin Press (2007)
Silat For The Street – Black Belt publications (2016)

**VIDEOS:**

Jeet Kune Do For Japan (1987)

JKD Unlimited 3-video series (1988)

Defining Jeet Kune Do 6-video series (1990)

Science Of The Fight 6-video series (2001)

Choke Em Out 2-video series (2001)

MMA For The Street 5-video series (2005)

Battlefield Kali Stick 8-video series (2010)

Battlefield Kali Knife 8-video series (2012)

Battlefield Kali Sword 4-video series (2014)

Silat For The Street 8-video series (2015)

## **CERTIFICATE OF SERVICE**

I hereby certify that the Supplemental Excerpts of Record for Defendants-Appellees CLARE E. CONNORS and AL CUMMINGS were electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 20, 2020.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED:  Honolulu, Hawai‘i, October 20, 2020.

s/ Robert T. Nakatsuji
ROBERT T. NAKATSUJI
Deputy Attorney General

Attorney for Defendants-Appellees
CLARE E. CONNORS and AL
CUMMINGS

1