No. 20-15948

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANDREW TETER and JAMES GRELL,

*Plaintiffs - Appellants*,

vs.

CLARE CONNORS, in her Official Capacity as the Attorney General
of the State of Hawai'i and AL CUMMINGS, in his Official Capacity
as the State Sheriff Division Administrator

*Defendants - Appellees*.

On Appeal from the United States District Court for the District of Hawai'i
Honorable Alan C. Kay, Senior United States District Judge
(Civil No. 19-cv-00183-ACK-WRP)

## AMICUS CURIAE BRIEF OF EVERYTOWN FOR GUN SAFETY
## IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE

PAMELA W. BUNN
WENDY F. HANAKAHI
Dentons US LLP
1001 Bishop Street, 18th Floor
Honolulu, HI 96813
Telephone: (808) 524-1800
Email: pam.bunn@dentons.com
        wendy.hanakahi@dentons.com

JANET CARTER
WILLIAM J. TAYLOR, JR.
LISA M. EBERSOLE
CARINA BENTATA GRYTING
Everytown Law
450 Lexington Avenue #4184
New York, New York 10017
Telephone: (646) 324-8215
Email: wtaylor@everytown.org

Attorneys for Amicus Curiae Everytown for Gun Safety

## CORPORATE DISCLOSURE STATEMENT

Everytown for Gun Safety Action Fund ("Everytown for Gun Safety" or "Everytown") has no parent corporations. It has no stock, and hence, no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page(s)**

INTEREST OF AMICUS CURIAE ........................................................................1

INTRODUCTION ................................................................................................2

ARGUMENT ......................................................................................................3

    A. Plaintiffs' Argument That HRS § 134-53 is "Categorically Unconstitutional" is Contrary to Ninth Circuit Precedent, Illogical, and Unworkable..................................................................................3

        1. Plaintiffs' "Categorical Approach" Conflicts With Ninth Circuit Precedent ................................................................................3

        2. *Heller* Provides No Support For a Categorical Second Amendment Analysis ....................................................................5

        3. Plaintiffs' "Categorical Approach" is Unworkable and Illogical and Should Be Rejected For That Reason as Well ..............................7

    B. Intermediate Scrutiny is the Appropriate Standard ...................................9

        1. HRS. § 134-53 Does Not Substantially Burden the Core Second Amendment Right of Self-Defense In the Home................................9

        2. *Duncan v. Becerra* Does Not Alter the Applicable Standard ............12

        3. HRS § 134-53 Satisfies Intermediate Scrutiny .................................16

    C. History Does Not Support Plaintiffs Or Their Amici ..............................17

CONCLUSION .................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Attorney Gen. N.J.*,
   910 F.3d 106 (3d Cir. 2018) ........................................................................1, 14

*Bauer v. Becerra*,
   858 F.3d 1216 (9th Cir. 2017) ...............................................................9

*District of Columbia v. Heller*,
   554 U.S. 570 (2008)....................................................................*passim*

*Duncan v. Becerra*,
   970 F.3d 1133 (9th Cir. 2020) .................................................*passim*

*Friedman v. City of Highland Park*,
   784 F.3d 406 (7th Cir. 2015) ..................................................................8

*Fyock v. City of Sunnyvale*,
   779 F.3d 991 (9th Cir. 2015) ....................................................*passim*

*Gonzalez v. Barr*,
   955 F.3d 762 (9th Cir. 2020) .............................................................13

*Gould v. Morgan*,
   907 F.3d 659 (1st Cir. 2018).............................................................18

*Heller v. District of Columbia*,
   670 F.3d 1244 (D.C. Cir. 2011).........................................................15

*Jackson v. City & Cty. of S.F.*,
   746 F.3d 953 (9th Cir. 2014) .........................................8, 10, 11, 16

*Kolbe v. Hogan*,
   813 F.3d 160 (4th Cir. 2016),
   *on reh'g en banc*, 849 F.3d 114 (4th Cir. 2017)................................14

*Kolbe v. Hogan*,
   849 F.3d 114 (4th Cir. 2017) (en banc) .................................6, 12, 14

*Mai v. United States*,
　　952 F.3d 1106 (9th Cir. 2020) ...........................................................10

*McDonald v. City of Chicago*,
　　561 U.S. 742 (2010)............................................................................8

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*,
　　804 F.3d 242 (2d Cir. 2015) ..........................................................5, 14

*Pena v. Lindley*,
　　898 F.3d 969 (9th Cir. 2018)
　　*cert. denied*, --- S. Ct. ----, 2020 WL 3146680 (June 15, 2020).........9, 10, 11, 16

*Peruta v. Cty. of San Diego*,
　　824 F.3d 919 (9th Cir. 2016) (en banc) ............................................20

*Rehaif v. United States*,
　　139 S. Ct. 2191 (2019)........................................................................2

*Silvester v. Harris*,
　　843 F.3d 816 (9th Cir. 2016) .........................................................9, 10

*State v. Murillo*,
　　347 P.3d 284 (N.M. Ct. App. 2015) ................................................12

*Tyler v. Hillsdale Cty. Sheriff's Dep't*,
　　775 F.3d 308 (6th Cir. 2014),
　　*on reh'g en banc*, 837 F.3d 678 (6th Cir. 2016) ................................14

*United States v. Anekwu*,
　　695 F.3d 967 (9th Cir. 2012) ...........................................................13

*United States v. Chovan*,
　　735 F.3d 1127 (9th Cir. 2013) .........................................................10

*United States v. Singh*,
　　924 F.3d 1030 (9th Cir. 2019) .........................................................10

*Worman v. Healey*,
　　922 F.3d 26 (1st Cir. 2019),
　　*cert. denied*, --- S. Ct. ----, 2020 WL 3146687 (June 15, 2020)....................7, 14

iii

**Statutes**

Hawaii Revised Statutes § 134-53 ................................................................*passim*

1837 Ala. Sess. Laws 7 ...............................................................................17

1907 Ala. Sess. Laws 80 .............................................................................19

1881 Ark. Sess. Laws 192............................................................................18, 19

1917 Cal. Sess. Laws 221 §§1-2 .................................................................19

1838 Fla. Laws No. 24 § 1 ..........................................................................17

1893 Fla. Sess. Laws 52 ..............................................................................19

1837 Ga. Sess. Laws 90-91 .........................................................................17

1881 Ill. Sess. Laws 71 ...............................................................................19

1850 Mass. Acts & Resolves 401, ch. 194 ..................................................19

1927 Mich. Sess. Laws 888 .........................................................................19

1917 Minn. Sess. Laws 354 .........................................................................19

1912 N.J. Sess. Laws 365 ............................................................................19

1849 N.Y. Sess. Laws 403-04, ch. 278 .......................................................19

1911 N.Y. Sess. Laws 442 ...........................................................................19

1911 Ohio Sess. Laws 124 ...........................................................................19

1890 Okla. Sess. Laws 475-76......................................................................19

1838 Tenn. Sess. Laws 200-01 .....................................................................17

1915 Vt. Sess. Laws 344...............................................................................19

**Other Authorities**

Joseph Blocher, *Bans*, 129 Yale L.J. 308, 356 (2019)...............................7

iv

**INTEREST OF AMICUS CURIAE**

Amicus curiae Everytown for Gun Safety ("Everytown") is the nation's largest gun-violence-prevention organization, with nearly six million supporters across the nation, including thousands in Hawaiʻi. Everytown was founded in 2014 as the combined effort of Mayors Against Illegal Guns, a national, bipartisan coalition of mayors combating illegal guns and gun trafficking, and Moms Demand Action for Gun Sense in America, an organization formed after twenty children and six adults were murdered in an elementary school in Newtown, Connecticut. Everytown also includes a large network of gun violence survivors who are empowered to share their stories and advocate for responsible gun laws.

Everytown has drawn on its expertise to file briefs in numerous Second Amendment cases, offering historical and doctrinal analysis that might otherwise be overlooked. *See*, *e.g.*, *Duncan v. Becerra*, No. 19-55376 (9th Cir.); *Rupp v. Becerra*, No. 19-56004 (9th Cir.); *Flanagan v. Becerra*, No. 18-55717 (9th Cir.); *Peruta v. Cty. of San Diego*, No. 10-56971 (9th Cir.) (en banc); *Worman v. Healey*, No. 18-1545 (1st Cir.); *Kolbe v. Hogan*, No. 14-1945 (4th Cir.) (en banc). Several courts, including the district court below, have also cited and expressly relied on Everytown's amicus briefs in deciding Second Amendment and other gun cases. *See* ER 31–32, 34; *see also*, *e.g.*, *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Attorney Gen.*

*N.J.*, 910 F.3d 106, 112 n.8 (3d Cir. 2018); *Rehaif v. United States*, 139 S. Ct. 2191, 2210–11 & nn.4 & 7 (2019) (Alito, J., dissenting).[1]

## INTRODUCTION

Everytown files this amicus brief in support of Defendants-Appellees (the "State") to raise three points in response to arguments raised by Plaintiffs-Appellants ("Plaintiffs") and their amici. *First*, Plaintiffs' argument that Hawai'i's challenged butterfly knife law is "categorically unconstitutional" seeks to apply a Second Amendment test that is inconsistent with precedent, illogical, and unworkable. The Ninth Circuit has already explicitly rejected this test; *District of Columbia v. Heller*, 554 U.S. 570 (2008), and recent scholarship do not support it; and the current legal status of butterfly knives in other states does not alter the analysis.

*Second*, Plaintiffs' argument that the Court should apply strict scrutiny is without merit, because Hawai'i's ban on a subset of folding knives does not substantially burden the "core" of the Second Amendment right. *Fyock v. City of Sunnyvale,* 779 F.3d 991 (9th Cir. 2015), which rejected the application of strict scrutiny in that context, remains the law of this circuit. Under *Fyock* and decisions

---

[1] All parties consent to this brief's filing and no party's counsel authored it in whole or part. Apart from Everytown, no person contributed money to fund its preparation or submission.

of federal courts nationwide, intermediate scrutiny is the appropriate standard here, and Hawaii Revised Statutes ("HRS") § 134-53 easily satisfies it.

*Third*, states have long prohibited types of knives and other non-firearm weapons that elected representatives determined to be especially dangerous, even though less deadly than guns. This long history further supports the district court's decision to uphold Hawai'i's prohibition on butterfly knives.

## ARGUMENT

**A.    Plaintiffs' Argument that HRS § 134-53 Is "Categorically Unconstitutional" Is Contrary to Ninth Circuit Precedent, Illogical, and Unworkable**

### 1.    Plaintiffs' "Categorical Approach" Conflicts with Ninth Circuit Precedent

Plaintiffs' primary argument on appeal, as it was below, is that Hawai'i's prohibition on butterfly knives is "categorically unconstitutional" under the Second Amendment because "[k]nives are 'in common use today' for the 'lawful purpose' of self-defense" and butterfly knives are "a form of knife." Opening Brief of Plaintiffs-Appellants, ECF No. 10 ("Plaintiffs-Appellants' Br.") at 8–9, 26–29. As the district court correctly recognized, *see* ER 27–33—and as this Court's prior decisions make clear—that misguided analysis is not the law. This Court has already rejected the application of a "categorical approach" in Second Amendment cases, like this one, challenging prohibitions on a type of weaponry. Although Plaintiffs

3

fail even to address that fact in their brief, those holdings compel the same conclusion here.

This Court's decision in *Fyock v. City of Sunnyvale*, 779 F.3d 991 (9th Cir. 2015), is dispositive. There, the plaintiffs argued that a law prohibiting large-capacity ammunition magazines must be struck down as "categorically invalid" because it amounted to a "total ban" on "magazines overwhelmingly chosen by law-abiding citizens." Appellants' Opening Brief, *Fyock*, No. 14-15408, 2014 WL 2175455, at *24–25 (9th Cir. May 16, 2014). That is a near duplicate of the argument Plaintiffs raise in this case with respect to butterfly knives. *See* Plaintiffs-Appellants' Br. at 8–9, 26–29. This Court rejected the call for a categorical approach in *Fyock* and instead applied intermediate scrutiny. *See Fyock*, 779 F.3d at 999–1001. That same result should follow here.

More recently, in *Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020), this Court again rejected the application of a categorical Second Amendment test in a large-capacity magazine case. *See id.* at 1143 n.6. And the *Duncan* panel was express on the point, noting that a categorical approach—what the district court had referred to as the "simple *Heller* test"—"conflicts with [the Ninth Circuit]'s two-step inquiry framework for the Second Amendment." *Id.* That is equally true in this case.[2]

---

[2] As discussed *infra* (at pp.12–13), *Duncan* deviated from binding circuit precedent in other respects, and a petition for rehearing en banc is pending.

## 2. *Heller* Provides No Support for a Categorical Second Amendment Analysis

Plaintiffs ignore this binding circuit precedent and instead claim that *Heller* supports their categorical approach. They assert that the Supreme Court's decision finding D.C.'s "total ban on handguns" in the home unconstitutional "[u]nder any of the standards of scrutiny … applied to enumerated constitutional rights," *Heller*, 554 U.S. at 576, 628–29, means there is no "need to look to scrutiny analysis" here. *See* Plaintiffs-Appellants' Br. at 27. But nothing in *Heller* can sustain such a conclusion.

