No. 20-15948

# In the United States Court of Appeals
## for the Ninth Circuit

ANDREW TETER AND JAMES GRELL

*Plaintiffs-Appellants*,

v.

CLARE CONNORS, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII AND AL CUMMINGS, IN HIS OFFICIAL CAPACITY AS THE STATE SHERIFF DIVISION ADMINISTRATOR

*Defendants-Appellees*.

**Appeal from a Judgment of United States District Court
For the District of Hawaii
Civ. No. 19-cv-00183-ACK-WRP
United States District Court Judge Alan C. Kay**

### Appellants' Reply Brief

ALAN ALEXANDER BECK
Attorney at Law
2692 Harcourt Drive
San Diego, California 92123
Telephone: (619) 905-9105
alan.alexander.beck@gmail.com

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. Box 428
Olive Branch, MS 38654
Telephone: (601) 852-3440
stephen@sdslaw.us

*Attorneys for Appellants, Andrew Teter and James Grell*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

I. Introduction ........................................................................ 1

II. Knives Are a Class of Arms ................................................... 1

  A. An Arm Must Be Dangerous *and* Unusual to Lose Second Amendment Protection ........................................................................ 2

  B. Defendants Have Not Rebutted the Presumption that Butterfly Knives Are Protected Arms ................................................................. 2

  C. Butterfly Knives Are Not Dangerous Arms ........................... 3

  D. Butterfly Knives are not Switchblades ................................. 7

  E. Escrima is the National Martial Art of the Philippines .......... 7

  F. Plaintiffs' Expert Burton Richardson's Draw Times .............. 9

III. This Court Should Apply Strict Scrutiny .............................. 10

  A. Hawaii's Law is Unconstitutional Under Intermediate Scrutiny ...... 13

  B. Hawaii's Ban is Underinclusive ......................................... 15

IV. Other Arguments ............................................................... 17

V. CONCLUSION ................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016) ....................................................4

*De Saracho v. Custom Food Mach., Inc*., 206 F.3d 874 (9th Cir. 2000) ...............10

*District of Columbia v Heller*, 554, 647 US 570; 128 S Ct 2783; 171 L Ed 2d 637
      (2008) ........................................................................................................ passim

*Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020) ........................................ passim

*Edenfield v. Fane*, 507 U.S. 761, 113 S. Ct. 1792, 123 L. Ed. 2d 543 (1993) ........13

*Ezell v. City of Chi.*, 651 F.3d 684 (7th Cir. 2011) ....................................................15

*Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016) ..........................................................19

*In re Interest of Doe*, 73 Haw. 89, 96, 828 P.2d 272 (1992) ....................................7

*Maloney v. Singas*, 351 F. Supp. 3d 222 (E.D.N.Y. 2018)........................... 8, 15, 18

*Minority TV Project, Inc. v. FCC*, 736 F.3d 1192 (9th Cir. 2013) .........................16

*Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 102 S. Ct. 3331 (1982)...............16

*New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242 (2d Cir. 2015)...........3

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) ........................................13

*Pena v. Lindley*, 898 F.3d 969 (9th Cir. 2018) ........................................................16

*State v. Deciccio*, 315 Conn. 79 (2014) ........................................................ 4, 6, 17

*State v. Delgado*, 692 P.2d 610 (Or. 1984)..............................................................11

*State v. Herrmann*, 2015 WI App 97, 366 Wis. 2d 312, 873 N.W.2d 257..............15

*State v. Montalvo*, 162 A.3d 270 (N.J. 2017) ......................................................6, 17

*State v. Muliufi*, 64 Haw. 485, 643 P.2d 546 (1982) ................................................8

*State v. Murillo*, 2015-NMCA-046, 347 P.3d 284 .................................................14

*Taylor v. United States*, 848 F.2d 715 (6th Cir. 1988) .............................................7

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013).........................................11

*United States v. Henry*, 688 F.3d 637 (9th Cir. 2012)..............................................4

