FILED
4/5/2021
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DAVID ZAITZEFF, <br><br> Petitioner, <br><br> v. <br><br> CITY OF SEATTLE, <br><br> Respondent. | No. 80436-7-I <br><br> DIVISION ONE <br><br> PUBLISHED OPINION |

    CHUN, J. — David Zaitzeff walked around Seattle's Green Lake Park with a sheathed sword hanging from his neck. The City of Seattle charged him with violating Seattle Municipal Code (SMC) 12A.14.080(B) for carrying a "dangerous knife." Zaitzeff challenged the constitutionality of this ordinance under article I, section 24 of the Washington Constitution and the Second Amendment to the United States Constitution, which challenge the municipal court rejected. The municipal court reserved ruling on Zaitzeff's necessity defense, suggesting that it was denying the defense unless more proof came to light during trial. Zaitzeff then agreed to a stipulated facts bench trial. The municipal court found him guilty. Zaitzeff appealed to the superior court, which affirmed. A commissioner of this court then granted Zaitzeff's petition for discretionary review. We hold that while Zaitzeff's sword is constitutionally protected, as applied here, SMC 12A.14.080(B) does not violate either the state or federal right to bear arms. We also hold that the municipal court did not violate Zaitzeff's Sixth

No. 80436-7-I/2

Amendment[1] right to present a defense by rejecting his necessity defense. As a result, we affirm.

## I. BACKGROUND

In May 2018, Zaitzeff walked around Green Lake Park with a sheathed sword hanging from his neck. A citizen called 911. The caller said Zaitzeff was wearing a thong, approaching women, and taking photos of them. When police officers arrived, they confirmed he had a sword, which measured about 24 inches long. Zaitzeff acknowledged he was aware of the ordinance against fixed blade knives and that he was not hunting, fishing, or going to or from a job requiring a sword. The officers took the sword and cited him.

The City charged Zaitzeff with unlawful use of weapons under SMC 12A.14.080(B). Zaitzeff moved to dismiss the charge, challenging the ordinance as unconstitutional as applied to his case. The municipal court denied the motion, concluding that the sword is not a constitutionally protected arm.

Zaitzeff informed the court and the City that he planned to assert a necessity defense. The City moved in limine to prohibit introduction of the defense and all evidence related to it. The court requested an offer of proof from Zaitzeff. He explained that he carried the sword because he had been assaulted in the past. But he conceded that "[t]here was no one imminently threatening me that particular day, no." The court reserved ruling on whether it would allow Zaitzeff to raise the defense, saying that it could revisit the issue if testimony showed that Zaitzeff faced an imminent threat around the time at issue. Zaitzeff

---

[1] U.S. CONST. amend. VI.

then agreed to a bench trial with stipulated facts. The court did not revisit the issue of the necessity defense. And it found Zaitzeff guilty as charged.

Zaitzeff appealed to superior court, claiming that the ordinance is unconstitutional as applied to him, that the trial court violated his right to present a defense under the Sixth Amendment, and that insufficient evidence supported the guilty finding. The superior court affirmed. First, applying intermediate scrutiny, it determined that Zaitzeff had not met his burden of showing that the ordinance violated his constitutional rights under either Washington or United States constitution. It noted that insufficient evidence supported a finding that a sword is traditionally or commonly used as a weapon of self-defense. Next, it determined that the trial court correctly decided that Zaitzeff's offer of proof did not support a necessity defense. And finally, it concluded that sufficient evidence supported the conviction.

Zaitzeff sought discretionary review before this court on the issues of the constitutionality of the ordinance and his ability to present a defense. A commissioner of this court granted review.

## II. ANALYSIS

A. The Constitutionality of SMC 12A.14.080(B) as Applied to this Case

Zaitzeff says that as applied here, SMC 12A.14.080(B) violates article I, section 24 and the Second Amendment. The City responds that neither constitutional provision protects his sword as an arm. And it adds that even assuming such protection, the ordinance is constitutional as applied. We conclude that as applied here, the ordinance does not violate either constitution.

