IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD YUKUTAKE and JUSTIN SOLOMON,<br><br>        Plaintiffs,<br><br>    vs.<br><br>ANNE E. LOPEZ,<br><br>        Defendant. | CIVIL NO. 22-00323 JAO-KJM<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS UNDER FRCP RULE 12(b)(1) |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS UNDER FRCP RULE 12(b)(1)**

In this action, Plaintiffs Todd Yukutake and Justin Solomon ("Plaintiffs") seek injunctive and declaratory relief against Defendant Anne E. Lopez ("Defendant"), in her official capacity as the Attorney General for the State of Hawai'i, because they contend Hawaii's ban on the possession of "billies" under Hawai'i Revised Statutes ("HRS") § 134-51 violates the Second Amendment.[1] Defendant moves to dismiss the Complaint on the grounds that Plaintiffs lack

---

[1] Plaintiffs initially filed this action against Holly T. Shikada, who was at that time the Attorney General. ECF No. 1. Anne E. Lopez has since replaced Holly T. Shikada in that role, ECF No. 28, and so is substituted as the proper defendant pursuant to Federal Rule of Civil Procedure 25(d).

standing to bring these claims and because this controversy is not yet ripe.  *See*
ECF No. 18 ("Motion").

For the following reasons, the Court DENIES Defendant's Motion.

## I.  BACKGROUND

### A.  Factual History

Hawaiʻi bans the possession of certain "deadly or dangerous weapons,"
whether concealed or unconcealed, outside the home, without some prior
authorization.  ECF No. 1 ¶¶ 6–7 (citing HRS § 134-51).  This includes a "billy,"
which Plaintiffs allege is synonymous with a "baton."  *Id.* ¶¶ 6–8.  "A baton or
billy is a roughly cylindrical club made of wood, rubber, plastic or metal" that "is
carried as a compliance tool and defensive weapon."  *Id.* ¶ 38.

Plaintiffs, who reside in Honolulu, are not authorized to carry a baton for
personal use and no procedure exists to gain such authorization.  *Id.* ¶¶ 1–2, 9.  But
according to Plaintiffs, batons are "arms" within the meaning of the Second
Amendment; thus, HRS § 134-51's ban on "billies" violates the Second
Amendment because it is not "'part of the historical tradition that delimits the outer
bounds of the right to keep and bear arms.'"  *Id.* ¶¶ 10–18 (quoting *New York State
Rifle & Pistol Ass'n v. Bruen*, 597 U.S. __, 142 S. Ct. 2111, 2127 (2022)).
Plaintiffs' Complaint is dedicated in large part to supporting this contention that
HRS § 134-51 violates the Second Amendment, citing various decisions

addressing Second Amendment rights.  *Id.* ¶¶ 10–28, 32–49.  Because the present challenge requires the Court to assess only standing and ripeness, however, those allegations regarding substantive Second Amendment rights are not yet material here.  *See id.*

More salient, instead, are Plaintiffs' allegations regarding their experiences with and intent to use a baton/billy.  *Id.* ¶¶ 50–71.  Plaintiffs allege that each "desires to keep and bear the same type of baton/billy policemen are usually issued and an expandable baton for self-defense and other lawful purposes," with Plaintiff Yukutake alleging a desire to do so "in public [and outside of his work duties] for the purpose of self-defense" and Plaintiff Solomon alleging a desire to do so "in his home, business, whilst traveling between these locations and in all other public locations outside the scope of his work."  *Id.* ¶¶ 50 (footnote omitted), 60, 62.

Plaintiffs, who have law enforcement and/or military backgrounds, *id.* ¶¶ 52–53, 63, currently work for a company that provides security in and around federal buildings, *id.* ¶¶ 54, 64.  In connection with their current employment, Plaintiffs receive annual baton training and certification and, while working at federal buildings, are armed with a baton (among other items).  *Id.* ¶¶ 55–56, 65–66.  Plaintiff Yukutake previously received training in the use of batons when he completed the Honolulu Police Academy and during his service with the Army National Guard.  *Id.* ¶¶ 52–53.  Although Plaintiffs allege a desire to keep and bear

3

a billy in public and outside of their work duties, they fear prosecution for doing

so; but for Hawai'i law, they "would carry and where appropriate use a billy to

protect" themselves, their homes, their families, and their businesses. *Id.* ¶¶ 60–61,

67, 71.

