No. 20-15948

IN THE

# United States Court of Appeals for the Ninth Circuit

ANDREW TETER and JAMES GRELL,

Plaintiffs-Appellants,

v.

ANNE E. LOPEZ, in her Official Capacity as the Attorney General of the State of Hawai'i and DARRYL NG, in his Official Capacity as the State Sheriff Division Administrator,

Defendants-Appellees.

On Appeal from the United States District Court for the District of Hawai'i
Honorable Alan C. Kay, Senior United States District Judge
(Civil No. 19-cv-00183-ACK-WRP)

**PETITION FOR PANEL REHEARING AND REHEARING EN BANC**

ANNE E. LOPEZ
  *Attorney General of the State of Hawai'i*
KALIKO'ONĀLANI D. FERNANDES
  *Solicitor General*
NICHOLAS M. MCLEAN
  *First Deputy Solicitor General*
STATE OF HAWAI'I
DEPARTMENT OF THE ATTORNEY GENERAL
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

NEAL KUMAR KATYAL
REEDY C. SWANSON
DANA A. RAPHAEL
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
neal.katyal@hoganlovells.com

*Counsel for Defendants-Appellees Anne E. Lopez and Darryl Ng*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................... ii

FEDERAL RULE OF APPELLATE PROCEDURE 35(b)
STATEMENT.....................................................................................1

BACKGROUND ...................................................................................2

REASONS FOR GRANTING REHEARING ..........................................4

I.     THE PANEL DECISION CONFLICTS WITH SUPREME
COURT AND NINTH CIRCUIT PRECEDENT ....................................5

     A.     Self-Defense Is Integral To The Second Amendment ....................5

     B.     The Panel Decision Erroneously Erased Self-Defense
From This Court's Second Amendment Analysis ..........................6

II.     THE PANEL DECISION CONTRIBUTES TO A
DIVISION OF AUTHORITY ON AN EXCEPTIONALLY
IMPORTANT ISSUE..............................................................................17

CONCLUSION.....................................................................................19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

CASES:

*Bevis v. City of Naperville*,
__ F. Supp. 3d __, 2023 WL 2077392 (N.D. Ill. Feb. 17, 2023) ................14, 18

*City of Seattle v. Evans*,
366 P.3d 906 (Wash. 2015) ...............................................................10

*Clark v. Chappell*,
936 F.3d 944 (9th Cir. 2019) ...........................................................17

*Cox v. United States*,
No. CR 11-00022-RJB, 2023 WL 4203261 (D. Alaska June 27,
2023) .....................................................................................................18

*Cupp v. Harris*,
No. 2:16-CV-00523-TLN-KJN, 2023 WL 5488420 (E.D. Cal. Aug.
24, 2023) .............................................................................................18

*Detrich v. Ryan*,
740 F.3d 1237 (9th Cir. 2013) (en banc) ........................................17

*DeWilde v. United States*,
No. 1:23-CV-00003-SWS, 2023 WL 4884582 (D. Wyo. July 17,
2023) .....................................................................................................18

*District of Columbia v. Heller*,
554 U.S. 570 (2008)...................................................................*passim*

*Duncan v. Bonta*,
49 F.4th 1228 (9th Cir. 2022) (en banc) ........................................17

*Fyock v. Sunnyvale*,
779 F.3d 991 (9th Cir. 2015) .............................................................9

*Grant v. Lamont*,
No. 3:22-CV-01223 (JBA), 2023 WL 5533522 (D. Conn. Aug. 28,
2023) .....................................................................................................18

ii

# TABLE OF AUTHORITIES—Continued

Page(s)

*In Interest of Doe*,
    828 P.2d 272 (Haw. 1992) ................................................................. 3

*Jones v. Bonta*,
    47 F.4th 1124 (9th Cir. 2022) ........................................................... 17

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010) .................................................................. 5, 9, 11, 19

*New York State Rifle & Pistol Ass'n v. Bruen*,
    142 S. Ct. 2111 (2022) ................................................................ *passim*

*Ocean State Tactical, LLC v. Rhode Island*,
    __ F. Supp. 3d __, 2022 WL 17721175 (D.R.I. Dec. 14, 2022) ........................ 18