As the district court put it, "*Heller* does not stand for the proposition that *no* level of scrutiny should be applied at all." ER 28. Instead, what *Heller* held was that under the very specific set of circumstances at issue—a law "banning from the home the most preferred firearm in the nation to 'keep' and use for protection of one's home and family"—D.C.'s statute would violate the Second Amendment "under any level of scrutiny the Court might apply." *Heller*, 554 U.S. at 628–29; ER 28. That is far from the categorical constitutional analysis Plaintiffs seek from this Court. *Id.* at 28–29; *see*, *e.g.*, *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 257 n.74 (2d Cir. 2015) ("On the contrary, *Heller* indicated that typical 'standards of scrutiny' *should* apply to regulations impinging upon Second Amendment rights, but that D.C.'s handgun ban would fail '[u]nder any of the standards of scrutiny.'").[3]

---

[3] Indeed, *Heller contradicts* Plaintiffs' suggestion that Hawai'i's law should be struck down under the Second Amendment because it "categorically bans" a

Moreover, there simply is no basis—in the record, the briefing, or common sense—to equate butterfly knives, a "relatively obscure" item for which there is little evidence of use in self-defense,[4] with handguns, "the quintessential self-defense weapon." *Heller*, 554 U.S. at 629; ER 32; *see id.* at 31 ("The butterfly knife is 'not

---

type of knife and "[k]nives are 'in common use today' for the 'lawful purpose' of self-defense." Plaintiffs-Appellants' Br. at 8, 26. *Heller* made clear that some guns—handguns—are in common use today for self-defense in the home, but made equally clear that other guns—such as "M-16 rifles and the like"—may be prohibited. *See Heller*, 554 U.S. at 627; *see also Kolbe v. Hogan*, 849 F.3d 114, 131 (4th Cir. 2017) (en banc). Amicus curiae Mountain States Legal Foundation ("MSLF") makes a similar error in inferring, from its premise that "bladed weapons" are "Arms" for purposes of the Second Amendment (in light of historical statutes that referred to bayonets, swords, and cutlasses), that "butterfly knives … are protected Arms within the original public meaning" of the Second Amendment. Amicus Brief of MSLF, ECF No. 15 ("MSLF Amicus Br.") at 19. Even assuming that MSLF's premise is correct, its conclusion does not follow. Just because a weapon falls under a broad description that includes *some* weapons that the Second Amendment protects—such as "bladed weapons" or "guns"—does not mean that *all* weapons falling under that broad description are within the Amendment's scope. Again, on *Heller*'s plain terms, M-16 rifles may be prohibited even though handguns (in the home, for self-defense) may not. Equally, protection for some "bladed weapons" does not entail protection for butterfly knives.

[4] As the State notes in its brief, "butterfly knifes could, in theory, be used to defend oneself in the home." Answering Brief of Defendants-Appellees, ECF No. 28 ("State Br.") at 21. But not only are they "ill-suited for that task," *id.* at 6, the only evidence in the record of anyone ever using a butterfly knife in self-defense comes from Plaintiffs' expert, who provides merely a few, at best, secondhand accounts of incidents—just one of which appears to have occurred in this country, almost forty years ago—where others used or witnessed the use of a butterfly knife for self-defense purposes. ER 130–35; SER 61–66.

nearly as popularly owned and used for self-defense as the handgun.'" (citations omitted)). Plaintiffs' argument to the contrary thus necessarily fails.[5]

### 3. Plaintiffs' "Categorical Approach" Is Unworkable and Illogical and Should Be Rejected for That Reason As Well

Even if this Court were free to disregard Ninth Circuit precedent, it should reject Plaintiffs' call for a "categorical approach" to the Second Amendment because it is unworkable, illogical, and would lead to absurd results. As one scholar has recently put it, "rules of per se invalidity should be reserved for those cases in which regulations deny essential or near-essential means of achieving the interests guaranteed by the right." Joseph Blocher, *Bans*, 129 Yale L.J. 308, 356 (2019). "In the Second Amendment context," that means that unless "a law denies people the ability to effectuate the 'core' interest of self-defense with arms," it "should not be subject to per se invalidity." *Id.* Rather, where "alternative means of armed self-

---

[5] Plaintiffs also cite to a number of out-of-circuit federal and state court decisions in support of their argument for a categorical approach in this case. *See* Plaintiffs-Appellants' Br. at 26–28. But, as the State notes, in discussing several of these rulings in its brief, those cases "are distinguishable and should not be followed." *See* State Br. at 43–44; *see also*, *e.g.*, *Worman v. Healey*, 922 F.3d 26, 38 n.6 (1st Cir. 2019) (rejecting the Illinois Supreme Court's holding that a state law prohibiting the carrying of stun guns and tasers was a "categorical ban" and also disagreeing with that court's "conclusion that any law that restricts a certain type of arms is per se unconstitutional"), *cert. denied*, --- S. Ct. ----, 2020 WL 3146687 (June 15, 2020). In any event, even if Plaintiffs' cases were not distinguishable, adopting a categorical approach here would directly violate Ninth Circuit precedent, as explained *supra* (at pp.3–4).

defense are available," the application of "means-end scrutiny"—and, in particular, intermediate scrutiny—is appropriate. *Id.* That is precisely the situation here. *See* State Br. at 6–7, 27–28 (noting the many adequate alternatives to butterfly knives available under Hawaiʻi law).

Moreover, while Plaintiffs assert that "[b]utterfly knives are legal to own in 47 states," Plaintiffs-Appellants' Br. at 35, that does nothing to change the result in this case. As the Seventh Circuit has explained, legislators' decisions in some parts of the country cannot make laws in other parts any "more or less open to challenge under the Second Amendment." *Friedman v. City of Highland Park,* 784 F.3d 406, 408 (7th Cir. 2015). If they did, that "would imply that no jurisdiction other than the United States as a whole can regulate firearms. But that's not what *Heller* concluded." *Id.* at 412. Because our Constitution "establishes a federal republic where local differences are cherished as elements of liberty," federalism is "no less part of the Constitution than is the Second Amendment." *Id.* The Supreme Court's decision in *Heller* (as applied to the states in *McDonald v. City of Chicago*, 561 U.S. 742 (2010)) "does not foreclose" all possibility of experimentation by state and local governments, *Friedman*, 784 F.3d at 412, but rather permits them to do what they have long done in the realm of firearm legislation: "experiment with solutions to admittedly serious problems," *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 970 (9th Cir. 2014); *see also McDonald*, 56l U.S. at 785 (noting that "[s]tate and local

experimentation with reasonable firearms regulations will continue under the Second Amendment"). Plaintiffs' approach would eviscerate their ability to do so. That is not the law.

### B.    Intermediate Scrutiny is the Appropriate Standard

Plaintiffs' second argument—that the Court should apply strict scrutiny in assessing whether HRS § 134-53 is constitutional—also fails. As the Ninth Circuit has repeatedly stated, there is "near unanimity in the post-*Heller* case law that when considering regulations that fall within the scope of the Second Amendment, intermediate scrutiny is appropriate." *Silvester v. Harris*, 843 F.3d 816, 823 (9th Cir. 2016). Hawai'i's law easily satisfies such scrutiny.

### 1.    HRS § 134-53 Does Not Substantially Burden the Core Second Amendment Right of Self-Defense in the Home

In determining the applicable level of scrutiny, the Ninth Circuit considers "how close the law comes to the core of the Second Amendment right" and "the severity of the law's burden on that right." *Pena v. Lindley*, 898 F.3d 969, 977 (9th Cir. 2018) (quoting *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013)) (internal quotation marks omitted), *cert. denied*, --- S. Ct. ----, 2020 WL 3146680 (June 15, 2020). The "core" of the Second Amendment is the "right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635; *see also Bauer v. Becerra*, 858 F.3d 1216, 1222 (9th Cir. 2017) (noting "the core right to possess and use a firearm in the home"). If the law "does not implicate

the core Second Amendment right *or* does not place a substantial burden on that right," intermediate scrutiny is the appropriate standard. *Pena*, 898 F.3d at 977 (quoting *Fyock*, 779 F.3d at 998–99). The Ninth Circuit has consistently applied intermediate scrutiny to laws that were found or assumed to burden protected Second Amendment conduct. *See*, *e.g.*, *Fyock*, 779 F.3d at 999 (large-capacity magazine prohibition); *Mai v. United States*, 952 F.3d 1106, 1115 (9th Cir. 2020) (lifelong prohibition on gun possession by people who have been involuntarily committed); *United States v. Singh*, 924 F.3d 1030, 1057 (9th Cir. 2019) (prohibition on gun possession by nonimmigrant visa holders); *Pena*, 898 F.3d at 979 (chamber load indicator, magazine detachment mechanism, and microstamping requirements for new handguns); *Silvester v. Harris*, 843 F.3d 816, 827 (9th Cir. 2016) (ten-day waiting period for all purchases of firearms); *Jackson*, 746 F.3d at 965, 968 (handgun secure-storage regulation and hollow-point ammunition prohibition); *Chovan*, 735 F.3d at 1139 (prohibition on gun possession by people convicted of domestic violence).

Regulations that "leave open alternative channels for self-defense are less likely to place a severe burden on the Second Amendment right than those which do not." *Jackson*, 746 F.3d at 961. As the Ninth Circuit explained in *Fyock*, the large-capacity magazine ("LCM") prohibition at issue did not substantially burden the core Second Amendment right because it did not restrict "the possession of

magazines in general," nor did it "affect the ability of law-abiding citizens to possess the 'quintessential self-defense weapon'—the handgun." *Fyock*, 779 F.3d at 999. "Rather, [the challenged law] restrict[ed] possession of only a subset of magazines," such that alternatives remained available. *Id.* Similarly, in *Pena*, although the law at issue would preclude purchasers from buying "the majority of Smith & Wesson's handguns, two of Ruger's most popular models, and the fourth generation of Glocks," the Court recognized that "being unable to purchase a subset of semiautomatic weapons, without more, does not significantly burden the right of self-defense in the home." *Pena*, 898 F.3d at 978; *see also Jackson*, 746 F.3d at 968 (finding a ban on the sale of hollow-point ammunition did not severely burden the core Second Amendment right because an individual could alternatively "use fully-jacketed bullets for self-defense").

HRS § 134-53 likewise affects only a small subset of knives. As the State notes, butterfly knives—defined as "a knife having a blade encased in a split handle that manually unfolds with a hand or wrist action with the assistance of inertia, gravity, or both"—are "merely a subset of a subset (folding knives) of a class of arms (knives)." State Br. at 27. Due to the limited scope of HRS § 134-53, Plaintiffs are still "free to defend themselves using any of a number of alternatives, including handguns, other knives, or any other instruments not otherwise prohibited." *Id.* Furthermore, there is no evidence in the record to suggest that butterfly knives are

commonly used for the purpose of self-defense in the home. *See supra* n.4. And as the State points out, butterfly knives are ill-suited for this task in comparison with common kitchen knives, which already have the blade exposed, or handguns, which can be used from a distance. State Br. at 22–23; *cf. Kolbe*, 849 F.3d at 138 ("[T]here is scant evidence in the record before us that the FSA-banned assault weapons and [LCMs] are possessed, or even suitable, for self–protection."). For these reasons, the prohibition on butterfly knives, at most, minimally implicates the core Second Amendment right, and certainly does not substantially burden that right. Accordingly, intermediate scrutiny is appropriate. *See*, *e.g.*, *State v. Murillo*, 347 P.3d 284, 288 (N.M. Ct. App. 2015) (applying intermediate scrutiny, and upholding New Mexico's switchblade law, because it "bans only a small subset of knives, which are themselves a peripheral subset of arms typically used for self-defense or security").

### 2. *Duncan v. Becerra* Does Not Alter the Applicable Standard

The recent decision in *Duncan v. Becerra*, 970 F.3d l133 (9th Cir. 2020), does not change this analysis. *Duncan* was decided by a three-judge panel, with no power to overrule *Fyock*; and although its majority purported to distinguish *Fyock*, it did so on spurious grounds.

Specifically, the *Duncan* majority mistakenly asserted that, because *Fyock* applied the abuse-of-discretion standard of review, its application of intermediate

scrutiny held no precedential weight. *See Duncan*, 970 F.3d at 1162–63. However, as the dissenting judge explained, "if the district court [in *Fyock*] had applied the wrong legal standard—such as an incorrect level of scrutiny—'[a]n error of law necessarily constitutes an abuse of discretion.'" *Id.* at 1173 (Lynn, J., dissenting) (citations omitted); *see also Fyock*, 779 F.3d at 995 (stating that it reviewed "the underlying legal principles de novo"). Therefore, *Fyock*'s affirmance of the lower court's application of intermediate scrutiny was not a decision based in deference, and it is binding on subsequent panels. As *Fyock* has not been overruled by an en banc decision or a decision of the Supreme Court, it continues to be the law of this circuit. *See Gonzalez v. Barr*, 955 F.3d 762, 765 (9th Cir. 2020) (A three-judge panel is "bound by the prior decision of another three-judge panel .... This rule gives way when, but only when, the earlier decision is clearly irreconcilable with the holding or reasoning of intervening authority from our court sitting en banc or the Supreme Court.").[6]

---

[6] The California Attorney General has petitioned for rehearing en banc in *Duncan*. That petition is still pending. Until this Court acts en banc on that or a subsequent petition, the most sensible way to reconcile *Duncan* and *Fyock* is to conclude that the *Duncan* majority rendered its discussion of which standard of scrutiny should apply dictum, when it went on to hold that the LCM prohibition at issue would fail under *both* strict scrutiny *and* intermediate scrutiny. *Duncan*, 970 F.3d at 1164–65, 1167–68. At that point, the level of scrutiny became unnecessary to its disposition of the case. *See United States v. Anekwu*, 695 F.3d 967, 975 (9th Cir. 2012) ("We have 'described discussions that are unnecessary to a decision as dicta.'" (citation omitted)).

*Duncan* is also at odds with case law from other circuits. In the twelve years since *Heller*, only two circuit decisions held that strict scrutiny governed a Second Amendment challenge, and in both of those cases, the en banc circuit vacated the panel opinion and applied intermediate scrutiny on rehearing. *See Kolbe v. Hogan*, 813 F.3d 160, 182 (4th Cir. 2016) (facial challenge to assault-weapon prohibition), *on reh'g en banc*, 849 F.3d 114, 130 (4th Cir. 2017); *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 775 F.3d 308, 328–29 (6th Cir. 2014) (as-applied challenge to federal law prohibiting plaintiff from possessing a firearm due to prior involuntary mental-health commitment), *on reh'g en banc*, 837 F.3d 678, 692 (6th Cir. 2016). Furthermore, all circuits that have addressed prohibitions similar to the one in *Duncan* have held, like *Fyock*, that a prohibition on only a subset of arms does not substantially burden the core Second Amendment right. *See Worman*, 922 F.3d at 37 (applying intermediate scrutiny where the law proscribed "only a set of specifically enumerated" weapons and magazines, and "the record [did] not show … that the proscribed weapons have commonly been used for home self-defense purposes"); *Kolbe*, 849 F.3d at 138–39 (recognizing that the assault weapon and LCM prohibitions at issue would still "leav[e] citizens free to protect themselves with a plethora of other firearms and ammunition"); *Ass'n of N.J. Rifle & Pistol Clubs v. Att'y Gen. N.J.*, 910 F.3d 106, 117–18 (3d Cir. 2018); *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 259–

60 (2d Cir. 2015); *Heller v. District of Columbia* ("*Heller II*"), 670 F.3d 1244, 1262 (D.C. Cir. 2011).