**Statutes**

H.R.S. § 134-53.................................................................................. 12, 14

**Other Authorities**

David B. Kopel, Clayton E. Cramer & Joseph Edward Olsen, Knives and the

    Second Amendment, 47 U. Mich. J.L. Reform 167 (Fall 2013) ................... 11, 17

## I.    Introduction

The Defendants in this case categorize Plaintiffs' insistence upon their Second Amendment right to own a butterfly knife in their homes as "an extreme and irresponsible attack on an important statute…" because the "statute represents a reasonable measure enacted by the Hawai'i Legislature to protect public safety and the increased popularity of butterfly knives among criminal gang members." AB at 1.  The statute is not a "reasonable measure" as it is a complete ban on a popular knife.  Hawaii is one of just a few states which bans this particular knife.  The ban at issue wasn't enacted until 1999 and is not even remotely tailored to the offered government interest.  As such, it fails to pass constitutional muster and must be struck as violative of the Second Amendment.

## II.    Knives Are a Class of Arms

The State is correct in arguing that butterfly knives are part of the class of arms "knives".  In arguing this, they concede that butterfly knives are protected arms. Knives as a class are protected arms and are listed as such by the Supreme Court in *Heller*. If a handgun is a class of arms, then it logically follows that a knife is a class of arms.  If this Court finds that knives are the <u>operative</u> class of arms, then Plaintiffs concede that this forecloses their categorical argument pursuant to circuit precedent.[1]

---

[1] However, Plaintiffs maintain and preserve their argument that a categorical approach should apply for review by a higher court.

1

However, it also forecloses the State's argument that butterfly knives are not protected arms. There can be no serious dispute that knives are commonly owned arms which are typically owned for lawful purposes. As a type of knife, butterfly knives receive constitutional protection just like the type of handgun in *Heller* received protection. That is because the overall class received protection. Assuming the Court accepts this premise, as the law at issue bans a type of the protected class of arm "knife", this Court should apply strict scrutiny for the reasons laid out below. However, if this Court finds that the class of arm at issue is "butterfly knife", then it should still find that butterfly knives are protected arms. That is because contrary to the State's arguments, butterfly knives are not dangerous and unusual arms.

## A. An Arm Must Be Dangerous *and* Unusual to Lose Second Amendment Protection

"A weapon may not be banned unless it is *both* dangerous *and* unusual." *Duncan v. Becerra*, 970 F.3d 1133, 1146 (9th Cir. 2020), *petition for reh'g en banc filed* (citation omitted). Thus, if it can be demonstrated that an arm is either usual or not dangerous it receives Second Amendment protection.

## B. Defendants Have Not Rebutted the Presumption that Butterfly Knives Are Protected Arms

Defendants concede that butterfly knives are bearable arms. "Initially, it should be noted that whether butterfly knives constitute 'bearable arms' is not disputed in this case." Answering Brief ("AB") at 12. *Heller* holds that once an item

is established as an arm, it creates a rebuttal presumption that the arm receives Second Amendment protection: "[t]he Supreme Court held that 'the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding.'" *Duncan*, 970 F.3d at 1146. "*Heller* emphasizes that 'the Second Amendment extends, prima facie, to all instruments that constitute bearable arms.' *Heller*, 554 U.S. at 582. In other words, it identifies a presumption in favor of Second Amendment protection, which the State bears the initial burden of rebutting." *See New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 257 (2d Cir. 2015). The State has not rebutted the presumption that butterfly knives are protected arms. In *NYSRPA I,* the Second Circuit struck a ban on a pump-action rifle because the state focused exclusively on semiautomatic weapons and "the presumption that the Amendment applies remain[ed] unrebutted." 804 F.3d at 257. Here, this Court should find that butterfly knives are protected arms because the State has failed to rebut the presumption that they are protected. Even if this Court does not apply this presumption, this Court should still find butterfly knives protected because they are neither dangerous nor unusual.