3

No. 80436-7-I/4

We review de novo constitutional issues. City of Seattle v. Evans, 184 Wn.2d 856, 861–62, 366 P.3d 906 (2015). "We presume that statutes are constitutional and place 'the burden to show unconstitutionality . . . on the challenger.'" Id. (alteration in original) (internal quotation marks omitted) (quoting In re Estate of Hambleton, 181 Wn.2d 802, 817, 335 P.3d 398 (2014)). In an as-applied constitutional challenge to an ordinance, a party claims that application of the law to the specific context of their actions is unconstitutional. Id. at 862. "'Holding a statute unconstitutional as-applied prohibits future application of the statute in a similar context, but the statute is not totally invalidated.'" Id. (internal quotation marks omitted) (quoting City of Redmond v. Moore, 151 Wn.2d 664, 668-69, 91 P.3d 875 (2004)).

Under article I, section 24 of the Washington Constitution, "[t]he right of the individual citizen to bear arms in defense of [themselves], or the state, shall not be impaired, but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain or employ an armed body of men." Under the Second Amendment to the United States constitution, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In District of Columbia v. Heller, the United States Supreme Court held that "the inherent right of self-defense has been central to the Second Amendment right." 554 U.S. 570, 628–29, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). The Supreme Court applied the Second Amendment to the states through the Fourteenth Amendment in

4

No. 80436-7-I/5

McDonald v. City of Chicago, Ill., 561 U.S. 742, 750, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010).

SMC 12A.14.080 provides, "It is unlawful for a person to: . . . B. Knowingly carry concealed or unconcealed on such person any dangerous knife, or carry concealed on such person any deadly weapon other than a firearm." A dangerous knife is "any fixed-blade knife and any other knife having a blade more than 3 ½ inches in length." SMC 12A.14.010. Exceptions apply to SMC 12A.14.080(B) for using a knife for fishing, hunting, or occupational purposes, and carrying a knife to one's home or work in a secure wrapper. SMC 12A.14.100.

1. Whether the federal or state constitution protects Zaitzeff's sword

Zaitzeff says that a sword is constitutionally protected because it is a traditional arm. He asserts that a sword has been historically used for self-defense. The City parries by contending that a sword is an offensive tool of war, not one commonly used for self-defense.[2] We conclude that the federal and state constitutions protect Zaitzeff's sword as an arm.

    a. Federal case law

In Heller, the United States Supreme Court addressed a District of Columbia statute banning the possession of handguns in the home. 554 U.S. 570. The Court recognized arms as "'[w]eapons of offense, or armour of

---

[2] The City seems to conflate the inquiry of whether a sword is an arm traditionally or commonly used for self-defense with that of whether Zaitzeff was in fact using his sword for self-defense and whether such conduct was justified. The two inquiries are distinct and only the former is at issue. Also, Zaitzeff never asserted self-defense.

5

No. 80436-7-I/6

defence,'" and "'any thing that a [person] wears in [their] defense, or takes into [their] hands, or useth in wrath to cast at or strike another.'" Id. at 581 (first alteration in original) (quoting 1 Samuel Johnson, Dictionary of the English Language 106 (4th ed. 1773) (reprinted 1978); 1 Timothy Cunningham, A New and Complete Law Dictionary (1771)). The Court said that the Second Amendment protects weapons "'in common use at the time'" of the founding.[3] Id. at 627 (quoting United States v. Miller, 307 U.S. 174, 179, 59 S. Ct. 816, 818, 83 L. Ed. 1206 (1939)). And the Court noted that "'[i]n the colonial and revolutionary war era, [small-arms] weapons used by militiamen and weapons used in defense of person and home were one and the same.'" Id. at 624–25 (second alteration in original) (quoting State v. Kessler, 289 Ore. 359, 368, 614 P.2d 94 (1980) (citing G. Neumann, Swords and Blades of the American Revolution 6–15, 252–254 (1973)). The Court held that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." Id. at 624–25.