## B.    Procedural History

Plaintiffs filed this action on July 25, 2022, bringing facial and as-applied

challenges to HRS § 134-51, contending Hawaii's prohibition on carrying a billy

violates the Second Amendment, and seeking injunctive (First Cause of Action)

and declaratory (Second Cause of Action) relief.[2]  ECF No. 1.  Defendant filed the

present Motion to Dismiss under FRCP Rule 12(b)(1) on September 21, 2022,

arguing Plaintiffs lack standing to bring these claims and that such claims are not

ripe, ECF No. 18.  Plaintiffs filed their opposition on October 28, 2022, ECF No.

22, and on November 10, 2022, Defendant filed her reply, ECF No. 23.  In

response to that reply, Plaintiffs filed a notice of supplemental authorities on

November 11, 2022, ECF No. 24, to which Defendant responded in a filed letter on

November 14, 2022, ECF No. 25.  The Court held a hearing on the Motion on

December 1, 2022.  ECF No. 26.

---

[2]  At the hearing, Plaintiffs acknowledged they only challenge subsection (a) of the
statute, which makes carrying certain weapons like a "billy" a misdemeanor, and
not subsection (b), which makes possessing, using, or threatening to use such
weapons "while engaged in the commission of a crime" a class C felony.  *See* HRS
§ 134-51.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint.  *See* Fed. R. Civ. P. 12(b)(1).  "Standing is a threshold matter central to our subject matter jurisdiction."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis and citations omitted).

"Three elements form the irreducible constitutional minimum of standing to file suit in federal court."  *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 816 (9th Cir. 2017) (citation and internal quotation marks omitted).  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.* (internal quotation marks and citation omitted).  "The injury in fact must constitute 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'"  *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

"Each element of standing 'must be supported with the manner and degree of evidence required at the successive stages of the litigation.'"  *Maya*, 658 F.3d at

1068 (ellipsis omitted) (quoting *Lujan*, 504 U.S. at 561). "At the pleading stage, general factual allegations of injury . . . may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (brackets and internal quotation marks omitted) (quoting *Lujan*, 504 U.S. at 561). The court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party" when "ruling on a motion to dismiss for want of standing." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Confederated Tribes & Bands of Yakama Nation v. Yakima County*, 963 F.3d 982, 989 (9th Cir. 2020). In determining constitutional standing, the trial court has the authority "to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Maya*, 658 F.3d at 1067 (internal quotation marks and citations omitted).

Finally, and relevant to Defendant's challenge here, the question of whether a case is ripe for review, which is "peculiarly a question of timing," is intertwined with the injury-in-fact analysis. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). "[I]n measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges

almost completely with standing." *Id.* at 1139 (internal quotation marks and citation omitted).

## III.   DISCUSSION

### A.   The Core Elements Of Standing

Defendant does not argue that Plaintiffs fail to allege causation or redressability.  And as to those elements, the Court finds Plaintiffs' allegations sufficient because, assuming they have alleged an injury in fact, HRS § 134-51 is the cause of that injury, Defendant, in her official capacity as Attorney General, is responsible for enforcing HRS § 134-51, and an order enjoining Defendant from enforcing HRS § 134-51 or declaring it unconstitutional would redress that injury. *See, e.g.*, ECF No. 1 ¶ 3.   The Court addresses the injury-in-fact element below.

### B.   Standing To Bring A Pre-enforcement Challenge And Ripeness

Plaintiffs have not yet been charged under HRS § 134-51, and thus bring a pre-enforcement challenge to that provision.  As such, the injury-in-fact portion of the standing inquiry requires examination of certain additional factors.

"Three factors must exist for a plaintiff to have standing to bring a pre-enforcement challenge to a law, as explained by the Supreme Court in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)."  *Arizona v. Yellen*, 34 F.4th 841, 849 (9th Cir. 2022).  "The plaintiff must allege (1) an 'intention to engage in a course of conduct arguably affected with a constitutional interest,' (2) 'but

7

proscribed by a statute,' and (3) there must be 'a credible threat of prosecution' under the statute." *Id.* (quoting *Driehaus*, 573 U.S. at 159).