*Oregon Firearms Fed'n v. Kotek*,
    __ F. Supp. 3d __, 2023 WL 4541027 (D. Or. July 14, 2023) .............. 13, 16, 18

*United States v. Alaniz*,
    69 F.4th 1124 (9th Cir. 2023) ................................................. *passim*

*United States v. Kittson*,
    No. 3:21-CR-00075-IM, 2023 WL 5015812 (D. Or. Aug. 7, 2023) ................ 18

*United States v. McCartney*,
    357 F. App'x 73 (9th Cir. 2009) .......................................................... 8

*Young v. Hawaii*,
    45 F.4th 1087 (9th Cir. 2022) (en banc) ............................................ 17

**STATUTE:**

Haw. Rev. Stat. § 134-53 .......................................................................... 3

**LEGISLATIVE MATERIAL:**

Laws of the Territory of Hawaii, Act 225, § 1 (1959) ............................... 2

**OTHER AUTHORITY:**

4 William Blackstone, *Commentaries on the Laws of England* (1769) ................ 15

## FEDERAL RULE OF APPELLATE PROCEDURE 35(b) STATEMENT

The panel decision conflicts with precedent of the Supreme Court and this Court, distorts the Second Amendment's meaning in an area of exceptional importance, and greatly diminishes the States' sovereign power to protect their citizens.

The panel invalidated Hawai'i's ban on butterfly knives, and in so doing misread the Supreme Court's opinion in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), in two fundamental ways. *First*, the panel held that anything capable of being used as a weapon is "presumptively" protected under the Second Amendment, erroneously relieving Plaintiffs of their burden to prove that their desired weapons are protected by the Second Amendment. Op. 19-20. Those holdings squarely conflict with *Bruen* and this Court's opinion in *United States v. Alaniz*, 69 F.4th 1124 (9th Cir. 2023), both of which recognize that plaintiffs must first make a "threshold" showing that "the weapon at issue is 'in common use today for self-defense.'" *Id.* at 1128 (quoting *Bruen*, 142 S. Ct. at 2134).

*Second*, the panel dramatically altered the legal test for evaluating historical analogues under the Second Amendment. The panel limited the universe of relevant analogues to those imposing the *same* type of restriction on weapons the panel viewed as physically similar to butterfly knives. Op. 24. But *Bruen* directed

1

courts to consider "how and why" regulations generally "burden a law-abiding citizen's right to *armed self-defense*"—not just the precise weapon at issue. 142 S. Ct. at 2133 (emphasis added).

Combined, these errors eliminate any nexus between the Second Amendment and self-defense, despite the Supreme Court's repeated instruction that self-defense is "central to the Second Amendment right." *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008). The panel's opinion also breaks from numerous district courts, including many within this Circuit, that have faithfully followed *Bruen* and *Alaniz*. The Court should grant rehearing.

## BACKGROUND

Hawaiʻi has long regulated the possession and carrying of knives closely associated with criminal activity. *See* C002-C003 (1833 Kingdom of Hawaiʻi law banning sailors from bringing knives ashore).[1] In the year Hawaiʻi became a State, its legislature banned switchblade knives, a subcategory of knife closely associated with criminal and gang activity. *See* Laws of the Territory of Hawaii, Act 225, § 1 (1959); ER-7.

Much like switchblades, butterfly knives (also known as balisongs) can be "opened or closed with one hand" with "an intimidating and threatening effect."

---

[1] "A," "B," and "C" prefixed references are found in the Addenda to the Supplemental Brief of Defendants-Appellants. ECF No. 69.

ER-8. Their physical design also means they can be deployed quickly. ER-81; *see* ER-152 (photograph). In 1992, however, the Hawaiʻi Supreme Court held that butterfly knives fell outside the statutory ban on switchblades. *In Interest of Doe*, 828 P.2d 272, 275-276 (Haw. 1992). Given law-enforcement testimony that butterfly knives were popular among gangs and juveniles, the legislature prohibited butterfly knives. *See* Haw. Rev. Stat. § 134-53; ER-6-8.