In any event, even under *Duncan*'s reasoning, intermediate scrutiny would still be the appropriate standard for assessing HRS § 134-53. In determining whether there was a substantial burden on the core Second Amendment right, the *Duncan* majority focused on the fact that LCMs are, on its reading of the record, (a) extremely widespread and (b) used in handguns, the quintessential self-defense weapon. *See Duncan*, 970 F.3d. at 1157 ("[A] law that takes away a substantial portion of arms commonly used by citizens for self-defense imposes a substantial burden on the Second Amendment."); *id.* at 1158–59, 1162 (emphasizing that the LCM prohibition would ban "tens of millions of protected arms that are staples of self-defense," including "semi-automatic pistols" such as a Glock). Nothing in the record suggests that butterfly knives are widely used weapons for self-defense in the home. *See* State Br. at 30 ("Butterfly knives are a 'relatively obscure' weapon."); *see also supra* n.4. Nor does a prohibition on butterfly knives affect an individual's access to those weapons that are commonly used and better-suited for self-defense. Accordingly, applying *Duncan*'s analysis would lead to the same conclusion: HRS § 134-53 does not place a substantial burden on Plaintiffs' ability to protect themselves in the home.

15

### 3. HRS § 134-53 Satisfies Intermediate Scrutiny

The district court correctly determined that HRS § 134-53 satisfies intermediate scrutiny. Intermediate scrutiny requires (1) a "significant, substantial, or important" government objective, and (2) a "reasonable fit" between the challenged law and the asserted objective. *Jackson*, 746 F.3d at 965. Put another way, the State needs only show that HRS § 134-53 promotes a "substantial government interest that would be achieved less effectively absent the regulation." *Fyock*, 779 F.3d at 1000 (citation omitted). The Ninth Circuit "do[es] not impose an 'unnecessarily rigid burden of proof'" on the government, *Pena*, 898 F.3d at 979 (quoting *Mahoney v. Sessions*, 871 F.3d 873, 881 (9th Cir. 2017)), and considers "the legislative history of the enactment as well as studies in the record or cited in pertinent case law," *id.* (quoting *Fyock*, 779 F.3d at 1000). The Court "must accord substantial deference to the predictive judgments of [the legislature]." *Id.* at 980 (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 520 U.S. 180, 195 (1997)). As explained in the State's brief, the Hawaiʻi legislature identified butterfly knives as a public safety concern due to their popularity among criminal gang members and youths. *See* State Br. at 32–24. As HRS § 134-53 prohibits only butterfly knives, rather than a broader set of weapons, it is reasonably tailored to achieve the government's objective. *See id.* at 34–35.

### C.     History Does Not Support Plaintiffs or Their Amici

This nation's long history of regulating knives and other non-firearm weapons also supports the district court's decision to uphold Hawai'i's prohibition on butterfly knives. Since well before the ratification of the Fourteenth Amendment, states have prohibited the manufacture, sale, possession, and/or use of a variety of non-firearm weapons.

In 1838, for example, Tennessee outlawed "sell[ing,] ... offer[ing] to sell, or ... bringing into th[e] State, for the purpose of selling, giving, or disposing of in any other manner whatsoever, any Bowie knife or knives, or Arkansas tooth picks, or any knife or weapon that shall in form, shape or size resemble" those bladed weapons. 1838 Tenn. Sess. Laws 200-01. In 1837, Georgia similarly outlawed selling "Bowie, or any other kind of knives, manufactured and sold for the purpose of wearing or carrying the same as arms of offence or defence." 1837 Ga. Sess. Laws 90-91. Alabama curtailed the sale of bowie knives, Arkansas toothpicks, and similar knives with a prohibitive tax: its 1837 law provided that "for every such weapon, sold or given, or otherwise disposed of in this State, the person selling, giving or disposing of the same, shall pay a tax of one hundred dollars"—equivalent to thousands of dollars today. 1837 Ala. Sess. Laws 7. And Florida in 1838 imposed a tax of $200 per year on anyone wishing to sell bowie knives, dirks, or sword-canes. 1838 Fla. Laws No. 24 § 1. Laws prohibiting or regulating bowie knife and other

bladed-weapon sales also appeared in the period after the Fourteenth Amendment's ratification. *See, e.g.*, 1881 Ark. Sess. Laws 192 (prohibiting sale, barter, or exchange, or furnishing to another person in any manner, "any dirk or bowie knife, or a sword or a spear in a cane"). As these statutes establish, the claims of amicus curiae MSLF—that "there is no historical analogue for a complete prohibition on the manufacture, sale, ownership, or possession of a particular type of knife" and that "[t]hrough the passage of the Fourteenth Amendment, no state completely prohibited—or even regulated—the manufacture, sale, possession, or transfer of bladed weapons, including knives," *see* MSLF Amicus Br. at 26, 30—are flatly wrong.[7]

Furthermore, these knife regulations exist within a long history of state prohibitions addressing a wide range of weapons less lethal than guns. Between 1849 and 1927, at least thirteen states forbade manufacturing, selling, using, and/or possessing a variety of such weapons, including slung-shots (a small weighted ball

---

[7] MSLF is also wrong to suggest that the relevant period of historical regulation ends in 1800, with the period up until 1868 considered only to "aid[] in understanding" what an "ordinary person … [in 1791] would think [the Second Amendment] meant." MSLF Amicus Br. at 27. To the contrary, the period beginning in the mid-to-late nineteenth century is especially important in considering a challenge to a State law. *See, e.g.*, *Gould v. Morgan*, 907 F.3d 659, 669 (1st Cir. 2018) ("Because the challenge here is directed at a state law, the pertinent point in time would be 1868 (when the Fourteenth Amendment was ratified).")

attached to a rope), sandbags (used as a cudgel), billy-clubs, blackjacks, bludgeons, and brass knuckles. *See* 1849 N.Y. Sess. Laws 403-04, ch. 278 (illegal to manufacture, sell, possess, or use slung-shots); 1850 Mass. Acts & Resolves 401, ch. 194 (illegal to manufacture or sell slung-shots); 1881 Ill. Sess. Laws 71 (illegal to possess or sell slung-shots or metallic knuckles); 1881 Ark. Sess. Laws 192 (illegal to sell brass knuckles); 1890 Okla. Sess. Laws 475-76 (illegal to manufacture, sell, carry, or use slung-shots); 1893 Fla. Sess. Laws 52 (illegal to manufacture or sell slung-shots or metallic knuckles); 1907 Ala. Sess. Laws 80 (illegal to sell brass knuckles or slung-shots); 1911 Ohio Sess. Laws 124 (illegal to manufacture or sell brass knuckles, billies, slung-shots, sandbags, or blackjacks); 1911 N.Y. Sess. Laws 442 (illegal to manufacture or sell blackjacks, slungshots, billies, sandclubs, sandbags, bludgeons, or metal knuckles); 1912 N.J. Sess. Laws 365 (same); 1915 Vt. Sess. Laws 344 (illegal to manufacture, sell, use, or possess with intent to use, slung-shots, blackjacks, or brass knuckles); 1917 Minn. Sess. Laws 354 (illegal to sell slung-shots, sandclubs, or metal knuckles); 1917 Cal. Sess. Laws 221 §§1-2 (illegal to manufacture, sell, or possess blackjacks, slung-shots, billies, sandclubs, sandbags, bludgeons, or metal knuckles); 1927 Mich. Sess. Laws 888 (illegal to manufacture, sell, or possess blackjacks, slung-shots, billies, metallic knuckles, sandclubs, sandbags, or bludgeons).

This long history of regulation establishes that a variety of weapons less lethal than firearms fall outside the Second Amendment's protection. *Cf. Peruta v. Cty. of San Diego*, 824 F.3d 919, 942 (9th Cir. 2016) (en banc) (concluding from history that the Second Amendment does not protect concealed carry). And that is a complete answer to Plaintiffs' suggestion (Plaintiffs-Appellants' Br. at 46) that butterfly knives cannot be prohibited in a State where handguns are permitted. The Second Amendment allows states to determine that certain non-firearm weapons should be prohibited even though handguns are permitted.

## CONCLUSION

The judgment of the district court should be affirmed.

DATED: Honolulu, Hawaiʻi, October 27, 2020.

/s/ Wendy F. Hanakahi
PAMELA W. BUNN
WENDY F. HANAKAHI
Dentons US LLP

JANET CARTER
WILLIAM J. TAYLOR, JR.
LISA M. EBERSOLE
CARINA BENTATA GRYTING
Everytown Law

Attorneys for Amicus Curiae
EVERYTOWN FOR GUN SAFETY

20

# ADDENDUM

## ADDENDUM TABLE OF CONTENTS

| TAB | HISTORICAL LAW | PAGE |
|---|---|---|
| | **Knives and Other Bladed Weapons, 1837-1881** | |
| 1 | 1837 Ala. Sess. Laws 7 | 1 |
| 2 | 1837 Ga. Sess. Laws 90-91 | 3 |
| 3 | 1838 Fla. Laws No. 24 § 1, *reprinted in* John P. Duval, *Compilation of the Public Acts of the Legislative Council of the Territory of Florida, Passed Prior to 1840* 424 (1839) | 6 |
| 4 | 1838 Tenn. Sess. Laws 200-01 | 8 |
| 5 | 1881 Ark. Sess. Laws 192 | 11 |
| | **Other Non-Firearm Weapons, 1849-1927** | |
| 6 | 1849 N.Y. Sess. Laws 403-04, ch. 278 | 13 |
| 7 | 1850 Mass. Acts & Resolves 401, ch. 194 | 16 |
| 5 | 1881 Ark. Sess. Laws 192 | 11 |
| 8 | 1881 Ill. Laws at 71 | 18 |
| 9 | 1890 Okla. Sess. Laws 475-76 | 20 |
| 10 | 1893 Fla. Sess. Laws 52 | 23 |
| 11 | 1907 Ala. Sess. Laws 80 | 26 |
| 12 | 1911 Ohio Sess. Laws 124 | 28 |
| 13 | 1912 N.J. Sess. Laws 365 | 31 |
| 14 | 1911 N.Y. Sess. Laws 442 | 33 |
| 15 | 1915 Vt. Sess. Laws 344 | 35 |
| 16 | 1917 Cal. Sess. Laws 221 §§1-2 | 37 |
| 17 | 1917 Minn. Sess. Laws 354 | 39 |
| 18 | 1927 Mich. Sess. Laws 888 | 41 |




DATE DOWNLOADED: Fri Oct 23 00:01:19 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1837 3 .

ALWD 6th ed.
, , 1837 3 .

Chicago 7th ed.
"," Alabama - General Assembly, Called Session - 1837 : 3-42

OSCOLA 4th ed.
" 1837 3

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

1

7                                                    1837.

Treasurer of the State, to deposit in the Bank of the State and its <sub>Treasurer to</sub> several branches, all that portion of the public revenue of the United <sub>deposit the surplus rev-</sub> States, which he has received or which he may hereafter receive, as <sub>enue in the</sub> the portion of Alabama, in the following proportion: One fifth in <sub>Bank and Branches.</sub> the Bank of the State at Tuscaloosa, one fifth in the Branch Bank at Montgomery, one fifth in the Branch Bank at Mobile, one fifth in the Branch Bank at Decatur, and one fifth in the Branch Bank at Huntsville; taking therefor certificates of deposite, and all laws or parts of laws, contravening the provisions of this act, be and the same are hereby repealed: *Provided*, That the amount of the surplus revenue already received and which may hereafter be received, shall be deposited in said Bank and its Branches, in the above and foregoing proportions, on or before the first day of May next.

Approved June 30, 1837.

—••◦❀◦••—

No. 11.]                                 **AN ACT**
To suppress the use of Bowie Knives.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That if any person carrying any knife or weapon, known as Bowie <sub>Penalty for</sub> Knives or Arkansaw Tooth-picks, or either or any knife or weapon <sub>carrying Bowie knives</sub> that shall in form, shape or size, resemble a Bowie Knife or Arkansaw Tooth-pick, on a sudden rencounter, shall cut or stab another with such knife, by reason of which he dies, it shall be adjudged murder, and the offender shall suffer the same as if the killing had been by malice aforethought.

Sec. 2. *And be it further enacted*, That for every such weapon, <sub>Persons sell-</sub> sold or given, or otherwise disposed of in this State, the person selling, <sub>ing Bowie knives to be</sub> giving or disposing of the same, shall pay a tax of one hundred dol- <sub>taxed.</sub> lars, to be paid into the county Treasury; and if any person so selling, giving or disposing of such weapon, shall fail to give in the same in his list of taxable property, he shall be subject to the pains and penalties of perjury.                          Approved June 30, 1837.

—••◦❀◦••—

[No. 12.]                                 **AN ACT**
To enlarge the prison bounds in the different counties in this State.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the several sections of an act passed in the year 1824, requiring the Judge of the county court and commissioners of roads and revenue, to mark and lay out the bounds of prisoners, be and the same <sub>Prison bounds</sub> is hereby repealed; and that from and after the passage of this act, <sub>enlarged.</sub> the bounds of the different counties shall be the limits within which prisoners confined for debt shall be restricted, on entering into bond, as now required by law, to keep within the prison bounds; and hereafter the plaintiffs in suits shall not be compelled to pay the sustenance and support of prisoners who take the benefit of the bounds.

Approved June 30, 1837.