## C. Butterfly Knives Are Not Dangerous Arms

Within the context of Second Amendment law, "dangerous" is a legal term of art. It does not mean whether or not an arm is literally dangerous because all arms are, by definition, literally dangerous.[2] That said, an arm being merely dangerous,

> cannot be used to identify arms that fall outside the Second Amendment. First, the relative dangerousness of a weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes. *See Heller*, supra, at 627, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (contrasting "'dangerous and unusual weapons'" that may be banned with protected "weapons . . . 'in common use at the time'"). Second, even in cases where dangerousness might be relevant, the Supreme Judicial Court's test sweeps far too broadly." [*District of Columbia v Heller*, 554, 647 US 570; 128 S Ct 2783; 171 L Ed 2d 637 (2008)].

*Caetano v. Massachusetts*, 136 S. Ct. 1027, 1031 (2016) (Alito, J. concurring).

Hawaii's argument does the same. "However, it is difficult to see how this is so since *Heller* concluded that handguns are not sufficiently dangerous to be banned." *State v. Deciccio*, 315 Conn. 79, 133-134 (2014). If a butterfly knife is "dangerous" then all arms are "dangerous" which is a position foreclosed by *Heller*. The Ninth Circuit found a machine gun is "dangerous" because a "modern machine gun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds… Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns." *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012). A butterfly knife

---

[2] ""[A]rms" refer to "weapons of offence, or armour of defence," or "anything that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another,". *See District of Columbia v. Heller*, 554 U.S. 570, 581 (2008).

is not as dangerous as a handgun and it certainly is not as dangerous as a machinegun. Thus, it simply is not dangerous for purposes of Second Amendment protection.

Hawaii's argument is because butterfly knives possess "concealability, quick deployment, deployment with one hand, and intimidation" they are too dangerous to qualify for Second Amendment protection. Handguns are concealable as are virtually all folding knives and most other knives. Yet *Heller* found that handguns are protected arms and discussed knives as being protected arms. Furthermore, Hawaii contradicts itself. In its briefing it states that "[a] major feature of the butterfly knife is that it is concealable; however, concealability does not help within the home. Because you are at home and not in public, concealability does not matter. Because it takes time to deploy the blade, a kitchen or chef's knife, which already has the blade exposed, would actually be more efficient in this context." AB at 22. How can concealability make a butterfly knife too dangerous to own in the home, when concealability doesn't matter? This concession demonstrates that Hawaii's ban, at least in the home, has absolutely no fit to any government interest.

Hawaii's next contention is that butterfly knives can be opened with one hand. Handguns, along with most knives, can be deployed with one hand as well. As Plaintiffs' expert states:

> Most folders today have a clip on the side of the handle so that the knife can be clipped inside a pocket or waistband. This makes it much more accessible than carrying it inside a pocket, as is necessary with a Balisong. The design makes opening with one hand very easy. The

wave feature is a notch added to the back spine of a folding knife that catches on the pant pocket or waistband when drawing. As the handle comes out, the wave feature makes the blade rotate out. The result is that the knife opens as the draw is made. You don't need to draw and then open the latch and then make the manipulation to open the knife as you do with a Balisong. You draw and it is open. It is extremely fast.

ER 91.

If being able to be deployed with one hand shows an arm is dangerous then this Court would have to find most folding knives are too dangerous for Second Amendment protection. Hawaii again contradicts itself in its briefing. "Because it takes time to deploy the blade, a kitchen or chef's knife, which already has the blade exposed, would actually be more efficient in this context." AB at 22. The same would apply to dirk knives and machetes which the Connecticut Supreme Court and New Jersey Supreme Court respective have found to be protected arms. *See State v. Deciccio*, 315 Conn. 79 (Conn. 2014), *State v. Montalvo*, 162 A.3d 270 (N.J. 2017).

As for intimidation… handguns are intimidating when brandished as well. When guns are used for self-defense, they are far more often brandished than fired— because they are intimidating. *Heller*, 554 U.S. at 701 (Breyer, J., dissenting) (describing finding by pro-gun researchers that only a quarter of defensive uses of guns actually involve firing them). Despite this fact, *Heller* held handguns to be protected arms. There simply is no plausible argument that butterfly knives are too dangerous to be protected by the Second Amendment. Furthermore, butterfly knives are usual arms because they are typically used for lawful purposes.