Heller addresses handguns[4] and offers no explicit guidance on swords.[5] But Heller's definitions of arms suggest that the Second Amendment protects

---

[3] See Evans, 184 Wn.2d at 865 (In Heller, "the Supreme Court defined the term 'arms' to encompass all bearable arms that were common at the time of the founding and that could be used for self-defense").

[4] In Caetano v. Massachusetts, the Supreme Court made clear that the scope of Second Amendment protection reaches beyond firearms. ___ U.S. ___, 136 S. Ct. 1027, 194 L. Ed. 2d 99 (2016). There, the Court addressed the constitutionality of a statute banning stun guns. Id. The Court held that the Second Amendment protects stun guns even though they were not in common use at the time of the founding. Id. at 1027–28.

[5] Before Heller, one court addressed "swordlike" weapons: In a case involving a defendant who carried two sais on his belt "to be prepared," the Court of Appeals of Texas indicated that the Second Amendment does not grant the defendant "the right to

6

No. 80436-7-I/7

swords as arms. Historically, swords have been weapons of offense used to strike at others. And while law-abiding citizens do not typically carry swords for lawful purposes today, as further discussed below, swords were common at the time of founding.

    b. State case law

In Evans, the Washington Supreme Court held that neither the state nor federal constitutions protected the appellant's paring knife. 184 Wn.2d at 873. The court said that "arms" requires that the instrument be a weapon. Id. at 865. The court held that under both article I, section 24 and the Second Amendment:

> [T]he right to bear arms protects instruments that are designed as *weapons traditionally or commonly used by law abiding citizens for the lawful purpose of self-defense*. In considering whether a weapon is an arm, we look to the historical origins and use of that weapon, noting that *a weapon does not need to be designed for military use to be traditionally or commonly used for self-defense*. We will also consider the weapon's purpose and intended function.

Id. at 869 (emphasis added).

---

carry 'swords' upon his person in public in the manner and for the purpose stated." Masters v. State, 653 S.W.2d 944, 945–46 (Tex. App. 1983), aff'd, 685 S.W.2d 654 (Tex. Crim. App. 1985). And an oft-cited 19th century case, State v. Workman, 35 W. Va. 367, 14 S.E. 9, 11 (1891), states that the Second Amendment must:

> be held to refer to the weapons of warfare to be used by the militia, such as *swords*, guns, rifles, and muskets,—arms to be used in defending the state and civil liberty,—and not to pistols, bowie-knife, brass knuckles, billies, and such other weapons as are usually employed in brawls.

(Emphasis added). But the case does not involve a sword.

    Heller then altered the landscape of Second Amendment jurisprudence. Yet few cases post-Heller seem pertinent to the inquiry here. One is State v. DeCiccio, 315 Conn. 79, 128, 105 A.3d 165 (2014), which holds that the Second Amendment protects dirk knives as arms. This opinion further discusses DeCiccio below. The other is State v. Montalvo, which holds, with little analysis, that the Second Amendment protects the right to possess a machete in the home for self-defense. 229 N.J. 300, 323, 162 A.3d 270, 284 (2017).

7

No. 80436-7-I/8

Evans discusses two cases from other jurisdictions in reaching its conclusion: In State v. Delgado, 298 Or. 395, 403, 692 P.2d 610 (1984), the Oregon Supreme Court held that the Second Amendment as well as article I, section 27 of the Oregon constitution protects switchblades.[6] In State v. DeCiccio, 315 Conn. 79, 128, 105 A.3d 165 (2014), the Connecticut Supreme Court held that under Heller, the Second Amendment protects dirk knives[7] as arms. Evans distinguishes these cases by emphasizing that a paring knife's primary purpose is culinary and not for self-defense. 184 Wn.2d at 872.

In DiCiccio, the court noted, "as a general matter, fixed, long blade '[k]nives have long been part of American military equipment.'" 315 Conn. at 120 (alteration in original) (quoting KNIVES AND THE SECOND AMENDMENT, 47 U. MICH. J.L. REFORM 167, 192–93 (2013)). The court also noted that, "in New England, the typical choice for persons required to own a bayonet or a sword was the sword." Id.