The Court concludes and Defendant does not appear to contest that Plaintiffs' allegations are sufficient to meet the first two *Driehaus* factors. Accepting as true Plaintiffs' stated desires to carry a billy for self-protection but for HRS § 134-51, and their contention that HRS § 134-51's ban on allowing them to do so violates their Second Amendment rights, they have alleged an intent to engage in a course of conduct arguably affected with a constitutional interest but proscribed by statute. *See Yellen*, 34 F.4th at 849.

As to the third *Driehaus* factor — that there must be a credible threat of prosecution — the Court examines yet more sub-factors. The Ninth Circuit has "developed a framework to evaluate whether a claimed threat of enforcement is genuine enough to confer standing." *Yellen*, 34 F.4th at 850. Under that framework, a court must consider: "(1) 'whether the plaintiffs have articulated a "concrete plan" to violate the law in question,' (2) 'whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings,' and (3) 'the history of past prosecution or enforcement under the challenged statute.'" *Id.* (quoting *Thomas*, 220 F.3d at 1139 (citing *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1126–27 (9th Cir. 1996) ("*San Diego Gun Rights*"))). Significantly, "'generalized threats of prosecution do not confer

constitutional ripeness.'" *Clark v. City of Seattle*, 899 F.3d 802, 813 (9th Cir. 2018) (quoting *Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1154 (9th Cir. 2017)). "Rather, there must be 'a *genuine* threat of *imminent* prosecution.'" *Id.* (quoting *Bishop Paiute Tribe*, 863 F.3d at 1154).

### 1. Concrete Plan

First, the Court concludes Plaintiffs have sufficiently alleged a concrete plan rather than stating a mere hypothetical intent to violate HRS § 134-51. *See Yellen*, 34 F.4th at 850 ("A concrete plan need not be 'cast in stone' but must be 'more than a hypothetical intent to violate the law.'" (quoting *Thomas*, 220 F.3d at 1139)). Based on the Complaint, Plaintiffs are not individuals who are engaged in an intellectual effort to attack the constitutionality of a statute; rather, they are people who legally carry billies in their line of work and who want to be able to possess them outside the confines of their work.

The parties debate whether *San Diego Gun Rights*, on which Defendant relies, remains good law after more recent Supreme Court authority on substantive Second Amendment rights, *e.g.*, *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010),[3] and standing in

---

[3] *Heller* and *McDonald*, which were issued after *San Diego Gun Rights*, recognized that the Second Amendment confers an individual right to keep and bear arms, made applicable to the States through the Fourteenth Amendment.

pre-enforcement actions, *e.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007).[4]  *See* ECF No. 22 at 5–7.  But the Court need not address this dispute because, even assuming *San Diego Gun Rights* applies, it is distinguishable.

In *San Diego Gun Rights*, the Ninth Circuit concluded plaintiffs had not alleged a concrete plan where they "merely assert[ed] that they 'wish and intend to engage in [unspecified] activities prohibited by [the statute at issue].'"  98 F.3d at 1124, 1127.  Here, in contrast, Plaintiff Yukutake alleges:  he is qualified to carry a baton, he has completed training in the use of batons, he currently receives annual baton training and certification in connection with his employment and is armed with a baton while at work, and further that he "desires to keep and bear a billy in public and outside his work duties," but fears prosecution for doing so such that, but for HRS § 134-51, he would carry and use a billy to protect himself, his home, his family and his business when appropriate.  ECF No. 1 ¶¶ 50–61.  Plaintiff Solomon similarly alleges:  he receives annual baton training through his current employer and is armed with a baton while at work, he desires to keep and bear a

---

[4]  Plaintiffs argue that *MedImmune* rejected *San Diego Gun Rights*' focus on the fact that the acts necessary for the plaintiffs to be injured (violating the law and being prosecuted) were within the plaintiffs' own control when concluding the plaintiffs did not have standing.  *See* ECF No. 22 at 6; *San Diego Gun Rights*, 98 F.3d at 1127.  *MedImmune* recognized that a plaintiff need not expose himself or herself to liability to have standing and that choosing not to violate the law does not eliminate standing.  *See* 549 U.S. at 128–29.

billy in public and outside his work duties, but fears prosecution for doing so such that, but for HRS § 134-51, he would carry and use a billy to protect himself, his family, his home, and his business when appropriate. *Id.* ¶¶ 62–71. Both allege that, under the Second Amendment, they have a legally protected interest in carrying a billy for personal use and using it, when appropriate, for self-defense. *Id.* ¶¶ 32–49, 73–74. The Complaint even includes an example of the type of billy they wish to carry and a link to where such items can be purchased. *Id.* ¶ 50 n.4. Thus, as compared to the plaintiffs in *San Diego Gun Rights*, the Court here is not left to speculate as to the kind of prohibited conduct Plaintiffs desire to engage in. *Cf. Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1210–11 (9th Cir. 2022) (concluding plaintiffs lacked standing where complaint "fail[ed] to state to what extent Plaintiffs currently use [prohibited] technology, to what extent they use it in connection with [permissible] activity, and whether they plan to use it in the future").