Plaintiffs Andrew Teter and James Grell brought a Second Amendment challenge to Hawaiʻi's butterfly-knife ban in 2019. ER-141-160, ER-163. The District Court, ruling before *Bruen*, assumed without deciding that butterfly knives were within the Second Amendment's scope and sustained the law by applying intermediate scrutiny. *See* ER-26-44.

*Bruen* abrogated means-end scrutiny while this appeal was pending. Instead, *Bruen* directed courts to determine whether Plaintiffs' proposed conduct falls within the textual scope of the Second Amendment, and—if so—to determine whether the State can identify historical analogues justifying its regulation. *See* 142 S. Ct. at 2129-30. The Court denied Hawaiʻi's request to remand in light of *Bruen*, instead directing the parties to submit supplemental briefs within 30 days. ECF No. 66; *see* Oral Arg. 13:30-16:48.

The panel ruled Hawaiʻi's butterfly-knife ban unconstitutional. Op. 31. It first concluded that, because "bladed weapons facially constitute 'arms,' " they fall

within "the plain text of the Second Amendment" and are therefore presumptively protected. Op. 19-20. The panel then rejected Hawai'i's argument that butterfly knives are "dangerous and unusual" because Hawai'i "failed to present evidence" that butterfly knives are not commonly used for any lawful purpose. Op. 20-21.

The panel next considered whether Hawai'i had produced adequate "historical analogues." Op. 23-24. Despite acknowledging that *Bruen* does not demand a "historical twin," the panel rejected as "[im]proper historical analogues" any statutes regulating "kinds of knives that are distinct from butterfly knives" and any statutes short of flat prohibitions on all public "carry" or "possession." Op. 23-24, 28 (quotation marks and emphasis omitted). Finding butterfly knives physically "analogous to an ordinary pocketknife," the panel deemed Hawai'i's ban on butterfly knives unlawful because Hawai'i cited no statutes that "prohibited the carry" or "possession" of "pocketknives." Op. 28.

## REASONS FOR GRANTING REHEARING

The panel's Second Amendment framework cannot be squared with Supreme Court or Ninth Circuit precedent. The panel opinion eliminates the nexus to self-defense laced into both steps of *Bruen*'s analysis and relieves challengers of any burden to establish that their conduct falls within the text of the Second Amendment "right to keep and bear Arms"—instead erroneously placing the burden on governments to prove that a weapon is not covered, no matter how

uncommon or untethered that weapon is to self-defense. The opinion is the first Circuit-level decision to strike down a ban on a category of weapon after *Bruen*, and its analysis greatly distorts the Second Amendment's scope. Rehearing is necessary on this vital issue.

## I.    THE PANEL DECISION CONFLICTS WITH SUPREME COURT AND NINTH CIRCUIT PRECEDENT.

### A.    Self-Defense Is Integral To The Second Amendment.

Self-defense is an inextricable component of the Second Amendment right articulated by the Supreme Court and this Court. In the groundbreaking *Heller* decision, the Supreme Court explained that the Founders "understood the right to enable individuals to defend themselves," including to protect "against both public and private violence," thus recognizing that "the inherent right of self-defense has been central to the Second Amendment right." 554 U.S. at 594, 628. When holding the Second Amendment applicable to the States, *McDonald v. City of Chicago* likewise stressed that "self-defense was 'the *central component* of the right itself.'" 561 U.S. 742, 787 (2010) (quoting *Heller*, 554 U.S. at 599). And *Bruen* reiterated that the Second Amendment "protect[s] an individual right to keep and bear arms *for self-defense*." 142 S. Ct. at 2125 (emphasis added).

Both *Bruen* and this Court's subsequent decision in *Alaniz* emphasized the centrality of self-defense to *Bruen*'s "two-part test" governing Second Amendment challenges. *Alaniz*, 69 F.4th at 1128. "*Bruen* step one involves a threshold

5

inquiry" under the plain text of the Second Amendment to "determin[e] whether the challenger is 'part of "the people" whom the Second Amendment protects,' whether the weapon at issue is '"in common use" today for self-defense,' and whether the 'proposed course of conduct' falls within the Second Amendment." *Id.* (quoting *Bruen* 142 S. Ct. at 2134-35).  Only once plaintiffs have established these elements does their proposed conduct become "presumptively" lawful. *Bruen*, 142 S. Ct. at 2126.