—••◦❀◦••—

[No. 13.]                                 **AN ACT**
For the relief of the purchasers of the Sixteenth Section, Township four, Range six, West, in the county of Lawrence and for other purposes.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the President and Directors of the Branch of the Bank of the

 

DATE DOWNLOADED: Sun Oct 25 13:19:56 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1837 3 .

ALWD 6th ed.
, , 1837 3 .

Chicago 7th ed.
"," Georgia - Annual Session : 3-288

OSCOLA 4th ed.
'' 1837 3

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

90                    DEADLY WEAPONS.

## DEADLY WEAPONS.

AN ACT to guard and protect the citizens of this State,
against the unwarrantable and too prevalent use of deadly
weapons.

SECTION 1. *Be it enacted by the Senate and House of Re-*
*presentatives of the State of Georgia, in General Assembly met,*
*and it is hereby enacted by the authority of the same,* That from
and after the passage of this act, it shall not be lawful for any
merchant, or vender of wares or merchandize in this State, or
any other person or persons whatsoever, to sell, or offer to sell,
or to keep, or have about their person or elsewhere, any of the
hereinafter described weapons, to wit: Bowie, or any other
kind of knives, manufactured and sold for the purpose of wear-
ing, or carrying the same as arms of offence or defence, pis-
tols, dirks, sword canes, spears, &c., shall also be contemplated
in this act, save such pistols as are known and used, as horse-
man's pistols, &c.

SEC. 2. *And be it further enacted by the authority aforesaid,*
That any person or persons within the limits of this State, vio-
lating the provisions of this act, except as hereafter excepted,
shall, for each and every such offence, be deemed guilty of a
high misdemeanor, and upon trial and conviction thereof, shall
be fined, in a sum not exceeding five hundred dollars for the
first offence, nor less than one hundred dollars at the direction
of the Court; and upon a second conviction, and every after
conviction of a like offence, in a sum not to exceed one thou-
sand dollars, nor less than five hundred dollars, at the discre-
tion of the Court.

SEC. 3. *And be it further enacted by the authority aforesaid,*
That it shall be the duty of all civil officers, to be vigilent in
carrying the provisions of this act into full effect, as well also as
Grand Jurors, to make presentments of each and every offence
under this act, which shall come under their knowledge.

SEC. 4. *And be it further enacted by the authority aforesaid,*
That all fines and forfeitures arising under this act, shall be
paid into the county Treasury, to be appropriated to county
purposes: *Provided, nevertheless,* that the provisions of this
act shall not extend to Sheriffs, Deputy Sheriffs, Marshals,
Constables, Overseers or Patrols, in actual discharge of their
respective duties, but not otherwise: *Provided, also,* that no
person or persons, shall be found guilty of violating the before
recited act, who shall openly wear, externally, Bowie Knives,
Dirks, Tooth Picks, Spears, and which shall be exposed
plainly to view: *And provided, nevertheless,* that the provis-
ions of this act shall not extend to prevent venders, or any oth-

4

er persons who now own and have for sale, any of the aforesaid weapons, before the first day of March next.

SEC. 5. *And be it further enacted by the authority aforesaid,* That all laws and parts of laws militating against this act, be, and the same are, hereby repealed.

JOSEPH DAY,
Speaker of the House of Representatives,

ROBERT M. ECHOLS,
President of the Senate.

Assented to, 25th December, 1837.
GEORGE R. GILMER, Governor.

---

## DEEDS.

AN ACT to admit certain Deeds to be recorded and read in evidence ; and also, to prescribe the effect of certain other Deeds.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Georgia, in General Assembly met, and it is hereby enacted by the authority of the same,* That from and after the passing of this act, all Deeds for lands which may have been recorded upon the usual proof of execution, but not recorded within the time prescribed by the laws of this State, shall be admitted in evidence, without further proof; and when the originals are lost or destroyed, and that being made judicially known to the Court, copies of the same may be introduced and read in evidence, on any trial before any Court of law or equity, in this State.

SEC. 2. *And be it further enacted by the authority aforesaid,* That all Deeds executed, according to the laws of this State, but not yet recorded, may nevertheless be recorded within twelve months from the passage of this act, upon the usual proof of their execution ; and when so recorded, the same or copies thereof, when the originals are shown to be lost or destroyed, may be read in evidence without further proof.

SEC. 3. *And be it further enacted by the authority aforesaid,* That all Deeds conveying lands hereafter executed upon being attested or proved in the manner required by the laws of this State, shall be admitted to record, at any time, and after being recorded, shall be received in evidence in any Court of Law or Equity, without further proof of the execution thereof.

SEC. 4. *And be it further enacted by the authority aforesaid,* That in all cases where two or more Deeds shall hereafter be executed by the same person or persons, conveying the same

 

DATE DOWNLOADED: Fri Oct 23 12:14:42 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
John P. Duval. Compilation of the Public Acts of the Legislative Council of the
Territory of Florida, Passed Prior to 1840 (1839).

ALWD 6th ed.
Duval, J. Compilation of the Public Acts of the Legislative Council of the Territory
of Florida, Passed Prior to 1840 (1839).

APA 7th ed.
Duval, J. (1839). Compilation of the Public Acts of the Legislative Council of the
Territory of Florida, Passed Prior to 1840. Tallahassee, S.S. Sibley, printer.

Chicago 7th ed.
Duval John P. Compilation of the Public Acts of the Legislative Council of the
Territory of Florida, Passed Prior to 1840. Tallahassee, S.S. Sibley, printer.

McGill Guide 9th ed.
John P. Duval, Compilation of the Public Acts of the Legislative Council of the
Territory of Florida, Passed Prior to 1840 (Tallahassee: S.S. Sibley, printer., 1839)

MLA 8th ed.
Duval, John P. Compilation of the Public Acts of the Legislative Council of the
Territory of Florida, Passed Prior to 1840. Tallahassee, S.S. Sibley, printer.
HeinOnline.

OSCOLA 4th ed.
Duval, John P. Compilation of the Public Acts of the Legislative Council of the
Territory of Florida, Passed Prior to 1840. Tallahassee, S.S. Sibley, printer.

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

424                          LAWS OF FLORIDA.

No. 24.  An Act in addition to an Act (approved, January 30, 1835,) entitled an
Act to prevent any Person in this Territory from carrying Arms secretly.

SECT. 1. *Be it enacted by the Governor and Legislative*
*Council of the Territory of Florida,* That from and after the
passage of this act, it shall not be lawful for any person or per-
sons in this Territory to vend dirks, pocket-pistols, sword-canes,
or bowie-knives, until he or they shall have first paid to the trea-
sury of the county, in which he or they intend to vend weapons,
a tax of two hundred dollars per annum ; and all persons carry-
ing said weapons openly, shall pay to the officer aforesaid a tax
of ten dollars per annum ; and it shall be the duty of said officer
to give the parties so paying a written certificate, stating that
they have complied with the provisions of this act : four-fifths
of all moneys so collected to be applied by the county courts
to county purposes, the other fifth to be paid to the prosecuting
attorney.

*Venders to get license.* (margin note)
*Moneys how appropriated* (margin note)

SECT. 2. *Be it further enacted,* That if any person shall be
known to violate this act, he or they so offending shall be sub-
ject to an indictment, and on conviction, to a fine of not less than
two hundred, nor exceeding five hundred dollars, at the discre-
tion of the court.

*Penalty.* (margin note)

SECT. 3. *Be it further enacted,* That it shall be the duty of
the several judges of the superior courts of this Territory, to give
this act in charge to the grand jurors of their respective districts,
at each term of the court.

*Judges to charge grand juries.* (margin note)

[*Approved, Feb.* 10, 1838.

CHAP. 857. (No. 35.) An Act to prevent Trespasses and Depredations on Lands
within the Jurisdiction of the Territory of Florida.

SECT. 1. *Be it enacted by the Governor and Legislative*
*Council of the Territory of Florida,* That it shall not be law-
ful for any stock owner, or cattle owner, not residing within the
limits of the Territory of Florida, to drive his stock, or cattle,
upon the lands within the Territorial limits of the same, for any
other purpose than that of making sale of the same ; and if any
such stock or cattle owner shall so drive, or cause to be driven,
any stock or cattle upon lands within the limits of said Territory
for grazing, or shall permit any cattle which have strayed off,
and passed the limits of Florida for more than one month, to re-
main within the said Territory, the stock or cattle so driven, or
remaining within the same, shall be forfeited, and subject to sale,
upon proof being thereof made before a justice of the peace, or
county judge ; one half of the proceeds of such sale shall be for
the benefit of the informer, and the other half to the Territory of
Florida.

*Introduction of foreign stock.* (margin note)
*Penalty.* (margin note)

SECT. 2. *Be it further enacted,* That if any person or per-
sons shall, with intent to avoid the foregoing provisions of this
act, make any colourable, or fictitious sale of cattle to any per-

*Fictitious sale.* (margin note)

7

# HEINONLINE

Citation: 1837-1838 200 1837-1838
Provided by:
J. Michael Goodson Law Library. Duke University School of Law



Content downloaded/printed from
HeinOnline (http://heinonline.org)
Mon Mar 21 16:41:31 2016

-- Your use of this HeinOnline PDF indicates your acceptance
   of HeinOnline's Terms and Conditions of the license
   agreement available at http://heinonline.org/HOL/License

-- The search text of this PDF is generated from
   uncorrected OCR text.

200

to perform the duties enjoined on them by the second section of an act, passed at Nashville, the 19th of February, 1836, chapter XLVIII, that it shall be the duty of the several county surveyors to do and perform said services within their respective counties, and that said county surveyors shall be allowed the same fees, and be subject to the same penalties that said principal surveyors were entitled to, and liable for, in processioning said lands, and that said county surveyors shall return a plat and certificate of each tract so processioned by them to the entry taker of the county, who shall forthwith record the same in his survey book, for which services the said entry taker shall be allowed the same fees as for other services of the same kind, and that said several tracts of land shall be liable to attachment and final judgment for all expenses in processioning and recording the same.

JOHN COCKE,
*Speaker of the House of Representatives.*
TERRY H. CAHAL,
*Speaker of the Senate.*

Passed January 18th, 1838.

---

## CHAPTER CXXXVII.

An Act to suppress the sale and use of Bowie Knives and Arkansas Tooth Picks in this State.

**Knives not to be sold or given away**

SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That if any merchant, pedlar, jeweller, confectioner, grocery keeper, or other person or persons whatsoever, shall sell or offer to sell, or shall bring into this State, for the purpose of selling, giving or disposing of in any other manner whatsoever, any Bowie knife or knives, or Arkansas tooth picks, or any knife or weapon that shall in form, shape or size resemble a Bowie knife or any Arkansaw tooth pick, such merchant, pedlar, jeweller, confectioner, grocery keeper, or other person or persons for every such Bowie knife or knives, or weapon that shall in form, shape or size resemble a Bowie knife or Arkansas tooth pick so sold, given or otherwise disposed of, or offered to be sold, given or otherwise disposed of, shall be guilty of a misdemeanor, and upon conviction thereof upon indictment or presentment, shall be fined in a sum not less than one hundred dollars, nor more than five hundred dollars, and shall be imprisoned in the county jail for a period not less than one month nor more than six months.

**Not to be worn**

SEC. 2. That if any person shall wear any Bowie knife, Arkansas tooth pick, or other knife or weapon that shall in

Digitized from Best Copy Available

201

form, shape or size resemble a Bowie knife or Arkansas tooth pick under his clothes, or keep the same concealed about his person, such person shall be guilty of a misdemeanor, and upon conviction thereof shall be fined in a sum not less than two hundred dollars, nor more than five hundred dollars, and shall be imprisoned in the county jail not less than three months and not more than six months.

Sec. 3.    That if any person shall maliciously draw or attempt to draw any Bowie knife, Arkansas tooth pick, or any knife or weapon that shall in form, shape or size resemble a Bowie knife or Arkansas tooth pick, from under his clothes or from any place of concealment about his person, for the purpose of sticking, cutting, awing, or intimidating any other person, such person so drawing or attempting to draw, shall be guilty of a felony, and upon conviction thereof shall be confined in the jail and penitentiary house of this State for a period of time not less than three years, nor more than five years.  *Penalty of drawing a knife*

Sec. 4.    That if any person carrying any knife or weapon known as a Bowie knife, Arkansas tooth pick, or any knife or weapon that shall in form, shape or size resemble a Bowie knife, on a sudden rencounter, shall cut or stab another person with such knife or weapon, whether death ensues or not, such person so stabbing or cutting shall be guilty of a felony, and upon conviction thereof shall be confined in the jail and penitentiary house of this State, for a period of time not less than three years, nor more than fifteen years.  *Penalty for using knife*

Sec. 5.    That this act shall be in force from and after the first day of March next. And it shall be the duty of the several judges of the circuit courts in this State to give the same in charge to the grand jury every term of the respective courts, and any civil officer who shall arrest and prosecute to conviction and punishment any person guilty of any of the offences enumerated in this act, shall be entitled to the sum of fifty dollars, to be taxed in the bill of costs, and the attorney general shall be entitled to a tax fee of twenty dollars in each case, when a defendant shall be convicted, and no prosecutor required on any presentment or indictment for any of the offences enumerated in this act.  *Of prosecutions*

JOHN COCKE,
*Speaker of the House of Representatives.*
TERRY H. CAHAL,
*Speaker of the Senate.*

Passed January 27th, 1838.

26

Digitized from Best Copy Available




DATE DOWNLOADED: Fri Oct 23 14:04:16 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1881 191 .

ALWD 6th ed.
, , 1881 191 .

Chicago 7th ed.
"," Arkansas - 23rd General Assembly, Regular Session : 191-192

OSCOLA 4th ed.
'' 1881 191

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
  Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

SEC. 2.   Any person, excepting such officers, or persons on a journey, and on his premises, as are mentioned in section one of this act, who shall wear or carry any such pistol as in [is] used in the army or navy of the United States, in any manner except uncovered, and in his hand, shall be deemed guilty of a misdemeanor.

SEC. 3.   Any person who shall sell, barter or exchange, or otherwise dispose of, or in any manner furnish to  any person *any person* any dirk or bowie knife, or a sword or a spear in a cane, brass or metal knucks, or any pistol, of any kind whatever, except such as are used in the army or navy of the United States, and known as the navy pistol, or any kind of cartridge, for any pistol, or any person who shall keep any such arms or cartridges for sale, shall be guilty of a misdemeanor.