### D. Butterfly Knives are not Switchblades

The Defendants want this court to equate switchblades with butterfly knives, but they are not the same and the Supreme Court of Hawaii has already held that the butterfly knife was not a switchblade. *See In re Interest of Doe*, 73 Haw. 89, 96, 828 P.2d 272, 276 (1992) (butterfly is "not a knife 'which [blade] opens automatically . . . by operation of inertia, gravity, or both[.]'"). Defendants cite to *Taylor v. United States*, 848 F.2d 715 (6th Cir. 1988) on page 44 of their Answering Brief for the proposition that butterfly knives are covered under the Federal Switchblade Act, but the *Doe* court found differently:

> The <u>*Taylor* court did not determine that the butterfly knives were per se illegal under the Federal Switch Blade statute</u>. On the contrary, since "[t]he government indicated that had the knives been 'designed with a single-edge blade and were primarily used for utilitarian purposes' rather than 'double-edge stiletto-style blades' [that] they would have been admitted[,]" the court permitted the importer to modify the knives from double-edge to singleedge (sic) blades to comply with the Customs Service's regulations. *Id*. Thus, under the *Taylor* holding, the butterfly knife in the present case would have passed both the Customs Service's and the court's scrutiny.

*In re Interest of Doe*, 73 Haw. 89, 95, 828 P.2d 272, 275 (1992) (emphasis added).

### E. Escrima is the National Martial Art of the Philippines

Defendants attempt to downplay Escrima as a legitimate martial art and then cites to testimony received during the banning of the butterfly from a practitioner of

the very martial art at issue.[3]  AB at 16.  SER 38.  Rather than an obscure martial art, Escrima, also known as Kali or Arnis, is the national martial art of the Philippines.[4] According to the 2010 United States Census data indicates Filipinos are the second largest ethnicity in Hawaii (25.1% in 2010), after Whites (this includes part Filipinos).[5] Millions of people practice Escrima, both Filipinos and non-Filipinos such as Plaintiffs' expert Burton Richardson.  Defendants complain that Escrima is not a sport "recognized by the Olympic Games."  AB at 16.  If there is a requirement for an enumerated constitutional right to first be recognized by the Olympic committee before it can be insisted upon, Appellants have missed that case and the State has not cited to it.[6]

---

[3] Compare with the plaintiff in *Maloney v. Singas*, 351 F. Supp. 3d 222, 227 (E.D.N.Y. 2018) in which the court found nunchucks protected by the Second Amendment ("He has developed his own martial arts style called 'Shafan Ha Lavan,' of which Plaintiff is the only practitioner…. Integral to Shafan Ha Lavan is the nunchaku, which is wielded for self-defense, particularly in the home.").  How many practitioners of that specific martial art didn't seem to matter to the court.

[4] https://en.wikipedia.org/wiki/Arnis (last visited 10/20/2020)

[5] https://en.wikipedia.org/wiki/Filipinos_in_Hawaii#:~:text=Marcos%20authoritaria n%20regime.- ,Ethnic%20plurality,which%20185%2C502%20were%20full%20Japanese. (last visited (10/21/2020)

[6] Interestingly, the State makes the argument that nunchucks are protected because "they are indeed commonly possessed for lawful purposes" and cites to *State v. Muliufi*, 64 Haw. 485, 489 & n.6, 643 P.2d 546, 549 & n.6 (1982) stating that

The butterfly knife is the traditional knife of the Filipino people. Both Escrima practitioners and Filipinos who do not practice Escrima own them due to their cultural significance. And importantly, Plaintiffs used to own butterfly knives before they moved to Hawaii. ER135; ER137. The fact some individuals who may or may not have been affiliated with gangs happen to possess butterfly knives is likely due to the fact there are many Filipinos in Hawaii and some of them happen to have been deemed gang members by the government. That does not mean that butterfly knives are typically possessed for crime. Most gang members own pants. Using the State's logic, pants are typically owned for crime as well. That obviously is not true. As established in the Opening Brief, butterfly knives are usual arms that are typically possessed for self-defense and martial arts training.