Dirk knives and swords are similar. The court in DiCiccio noted that the "double-edged dirk used in early nineteenth century" essentially became "a short sword." 315 Conn. at 94 (quoting E. JANES, THE STORY OF KNIVES (1968) at 55, 67). The court also noted that a "naval dirk" is described as a "companion to and substitute for the sword." Id. at 94–95 (quoting H. PETERSON, AMERICAN KNIVES: THE FIRST HISTORY AND COLLECTORS' GUIDE (1958) at 95–101). The court said

---

[6] Article I, section 27 of the Oregon constitution is analogous to Washington's article I, section 24. Evans, 184 Wn.2d at 868.

[7] A dirk knife is a long, thrusting dagger, similar to, but smaller than, a sword.

8

No. 80436-7-I/9

that "dirk knives bear a close relation to the bayonet and the sword, and have long been used for military purposes." Id. at 122–23.

As law-abiding citizens traditionally used swords for self-defense, we conclude that both constitutions protect Zaitzeff's sword as an arm.[8]

2. Whether SMC 12A.14.080(B) is constitutional as applied to this case

Zaitzeff says that strict scrutiny applies to the analysis here and that the ordinance passes neither strict nor intermediate scrutiny. The City responds that a "reasonably necessary" standard applies to the article I, section 24 issue, and that the ordinance meets that test. And the City says that intermediate scrutiny applies to the Second Amendment issue, and that the ordinance is substantially related to an important government interest. We agree with the City.

a. Article I, section 24

"When presented with arguments under both the state and federal constitutions, we review the state constitution arguments first." State v. Surge, 160 Wn.2d 65, 70, 156 P.3d 208 (2007).

"The right to bear arms under the state constitution is not absolute but is instead subject to 'reasonable regulation.'" State v. Jorgenson, 179 Wn.2d 145, 154, 312 P.3d 960 (2013) (internal quotation marks omitted) (quoting City of Seattle v. Montana, 129 Wn.2d 583, 593, 919 P.2d 1218 (1996), abrogated by

---

[8] "In early colonial America the sword and dagger were the most commonly used edged weapons. During the American colonial era every colonist had a knife. As long as a man was required to defend his life . . . a knife was a constant necessity." Delgado, 298 Or. at 401 (citing three books by H. PETERSON: ARMS AND ARMOUR IN COLONIAL AMERICA, 1526–1783 (1956); AMERICAN KNIVES (1958); DAGGERS AND FIGHTING KNIVES OF THE WESTERN WORLD (1968)).

9

Yim v. City of Seattle, 194 Wn.2d 682, 451 P.3d 694 (2019)). "[A] constitutionally reasonable regulation is one that is 'reasonably necessary to protect public safety or welfare, and substantially related to legitimate ends sought.'" Id. at 156 (quoting Montana, 129 Wn.2d at 594). "We 'balanc[e] the public benefit from the regulation against the degree to which it frustrates the purpose of the constitutional provision.'" Id. (alteration in original) (quoting Montana, 129 Wn.2d at 594).

As applied to this case, SMC 12A.14.080(B) is a constitutionally reasonable regulation under article I, section 24. In Montana, the Washington Supreme Court addressed an older, but functionally similar, ordinance prohibiting the carrying of dangerous knives. 129 Wn.2d at 589. The court concluded that the paring knife at issue was not a constitutionally protected arm, but it held that even if it was protected, the ordinance was constitutional under article I, section 24. Id. at 590–91, 593–95. The court stated:

> Given the reality of modern urban life, Seattle has an interest in regulating fixed blade knives to promote public safety and good order. Seattle may decide fixed blade knives are more likely to be carried for malevolent purposes than for self-defense, and the burden imposed on innocent people carrying fixed blade knives is far outweighed by the potential harm of other people carrying such knives concealed or unconcealed.