The parties also debate the import of *Jackson v. City & County of San Francisco*, 746 F.3d 953 (9th Cir. 2014). There, when addressing a pre-enforcement challenge to a law prohibiting the sale of hollow-point ammunition within San Francisco, the Ninth Circuit rejected a defendant's standing argument, holding that the plaintiff had standing because, "but for" the law, the plaintiff would purchase hollow-point ammunition in San Francisco — which she alleged

was a legally protected interest under the Second Amendment.  746 F.3d at 967; *cf.*
*Unified Data Servs.*, 39 F.4th at 1211 (holding plaintiffs did not establish standing
where their complaint "failed to allege that they *would* use" a particular product
prohibited by the Federal Trade Commission ("FTC") "but for" the FTC's position
that use of the product violated certain statutes).

Defendant nonetheless argues that Plaintiffs' allegations that they would
possess billies but for HRS § 134-51, *see* ECF No. 1 ¶¶ 61, 71, are insufficient.
Defendant dismisses *Jackson* as a "drive-by jurisdictional ruling" with limited
precedential value on which the Court should not rely.  *See* ECF No. 23 at 11–12.
But a "drive-by jurisdictional ruling" is one where a court fails to "explicitly
consider[] whether the dismissal should be for lack of subject matter jurisdiction or
for failure to state a claim" when dismissing a case "for lack of jurisdiction."
*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) (internal quotation marks and
citation omitted).  And the cases Defendant cites in support of her argument reveal
as much.  *See* ECF No. 23 at 12 n.11 (citing *Leeson v. Transam. Disability Income
Plan*, 671 F.3d 969, 971 (9th Cir. 2012)); *Leeson*, 671 F.3d at 971 ("Whether
Leeson is a participant for purposes of ERISA is a substantive element of his
claim, not a prerequisite for subject matter jurisdiction.") (citing *Arbaugh*, 546
U.S. at 511).

Regardless, the defendant in *Jackson* disputed the plaintiff's standing to bring a pre-enforcement challenge; thus, the Court is not convinced that *Jackson*'s injury-in-fact analysis is "drive-by" — particularly given the existence of such an injury was required for the *Jackson* panel to proceed to the merits (albeit of a motion for a preliminary injunction), which it did. *See* 746 F.3d at 967–70. Defendant is correct that the defendant's challenge there was different, *i.e.*, the inconvenience of purchasing the ammunition outside of San Francisco could not suffice for injury in fact; still, in determining the plaintiff had standing, the Ninth Circuit looked to the allegations that: (1) she had a Second Amendment right to engage in certain conduct, and (2) but for the challenged law, would engage in that conduct. *See Jackson*, 746 F.3d at 967. The Court thus finds *Jackson* persuasive here where Plaintiffs have made similar allegations.

To the extent Defendant argues, in reliance on Ninth Circuit cases like *San Diego Gun Rights* and *Thomas*, that Plaintiffs were required to allege more specifics, the Court rejects that such allegations are necessary. *See* ECF No. 18-1 at 16. As noted above, Plaintiffs' allegations are distinguishable from those at issue in *San Diego Gun Rights* because Plaintiffs have alleged with more specificity the conduct they would otherwise undertake *now* but for HRS § 134-51, such as arming themselves with a billy for personal use in order to defend

13

themselves, their homes, and their families, *i.e.*, conduct they are currently capable of doing, but may only legally do in their professional capacities.