"If the first step is satisfied, [the court] proceeds to *Bruen* step two, at which the 'government must then justify its regulation,'" by "produc[ing] representative analogues to demonstrate that the challenged law is consistent with a historical tradition of regulation."  *Alaniz*, 69 F.4th at 1128 (quoting *Bruen*, 142 S. Ct. at 2130).  This involves comparing "how and why the regulations burden a law-abiding citizen's right *to armed self-defense*."  *Bruen*, 142 S. Ct. at 2133 (emphasis added).  "Notably, the analogue required at step two need not be a 'historical *twin*,'" *Alaniz*, 69 F.4th at 1128 (quoting *Bruen*, 142 S. Ct. at 2133), or "a dead ringer," *Bruen*, 142 S. Ct. at 2133.

## B. The Panel Decision Erroneously Erased Self-Defense From This Court's Second Amendment Analysis.

The panel eliminated self-defense from both steps of the *Bruen* analysis, instead holding that any weapon is presumptively protected until the government proves otherwise.  These holdings conflict with the Supreme Court's Second

Amendment cases and this Court's post-*Bruen* decision in *Alaniz*—an opinion the panel never even cited.

1. At *Bruen*'s first step, the panel erroneously relieved Plaintiffs of any burden to show that butterfly knives are "'in common use' today for self-defense." *Alaniz*, 69 F.4th at 1128 (quoting *Bruen*, 142 S. Ct. at 2134).  Instead, the panel asked only whether butterfly knives are "arms."  The panel concluded that "bladed weapons facially constitute 'arms' within the meaning of the Second Amendment" because they are "'[w]eapons of offence' that may be 'use[d] in wrath to cast at or strike another.'"  Op. 19 (quoting *Heller*, 554 U.S. at 582).  Therefore, in the panel's view, "the plain text of the Second Amendment includes bladed weapons and, by necessity, butterfly knives" such that the Constitution "'presumptively'" protects them.  Op. 19-20 (quoting *Bruen*, 142 S. Ct. at 2135).  The panel then shifted the burden to Hawaiʻi and concluded that Hawaiʻi "provide[d] no basis for concluding that these instruments are not commonly owned for lawful purposes."  Op. 21-22.

This framework is wrong at every turn.  Whether a weapon is commonly used for self-defense is part of the "threshold inquiry" at *Bruen*'s first step on which plaintiffs bear the burden of proof—not the State.  *Alaniz*, 69 F.4th at 1128.  Before the Second Amendment can "presumptively protect[]" a person's conduct, the court must first determine that "the Second Amendment's plain text covers an

individual's conduct." *Bruen*, 142 S. Ct. at 2129-30. As *Heller* made clear, the

Second Amendment is "not a right to keep and carry any weapon whatsoever."

554 U.S. at 626. Possession of a weapon falls within the amendment's scope only

when, among other things, the weapon at issue is " 'in common use' today for self-

defense." *Bruen*, 142 S. Ct. at 2134. *Alaniz* squarely recognized this "threshold"

aspect of the test. 69 F.4th at 1128; *see also United States v. McCartney*, 357 F.

App'x 73, 76 (9th Cir. 2009) ("The Second Amendment protects only the sorts of

weapons in common use." (cleaned up)).

Rather than ask, as *Bruen* and *Alaniz* require, whether butterfly knives were

commonly used for self-defense, the panel instead asked whether *Hawaiʻi* had

proven that these weapons were *not* in common use for some lawful purpose.

Op. 22. According to the panel, this question implicated whether Hawaiʻi had

proven that butterfly knives fell into the category of "dangerous and unusual"

weapons excluded from the Second Amendment's coverage in *Heller*. Op. 21-22.

This analytical approach is both procedurally and substantively flawed.

Procedurally, the panel simply skipped over the plaintiffs' burden of proving

common use for self-defense by concluding that *anything* falling within the literal

definition of "arms" is "presumptively" protected. Op. 19 (quoting *Bruen*, 142 S.