SEC. 4.   Any person convicted of a violation of any of the provisions of this act, shall be punished by a fine of not less than fifty nor more than two hundred dollars.

SEC. 5.   Any justice of the peace in this State, who, from his own knowledge, or from legal information, knows, or has reasonable grounds to believe, any person guilty of the violation of the provisions of this act, and shall fail or refuse to proceed against such person, shall be deemed guilty of a nonfeasance in office, and upon conviction thereof, shall be punished by the same fines and penalties as provided in section four of this act, and shall be removed from office.

SEC. 6.   Any officer in this State, whose duty it is to make arrests, who may have personal knowledge of any person carrying arms contrary to the provisions of this act, and shall fail or refuse to arrest such person and bring him to trial, shall be punished, as provided in section four of this act.

SEC. 7.   All persons violating any of the provisions of this act may be prosecuted in any of the courts of this State, having jurisdiction to try the same.

SEC. 8.   All laws or parts of laws, in conflict with the provisions of this act are hereby repealed, and this act to take effect and be in force ninety days after its passage.

Approved, April 1st, 1881.





DATE DOWNLOADED: Fri Oct 23 13:54:29 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1849 403 .

ALWD 6th ed.
, , 1849 403 .

Chicago 7th ed.
"," New York - 72nd Legislature : 403-404

OSCOLA 4th ed.
'' 1849 403

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

York, which is or may be designated by the common council of the city of New-York, by resolution or ordinance as the lamp district, to be collected according to law and applied towards the expense of lighting such parts of the city last mentioned; and also the further sum of one hundred and eighty-seven thousand one hundred and seventy-five dollars, by tax on the estates real and personal of the freeholders and inhabitants of and situated within the said city and county, to be collected according to law and applied towards defraying the deficiency in taxation in said city and county for the year one thousand eight hundred and forty-eight.

*Deficiency in taxes of 1848 $187,-185.*

§ 2. This act shall take effect immediately.

# Chap. 277.

AN ACT *authorising the board of supervisors of Columbia county to purchase a piece of land.*

Passed April 7, 1849.

*The People of the State of New-York, represented in Senate and Assembly, do enact as follows :*

§ 1. The board of supervisors of the county of Columbia are hereby authorised and empowered to purchase and hold as a part of the county poor-house farm, a lot of land containing some four or five acres lying adjacent to said farm, and now owned by the heirs at law of John Macy, deceased, any law to the contrary notwithstanding.

*A lot may be purchased.*

§ 2. This act shall take effect immediately.

# Chap. 278.

AN ACT *to prevent the manufacture, use and sale of slung shot.*

Passed April 7, 1849.

*The People of the State of New-York, represented in Senate and Assembly, do enact as follows :*

§ 1. Any person who shall, within this state, hereafter manufacture or cause to be manufactured, or sell, or expose, or keep for sale or gift, or part with any instrument or weapon or part of the kind usually known as slung shot, or of any similar kinds shall be liable to indictment for misdemeanor, and on conviction, shall be punished by fine of not less than two hundred and fifty, nor over five hundred dollars, or by imprisonment in a county jail for not less than six months, nor over two years.

*Punishment for making or selling slung shot.*

404 LAWS OF NEW-YORK.

*Indictment for felony.* § 2. Any person who shall, within this state, hereafter carry, or be found in the possession of, or use, or attempt to use, as against any other person, any instrument or weapon of the kind usually known as slung shot or of any similar kind, shall be liable to indictment for felony, and on conviction shall be punished by imprisonment in a state's prison for a term not less than one, nor more than five years.

# Chap. 279.

AN ACT *making an appropriation to the Buffalo Hospital of the sisters of charity.*

Passed April 7, 1849, "three-fifths being present."

*The People of the State of New-York, represented in Senate and Assembly, do enact as follows:*

*Appropriation of $9000.* § 1. The sum of nine thousand dollars is hereby appropriated to the Buffalo hospital of the sisters of charity, to be paid out of the general fund as follows: five thousand dollars thereof on the first day of July, in the year one thousand eight hundred and forty nine, and four thousand dollars thereof on the first day of March, in the year one thousand eight hundred and fifty.

*Money to be paid.* § 2. The treasurer shall pay on the warrant of the comptroller the sums above specified in the manner and for the purpose provided by this act, to the officers of the said, "Buffalo Hospital of the sisters of charity" to be expended and used as hereinafter provided, and said officers shall make a report under oath to the legislature showing the expenditure thereof.

*How to be applied.* § 3. The above mentioned sum of five thousand dollars shall be applied and expended by the said "The Buffalo Hospital of the sisters of charity," in finishing, enlarging, repairing and furnishing the buildings and making the necessary and proper erections for the use of the said "The Buffalo Hospital of the sisters of charity."

*Residue how to be used.* § 4. The residue of said sum of nine thousand dollars hereby appropriated shall be used and appropriated by the said "Buffalo Hospital of the sisters of charity," in supporting and sustaining the Hospital institution established and conducted by such corporation.

§ 5. This act shall take effect immediately.

 

DATE DOWNLOADED: Fri Oct 23 13:36:43 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1850 397 .

ALWD 6th ed.
, , 1850 397 .

Chicago 7th ed.
"," Massachusetts - Acts & Resolves, January Session : 397-402

OSCOLA 4th ed.
'' 1850 397

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

true lines of such land or flats continued to said commissioners' line : *and provided, also,* that so much of said *Proviso.* wharf as shall extend beyond the line of low-water mark, shall be built on piles, which piles shall not be nearer to each other than six feet in the direction of the stream, and eight feet in a transverse direction, and that this grant shall in no wise impair the legal rights of any person.  [*Approved by the Governor, April* 15, 1850.]

---

An Act in relation to the carrying of Slung Shot.  *Chap* 194.

*BE it enacted by the Senate and House of Representatives, in General Court assembled, and by the authority of the same, as follows :*

SECT. 1.  Any person arrested upon the warrant of a *Penalty, fine, or* magistrate, issued against him for any alleged offence *imprisonment.* against the laws of this Commonwealth, and any person committing any criminal offence against the laws of this Commonwealth, or any breach or disturbance of the public peace, who may, at the time of the commission of such offence, or breach or disturbance of the public peace, be arrested by any sheriff, deputy sheriff, constable, or police officer, in this State, and who shall, at the time of such arrest, be armed with any dangerous weapon, of the kind usually called slung shot, shall be punished by a fine not exceeding fifty dollars, or imprisonment in the common jail or house of correction for a term not exceeding one year.

SECT. 2.  Any person who shall, within this State, here- *Penalty for* after manufacture, or cause to be manufactured, or sell, or *manufacturing slung shot, or* expose for sale, any instrument or weapon of the kind usu- *causing them to* ally known as slung shot, shall be punished therefor by a *be manfactured.* fine not less than fifty dollars, or by imprisonment in the common jail or house of correction, for a term not exceeding six months.  [*Approved by the Governor, April* 15, 1850.]

---

An Act to incorporate the Springfield Medical School.  *Chap* 195.

*BE it enacted by the Senate and House of Representatives, in General Court assembled, and by the authority of the same, as follows :*

SECT. 1.  William B. Calhoun, Reuben A. Chapman, *Corporators.* James M. Smith, their associates and successors, are hereby made a corporation, by the name of the Springfield Medical School, to be established in the town of Springfield, in the county of Hampden, with all the powers and privi- *Powers and* leges, and subject to all the duties, restrictions, and liabili- *duties.* *R. S. ch. 44.* ties, set forth in the forty-fourth chapter of the Revised Statutes.

52




DATE DOWNLOADED: Sun Oct 25 13:50:18 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1881 23 .

ALWD 6th ed.
; ., , 1881 23 .

Chicago 7th ed.
"," Illinois - 32nd General Assembly, 1st Session [Bradwell Ed. Chicago] : 23-126

OSCOLA 4th ed.
'' 1881 23

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

## REGULATING THE TRAFFIC IN DEADLY WEAPONS.

SECTION
1. Having in possession or selling.
2. Selling or giving to minor.
3. Register—What it shall contain.
4. Carrying concealed weapon.

SECTION
5. Fines how recovered—Where paid—Second violation.
6. Act not to apply to certain officers.
7. Repeal.

AN ACT to regulate the traffic in deadly weapons, and to prevent the sale of them to minors. Approved April 16, 1881. In force July 1, 1881.

**1.** HAVING IN POSSESSION OR SELLING.] § 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That whoever shall have in his possession, or sell, give or loan, hire or barter, or whoever shall offer to sell, give, loan hire or barter, to any person within this State, any slung-shot or metallic knuckles, or other deadly weapon of like character, or any person in whose possession such weapons shall be found, shall be guilty of a misdemeanor, and upon conviction, shall be fined in any sum not less than ten dollars ($10), nor more than two hundred dollars ($200).

**2.** SELLING OR GIVING TO MINOR.] § 2. Whoever, not being the father, guardian or employer of the minor herein named, by himself or agent, shall sell, give loan, hire or barter, or shall offer to sell, give, loan, hire or barter to any minor within this State, any pistol, revolver, derringer, bowie knife, dirk or other deadly weapon of like character, capable of being secreted upon the person, shall be guilty of a misdemeanor, and shall be fined in any sum not less than twenty-five dollars ($25), nor more than two hundred dollars ($200).

**3.** REGISTER TO BE KEPT—WHAT IT SHALL CONTAIN.] § 3. All persons dealing in deadly weapons hereinbefore mentioned, at retail within this State, shall keep a register of all such weapons sold or given away by them. Such register shall contain the date of the sale or gift, the name and age of the person to whom the weapon is sold or given, the price of the said weapon, and the purpose for which it is purchased or obtained. The said register shall be in the following form:

| No. of Weapon. | To whom sold or given. | Age of Purchaser. | Kind and description of weapon. | For what purpose purchased or obtained. | Price of weapon. |
|---|---|---|---|---|---|
| | | | | | |

Said register, shall be kept open for the inspection of the public, and all persons who may wish to examine the same, may do so at all reasonable times during business hours. A failure to keep such register, or to allow an examination of the same, or to record therein any sale or gift of a deadly weapon, or the keeping of a false register, shall be a misdemeanor, and shall subject the offender to a fine of not less than twenty-five dollars ($25), nor more than two hundred dollars ($200.)

**4.** CARRYING CONCEALED WEAPONS.] § 4. Whoever shall carry a concealed weapon upon or about his person, of the character in this act specified, or razor as a weapon, or whoever, in a threatening or boisterous manner, shall display or flourish any deadly weapon, shall be guilty of a misdemeanor, and shall be fined in any sum not less than twenty-five dollars ($25), nor more than two hundred dollars ($200.)

**5.** FINES HOW RECOVERED—WHERE PAID—SECOND VIOLATION.] § 5. All fines and penalties specified in this act, may be recovered by information, complaint or indictment, or other appropriate remedy, in any court of competent jurisdiction; and when recovered, shall be paid into the county treasury of the county where the conviction is had, and become a part of the current revenue of the county; or, the said fines and penalties may be recovered by *qui tam* action, one-half to be paid to the informer, and the other half to be paid into the county treasury as aforesaid. For a second violation of any of the provisions of this act, the offender shall be fined in double the amount herein specified; or, may be committed to the county jail for any term not exceeding twenty days, in the discretion of the court.

**6.** ACT NOT TO APPLY TO CERTAIN OFFICERS.] § 6. Section four (4) of this act shall not apply to sheriffs, coroners, constables, policemen, or other peace officers, while engaged in the discharge of their official duties, or to any person summoned by any of such officers to assist in making arrest, or preserving the peace, while such person so summoned is engaged in assisting such officer.

**7.** REPEAL.] § 7. All acts and parts of acts in conflict with this act, are hereby repealed.

 

DATE DOWNLOADED: Fri Oct 23 15:19:27 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1890 71 .

ALWD 6th ed.
, , 1890 71 .

Chicago 7th ed.
"," Oklahoma - 1st Regular Session : 71-1216

OSCOLA 4th ed.
'' 1890 71

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

Chap. 25.

witness to such sale, excepting upon the written order or prescription of some practicing physician whose name must be attached to such order or prescription. No person shall sell, give away or dispose of any poisonous substance without attaching to the phial, box or parcel containing such poisonous substance a label with the word "poison" printed or written upon it, in plain and legible characters.

(2286) § **11.** Any person violating any of the provisions of the first preceding section shall be deemed guilty of a misdemeanor. <span style="float:right">Same, violation of.</span>

(2287) § **12.** Every person whose duty it is by the second preceding section to keep any book for recording the sale or gift of poisons, who wilfully refuses to permit any person to inspect said book upon reasonable demand made during business hours, is punishable by fine not exceeding fifty dollars. <span style="float:right">Record of poisons to be public.</span>

(2288) § **13.** Every person who shall, except in a safe place on his own premises, lay out strychnine or other poison within the limits of any town or within one mile of any dwelling house, or any barn, stable or out building used at the time for keeping or shelter of horses, cattle, sheep or swine, or within one-half mile of any travelled thoroughfare, or on lands not his own, on the ceded lands of this Territory, is guilty of a misdemeanor: *Provided*, Nothing in this section shall be construed to prohibit the putting out at any time of poisoned grain for the purpose of killing gophers. <span style="float:right">Laying out poisons.</span>

(2289) § **14.** Every person who, in putting up or pressing any bundle of hay for market, omits to put the number of pounds in each bundle or bale so put up, for which he sells or offers to sell it, is guilty of a misdemeanor. <span style="float:right">Omitting to mark hay.</span>

(2290) § **15.** Every person who by putting up in any bag, bale, box, barrel or other package, any hops, cotton, hay or other goods usually sold in bags, bales, barrels or packages, by weight, puts in or conceals therein anything whatever for the purpose of increasing the weight of such bag, bale, box, barrel or package, is punishable by a fine of twenty-five dollars for each offense. <span style="float:right">Increasing weight of barrels, boxes, etc.</span>

(2291) § **16.** Every person who adulterates or dilutes any article of food, drink, drug, medicine, strong, spirituous or malt liquor or wine, or any article useful in compounding either of them, whether one useful for mankind or for animals, with a fraudulent intent to offer the same, or cause or permit it to be offered for sale as unadulterated or undiluted, and every person who fraudulently sells or keeps or offers for sale the same as unadulterated or undiluted, knowing it to have been adulterated or diluted, is guilty of a misdemeanor. <span style="float:right">Adulterating food.</span>

(2292) § **17.** Every person who knowingly sells, or keeps or offers for sale, or otherwise disposes of any article of food, drink, drug or medicine, knowing that the same has become tainted, decayed, spoiled or otherwise unwholesome or unfit to be eaten or drank, with intent to permit the same to be eaten or drank by any person or animal, is guilty of a misdemeanor. <span style="float:right">Disposing of tainted food.</span>

(2293) § **18.** Every person who manufactures or causes to be manufactured, or sells or offers or keeps for sale, or gives or dis- <span style="float:right">Manufacturing slung shot.</span>

**Chap. 25.** poses of any instrument or weapon of the kind usually known as slung shot, or of any similar kind, is guilty of a misdemeanor.