## F. Plaintiffs' Expert Burton Richardson's Draw Times

The State is concerned that Master Burton's draw times vary from the declaration attached to the complaint and the declaration/expert report submitted with the motion for summary judgment. There is a simple explanation for that. These tests were conducted at two different times. Master Burton was drawing from a pair of pants with a deeper pocket in the first test. Importantly, the draw times for

---

"nunchaku sticks are widely used in the martial arts." AB at 17. However, using the State's Constitutional-Right-Only-if-Included-as-an-Olympic-Sport test, the Olympic Games do not appear to have a nunchuck event and therefore nunchucks would fail the test.

both reports had butterfly knives as the slowest folding knife. Furthermore, the times are internally consistent within each test. It just happens that one test had slower draw times for all the blades tested compared to another one. The comparative times for the various blades are the roughly the same in both tests. As Hawaii correctly observes, much of the reason butterfly knives are slower to open is because "the time it takes to engage in these flipping maneuvers" which are required to open a butterfly knife "may explain the alleged delay in Plaintiffs' test results." AB at 41 fn. 10. Butterfly knives just are inherently slower to open because they take more movements than folding knives to open by design.

The State questions the claim that a pocketknife can be deployed quicker than a butterfly knife. AB at 38 fn. 9. The State claims this is counter-intuitive, and that Master Burton is not objective. *Id*. Yet this is the record before this Court. The proper time to contest a plaintiff's expert and evidence is at the trial court, something which the State chose not to do. As such, the State cannot now raise evidentiary objections. *See De Saracho v. Custom Food Mach., Inc*., 206 F.3d 874, 879 (9th Cir. 2000). If the State had a problem with Master Burton's report or declaration, it could have deposed him, but it chose not to.

### III. This Court Should Apply Strict Scrutiny

Plaintiffs do not agree that *Heller* gave handguns special protection because they are "quintessential self-defense weapon." *See Heller I*, 554 U.S. at 629. The

10

*Heller* Court was simply observing why handguns are protected arms. And then found that a categorical approach should apply because the District of Colombia banned an entire class of these protected arms. However, if this Court accepts this position and Hawaii's position that knives are a protected class of arms, this Court should find that knives are afforded this same level of protection. That is because knives are even more quintessential of a self-defense arm than handguns. The knife is the "most common "arm" in the United States. "Only about half of U.S. households possess a firearm, and many of those households have only one or two firearms. In contrast, almost every household possesses at least several knives, not even counting table knives." David B. Kopel, Clayton E. Cramer & Joseph Edward Olsen, Knives and the Second Amendment, 47 U. Mich. J.L. Reform 167 (Fall 2013) at *2. "It is clear, then, that knives have played an important role in American life, both as tools and as weapons. The folding pocketknife, in particular, since the early 18th century has been commonly carried by men in America and used primarily for work, but also for fighting." *State v. Delgado*, 692 P.2d 610 (Or. 1984).

Here, Hawaii's ban on this type of knife, deserves strict scrutiny pursuant to this Circuit precedent. In *Duncan,* this Court reiterated its holding in *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) and stated:

> First, we ask how "close" the challenged law comes to the core right of
> law-abiding citizens to defend hearth and home… And second, we

11

analyze whether the law imposes substantial burdens on the core right… If a challenged law does not strike at the core Second Amendment right or substantially burden that right, then intermediate scrutiny applies... Only where both questions are answered in the affirmative will strict scrutiny apply…

*Duncan*, 970 F.3d at 1146 (citations omitted).