Id. at 595. Likewise, an ordinance prohibiting the carrying of 24-inch swords in a public park in Seattle is reasonably necessary to protect public safety and welfare and is substantially related to the goal of preventing sword-related injuries and violence.[9] See id. at 592–93 (noting that "street crime involving

---

[9] Zaitzeff says that the City cannot claim that the ordinance is for the purpose of public safety, given that the City's regulation of firearms is limited compared to its

knives is a daily risk" and that "SMC 12A.14.080 furthers a substantial public interest in safety").

      b.  Second Amendment

The United States Supreme Court has yet to say how to determine the level of scrutiny for as-applied challenges under the Second Amendment. Jorgenson, 179 Wn.2d at 159. In Heller, the Court rejected rational basis review and an "interest-balancing" approach. Heller, 554 U.S. at 628 n.27, 635. The Court held that the handgun law at issue there was unconstitutional "[u]nder any of the standards of scrutiny." Id. at 628.

In Kitsap County v. Kitsap Rifle & Revolver Club, we noted that to determine the appropriate level of scrutiny in Second Amendment cases, we ask "'(1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right.'" 1 Wn. App. 2d 393, 416, 405 P.3d 1026 (2017) (quoting Silvester v. Harris, 843 F.3d 816, 821 (9th Cir. 2016)); see also Heller v. District of Columbia, 670 F.3d 1244, 1257 (D.C. Cir. 2011) (Heller II). The result of that inquiry

> "is a sliding scale. A law that imposes such a severe restriction on the fundamental right of self defense of the home that it amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny. That is what was involved in *Heller*. A law that implicates the core of the Second Amendment right and severely burdens that right warrants strict scrutiny. Otherwise, intermediate scrutiny is appropriate."

---

regulation of dangerous knives. He says that this regulatory structure encourages firearm ownership and he emphasizes that firearms are more dangerous than swords. But as the City points out, RCW 9.41.290 preempts cities from enacting laws relating to firearms unless specifically authorized to do so.

No. 80436-7-I/12

Kitsap Rifle, 1 Wn. App. 2d at 416 (quoting Silvester, 843 F.3d at 821). "[A] regulation that imposes a substantial burden upon the core right of self-defense protected by the Second Amendment must have a strong justification, whereas a regulation that imposes a less substantial burden should be proportionately easier to justify." Heller II, 670 F.3d at 1257. In Second Amendment cases, "many courts have adopted intermediate scrutiny when evaluating restrictions on gun possession by particular people or in particular places." Jorgenson, 179 Wn.2d at 160.

      First, the ordinance does not strike close to the core of the Second Amendment right. The core of the Second Amendment right is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." Heller, 554 U.S. at 635; see also Drake v. Filko, 724 F.3d 426, 436 (3d Cir. 2013) ("the core of the right conferred upon individuals by the Second Amendment is the right to possess usable handguns *in the home* for self-defense"). While the ordinance does affect the ability of law-abiding citizens to carry dangerous knives for self-defense in public, it does not apply within the home. See Jorgenson, 179 Wn.2d at 158 ("Jorgenson also possessed the firearms while driving, rather than in the home, 'where the need for defense of self, family, and property is most acute.'" (quoting Heller, 554 U.S. at 628)); cf. Young v. State, ___ F.3d ___, 2021 WL 1114180, at *35 (9th Cir. Mar. 24, 2021) ("Indeed, we can find no general right to carry arms into the public square for self-defense.").

      And second, the ordinance does not impose a severe burden on Zaitzeff's Second Amendment rights. Zaitzeff says the ordinance serves as a sweeping

No. 80436-7-I/13

ban on his right to bear arms because it contains no self-defense exception or a permitting or licensing scheme. But the ordinance does not completely ban the possession of swords. Most importantly, it does not apply within the home. And among other exceptions, it allows one to purchase a sword and, in a secure wrapper, carry it home, carry it to be repaired, and carry it to abodes or places of business. SMC 12A.14.100. Prohibiting Zaitzeff from carrying his sword in Green Lake Park does not severely burden his Second Amendment rights to warrant strict scrutiny.[10] Given the foregoing, we apply intermediate scrutiny. See New York State Rifle & Pistol Ass'n, Inc. v. Cuomo, 990 F. Supp. 2d 349, 366 (W.D.N.Y. 2013), aff'd in part, rev'd in part, 804 F.3d 242 (2d Cir. 2015). ("although addressing varied and divergent laws, courts throughout the country have nearly universally applied some form of intermediate scrutiny in the Second Amendment context.").