*Thomas*, too, is distinguishable. There, the Ninth Circuit noted that the plaintiffs had not specified "when, to whom, where, or under what circumstances" they would violate the statute at issue by refusing to rent to unmarried couples. *See* 220 F.3d at 1139–40. Here, Plaintiffs have sufficiently alleged the relevant missing details: they want to possess the billies *now*, outside of the workplace, for purposes of possible use in self-defense. Further, their desire to engage in prohibited conduct by carrying a billy is not contingent on some unknown third parties' conduct on some uncertain future day as it was in *Thomas*. *See id.* at 1140 (characterizing "if and when an unmarried couple attempt[ed] to lease one of [plaintiffs'] rental properties" as not a "concrete plan"). Even if Plaintiffs' need to *use* (as opposed to simply possess) a billy in self-defense is contingent on the acts of others (and may never arise), the Court agrees with the district court's reasoning in *Jackson* that this does not negate standing and, in fact, that "it would be unreasonable" to require a plaintiff to use a prohibited item for self-defense before permitting review of a rule prohibiting that use. *Jackson v. City & County of San Francisco*, 829 F. Supp. 2d 867, 872 (N.D. Cal. 2011) (footnote omitted).

Nor is the Court persuaded by Defendant's other argument, which relies on a district court decision from the Northern District of New York, that Plaintiffs'

allegations regarding a *desire* to carry a billy are insufficient because they have not sufficiently alleged an *intent to violate* HRS § 134-51.  *See* ECF No. 18-1 at 17. As noted above, the Supreme Court has made clear that

> where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat — for example, the constitutionality of a law threatened to be enforced.  The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction.

*MedImmune*, 549 U.S. at 128–29.  And in reliance on such directives from the Supreme Court, the Ninth Circuit has previously rejected Defendant's argument that a plaintiff must admit he will violate the law or even that he has "a desire to do so."  *Yellen*, 34 F.4th at 850; *see also id.* at 849–50 ("[W]e do not require [plaintiff] to explicitly confess to intended future conduct that is violative of the law it seeks to challenge.").  Here, Plaintiffs *have* alleged a desire to violate the law by continuing certain conduct outside work; they have not, though, out of fear of prosecution.  *See Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 917 (9th Cir. 2004) (similarly noting that a plaintiff "need not claim a specific intent to *violate* the statute" and that ceasing conduct "to avoid the statute's penalties" can suffice for purposes of standing (citations omitted)).  The Court thus turns to the remaining factors in this framework to assess whether that fear is

credible rather than "imaginary or wholly speculative." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (citation omitted).

### 2. Specific Threat

As to the second factor to consider in this framework — whether prosecuting authorities have communicated a specific warning or threat to initiate proceedings — Plaintiffs have not pointed to a specific threat here. Still, as Defendant acknowledges, the Ninth Circuit has "never held that a specific threat is *necessary* to demonstrate standing." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 n.5 (9th Cir. 2013) (emphasis added) (citations omitted); *see also* ECF No. 23 at 8 n.6 (acknowledging this statement in *Valle del Sol*).

Nor does the Court find persuasive cases where this factor weighed heavily in determining no credible threat existed. *See, e.g.*, *Sacks v. Off. of Foreign Assets Control*, 466 F.3d 764, 773–74 (9th Cir. 2006).[5] In *Sacks*, the Ninth Circuit noted the plaintiff had established the two other credible threat factors, but ultimately concluded the plaintiff lacked standing based largely on the absence of this factor. *See id.* Still, unlike Plaintiffs here, the plaintiff in *Sacks had violated* the regulation at issue "on a number of occasions," and the government was "fully

---

[5] Defendant also relies on *Unified Data Services, LLC*, *see, e.g.*, ECF No. 18-1 at 18, but the plaintiffs' allegations there failed to demonstrate *any* of the three credible threat factors — such that the lack of a specific threat was not, on its own, fatal to standing. *See* 39 F.4th at 1210–11.

aware" of those violations but never charged him (even though it did charge him for violating a related regulation, which he was also challenging). *Id.* The government's decision in *Sacks* not to charge plaintiff for those violations during the previous eight years was "a strong indication of its lack of intent to do so in the future," and thus fatal to that plaintiff's claim of a credible fear of prosecution. *Id.* at 774. Here, Plaintiffs have not yet violated HRS § 134-51; thus, the lack of a specific threat is not similarly fatal.

And based on that factual distinction in *Sacks*, the Court is also not persuaded by Defendant's reliance on a district court decision stating that, pursuant to *Sacks*, Plaintiffs "must establish" all three factors in this framework. *See* ECF No. 18-1 at 14, 15–16 (quoting *Ass'n of Am. R.R. v. Cal. Off. of Spill Prevention & Response*, 113 F. Supp. 3d 1052, 1058 (E.D. Cal. 2015)). That oversimplifies *Sacks* and is contrary to *Valle del Sol*.