Ct. at 2135). The panel supported its conclusion by citing *Heller*'s statement that

"the Second Amendment 'extends, prima facie, to all instruments that constitute

bearable arms, even those that were not in existence at the time of the founding.' " *Id.* (quoting *Heller*, 554 U.S. at 582). But *Heller* did not hold that all "Arms" fall within the "right to keep and bear Arms." On the contrary, *Heller* walked through the meaning of each of the Amendment's terms individually *before* articulating the meaning of the entire "operative clause," 554 U.S. at 579-595, at which point the Court stressed that the Second Amendment "is not a right to keep and carry any weapon whatsoever," *id.* at 626. Handguns were protected as "the quintessential self-defense weapon" "overwhelmingly chosen by American society," *id.* at 628-629—not merely because they are "bearable arms," *id.* at 582. Plaintiffs are not relieved of their threshold burden under *Bruen* and *Alaniz* merely because the State also argues that a weapon is "dangerous and unusual."

Substantively, the panel was wrong to suggest that common possession for *any* "lawful purpose" would bring a weapon within the Second Amendment's scope. The panel relied on this Court's pre-*Bruen* case *Fyock v. Sunnyvale*, which said that "the Second Amendment does not 'protect those weapons not typically possessed by law-abiding citizens for lawful purposes.' " 779 F.3d 991, 996-997 (9th Cir. 2015) (quoting *Heller*, 554 U.S. at 625). But *Fyock* did not specify *which* lawful purposes were relevant, *id.* at 997-998, and *Heller* discussed "lawful purposes" in the context of "self-defense," 554 U.S. at 624; *see McDonald*, 561 U.S. at 768 (discussing "the core lawful purpose of self-defense" (quotation marks

9

omitted)). In any event, *Bruen* and *Alaniz* subsequently clarified that the critical question is "whether the weapon at issue is 'in common use today *for self-defense.*'" *Alaniz*, 69 F.4th at 1128 (quoting *Bruen*, 142 S. Ct. at 2134) (emphasis added).

The panel's distorted test means it never even considered whether affirmative evidence established that butterfly knives are commonly used for self-defense. *See* Op. 19-22. Indeed, the panel mentioned self-defense only to claim that "Hawaii's own witness conceded that butterfly knives may be used for self-defense." Op. 22. The key word, however, is "may"—the panel never considered whether butterfly knives *are in fact* commonly used for self-defense. Virtually "any hard object can be used as a weapon, but it would be absurd to give every knife, pitchfork, rake, brick or other object conceivably employable for personal defense constitutional protection." *City of Seattle v. Evans*, 366 P.3d 906, 914 (Wash. 2015) (quotation marks omitted).

In fact, nothing in the record indicates that butterfly knives are common, much less commonly used for self-defense. The District Court explained the record contained no "evidence about the popularity of butterfly knives, including to what extent they are possessed on a national scale" and included only "some, mostly anecdotal, evidence that butterfly knives are quite popular in certain villages in the Philippines." ER-9-10. That anecdotal evidence came from

Plaintiffs' expert, who relied on hearsay involving a 1982 incident where Filipino teenagers "pulled their balisongs" to scare off bullies, and a single conversation with a waitress in the Philippines. ER-131-132. The same witness conceded that butterfly knives require "a very precarious grip in a chaotic self-defense situation which leaves the defender susceptible to dropping the knife." ER-132.

Even if the Second Amendment covers lawful purposes beyond self-defense, it cannot extend to *any* lawful purpose. Rather, any other purposes must similarly be "deeply rooted in this Nation's history and tradition," which determine the scope of the right. *McDonald*, 561 U.S. at 768 (quotation marks omitted). No matter how defined, that cannot include using butterfly knives in Escrima, a form of martial arts practiced primarily in the Philippines, as the panel concluded here. Op. 22.

Even assuming the question is "whether butterfly knives are commonly owned for [any] lawful purposes," the panel's conclusion that there "is no genuine issue of material fact" is untenable. *Id*. It is infected with the panel's procedural error of assigning Hawai'i the burden of proof, *see supra* pp. 7-9, and is simply wrong. As Hawai'i explained *supra* p. 10, the panel's suggestion that butterfly knives "may" be used for self-defense refers to no evidence of *actual* use for self-defense. Similarly, there is no record evidence that butterfly knives are commonly used in Filipino martial arts today. Not even Plaintiffs asserted that they sought to

11

use butterfly knives for that purpose. ER-137-140. The panel relied on personal testimony in the legislative history, Op. 22, but conclusory statements from two people in 1999 are insufficient evidence of "common use" for Plaintiffs to survive summary judgment. ER-82-84. At minimum, there was a genuine fact question given evidence in the same legislative history that butterfly knives were overwhelmingly used for criminal purposes and gang activity, *not* "lawful" purposes. ER-85-87; SER-24-26, SER-39-41, SER-47-49, SER-59-60.