**Carrying or using slung shot.**     (2294) § **19.**   Every person who carries upon his person, whether concealed or not, or uses or attempts to use against another, any instrument or weapon of the kind usually known as slung shot, or of any similar kind, is guilty of a felony.

**Concealed weapons.**     (2295) § **20.**   Every person who carries concealed about his person and description of firearms, being loaded or partly loaded, or any sharp or dangerous weapon, such as is usually employed in attack or defense of the person, is guilty of a misdemeanor.

**Wilful prairie fires.**     (2296) § **21.**   Every person who shall wilfully set on fire, or cause to be set on fire, any woods, marshes or prairies, with intention to injure the property of another, shall be deemed guilty of a misdemeanor, and shall be liable for all damages done by such fire.

**Negligent prairie fires.**     (2297) § **22.**   Every person who negligently or carelessly sets on fire, or causes to be set on fire, any woods, marshes, or prairies, or who, having set the same on fire, or caused it to be done, negligently or carelessly, or without full precaution or efforts to prevent, permits it to spread beyond his control, shall, upon conviction, be fined not exceeding one hundred dollars and not less than ten dollars, and shall be liable to injured parties for all damages occasioned thereby. One-half of such fine shall, when collected, go to the informer.

**Refusing to aid at fires.**     (2298) § **23.**   Every person who, at any burning of a building, is guilty of any disobedience to lawful orders of any public officer or fireman, or of any resistance to or interference with the lawful efforts of any fireman or company of firemen to extinguish the same, or of any disorderly conduct calculated to prevent the same from being extinguished, or who forbids, prevents or dissuades others from assisting to extinguish the same, is guilty of a misdemeanor.

**Ferries must be licensed.**     (2299) § **24.**   Every person who maintains any ferry for profit or hire upon any waters within this Territory, without having first obtained a license as provided by law, is guilty of a misdemeanor. And any license or lease granted by the board of county commissioners of the proper county shall be exclusive to the lessee or licensee for a distance of two miles from the place where such ferry is located, up and down such stream either way; and any person who shall ferry, transport or carry or attempt to ferry, transport or carry any passengers, goods, chattels, or merchandise, or who shall have, keep, or maintain any scow, skiff, or boat for the purpose of ferrying, transporting, or carrying any passengers, goods, chattels or merchandise upon any water of this Territory, within a distance of two miles of any licensed ferry, shall be guilty of a misdemeanor, and may be punished by a fine not exceeding one hundred dollars, or thirty days imprisonment in the county jail, or by both fine and imprisonment; when such ferry is upon waters dividing two counties, the offenders may be prosecuted in either county.

**Ferry bond violated.**     (2300) § **25.**   Every person who having entered into a bond or obligation, as provided by his ferry charter or any general law on




DATE DOWNLOADED: Mon Oct 19 17:05:58 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1893 51 .

ALWD 6th ed.
, , 1893 51 .

Chicago 7th ed.
"," Florida - 4th Regular Session : 51-52

OSCOLA 4th ed.
'' 1893 51

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
  Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

23

# LAWS OF FLORIDA.

**51**

## CHAPTER 4123—[No. 9.]

**1893.**

AN ACT Disallowing Fees in cases before Committing Magistrates where Informations are not filed nor Indictments found.

*Be it enacted by the Legislature of the State of Florida:*

SECTION. 1. That whenever a Committing Magistrate holds to bail, or commits a person to answer to a criminal charge in a County Court, a Criminal Court of Record, or a Circuit Court, and an information is not filed nor an indictment found against such person, the costs of such committing trial shall not be paid by the State, except the costs for executing the warrant.

State not to pay costs in cases where information is not filed or indictment found.

SEC. 2. That this act shall go into effect immediately upon its passage and approval by the Governor,

When to take effect.

Approved June 2, 1893.

––––––

## CHAPTER 4124—[No. 10.]

AN ACT to Amend Sections 2421, 2423 and 2425 and to Repeal Section 2422 of the Revised Statutes of the State of Florida, Relating to the Carrying of Concealed Weapons.

*Be it enacted by the Legislature of the State of Florida:*

SECTION 1. That Section 2421 of the Revised Statutes of the State of Florida be and the same is hereby amended so as to read as follows:

2521, CARRYING CONCEALED WEAPONS.—Whoever shall secretly carry arms of any kind on or about his person, or whoever shall have concealed on or about his person any dirk, pistol or other weapon, except a common pocket knife, shall be punished by imprisonment not exceeding three months or by fine not exceeding one hundred dollars, or by both such fine and imprisonment.

Carrying concealed weapons.

Penalty.

SEC. 2. That Section 2423, of the Revised Statutes of the State of Florida be amended so as to read as follows:

2423. PERSONS ENGAGED IN CRIMINAL OFFENCE, HAVING WEAPONS.—Whoever, when lawfully arrested, while committing a criminal offence, or a breach of disturbance of the public peace, is armed with, or has on his person any slung shot, metallic knuckles, billies, fire-arms, or other dangerous weapon, shall be punished by imprisonment not exceeding

Persons engaged in criminal offence having weapons.

Penalty.

**52**

**1893.**

# LAWS OF FLORIDA.

three months, or by fine not exceeding one hundred dollars, or by both such fine and imprisonment.

SEC. 3. That Section 2425 of the Revised Statutes of the State of Florida be and the same is hereby amended so as to read as follows:

**Manufacturing or selling slung shot, or metallic knuckles.**

2425. MANUFACTURING OR SELLING SLUNG SHOT.— Whoever manufactures, or causes to be manufactured, or sells or exposes for sale any instrument or weapon of the kind usually known as slung shot, or metallic knuckles, shall be punished by imprisonment not exceeding three months, or by

**Penalty.**

fine not exceeding one hundred dollars, or by both such fine and imprisonment.

**Repeal.**

SEC. 4. That Section 2422 of the Revised Statutes of the State of Florida, be and the same is hereby repealed.

**When to take effect.**

SEC. 5. That this Act shall go into effect on its passage and approval by the Governor.

Approved June 2, 1893.

25

 

DATE DOWNLOADED: Sun Oct 25 13:57:58 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1907 17 .

ALWD 6th ed.
, , 1907 17 .

Chicago 7th ed.
"," Alabama - General Assembly, Special Sessions-1907 and 1908 : 17-212

OSCOLA 4th ed.
'' 1907 17

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

1907.                           80

No. 55.)              AN ACT              (H. 37.

To prohibit the sale, or barter, or having posses-
    sion of small deadly weapons, such as small
    pistols, bowie knives, dirks, brass knucks,
    and slung shots.  Be it enacted by the leg-
    islature of Alabama:

Penalty for      Section 1.  That any person who sells, or bar-
sale, etc.   ters, any pistol of less than twenty-four inches
in length of barrel, or any brass knucks, metalic
knucks, dirks, slung shot, bowie knives or knife
of like kind, must on conviction be fined not less
than one hundred ($100.00) nor more than one
thousand $1000.00 dollars, and may also be sen-
tenced to hard labor for not less than one nor
more than three months.

Penalty for      Section 2.  Any person who has possession off
having pos-  of his own premises, of any of the weapons named
session of.  in the first section of this act must on conviction
be fined not less than twenty-five ($25.00) nor
more than five hundred ($500.00) dollars, and
may also be sentenced to hard labor for less than
one nor more than three months.

Effect.          Section 2.  This act shall go into effect and be
operative from and after the first day of July,
1908.

    Approved Nov. 23, 1907.

─────

No. 56.)              AN ACT              (H. 50.

To provide for the registration of all conveyan-
    ces of real and personal property and to re-
    peal all laws in conflict therewith.

Instruments,     Section 1. Be it enacted by the legislature of
record of;   Alabama, That it shall be the duty of the pro-
how made.    bate judges to record all instruments filed with
them, and entitled to registration under the law,
by writing the same in a fair hand, or by print-
ing the same in books kept for that purpose, or



DATE DOWNLOADED: Sun Oct 25 14:03:53 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1911 vol. 102 124 .

ALWD 6th ed.
, , 1911 vol. 102 124 .

Chicago 7th ed.
"," Ohio - 79th General Assembly, Acts, Regular Session : 124-125

OSCOLA 4th ed.
'' 1911 vol 102 124

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

28

124

report, and shall designate such statutes and parts of statutes as, in their judgment, ought to be repealed, with the reasons for such recommendation.

SECTION 3. That such commissioners shall have free access to the rooms, books and records in the several departments of the state, county and municipal governments; **Stenographers and clerks.** may, with the consent of the governor, employ stenographers and clerks, and secure such expert advice and assistance as to them may seem advisable; and shall be furnished by the state with suitable rooms in the State Capitol **Rooms.** Building for the transaction of the work and with all necessary stationery.

**No compensation.** SECTION 4. That such commissioners shall serve without compensation, but shall render an account to the governor of the clerical and expert service rendered and the expense of the same, together with all incidental expenses incurred by such commission, including their own expenses.

The compensation of such clerks and experts shall be fixed by the commissioners, and such compensation, to**Expense.** gether with the expenses of said commission, shall be paid, from time to time, upon the certified warrant of the auditor of state, but the total of such expenditures shall not exceed three thousand ($3,000.00) dollars, which sum is hereby appropriated out of any moneys in the state treasury to the credit of the general revenue fund not otherwise appropriated.

S. J. VINING,
*Speaker of the House of Representatives.*
HUGH L. NICHOLS,
*President of the Senate.*

Passed May 17th, 1911.
Approved May 18th, 1911.

JUDSON HARMON,
*Governor.*
102

---

[House Bill No. 320.]

## AN ACT

To prohibit the manufacture and sale of certain kinds of weapons.

*Be it enacted by the General Assembly of the State of Ohio:*

**Section 12819-1.** SECTION 1. Whoever manufactures, sells or exposes **Manufacture and sale of certain weapons prohibited.** for sale, any weapon known or designated as brass knuckles, billy, slung-shot, sand-bag, black-jack or other weapon of **Penalty.** similar character, shall, for the first offense be fined not less than ten dollars nor more than fifty dollars, and for the second and subsequent offenses, shall be fined not less than one hundred dollars nor more than five hundred dollars and imprisoned not less than thirty days nor more than six months,

29

**125**

Section 12819-2.  SECTION 2.  The provisions of this act shall not apply to any such weapons as may be designated for use by officers of the law.  S. J. VINING,
*Speaker of the House of Representatives.*
HUGH L. NICHOLS,
*President of the Senate.*

Passed May 17th, 1911.
Approved May 18th, 1911.

JUDSON HARMON,
*Governor.*
103

———

[Senate Bill No. 69.]

## AN ACT

To amend sections 1139, 1140, 1141, 1142, 1143, 1144, 1145, 1147, 1148, 1149, 1151, 1152, 1153, 1155, and to repeal section 1146 of the general code, relative to the sale of commercial fertilizers.

*Be it enacted by the General Assembly of the State of Ohio:*

SECTION 1.  That sections 1139, 1140, 1141, 1142, 1143, 1144, 1145, 1147, 1148, 1149, 1151, 1152, 1153 and 1155 of the general code be amended so as to read as follows:

Sec. 1139.  Each person, firm or corporation who manufactures, sells or offers for sale in the state a commercial fertilizer, which means any substance for fertilizing or manurial purposes, except barn yard manure, marl, lime and plaster, shall affix to each package in a conspicuous place on the outside thereof, a plainly printed certificate which shall state the number of net pounds contained therein, the name, brand or trade mark, under which it is sold, or offered for sale, the name of the manufacturer, with his or its postoffice address.  Such certificate shall contain also a chemical analysis which shall state the minimum percentages guaranteed of ammonia of potash soluble in water, of phosphoric acid in available form, comprising the soluble and reverted, and of insoluble phosphoric acid the sources of ammonia and the sources of insoluble phosphoric acid.  In bone, tankage and basic slag unmixed with other material the phosphoric acid shall be claimed only as total phosphoric acid.  In untreated phosphoric rock and other mineral phosphoric materials, the phosphoric acid shall be claimed only as insoluble phosphoric acid.  When any commercial fertilizer, sold or offered for sale in this state, contains muck, peat, pulverized leather, hair, ground horn or wool waste or other materials in which the ammonia is largely unavailable, such certificate shall state explicitly such fact.

*Each package of commercial fertilizer must have plainly printed certificate, showing name of manufacturer, ingredients and analysis.*

Sec. 1140.  No other form of analysis, and no duplication of terms or the equivalent thereof in other terms shall be used except that the nitrogen equivalent to the am-




DATE DOWNLOADED: Sun Oct 25 14:20:42 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1912 11 .

ALWD 6th ed.
; ., , 1912 11 .