Determining whether a law strikes at the core right "is a simple inquiry: If a law regulating arms adversely affects a law-abiding citizen's right of defense of hearth and home, that law strikes at the core Second Amendment right." *Duncan,* 970 F.3d at 1152. Here, the law at issue bans the use of a protected arm even in the home. Pursuant to *Duncan,* H.R.S. § 134-53's ban on butterfly knives strikes at the core of the Second Amendment.

As to the substantial burden prong of the test, the *Duncan* Court explained "any law that comes close to categorically banning the possession of arms that are commonly used for self-defense imposes a substantial burden on the Second Amendment." *Duncan*, 970 F.3d at 1152. Importantly, it did not say that any law that comes close to banning a ***class*** of arms imposes a substantial burden on the Second Amendment. *Duncan* holds that any ban on the possession of protected arms imposes a substantial burden on the Second Amendment right. Butterfly knives are protected arms whether they are a class of arms themselves or are part of the larger class "knife". Moreover, *Duncan* does not discuss handguns as receiving special protection when discussing this test. And in this section that established the law to

12

be applied in the case, the fact "one-half of all the [large capacity magazines] in the United States would be affected by California's ban" was not part of the analysis. AB at 29-30. Pursuant to *Duncan*, Hawaii law imposes a substantial burden on the Second Amendment right because it completely bans butterfly knives. Because both prongs of the *Duncan* test are fulfilled, strict scrutiny applies.

### A. Hawaii's Law is Unconstitutional Under Intermediate Scrutiny

Intermediate scrutiny requires a law be "narrowly tailored to serve a significant governmental interest." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1732 (2017). Indeed, the law must address "harms" that "are real" in a "material" way. *Edenfield v. Fane*, 507 U.S. 761, 771, 113 S. Ct. 1792, 123 L. Ed. 2d 543 (1993). Hawaii's offered interest in banning butterfly knives is that "[t]he statute banning butterfly knives clearly reduces the ability of criminal gang members to have access to them. Thus, the objective of denying criminal gang members access to butterfly knives would be less effectively achieved absent the statute." AB at 34. However, this avenue is foreclosed by *Heller*. "The Constitution leaves the District of Columbia a variety of tools for combating that problem, including some measures regulating handguns, see *supra*, at 626-627, and n. 26, 171 L. Ed. 2d, at 678. But the enshrinement of constitutional rights necessarily takes certain policy choices off the table. These include the absolute prohibition of handguns held and used for self-defense in the home." *Heller*, 554 U.S. at 636. This is no different here. Hawaii

13

may be able to regulate butterfly knife ownership, but it cannot simply ban them because criminals may misuse them. Intermediate scrutiny is one of the standards of scrutiny that the Supreme Court has applied to enumerated rights. Pursuant to *Heller*, Hawaii's rationale is insufficient to withstand any heightened scrutiny.

Furthermore, pursuant to *Duncan*, H.R.S. § 134-53 *"fails intermediate scrutiny for many of the same reasons it fails strict scrutiny"*. *Duncan*, 970 F.3d at 1167. "The statute operates as a blanket ban on all types of [large capacity magazines] everywhere in California for almost everyone. It applies to rural and urban areas, in places with low crime rates and high crime rates, areas where law enforcement response times may be significant, to those who may have high degrees of proficiency in their use for self-defense, and to vulnerable groups who are in the greatest need of self-defense. The law also prohibits possession outright." *Duncan*, 970 F.3d at 1167.

The record demonstrates that butterfly knives open slower than standard folding knives thus, it cannot be said this ban prevents the "surprise use of a dangerous weapon". *State v. Murillo*, 2015-NMCA-046, ¶ 13, 347 P.3d 284, 289. Thus, Hawaii's reliance on *Murillo* is misplaced. More to the point, Hawaii concedes that "they are slower to deploy than a knife with an already exposed" such as a kitchen knife. AB at 6. Thus, "while banning possession of" butterfly knives "in other settings might be substantially related to the State's cited objective of

protecting the public from surprise attacks, prohibiting individuals from possessing" butterfly knives "in their own homes for their own protection is not". *State v. Herrmann*, 2015 WI App 97, ¶13, 366 Wis. 2d 312, 321, 873 N.W.2d 257, 261. Thus, Hawaii's ban on butterfly knives fails intermediate scrutiny.