A law survives intermediate scrutiny if it is "'substantially related to an important government interest.'" State v. Sieyes, 168 Wn.2d 276, 276, 225 P.3d 995 (2010) (quoting State v. Williams, 144 Wn.2d 197, 211, 26 P.3d 890 (2001)).

---

[10] Zaitzeff claims that strict scrutiny applies because the Second Amendment right to bear arms is a fundamental right. See State v. Sieyes, 168 Wn.2d 276, 287, 225P.3d 995 (2010) (finding the Second Amendment right a fundamental right); State v. Haq, 166 Wn. App. 221, 253–54, 268 P.3d 997 (2012), as corrected (Feb. 24, 2012) ("Strict scrutiny . . . applies to laws burdening fundamental rights or liberties."). The Supreme Court "has not said, however, and it does not logically follow, that strict scrutiny is called for whenever a fundamental right is at stake." Heller II, 670 F.3d at 1256. Zaitzeff has cited no opinion, aside from the dissent in Evans, applying strict scrutiny in this context. We decline to apply strict scrutiny. See United States v. Miller, 604 F. Supp. 2d 1162, 1171 (W.D. Tenn. 2009) (holding in a Second Amendment case that the defendant "cannot invoke strict scrutiny through a fundamental rights theory.").

No. 80436-7-I/14

Preventing crime and ensuring public safety are important government interests. See United States v. Salerno, 481 U.S. 739, 750, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987) ("the Government's general interest in preventing crime is compelling"); Schall v. Martin, 467 U.S. 253, 264, 104 S. Ct. 2403, 2410, 81 L. Ed. 2d 207 (1984) ("The 'legitimate and compelling state interest' in protecting the community from crime cannot be doubted." (quoting DeVeau v. Braisted, 363 U.S. 144, 155, 80 S. Ct. 1146, 1152, 4 L. Ed. 2d. 1109 (1960))); Kitsap Rifle, 1 Wn. App. 2d at 417 ("The County has an important government interest in public safety"); State v. Spencer, 75 Wn. App. 118, 124, 876 P.2d 939 (1994) ("People have a strong interest in being able to use public areas without fearing for their lives" and a statute prohibiting carrying a weapon in a manner that warrants alarm "protects this interest by requiring people who carry weapons to do so in a manner that will not warrant alarm."); see also Libertarian Party of Erie County v. Cuomo, 970 F.3d 106, 128 (2d Cir. 2020) ("As it is 'beyond cavil that . . . states have substantial, indeed compelling, governmental interests in public safety and crime prevention,' we consider only 'whether the challenged laws are substantially related to the achievement of that governmental interest.'" (alteration in original) (quoting New York State Rifle, 804 F.3d at 261)).

And the ordinance is substantially related to crime prevention and public safety. Swords are weapons. Carrying one around a public park can lead to violence or injuries. Prohibiting people from carrying swords around public parks addresses such risks. While Heller does not list parks as sensitive areas, the public safety concerns underlying the sensitive area distinction also apply here,

14

particularly the concern about protecting children. 554 U.S. at 626 ("nothing in our opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings").

Zaitzeff says that the holdings of Heller and Caetano require us to find the ordinance unconstitutional. But both cases are distinguishable. Heller involved a sweeping ban on all handguns within the home. 554 U.S. at 628–29 ("The handgun ban amounts to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose. The prohibition extends, moreover, to the home, where the need for defense of self, family, and property is most acute."). And in Caetano, the Court did not rule on the constitutionality of the law banning stun guns; rather, it held that the lower court erred by concluding that stun guns were not constitutionally protected arms and remanded the issue. 136 S. Ct. 1027.