Instead, the Court finds more persuasive authority indicating that a defendant's failure to disavow an intent to prosecute the plaintiff under the challenged provision factors in favor of finding standing. *See, e.g.*, *Yellen*, 34 F.4th at 850 ("That the federal government has not disavowed enforcement of the Offset Provision is evidence of an intent to enforce it." (citing *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021)); *Bonta*, 996 F.3d at 653 ("[T]he state's refusal to disavow enforcement of AB-5 against motor carriers during this

litigation is *strong evidence* that the state intends to enforce the law and that CTA's members face a credible threat." (emphasis added) (citation omitted)).[6]

Here, Defendant has never stated that HRS § 134-51 will not be enforced against the type of conduct Plaintiffs allege they would otherwise engage in but for HRS § 134-51. To the contrary, Defendant begins her Motion by stating that she is confident HRS § 134-51 does not violate the Second Amendment, *see* ECF No. 18-1 at 6, and prefaces the arguments in her Motion by reiterating the importance of a State's sovereign right to formulate and enforce penal sanctions, *id.* at 15. At the hearing, counsel for Defendant acknowledged there has been no disavowal here.

Overall, then, the Court concludes that a lack of specific threat against Plaintiffs is not outcome determinative here and, instead, the fact that Defendant has not disavowed enforcing HRS § 134-51 against these Plaintiffs factors in favor of finding standing.

---

[6] Defendant criticizes Plaintiffs' reliance on certain Supreme Court decisions reflecting this same notion because they involved challenges under the First Amendment. *See* ECF No. 23 at 17 & n.14 (citing ECF No. 22 at 17); ECF No. 22 at 17 (citing *Holder v. Humanitarian L. Project*, 561 U.S. 1, 16 (2010); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988); *Babbitt*, 442 U.S. at 301)). Defendant is correct that "when the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing" and the "tendency to find standing absent actual, impending enforcement against the plaintiff is stronger in First Amendment cases." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) (citations and internal quotation marks omitted). But she cites no authority indicating that a court may *not* consider a defendant's lack of disavowal in other types of pre-enforcement challenges and, in fact, neither *Yellen* nor *Bonta* were First Amendment cases.

### 3.    History Of Enforcement

Finally, the Court addresses the history of HRS § 134-51's enforcement.  On this inquiry, Defendant argues Plaintiffs have failed to meet their burden because the Complaint identifies only one decades-old example of a prosecution under HRS § 134-51's prohibition on carrying a "billy."  ECF No. 1 ¶ 8 (citing *In re Doe*, 10 Haw. App. 404, 407 n.4, 876 P.2d 1348, 1350 n.4 (1994)).  In their opposition, Plaintiffs respond that

> Hawaiʻi has a storied history of enforcing Haw. Rev. Stat. § 134-51.  *See State v. Ogata*, 58 Hawaiʻi 514, 572 P.2d 1222 (1977) (affirming that a person carrying a weapon is "armed" within the meaning of the statute).  There are numerous state appellate decisions where the statute has been enforced and found in the notes of the statute.

ECF No. 22 at 18.  If this were the only history of enforcement Plaintiffs presented to the Court, it might be inclined to agree with Defendant that a fear of prosecution is not credible in light of that sparse history of enforcement throughout HRS § 134-51's 85-year tenure, even despite Plaintiffs' concrete plan and Defendant's lack of disavowal.  For example, Plaintiffs' response cited above does not indicate whether *Ogata* or the "numerous state appellate decisions" involved HRS § 134-51's prohibition on *billies* as opposed to other deadly weapons also banned under that provision.[7]  Nor have Plaintiffs offered authority indicating prosecutions under

---

[7]  For example, *Ogata* involved a "sword-cane" and "wooden knuckles with shark's teeth embedded in the striking surface."  58 Haw. at 515, 572 P.2d at 1223.