2. The panel also fundamentally misunderstood the historical analysis required at *Bruen*'s second step. Relevant analogues are determined by looking at "how and why" the regulations at issue impose a "burden" on "a law-abiding citizen's right *to armed self-defense*." *Bruen*, 142 S. Ct. at 2133 (emphasis added). The panel, however, artificially narrowed its inquiry to whether precisely the same kind of regulation had been applied to a physically similar kind of knife. *See* Op. 28. Thus, although the panel gave lip service to the Supreme Court's direction that a historical twin is unnecessary, Op. 23, that is in fact what the panel demanded.

By failing to examine the burden on "armed self-defense," the panel dismissed without further analysis numerous salient regulations. For instance, the panel dismissed laws that "regulated only the[] *carry*," manufacture, or sale of weapons like Bowie knives, slung shots, dirks, and daggers because they did not

strictly ban all *possession* of those weapons. Op. 24.[2] But the panel never
considered whether the burden on making, selling, or publicly carrying a particular
subspecies of weapon was meaningfully different from the perspective of *self-defense*. *See Oregon Firearms Fed'n v. Kotek*, __ F. Supp. 3d __, 2023 WL
4541027, at *39-44 (D. Or. July 14, 2023) (properly analyzing the "burden on the
right to armed self-defense" of same statutes). Similarly, the panel rejected
historical regulations that outright banned possession of the same weapons,[3]
because it did not subjectively believe those weapons to be physically similar
enough to butterfly knives. *See* Op. 28. But the panel did not consider whether
those weapons, historically, played a role in armed self-defense comparable to the
butterfly knife today, which is the relevant question under *Bruen*. *See Kotek*, 2023
WL 4541027, at *39-44.

---

[2] *See, e.g.*, A015-A016 (Tennessee, 1838); A018 (Virginia, 1838); A021
(Alabama, 1839); A082 (North Carolina, 1879); A028 (Louisiana, 1855); A067
(West Virginia, 1873); A091 (Maryland, 1886); A097-A098 (Rhode Island, 1893);
B016 (Vermont, 1849); B018 (Massachusetts, 1850); B041 (Florida, 1868); B050-B051 (Alabama, 1873); B060 (Pennsylvania, 1875); B069-B070 (Illinois, 1879);
B074-B075 (Tennessee, 1879); B077-B078 (South Carolina, 1880); B088
(Virginia, 1884); B090 (Oregon, 1885); B094 (Michigan, 1887); B096 (Oklahoma,
1890).

[3] *See, e.g.*, A003-A005 (Georgia, 1837); B014 (New York, 1849); B035-B036
(New York, 1866); B080 (Illinois, 1881); B106 (California, 1917); B109
(Minnesota, 1917).

13

The panel's focus on its perception of the physical characteristics of butterfly knives also led the panel to fail to appropriately weigh "why" Hawaiʻi's cited analogues regulated weapons. *Bruen*, 142 S. Ct. at 2133. Hawaiʻi offered evidence that butterfly knives were singled out for regulation precisely because they were closely associated with criminal activity and had become a favorite weapon of gangs, including juveniles. *See, e.g.*, SER-24, SER-37. And the panel did not dispute Hawaiʻi's argument that Bowie knives, slung shots, dirks, and daggers were historically regulated for precisely the same reason. *See Bevis v. City of Naperville*, __ F. Supp. 3d __, 2023 WL 2077392, at *10-14 (N.D. Ill. Feb. 17, 2023) (chronicling such "[l]aws regulating melee weapons"). Under the panel's approach, a weapon's cultural characteristics and actual use patterns are irrelevant to the historical inquiry—counter to the Supreme Court's clear instruction to consider "why" regulations burden self-defense. *Bruen*, 142 S. Ct. at 2133.