Chicago 7th ed.
"," New Jersey - 136th Legislature : 11-998

OSCOLA 4th ed.
" 1912 11

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

county where granted within ten days after the granting of same, and in the event of the recipient failing to record the same as herein provided said permit shall be deemed and taken to be revoked and cancelled. It is further provided, that nothing contained herein shall prevent any person from keeping or carrying about his or her place of business, dwelling house or premises any of such weapons, firearms, stilettos, daggers, razors, knives or slung-shots, or from carrying the same from any place of purchase to his or her dwelling house or place of business, or from his or her dwelling house or place of business to any place where repairing is done, to have the same repaired and returned; and it is provided further, that nothing in this act shall be construed to make it unlawful for any person to carry a gun, rifle or knife in the woods or fields, or upon the waters of this State, for the purpose of hunting or target practice.

*Proviso.*

*Proviso.*

2. A person who manufactures, or causes to be manufactured, or sells or keeps for sale, or offers, or gives, or disposes of any instrument or weapon of the kind usually known as a blackjack, slung-shot, billy, sand-club, sand-bag, bludgeon, or metal knuckles, to any person; or a person who offers, sells, loans, leases, or gives any gun, revolver, pistol or other firearm, or any air-gun, spring-gun or other instrument or weapon in which the propelling force is spring or air, or any instrument or weapon commonly known as a toy pistol or in or upon which any loaded or blank cartridges are used, or may be used, or any loaded or blank cartridges or ammunition therefor, to any person under the age of twenty-one years, is guilty of a misdemeanor; *provided, however,* that nothing in this section shall prevent any person between the ages of sixteen and twenty-one from obtaining any gun, revolver, pistol or other firearm, air or spring-gun, if the consent in writing of the parent or guardian of said minor so to do be presented to the person from whom such weapon be obtained agreeable to the provisions of this act.

Sale, etc., of deadly weapons a misdemeanor.

*Proviso.*

3. A person who attempts to use against another, or who carries, or possesses any instrument or weapon of

Use, or carrying certain weapons a high misdemeanor.

24




DATE DOWNLOADED: Sun Oct 25 14:18:51 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1911 vol. I 442 .

ALWD 6th ed.
, , 1911 vol. I 442 .

Chicago 7th ed.
"," New York - 134th Legislature, Regular Session : 442-445

OSCOLA 4th ed.
'' 1911 vol I 442

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

## Chap. 195.

AN ACT to amend the penal law, in relation to the sale and carrying of dangerous weapons.

Became a law May 25, 1911, with the approval of the Governor. Passed, three-fifths being present.

*The People of the S⟨..⟩e of New York, represented in Senate and Assembly, do enact as follows:*

L. 1909, ch. 88, §§ 1896, 1897, 1899 amended.

Section 1. Sections eighteen hundred and ninety-six, eighteen hundred and ninety-seven and eighteen hundred and ninety-nine of chapter eighty-eight of the laws of nineteen hundred and nine, entitled "An act providing for the punishment of crime, constituting chapter forty of the consolidated laws," are hereby amended to read as follows:

§ 1896. **Making and disposing of dangerous weapons.** A person who manufactures, or causes to be manufactured, or sells or keeps for sale, or offers, or gives, or disposes of any instrument or weapon of the kind usually known as a blackjack,[1] slungshot, billy, sandclub, sandbag, bludgeon,[2] or metal knuckles, to any person; or a person who offers, sells, loans, leases, or gives any gun, revolver, pistol or other firearm or any airgun, spring-gun or other instrument or weapon in which the propelling force is a spring or air or any instrument or weapon commonly known as a toy pistol or in or upon which any loaded or blank cartridges are used, or may be used, or any loaded or blank cartridges or ammunition therefor, to any person under the age of sixteen years, is guilty of a misdemeanor.

§ 1897. **Carrying and use of dangerous weapons.** A person who attempts to use against another, or who carries, or possesses, any instrument or weapon of the kind commonly known as a blackjack,[1] slungshot, billy, sandclub, sandbag,[2] metal knuckles or bludgeon,[2] or who, with intent to use the same unlawfully[3] against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly instrument or weapon,[4] is guilty of a felony.

---

[1] Word " blackjack " new.
[2] Words " sandbag, bludgeon " new.
[3] Word " unlawfully " new.
[4] Words " razor, stiletto, or any other dangerous or deadly instrument or weapon," new.

 

DATE DOWNLOADED: Tue Oct 20 12:03:43 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1915 344 .

ALWD 6th ed.
, , 1915 344 .

Chicago 7th ed.
"," Vermont - 23rd Biennial Session : 344-344

OSCOLA 4th ed.
" 1915 344

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

No. 204.—AN ACT TO AMEND NO. 224 OF THE ACTS OF 1910, RELATING TO THE LICENSING OF THEATERS AND OTHER PLACES OF AMUSEMENT.

*It is hereby enacted by the General Assembly of the State of Vermont:*

SECTION 1.   No. 224 of the acts of 1910 is hereby amended so as to read as follows:

Sec. 1.   The selectmen of a town, trustees of an incorporated village, and the aldermen of a city shall have power to grant licenses and fix a fee therefor, for theaters, shows, moving picture shows, concert halls or public dances operated and maintained for profit and gain, may revoke the same, and may also refuse to grant such licenses when, in their judgment, the public good requires.

SEC. 2.   Any person who installs, operates, or maintains a theater, show, moving picture show, concert hall or public dance without first obtaining a license therefor, if required by the selectmen of a town, the trustees of an incorporated village, or the aldermen of a city, as provided in section one, shall be liable to a fine of not more than one hundred dollars for each day on which he so operates or maintains the same.  Such fine shall be paid to the town treasurer for the benefit of the town.

SEC. 3.   This act shall take effect from its passage.

Approved February 5, 1915.

———————

No. 205.—AN ACT TO AMEND SECTIONS 5733 AND 5734 OF THE PUBLIC STATUTES, RELATING TO SLUNGSHOTS AND SIMILAR WEAPONS.

*It is hereby enacted by the General Assembly of the State of Vermont:*

SECTION 1.   Section 5733 of the Public Statutes is hereby amended so as to read as follows:

Sec. 5733.   A person who uses a slungshot, black jack, brass knuckles or similar weapons against another person, or attempts so to do, or is found in possession of a slungshot, blackjack, brass knuckles, or similar weapon, with intent so to use it, shall be imprisoned in the state prison not more than five years.

SEC. 2.   Section 5734 of the Public Statutes is hereby amended so as to read as follows:

Sec. 5734.   A person who within the state manufactures or causes to be manufactured, or sells or gives away or parts with, or offers so to do, or keeps for sale or gift, a slungshot, blackjack, brass knuckles, or similar weapons, shall be imprisoned not more than two years or fined not more than five hundred dollars nor less than two hundred dollars.

Approved February 26, 1915.




DATE DOWNLOADED: Sun Oct 25 14:29:00 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1917 221 .

ALWD 6th ed.
, , 1917 221 .

Chicago 7th ed.
"," California - 42nd Session : 221-225

OSCOLA 4th ed.
" 1917 221

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
  Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

## CHAPTER 145.

*An act relating to and regulating the carrying, possession, sale or other disposition of firearms capable of being concealed upon the person; prohibiting the possession, carrying, manufacturing and sale of certain other dangerous weapons and the giving, transferring and disposition thereof to other persons within this state; providing for the registering of the sales of firearms; prohibiting the carrying or possession of concealed weapons in municipal corporations; providing for the destruction of certain dangerous weapons as nuisances and making it a felony to use or attempt to use certain dangerous weapons against another.*

[Approved May 4, 1917.  In effect July 27, 1917.]

*The people of the State of California do enact as follows:*

SECTION 1. Every person who manufactures or causes to be manufactured, or leases, or keeps for sale, or offers, or gives, or otherwise disposes of any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, bludgeon, or metal knuckles, a dirk or dagger, to any person within this state is guilty of a misdemeanor, and if he has been previously convicted of a crime made punishable by this section, he is guilty of a felony. *Manufacture, etc., of certain dangerous weapons misdemeanor.*

SEC. 2. Every person who possesses any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, bludgeon, metal knuckles, bomb or bombshells, or who carries a dirk or a dagger, is guilty of a misdemeanor, and if he has been convicted previously of any felony or of a crime made punishable by this act, he is guilty of a felony. *Possession of certain dangerous weapons misdemeanor.*

SEC. 3. Every person who carries in any city, city and county, town or municipal corporation of this state any pistol, revolver, or other firearm concealed upon his person, without having a license to carry such firearm as hereinafter provided in section six of this act, shall be guilty of a misdemeanor, and if he has been convicted previously of any felony, or of any crime made punishable by this act, he is guilty of a felony. *Carrying firearms without license misdemeanor.*

SEC. 4. The unlawful possessing or carrying of any of the instruments, weapons or firearms enumerated in section one to section three inclusive of this act, by any person other than those authorized and empowered to carry or possess the same as hereinafter provided, is a nuisance, and such instruments, weapons or firearms are hereby declared to be nuisances, and when any of said articles shall be taken from the possession of any person the same shall be surrendered to the magistrate before whom said person shall be taken, except that in any city, city and county, town or other municipal corporation the same shall be surrendered to the head of the *Unlawful possession or carrying of weapon, etc., nuisance. Surrender of weapons, etc.*




DATE DOWNLOADED: Tue Oct 20 11:08:58 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1917 354 .

ALWD 6th ed.
, , 1917 354 .

Chicago 7th ed.
"," Minnesota - Session Laws, Special Session - 1916; Session Laws, 40th Session :
354-354

OSCOLA 4th ed.
'' 1917 354

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
 Conditions of the license agreement available at
 *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

354 SESSION LAWS [Chap.

bloodshed, lust or crime; nor shall any person hire, use or employ a minor under the age of eighteen years to sell or give away, or in any manner distribute, or permit any such minor in his custody or control to sell, give away or in any manner distribute, any material herein described.

Sec. 2. **Penalty.**—Any person who violates any provision of this act is guilty of a misdemeanor.

Approved April 14, 1917.

---

## CHAPTER 243—S. F. No. 914.

*An act to amend Section 8770, General Statutes, 1913, relating to the manufacture, sale and possession of dangerous weapons.*

Be it enacted by the Legislature of the State of Minnesota:

Section 1. **Manufacturing or sale of certain weapons prohibited under penalty of gross misdemeanor.**—Section 8770, General Statutes, 1913, is hereby amended so as to read as follows:

8770. Every person who shall manufacture, or cause to be manufactured, sell, keep for sale, offer, or dispose of, any instrument or weapon of the kind usually known as a slung-shot, sand-club, or metal knuckles; or who shall attempt to use against another, or with intent so to use, shall carry, conceal, or possess, any of the weapons hereinbefore specified, or any dagger, dirk, knife, pistol, or other dangerous weapon, shall be guilty of a gross misdemeanor. The possession by any person, other than a public officer, of any such weapon concealed or furtively carried on the person shall be presumptive evidence of carrying, concealing, or possessing with intent to use the same.

Approved April 14, 1917.

---

## CHAPTER 244—S. F. No. 915.

*An act regulating the sale of firearms and ammunition.*

Be it enacted by the Legislature of the State of Minnesota:

Section 1. **Selling of firearms and ammunition prohibited in certain cases.**—No person, in any city in this state, shall sell, give, loan or in any wise furnish any firearm or ammunition to a minor under the age of eighteen years without the written consent of his parents or guardian, or of a police officer or magistrate of such city.

Sec. 2. **Penalty.**—Any person who violates any provision of this act is guilty of a misdemeanor.

Approved April 14, 1917.



DATE DOWNLOADED: Tue Oct 20 11:16:07 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1927 887 .

ALWD 6th ed.
, , 1927 887 .

Chicago 7th ed.
"," Michigan - Public Acts, Regular Session : 887-893

OSCOLA 4th ed.
'' 1927 887

Provided by:
Provided by Jenkins Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
  Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

other purpose. Such persons shall hold office during the term of their employment by the state highway department but the authority herein vested shall cease upon the termination of such employment. The persons so appointed shall by reason of such appointment be members of the department of public safety during the terms of such appointment but shall serve without pay as members thereof.

Approved June 2, 1927.

---

### [No. 372.]

AN ACT to regulate and license the selling, purchasing, possessing and carrying of certain firearms; to prohibit the buying, selling or carrying of certain firearms without a license therefor; to prohibit the possession of certain weapons and attachments; to prohibit the pawning of certain firearms; to prohibit the sale, offering for sale, or possession for the purpose of sale of written or printed matter containing any offer to sell or deliver certain firearms or devices within this state; to provide penalties for the violations of this act, and to repeal act number two hundred seventy-four of the public acts of nineteen hundred eleven, being sections fifteen thousand two hundred thirty-six, fifteen thousand two hundred thirty-seven, fifteen thousand two hundred thirty-eight, fifteen thousand two hundred thirty-nine, fifteen thousand two hundred forty, fifteen thousand two hundred forty-one, fifteen thousand two hundred forty-two, fifteen thousand two hundred forty-three, fifteen thousand two hundred forty-four, fifteen thousand two hundred forty-five and fifteen thousand two hundred forty-six of the compiled laws of nineteen hundred fifteen; act number three hundred thirteen of the public acts of nineteen hundred twenty-five; and section sixteen of chapter one hundred sixty-two of the revised statutes of eighteen hundred forty-six, being section fifteen thousand six hundred forty-one of the compiled laws of nineteen hundred fifteen.