As to Hawaii's argument that gang members own butterfly knives, there is no indication that butterfly knives are prone to being used in crime. Plaintiffs incorporate and reference the amicus brief of San Diego County Gun Owner Political Action Committee et.al. As their brief demonstrates, none of the legislative history provides any such evidence, such as police reports or case studies, showing that butterfly knives were used in the commission of crimes. "Defendant has offered virtually no evidence supporting a public safety rationale for a total ban (as opposed to lesser restrictions) on the possession and use of nunchaku in New York State. [*Ezell v. City of Chi.*, 651 F.3d 684, 709 (7th Cir. 2011)] ('[T]he [defendant] produced no empirical evidence whatsoever and rested its entire defense of the . . . ban on speculation.')." *Maloney v. Singas*, 351 F. Supp. 3d 222, 239 (E.D.N.Y. 2018). In short, the State failed to make any showing that butterfly knives are associated with crime or gang activity besides a passing remark in the legislative history.

**B. Hawaii's Ban is Underinclusive**

Hawaii states that "the Ninth Circuit has held that '*underinclusiveness* does not doom [a statute] under intermediate scrutiny.' [*Pena v. Lindley*, 898 F.3d 969, 981 (9th Cir. 2018)]." AB at 43. The full quote is "[a]lthough Purchasers are correct that these groups are exempt from the UHA, that underinclusiveness does not doom the MDM and CLI requirements under intermediate scrutiny. *See* [*Minority TV Project, Inc. v. FCC*, 736 F.3d 1192, 1204 (9th Cir. 2013)] ('Unlike strict scrutiny, intermediate scrutiny does not require that the means . . . be the least restrictive.'). The exceptions are not so pervasive or without basis as to make the fit unreasonable." *See Pena v. Lindley*, 898 F.3d 969, 981 (9th Cir. 2018). Thus, *Pena* teaches that a law which is underinclusive to the extent it is unreasonable, fails intermediate scrutiny. It is unreasonable for Hawaii to ban butterfly knives when other knives that share the same features it claims it is concerned about open quicker and are legal to own. Hawaii has not shown otherwise. Under intermediate scrutiny the government is required to affirmatively defend its fit. *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 721, 102 S. Ct. 3331, 3335 (1982) ("the proper test is whether the State has carried the heavier burden of showing that the gender-based classification is substantially related to an important governmental.") Here, Hawaii has not defended the fact its butterfly knife ban is underinclusive because it allows the ownership of deadlier knives. Thus, under intermediate scrutiny, Hawaii has conceded its law is unconstitutionally underinclusive.

16

## IV.  Other Arguments

Hawaii also argues butterfly knives can be banned because "butterfly knives also contain a latch that can lock a blade in the open position". AB at 39. That is true of most modern folding knives.[7] Where butterfly knives differ is that they can't be closed on the user as long as the user keeps a firm grip on the handles.  "Many experts believe that a butterfly knife is the strongest and safest folding knife, because the blade cannot fold closed inadvertently on the operator so long as the operator has a firm grasp on the handles. In contrast, a lock-blade folding knife can experience a lock failure, although this is rare for well-constructed knives." David B. Kopel, Clayton E. Cramer & Joseph Edward Olsen, Knives and the Second Amendment, 47 U. Mich. J.L. Reform 167 (Fall 2013) at *17. There is no public safety benefit in making knives less safe or more prone to accidents for the user.