We conclude that, as applied here, the ordinance operates within the bounds of constitutionality because it is a reasonable regulation and satisfies intermediate scrutiny.

B. Sixth Amendment Right to Present a Defense

Zaitzeff says that the trial court violated his Sixth Amendment right to present a defense when it prohibited his necessity defense, and that a new trial is necessary as a result. He asserts that the trial court erred by ruling on the affirmative defense in limine. He also contends that the trial court failed to discuss all elements of the defense and failed to view the offer of proof in the light most favorable to him. The City responds that the trial court did not err,

No. 80436-7-I/16

given that Zaitzeff had not offered any proof of an imminent threat. We agree with the City.

We review de novo a claim of a denial of the Sixth Amendment right to present a defense. State v. Ward, 8 Wn. App. 2d 365, 370, 438 P.3d 588, review denied, 193 Wn.2d 1031, 447 P.3d 161 (2019). Under the Sixth Amendment, "'[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations.'" Id. at 370–71 (quoting Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)).

> To raise the defense of necessity:
>
> [T]he defendant must prove, by a preponderance of the evidence, that (1) they reasonably believed the commission of the crime was necessary to avoid or minimize a harm, (2) the harm sought to be avoided was greater than the harm resulting from a violation of the law, (3) the threatened harm was not brought about by the defendant, and (4) no reasonable legal alternative existed.

Id. at 372.

When a defendant asserts the necessity defense in response to a charge of unlawful possession of a firearm, they must prove that they reasonably believed that they were facing some imminent threat of violence. State v. Parker, 127 Wn. App. 352, 355, 110 P.3d 1152 (2005). Though it appears that Washington courts have not addressed this rule in cases involving the unlawful carrying of dangerous knives, we apply the same rule here, given the similarity of the crimes. Zaitzeff does not dispute that this imminent threat standard applies to the charge here.

No. 80436-7-I/17

Before trial, Zaitzeff sought to raise a necessity defense.  The City moved in limine to prohibit introduction of the defense and all evidence related to it.  The court asked Zaitzeff if he faced an imminent threat at the time of the incident.  He responded "[t]here was no one imminently threatening me that particular day, no."  The court then requested an offer of proof.  He explained that he carried the sword because he had been assaulted in the past.  The court began to rule in favor of the State, but then reserved ruling.  It said that it could revisit the issue if later testimony established an imminent threat.  Zaitzeff then agreed to a stipulated facts bench trial and presented no evidence.  There was no such testimony to establish such a threat and the court did not revisit the issue.

Zaitzeff relies on Ward to contend that the trial court erred by ruling on the necessity defense in limine.  But Ward does not support his position.  Rather, it holds that the denial of the necessity defense in limine was error where the defendant "met his initial burden of showing that he would likely be able to submit a sufficient quantum of evidence on each element of necessity."  Ward, 8 Wn. App. 2d at 376.  Ward is distinguishable because the defendant there did not concede the absence of a required element of the defense.  Also, the trial court here did not rule on the necessity defense before trial.  It reserved ruling on the issue and stated that it could revisit the issue if testimony at trial established an imminent threat.

Zaitzeff also contends that the trial court erred by not considering all four elements of the necessity defense.  But Zaitzeff said that he was not facing an imminent threat of harm on the day of the incident.  See Parker, 127 Wn. App.

17

at 355 (noting that the defendant "also testified that he was not under any specific or imminent threat of harm at any time on April 9."). Once the trial court noted the absence of a required element—imminent harm—it was not required to decide whether he had satisfied any of the other elements of the defense.

Finally, Zaitzeff contends that the trial court should have viewed the evidence in the light most favorable to him, and it erred in not doing so. But viewing the evidence in the light most favorable to Zaitzeff, he did not satisfy a requirement for the necessity defense. As stated above, he conceded he was not facing imminent harm.

We affirm.

_____
Chun, J.

WE CONCUR:

_____    _____
Coburn, J.                          Smith, J.