HRS § 134-51 for weapons *other than* a billy make their fear of enforcement more credible here.  The Court is not certain it would.  *See Unified Data Servs., LLC*, 39 F.4th at 1211 n.10 (declining plaintiffs' implicit suggestion that the court take judicial notice of an FTC action filed against third parties after plaintiffs filed their complaint because, on the record before the Ninth Circuit, it was "impossible to tell whether [p]laintiffs are 'similarly situated' to the parties against whom the enforcement action was brought such that the action 'cuts in favor of a conclusion that a threat is specific and credible'" (quoting *Lopez*, 630 F.3d at 786–87)).[8]

But in response to Defendant's specific argument in reply that Plaintiffs have not put forth more recent examples of enforcement, Plaintiffs cite two recent examples of prosecutions under HRS § 134-51's prohibition on billies.  *See* ECF No. 24 at 3–4 (citing *State v. Weldon*, 144 Hawaiʻi 522, 525, 445 P.3d 103, 106 (2019), and a news article and court filings related to *State v. Sugiyama*, 2DCW-19-0001214).  Plaintiffs also cite the "Info & Resources" portion of the Honolulu Police Department's website that contains, under "Deadly Weapons/Knives," the

---

[8]  The Court recognizes Defendant has described "slung-shots" as an analogous type of "impact weapon[]."  ECF No. 18-1 at 6 n.2.  Enforcement of HRS § 134-51(a) as to those types of weapons, then, might be more persuasive.

text of HRS § 134-51, and thus indicates that carrying a billy is a misdemeanor. *Id.* at 4.[9]

This latter source might amount to the type of "general threats by officials to enforce those laws which they are charged to administer [that] do not create the necessary injury in fact." *Lopez*, 630 F.3d at 787 (internal quotation marks, brackets, and citations omitted). But the two cases cited appear to be recent arrests of individuals under HRS § 134-51(a) for carrying a "billy." *See Weldon*, 144 Hawai'i at 525, 529, 445 P.3d at 106, 110 (indicating defendant was charged in 2013 under only HRS § 134-51(a) when "an eight-inch collapsible baton fell out of [his] backpack"); ECF No. 24-3 at 5 (indicating defendant was charged in 2019 under HRS § 134-51(a) with regard to a "wooden baton"). Nor does Defendant argue, in response to this authority, that those examples are distinguishable. *See* ECF No. 25. Instead, Defendant asks the Court to disregard these additional authorities because she brings a *facial* challenge to subject matter jurisdiction under Rule 12(b)(1), and thus contends facts contained outside the Complaint may not be considered. *See id.* But as noted above,

> While review for failure to state a claim under 12(b)(6) is generally confined to the contents of the complaint, in determining constitutional standing, "it is within the trial court's power to allow or to require the plaintiff to supply, by

---

[9] ECF No. 24 at 4 (citing https://www.honolulupd.org/information/deadly-weapons-knives/?fbclid=IwAR18STvdd4h2H4xHp15qfW0VjCeBV_JKvD_Y59w lTWa81hYCzCUARawMfVo (last accessed Nov. 11, 2022)).

> amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth*[, 422 U.S. at 501]; *see also Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001) (in assessing standing, the court may consider "the complaint and any other particularized allegations of fact in affidavits or in amendments to the complaint").

*Maya*, 658 F.3d at 1067 (citation omitted). And here, where the relevant facts relate to a history of prosecution, as evidenced in state court documents, Defendant has not sufficiently explained why the Court may not take judicial notice of those documents, and the Court does so. *Cf. Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." (citations omitted)). In addition, one of the "supplemental" authorities, *Weldon*, was cited in the Complaint. ECF No. 1 ¶ 8. Again, Defendant did not argue *Weldon* (or *Sugiyama*) are distinguishable such that these examples are irrelevant to assessing a credible threat of prosecution. Absent such arguments, the Court concludes that such recent examples of enforcement under HRS § 134-51(a), when combined with the other factors in this analysis, indicate Plaintiffs have sufficiently alleged a credible fear of prosecution at this stage of the proceedings, and thus sufficiently alleged standing at this stage of the proceedings.

   As the parties agree that the ripeness analysis mirrors the standing analysis here, the Court further concludes that Plaintiffs have sufficiently alleged that this

22

controversy is ripe. *See, e.g.*, *Sacks*, 466 F.3d at 773 ("[W]e employ the same test to determine if a plaintiff has established standing based on a fear of prosecution that we use to determine if a case or controversy is sufficiently ripe.").

## IV.   CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion to Dismiss.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, January 10, 2023.

_____
Jill A. Otake
United States District Judge

CV 22-00323 JAO, *Yukutake v. Lopez*; Order Denying Defendant's Motion to Dismiss under FRCP Rule 12(b)(1)