The Supreme Court's method of historical reasoning in *Heller* stands in stark contrast to the panel's approach. There, in the course of recognizing that "dangerous and unusual" weapons fall outside the Second Amendment, the Court relied on "the historical tradition of prohibiting the *carrying* of" such weapons to identify a limit "on the right to" both "keep *and* carry arms." *Heller*, 554 U.S. at

627 (emphases added).[4]  The sources *Heller* cited to support this "historical

tradition" collected prohibitions on "*going armed*" with dangerous and unusual

weapons, not merely possessing them.  *See, e.g.*, 4 William Blackstone,

*Commentaries on the Laws of England* 148-149 (1769); *Heller*, 554 U.S. at 627

(collecting similarly worded provisions).  Nevertheless, the Court recognized that

dangerous and unusual weapons could be "banned" given this historical tradition.

*Heller*, 554 U.S. at 627.  And although *Bruen* rejected concealed-carry bans as

insufficiently analogous to laws prohibiting public carry, it did so because the

prohibition extended to "all public carry" of *handguns*—the most important self-

defense weapon.  142 S. Ct. at 2155 (emphasis omitted).  *Bruen* did not undermine

*Heller*'s teaching that prohibitions on carrying weapons are relevant when

analyzing bans on narrower categories of weapons, 142 S. Ct. at 2133—

particularly weapons, like butterfly knives, designed to be "easy to conceal."  ER-7

(quotation marks omitted).

　　　　The panel's analysis was all the more misguided because it rested on

appellate factfinding that "[t]he butterfly knife is clearly more analogous to an

ordinary pocketknife than to an Arkansas Toothpick or a bowie knife."  Op. 28.

---

[4] The "dangerous and unusual" inquiry properly looks not to historical weapons,
but to a weapon's status *today*.  Indeed, *Heller*'s example of a "dangerous and
unusual" weapon that "may be banned" was the quintessentially modern M-16
automatic rifle.  554 U.S. at 627.

The panel cited no record support for its *ipse dixit*, which was inappropriate given the summary-judgment posture—where Hawaiʻi was entitled to all reasonable factual inferences—and the District Court's primary factfinding role. The panel also drew the wrong conclusion from its unsupported determination that butterfly knives most resemble pocketknives. Even if true (which it is not), this would just underscore the limited burden Hawaiʻi's regulation places on "armed self-defense." By failing to analyze that issue, the panel disregarded *Bruen*.

As the panel's questionable pocketknife comparison demonstrates, *Bruen*'s historical test involves questions about what relationship certain weapons historically bore to "armed self-defense" and why certain weapons were regulated differently. The inquiry is not simply a matter of tallying up statutes and reading the plain text of those statutes in isolation, *see* Op. 14-15—or of simply asserting that butterfly knives are more like pocketknives than historical Bowie knives. Expert witnesses can and should provide crucial context regarding the historical record in performing a *Bruen* analysis. *See, e.g.*, *Kotek*, 2023 WL 4541027, at *3, *15-46 (relying extensively on such testimony). Likewise, whether a modern butterfly knife is more like a pocketknife or a historical Bowie knife is just the sort of fine-grained factual determination that should be made in the district court in the first instance—where evidence can be heard, testimony taken, and expert opinions considered.

Accordingly, although the Court should in all events grant rehearing to correct the panel's legal errors, it should at a minimum vacate and remand for the District Court to analyze the challenged law under *Bruen*'s framework in the first instance. That would be consistent with the "standard practice" this Court applies "[w]hen . . . applying a new legal principle." *Clark v. Chappell*, 936 F.3d 944, 971 (9th Cir. 2019) (quotation marks omitted); *see Detrich v. Ryan*, 740 F.3d 1237, 1248-49 (9th Cir. 2013) (en banc) (plurality) ("[O]ur general assumption is that we operate more effectively as a reviewing court than as a court of first instance."). And it would be consistent with this Court's remand of pre-*Bruen* cases that, like this one, were pending on appeal when *Bruen* was decided. *See, e.g.*, *Duncan v. Bonta*, 49 F.4th 1228 (9th Cir. 2022) (en banc); *Jones v. Bonta*, 47 F.4th 1124 (9th Cir. 2022); *Young v. Hawaii*, 45 F.4th 1087 (9th Cir. 2022) (en banc).