#### The People of the State of Michigan enact:

SECTION 1. The word "pistol" as used in this act shall mean any firearm, loaded or unloaded, thirty inches or less in length. The word "purchaser" shall mean any person who receives a pistol from another by purchase, gift or loan. The word "seller" shall mean any person who sells, furnishes, loans or gives a pistol to another. *Words defined.*

SEC. 2. No person shall purchase a pistol as defined in this act without first having obtained a license therefor as *License before purchase.*

prescribed herein. The commissioner or chief of police, or his duly authorized deputy, in incorporated cities or in incorporated villages having an organized department of police, and the sheriff, or his authorized deputy, in parts of the respective counties not included within incorporated cities or villages, are hereby authorized to issue licenses to purchase pistols to applicants residing within the respective territories herein mentioned. No such license shall be granted to any person except he be nineteen years of age or over, and has resided in this state six months or more, and in no event shall such a license be issued to a person who has been convicted of a felony or adjudged insane in this state or elsewhere. Applications for such licenses shall be signed by the applicant under oath upon forms provided by the commissioner of public safety. Licenses to purchase pistols shall be executed in duplicate upon forms provided by the commissioner of public safety and shall be signed by the licensing authority. One copy of such license shall be delivered to the applicant and the duplicate of such license shall be retained by such licensing authority as a permanent official record for a period of six years. Such license shall be void unless used within ten days after the date of its issue. Any person who shall sell to another any pistol as defined in this act without complying with the requirements of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than one hundred dollars or imprisonment in the county jail not more than ninety days, or both such fine and imprisonment in the discretion of the court. Such license shall be signed in ink by the holder thereof in the presence of the person selling, loaning or giving a pistol to such licensee and shall thereupon be taken up by such person, signed by him in ink and shall be delivered or sent by registered mail within forty-eight hours to the commissioner of public safety. The seller shall certify upon said license in the space provided therefor the name of the person to whom such pistol was delivered, the make, style, calibre and number of such pistol, and shall further certify that such purchaser signed his name on said license in the presence of the seller. The provisions of this section shall not apply to the purchase of pistols from wholesalers by dealers regularly engaged in the business of selling pistols at retail, nor to the sale, barter or exchange of pistols kept solely as relics, souvenirs or curios.

**To whom granted.**

**Executed in duplicate.**

**Misdemeanor; penalty.**

**Unlawful to manufacture, etc., certain firearms, etc.**

SEC. 3. It shall be unlawful within this state to manufacture, sell, offer for sale, or possess any machine gun or firearm which can be fired more than sixteen times without reloading, or any muffler, silencer or device for deadening or muffling the sound of a discharged firearm, or any bomb or bombshell, or any blackjack, slung shot, billy, metallic knuckles, sandclub, sandbag or bludgeon. Any person convicted of a violation of this section shall be guilty of a felony and shall be punished by a fine not exceeding one thousand

**Penalty for violation.**

dollars or imprisonment in the state prison not more than five years, or by both such fine and imprisonment in the discretion of the court. The provisions of this section shall not apply, however, to any person, firm or corporation manufacturing firearms, explosives or munitions of war by virtue of any contracts with any department of the government of the United States, or with any foreign government, state, municipality or any subdivision thereof.

SEC. 4.   Any person who, with intent to use the same unlawfully against the person of another, goes armed with a pistol or other firearm or dagger, dirk, razor, stiletto, or knife having a blade over three inches in length, or any other dangerous or deadly weapon or instrument, shall be guilty of a felony and on conviction thereof shall be punished by a fine not exceeding one thousand dollars or imprisonment in the state prison for not more than five years, or by both such fine and imprisonment in the discretion of the court. *Felony, what deemed. Penalty.*

SEC. 5.   No person shall carry a dagger, dirk, stiletto or other dangerous weapon except hunting knives adapted and carried as such, concealed on or about his person, or whether concealed or otherwise in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him.   No person shall carry a pistol concealed on or about his person, or, whether concealed or otherwise, in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him, without a license therefor as herein provided.   Any person violating the provisions of this section shall be guilty of a felony and upon conviction thereof shall be punished by a fine not exceeding one thousand dollars or imprisonment in the state prison for not more than five years, or by both such fine and imprisonment in the discretion of the court. *Unlawful to carry, dagger, etc.*

SEC. 6.   The prosecuting attorney, the commissioner or chief of police and the commissioner of public safety or their respective authorized deputies in incorporated cities or in incorporated villages having an organized department of police, and the prosecuting attorney, the commissioner of public safety or their authorized deputies, and the sheriff, under-sheriff or chief deputy sheriff in parts of the respective counties not included within incorporated cities or villages shall constitute boards exclusively authorized to issue licenses to carry pistols concealed on the person to applicants residing within the respective territories herein mentioned.   The county clerk of each county shall be clerk of such licensing boards, which boards shall be known in law as "The Concealed Weapon Licensing Board."   No such license to carry a pistol concealed on the person shall be granted to any person except he be nineteen years of age or over and has resided in this state six months or over, and in no event shall such license be issued unless it appears that the applicant has good reason to fear injury to his person or property, or has *Concealed weapon licensing board. To whom license granted.*

other proper reasons, and that he is a suitable person to be so licensed, and in no event to a person who has been convicted of a felony or adjudged insane in this state or elsewhere.

**Chairman of board.** The prosecuting attorney shall be the chairman of the said board, which shall convene at least once in each calendar month and at such other times as they shall be called to convene by the chairman. Such licenses shall be issued only upon written application signed by the applicant and on his oath and upon forms provided by the commissioner of public safety. Such licenses shall issue only with the approval of a majority of said board and shall be executed in triplicate upon forms provided by the commissioner of public safety and shall be signed in the name of the concealed weapon licensing board by the county clerk and the seal of the circuit court affixed thereto. One copy of such license shall be delivered to the applicant, the duplicate of said license shall be retained by the county clerk as a permanent official record for a period of six years, and the triplicate of such license shall be forwarded to the commissioner of public safety who shall file and index licenses so received by him and keep the same as a permanent official record for a period

**Duration of license.** of six years. Each license shall be issued for a definite period of not more than one year, to be stated in the license, and no renewal of such license shall be granted except upon the filing of a new application. Every license issued hereunder shall bear the imprint of the right thumb of the licensee, or, if that be not possible, of the left thumb or some other finger of such licensee. Such licensee shall carry such license upon his person at all times when he may be carrying a pistol concealed upon his person and shall display such license upon the request of any peace officer.

**When license to expire.** SEC. 7. All licenses heretofore issued in this state permitting a person to carry a pistol concealed upon his person shall expire at midnight, December thirty-one, nineteen hundred twenty-seven.

**When license revoked.** SEC. 8. The licensing board herein created by section six may revoke any license issued by it upon receiving a certificate of any magistrate showing that such licensee has been convicted of violating any of the provisions of this act, or has been convicted of a felony. Such license may also be revoked whenever in the judgment of said board the reason for granting such license shall have ceased to exist, or whenever said board shall for any reasonable cause determine said licensee to be an unfit person to carry a pistol concealed upon his person. No such license shall be revoked except upon written complaint and then only after a hearing by said board, of which at least seven days' notice shall be given to the licensee either by personal service or by registered mail to his last known address. The clerk of said licensing board is hereby authorized to administer an oath to any person testifying before such board at any such hearing.

SEC. 9. On or before the first day of November, nineteen hundred twenty-seven, any person within this state who owns or has in his possession a pistol as defined in this act, shall, if he reside in an incorporated city or an incorporated village having an organized police department, present such weapon for safety inspection to the commissioner or chief of police of such city or village; if such person reside in a part of the county not included within the corporate limits of such city or village he shall so present such pistol for safety inspection to the sheriff of such county. Any person owning or coming into possession of a pistol after the first day of November, nineteen hundred twenty-seven, shall forthwith present such pistol for safety inspection in the manner provided in this section. A certificate of inspection shall thereupon be issued in triplicate on a form provided by the commissioner of public safety, containing the name, age, address, description and signature of the person presenting such pistol for inspection, together with a full description thereof; the original of such certificate shall be delivered to the registrant; the duplicate thereof shall be mailed to the commissioner of public safety and filed and indexed by him and kept as a permanent official record for a period of six years, and the triplicate of such certificate shall be retained and filed in the office of said sheriff, or commissioner or chief of police, as the case may be. The provisions of this section shall not apply to wholesale or retail dealers in firearms or to collections of pistols kept solely for the purpose of display, as relics, souvenirs, curios or antiques, nor to weapons heretofore registered under the provisions of section eleven of act number three hundred thirteen of the public acts of nineteen hundred twenty-five. Any person who fails to comply with the provision of this section shall be guilty of a misdemeanor and shall be punished by a fine not exceeding one hundred dollars or imprisonment in the county jail not exceeding ninety days, or by both such fine and imprisonment in the discretion of the court.

*Safety inspection of weapons.*

*Certificate issued.*

SEC. 10. No pawnbroker shall accept a pistol in pawn. Any person violating this section of this act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than one hundred dollars or imprisonment in the county jail for not more than ninety days or by both such fine and imprisonment in the discretion of the court.

*Pistol not accepted in pawn.*

SEC. 11. No person shall wilfully alter, remove or obliterate the name of the maker, model, manufacturer's number or other mark of identity of any pistol. Possession of any such firearm upon which the number shall have been altered, removed or obliterated, shall be presumptive evidence that such possessor has altered, removed or obliterated the same. Any person convicted under this section shall be punished by a fine not to exceed five hundred dollars or by imprisonment

*Alteration of pistol unlawful.*

in the state prison not to exceed two years or by both such fine and imprisonment in the discretion of the court.

**Exceptions to act.**

SEC. 12. The provisions of section two, three, five and nine shall not apply to any peace officer of the state or any subdivision thereof who is regularly employed and paid by the state or such subdivision, or to any member of the army, navy or marine corps of the United States, or of organizations authorized by law to purchase or receive weapons from the United States or from this state, nor to the national guard or other duly authorized military organizations when on duty or drill, nor to the members thereof in going to or returning from their customary places of assembly or practice, nor to a person licensed to carry a pistol concealed upon his person issued by another state, nor to the regular and ordinary transportation of pistols as merchandise, or to any person while carrying a pistol unloaded in a wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business, or in moving goods from one place of abode or business to another.

**When unlawfully possessed.**

SEC. 13. When complaint shall be made on oath to any magistrate authorized to issue warrants in criminal cases that any pistol or other weapon or device mentioned in this act is unlawfully possessed or carried by any person, such magistrate shall, if he be satisfied that there is reasonable cause to believe the matters in said complaint be true, issue his warrant directed to any peace officer, commanding him to search the person or place described in such complaint, and if such pistol, weapon or device be there found, to seize and hold the same as evidence of a violation of this act.

**Forfeited to state.**

SEC. 14. All pistols, weapons or devices carried or possessed contrary to this act are hereby declared forfeited to the state.

**Certain books, etc., unlawful to sell, etc.**

SEC. 15. It shall be unlawful to sell or deliver within this state, or to offer or expose for sale, or to have in possession for the purpose of sale, any book, pamphlet, circular, magazine, newspaper or other form of written or printed matter offering to sell or deliver, or containing an offer to sell or deliver to any person within this state from any place without this state any pistol or any weapon or device mentioned in section three hereof. The provisions of this section shall not apply to sales of or offers to sell pistols at wholesale to persons regularly engaged in the business of selling such pistols at wholesale or retail, nor to sales or offers to sell such pistols made or authorized by the United States government or any department or agency thereof.

**Penalty for violation.**

SEC. 16. Any person violating the provisions of section fifteen of this act shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine not to exceed one hundred dollars or by imprisonment in the county jail not to exceed ninety days, or by both such fine and imprisonment in the discretion of the court.

SEC. 17. Act number two hundred seventy-four of the Acts repealed.
public acts of nineteen hundred eleven, being sections fifteen
thousand two hundred thirty-six, fifteen thousand two hun-
dred thirty-seven, fifteen thousand two hundred thirty-eight,
fifteen thousand two hundred thirty-nine, fifteen thousand two
hundred forty, fifteen thousand two hundred forty-one, fifteen
thousand two hundred forty-two, fifteen thousand two hun-
dred forty-three, fifteen thousand two hundred forty-four,
fifteen thousand two hundred forty-five and fifteen thousand
two hundred forty-six of the compiled laws of nineteen hun-
dred fifteen; act number three hundred thirteen of the public
acts of nineteen hundred twenty-five; and section sixteen of
chapter one hundred sixty-two of the revised statutes of
eighteen hundred forty-six, being section fifteen thousand six
hundred forty-one of the compiled laws of nineteen hundred
fifteen, are hereby repealed: *Provided, however,* That any Proviso.
proceedings pending under any of said sections herein re-
pealed shall not be affected hereby but shall be concluded in
accordance with the law of such repealed section or sections.

SEC. 18. This act is declared to be severable, and should Saving clause.
any section hereof be hereafter declared unconstitutional or
otherwise invalid, the remainder of the act shall not be af-
fected thereby.

Approved June 2, 1927.

---

[No. 373.]

AN ACT to amend section twenty-five of chapter thirty of
act number three hundred fourteen of the public acts of
nineteen hundred fifteen, entitled "An act to revise and
consolidate the statutes relating to the organization and
jurisdiction of the courts of this state; the powers and
duties of such courts, and of the judges and other officers
thereof; the forms of civil actions; the time within which
civil actions and proceedings may be brought in said courts;
pleading, evidence, practice and procedure in civil actions
and proceedings in said courts; to provide remedies and
penalties for the violation of certain provisions of this act;
and to repeal all acts and parts of acts inconsistent with,
or contravening any of the provisions of this act," being
section thirteen thousand two hundred fifty-three of the
compiled laws of nineteen hundred fifteen, as amended by
act number two hundred forty-three of the public acts of
nineteen hundred seventeen, and to add a new section there-
to to stand as section thirty-one.

*The People of the State of Michigan enact:*

SECTION 1. Section twenty-five of chapter thirty of act Section amended.
number three hundred fourteen of the public acts of nineteen

48

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 20-15948

I am the attorney or self-represented party.

**This brief contains** | 4,945 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

● is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

   ○ it is a joint brief submitted by separately represented parties;

   ○ a party or parties are filing a single brief in response to multiple briefs; or

   ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated | | .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Wendy F. Hanakahi | **Date** | Oct 27, 2020

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/2018*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2020, I caused the foregoing amicus brief to be filed electronically with the Clerk of the Court of the U.S. Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF system. All participants are registered CM/ECF users, and will be served by the Appellate CM/ECF system.

DATED:  Honolulu, Hawai'i, October 27, 2020.

/s/ Wendy F. Hanakahi
PAMELA W. BUNN
WENDY F. HANAKAHI
Dentons US LLP

JANET CARTER
WILLIAM J. TAYLOR, JR.
LISA M. EBERSOLE
CARINA BENTATA GRYTING
Everytown Law

Attorneys for Amicus Curiae
EVERYTOWN FOR GUN SAFETY