Hawaii also asks this Court to ignore *State v. DeCiccio*, 105 A.3d 165 (Conn. 2014) and *State v. Montalvo*, 162 A.3d 270 (N.J. 2017).  These cases found dirks and machetes protected by the Second Amendment, respectively, and overturned restrictions on them. However, applying Hawaii's logic, these cases suggest this Court should find Hawaii's ban on butterfly knives unconstitutional.  Hawaii argues knives are a class of protected arms.  Applying similar logic, the respective State

---

[7] https://www.bladehq.com/cat--Knife-Lock-Types-Guide--3511 last visited (10/23/2020)

Supreme Courts found dirks and machetes to be a type of this class of protected arm. Then struck the bans at issue as violative of the Second Amendment. This Court should be guided by its own precedent and these cases to do the same to Hawaii's ban on butterfly knives.

In *Maloney*, the defendant made similar arguments as here. "The Court also rejects Defendant's argument that the nunchaku ban should be upheld because 'the dangerous potential of nunchucks is almost universally recognized.'" *Maloney,* 351 F. Supp. 3d at 236. The Court rejected that argument in part because the defendant "present[ed] no national data on the unlawful use of nunchaku". *Maloney*, 351 F. Supp. 3d at 235. Neither has Hawaii here. Like the nunchuck, the butterfly knives "intended use as a weapon for recreational martial arts practice and training appears to greatly outstrip its use in crime." *Maloney*, 351 F. Supp. 3d at 236. *Maloney* is highly supportive of Plaintiffs in this challenge.

Finally, amicus Everytown argues that Hawaii's ban on butterfly knives is analogous to certain historical bans on non-firearm weapons is spurious. Plaintiffs incorporate and reference the arguments of amicus curiae Hawaii Firearms Coalition and amicus curiae Mountain States Legal Foundation to rebut these arguments. Plaintiffs also argue that this Court should look to colonial laws only for historical analogs. While it is true some of the laws citied placed restrictions on dirks and bowie knives, none of the laws cited to ban their possession or of any other type of

18

knife. The other laws dealt with weapons like brass knuckles which were not typically owned for lawful purposes. As the record demonstrates, butterfly knives are typically owned for self-defense, martial arts training and utility purposes and are legal to own in a super-majority of states.[8] Thus, the law Everytown cites to are inapposite.

Finally, Everytown argues that "*Heller* contradicts Plaintiffs' suggestion that Hawai'i's law should be struck down under the Second Amendment because it "categorically bans" a type of knife and "[k]nives are 'in common use today' for the 'lawful purpose' of self-defense." Plaintiffs-Appellants' Br. at 8, 26. *Heller* made clear that some guns—handguns—are in common use today for self-defense in the home, but made equally clear that other guns—such as "M-16 rifles and the like"— may be prohibited." Everytown Brief at 5-6 fn. 3. However, that is not a proper representation of the analysis *Heller* used. Heller did not rule on whether all firearms are protected by the Second Amendment. It ruled handguns are a protected class of arms. Similarly, as Hawaii agrees, knives are a protected class of arms. M-16s are

---

[8] *See Hollis v. Lynch*, 827 F.3d 436, 449 (5th Cir. 2016) ("More recently, two Supreme Court justices observed that the 'relevant statistic' involves the counting of jurisdictions. In addressing whether stun guns are in common use, Justice Alito, joined by Justice Thomas, implied that the number of states that allow or bar a particular                              weapon                              is                              important…").

not a type of handgun. They are a type of machinegun i.e., an entirely separate class of arm from handguns. Everytown's argument simply is not supported by *Heller*.

## V.   CONCLUSION

This Court should find that Hawaii's ban on the possession of butterfly knives is unconstitutional.

Respectfully submitted,

*s/ Alan Alexander Beck*
ALAN ALEXANDER BECK

*s/ Stephen D. Stamboulieh*
STEPHEN D. STAMBOULIEH

Attorneys for Plaintiffs-Appellants

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 20-15948

I am the attorney or self-represented party.

**This brief contains 4,938 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties;
  [ ] a party or parties are filing a single brief in response to multiple briefs; or
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** *s/ Alan Alexander Beck*          **Date:** 11/6/2020
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/18*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 6, 2020, I filed the foregoing Appellants' Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


*/s/ Alan Alexander Beck*
Alan Alexander Beck