## II. THE PANEL DECISION CONTRIBUTES TO A DIVISION OF AUTHORITY ON AN EXCEPTIONALLY IMPORTANT ISSUE.

This case also warrants rehearing because it is exceptionally important. The panel's distortion of *Bruen*'s framework will have far-reaching consequences on the sovereign power of States and local governments to prevent violence. By eliminating the nexus between the Second Amendment and self-defense, the panel effectively found a constitutional right to a plaintiff's weapon of choice.

The panel's ruling is also out of step with multiple district courts within this Circuit that have rejected Second Amendment challenges at *Bruen*'s first step

17

because the challenger failed to demonstrate the weapon at issue was commonly used for self-defense. *See Kotek*, 2023 WL 4541027, at *5, *32 (large capacity magazines); *Cupp v. Harris*, No. 2:16-CV-00523-TLN-KJN, 2023 WL 5488420, at *3, *6-7 (E.D. Cal. Aug. 24, 2023) (slung shots); *Cox v. United States*, No. CR 11-00022-RJB, 2023 WL 4203261, at *7-8 (D. Alaska June 27, 2023) (machinegun and silencer); *United States v. Kittson*, No. 3:21-CR-00075-IM, 2023 WL 5015812, at *1 (D. Or. Aug. 7, 2023) (machineguns).

The panel's opinion also makes this Court the first Circuit to strike down a ban on a particular category of weapon after *Bruen*. Doing so puts it out of sync with a growing consensus among district courts around the country, which have sustained particular weapons bans using the analytical approach in *Bruen* that the panel failed to follow. *See, e.g.*, *Ocean State Tactical, LLC v. Rhode Island*, __ F. Supp. 3d __, 2022 WL 17721175, at *14-16 (D.R.I. Dec. 14, 2022) (considering whether plaintiffs showed large capacity magazines are commonly used for self-defense); *Grant v. Lamont*, No. 3:22-CV-01223, 2023 WL 5533522, at *5-6 & n.5 (D. Conn. Aug. 28, 2023) (same, for assault weapons), *DeWilde v. United States*, No. 1:23-CV-00003-SWS, 2023 WL 4884582, at *5-8 (D. Wyo. July 17, 2023) (same, for machineguns); *Bevis*, 2023 WL 2077392, at *9-16 & nn.7, 18-22 (historical regulations on "melee weapons," including Bowie knives, justified bans on selling assault weapons and large capacity magazines).

If left undisturbed, the panel's analysis will govern challenges involving many highly dangerous weapons that States quite reasonably seek to regulate or ban: assault weapons, high-capacity magazines, and more.  In this matter of life and death, the Court should ensure its precedent fully comports with the balance the Supreme Court struck in *Heller*, *McDonald*, and *Bruen*.

## CONCLUSION

The petition for panel rehearing and rehearing en banc should be granted.

Respectfully submitted,

September 20, 2023

/s/ Neal Kumar Katyal

ANNE E. LOPEZ
   *Attorney General of the State of Hawaiʻi*
KALIKOʻONĀLANI D. FERNANDES
   *Solicitor General*
NICHOLAS M. MCLEAN
   *First Deputy Solicitor General*
STATE OF HAWAIʻI
DEPARTMENT OF THE ATTORNEY GENERAL
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

NEAL KUMAR KATYAL
REEDY C. SWANSON
DANA A. RAPHAEL
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
neal.katyal@hoganlovells.com

*Counsel for Defendants-Appellees Anne E. Lopez and Darryl Ng*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify the following:

1. This petition complies with the type-volume limitation of Fed. R. App. P. 35(b)(2), Fed. R. App. P. 40(b)(1), and Circuit Rule 35-4 and 40-1 because it contains 4,193 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2. This petition complies with the format, typeface, and type style requirements of Fed. R. App. P. 32(a)(4)-(6).

/s/ Neal Kumar Katyal
Neal Kumar Katyal

**CERTIFICATE OF SERVICE**

I certify that on September 20, 2023, I filed the foregoing Petition with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system

/s/ Neal Kumar Katyal
Neal Kumar Katyal