No. 20-15948

# In the United States Court of Appeals
## for the Ninth Circuit

---

ANDREW TETER AND JAMES GRELL

*Plaintiffs-Appellants,*

v.

ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS THE
ATTORNEY GENERAL OF THE STATE OF HAWAII AND DARRYL
NG, IN HIS OFFICIAL CAPACITY AS THE STATE SHERIFF DIVISION
ADMINISTRATOR

*Defendants-Appellees.*

---

**Appeal from the United States District Court for the District of Hawaii**
**United States District Court Judge Alan C. Kay**
**Civ. No. 19-cv-00183-ACK-WRP**

---

**APPELLANTS' RESPONSE TO DEFENDANTS' PETITION FOR
REHEARING AND REHEARING EN BANC**

---

ALAN ALEXANDER BECK
Attorney at Law
2692 Harcourt Drive
San Diego, California 92123
Telephone: (619) 905-9105
alan.alexander.beck@gmail.com

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. Box 428
Olive Branch, MS 38654
Telephone: (601) 852-3440
stephen@sdslaw.us

*Attorneys for Appellants, Andrew Teter and James Grell*

**TABLE OF CONTENTS**

Table of Authorities……………………………...………………………………….iii

Introduction…………………………………………………………………...…..1

Background……………………………………………………...…………..3

Argument……………………………………………………………………7

I.      The Panel Opinion Does Not Conflict With Any Appellate Precedent……….7

II.      The Panel Opinion Faithfully Applied *Bruen*…………………………………9

Conclusion…………………………………………………………………17

Certificate of Compliance……………………………...………………………18

Certificate of Service……………………………….………………………………19

# TABLE OF AUTHORITIES

## Cases

*Baird v. Bonta*, 2023 U.S. App. LEXIS 23760 (9th Cir. Sep. 7, 2023) ............................ 10

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) ..................................................... 10

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .......................................passim

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004) ................................. 8

*Ernest Bock, LLC v. Steelman*, 76 F.4th 827 (9th Cir. 2023) ................................. 8

*Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581 (1993)............................. 8

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111 (2022) ................................passim

*United States v. Alaniz*, 69 F.4th 1124 (9th Cir. 2023)..............................................1, 7, 8, 9

*United States v. Pedregon*, 520 F.App'x 605 (9th Cir. 2013)....................................... 8

*United States v. Pinjuv*, 218 F.3d 1125 (9th Cir. 2000) .......................................... 8

*United States v. Stevens*, 559 U.S. 460 (2010) ...................................................... 11

## Statutes

Hawaii Revised Statute §134-53(a) ...............................................................passim

## Other Authorities

Black's Law Dictionary 1102 (8th ed. 2004) ...................................................... 8

U.S. Const. amend. II.............................................................................. 4

## Rules

9th Cir. R. 35-1...................................................................................... 6

U.S.S.G. §2D1.1(b)(1) ............................................................................ 7

**Introduction**

There is no reason for this Court to reconsider the panel's thorough, well-reasoned, and eminently correct decision. The opinion does not conflict with any decision of this Court or a sister circuit. It faithfully applied Supreme Court precedent. And far from resolving a question of exceptional and far-reaching importance, the opinion invalidated an extreme outlier law. This case does not come close to justifying rehearing en banc.

Hawaii does not claim that the panel opinion decision creates a circuit split. It instead claims that the panel opinion conflicts with this Court's decision in *United States v. Alaniz*, 69 F.4th 1124 (9th Cir. 2023), because it purportedly "held that anything capable of being used as a weapon is 'presumptively' protected under the Second Amendment" at *Bruen*'s threshold textual step. Pet.1; *see N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111, 2126 (2022) ("[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."). But even accepting that characterization of the panel opinion, *Alaniz* did not hold otherwise. *Alaniz* stated explicitly that it was *not "deciding" anything* about *Bruen*'s threshold textual inquiry; the court "assume[d], without deciding, that step one of the *Bruen* test [was] met" there. *Alaniz*, 69 F.4th at 1129. Consistent with that approach, *Alaniz* contains exactly one sentence describing *Bruen*'s "threshold inquiry," *see id.*, only one clause of which Hawaii claims is inconsistent with the panel opinion. A single

1

clause in a single sentence of dicta in a decision about an entirely different issue does not call for rehearing en banc.

Hawaii's claim of a conflict with *Bruen* is equally meritless. While Hawaii faults the panel opinion for holding the state to its burden of proving that the arms it seeks to ban are not "in common use," *Bruen* was emphatic: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 142 S.Ct. at 2130. And nothing in the Second Amendment's plain text — "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed"—says anything about common use. To be sure, whether arms are in common use for lawful purposes like self-defense matters to the *historical tradition* inquiry, which looks to "whether modern and historical regulations impose a comparable burden on the right of armed self-defense." *Id.* at 2133. But considerations that find no purchase in the plain text are not part of the plain text inquiry. That is precisely why the Supreme Court has instructed *twice* that whether a class of arms is "'in common use'" (or instead is "'highly unusual in society at large'") is part of the "*historical tradition*" inquiry. *Bruen*, 142 S.Ct. at 2143 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008)). The panel opinion correctly heeded the Court's unambiguous teachings.

Finally, Hawaii's assertion that the panel opinion somehow "erased self-defense" from Second Amendment analysis is disingenuous. The panel concluded that butterfly

knives are "in common use" because (among other things) "Hawaii's own witness conceded that butterfly knives may be used for self-defense." Op.22. And the panel opinion went on to emphasize that "whether modern and historical regulations impose a comparable burden on the right of armed self-defense" is a "*central* consideration[]" in the historical tradition inquiry. Op.23. Far from erasing self-defense from the analysis, the panel opinion situated it exactly where *Bruen* instructs that it belongs. It just correctly recognized that Hawaii failed to meet its burden of proving that butterfly knives are not in common use for self-defense. That failure of proof is hardly grounds for this Court to take the extraordinary step of granting rehearing en banc.

## Background

"The butterfly knife is simply a pocketknife with an extra rotating handle." Op.21. Butterfly knifes are thus unsurprisingly lawful in the vast majority of the country. But Hawaii Revised Statute §134-53(a) makes it a crime—with "no exceptions"—to "possess a butterfly knife." Op.4. The question before the panel was whether that lone-of-its-kind law violates "the Second Amendment rights" of "law-abiding Hawaii residents who wish to purchase butterfly knives for self-defense." Op.4, 5.

After quickly dispatching Hawaii's argument that law-abiding citizens lack standing to challenge a law that prohibits them from purchasing something they want "for self-defense" (and that "'forced [them] to dispose of' their [arms]"), Op.6-13, as

3

well as Hawaii's "request for a remand," Op.14, the panel turned to the merits. Beginning with *Bruen*, the panel explained that "the first question in *Bruen* was 'whether the plain text of the Second Amendment protects [the plaintiffs'] proposed course of conduct—carrying handguns publicly for self-defense.'" Op.17 (alteration in original) (quoting *Bruen*, 142 S.Ct. at 2134). "In answering [that question], *Bruen* analyzed only the 'Second Amendment's text,' applying ordinary interpretive principles." Op.17. The panel thus followed suit, "first consider[ing] whether the possession of butterfly knives is protected by the plain text of the Second Amendment." Op.18.

Because the Second Amendment's plain text covers "the right of the people to keep and bear arms," U.S. Const. amend. II, and because one cannot "keep" or "bear" something one may not possess, the plain-text question here was simply whether butterfly knives "fit the general definition of 'arms.'" Op.19. *Heller* itself supplied that definition: As used in the Second Amendment, the term "arms" means "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another," and thus includes not only "armour of defence," but "[w]eapons of offence" as well. *Heller*, 554 U.S. at 581; Op.18-19. That definition clearly "includes bladed weapons and, by necessity, butterfly knives." Op.19. Thus, "the Constitution 'presumptively guarantees' keeping and bearing such instruments 'for self-defense.'" Op.19-20 (quoting *Bruen*, 142 S.Ct. at 2135).

4

After reaching that conclusion, the panel "reject[ed] Hawaii's argument that the purported 'dangerous and unusual' nature of butterfly knives means that they are not 'arms' as that term is used in the Second Amendment." Op.20. As the panel explained, "*Heller* itself stated that the relevance of a weapon's dangerous and unusual character lies in the 'historical tradition of prohibiting the carrying of dangerous and unusual weapons.'" Op.20-21 (quoting *Heller*, 554 U.S. at 627). "It did not say that dangerous and unusual weapons are not *arms*. Thus, whether butterfly knives are 'dangerous and unusual' is a contention as to which Hawaii bears the burden of proof in the second prong of the *Bruen* analysis." Op.21. "But Hawaii failed to present evidence sufficient to create a genuine issue of material fact as to whether butterfly knives are dangerous and unusual." Op.21.

Finally, the panel held that Hawaii failed to "prove that section 134-53(a) is consistent with this Nation's historical tradition of regulating weapons." Op.22; *see* Op.22-31. Section 134-53(a) "purports to 'address[] a general societal problem' of easily concealable, foldable knives being used in crimes." Op.30. As the court noted, that is "a problem that 'has persisted since the 18th century,'" which made the historical tradition analysis "'straightforward.'" Op.29-30 (quoting *Bruen*, 142 S.Ct. at 2131). *Bruen* teaches that "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation

is inconsistent with the Second Amendment." Op.29 (quoting *Bruen*, 142 S.Ct. at 2131).

"But Hawaii cite[d] no analogues in which Congress or any state legislature imposed an outright ban on the possession of pocketknives to remedy this problem near 1791 or 1868." Op.30-31. And although Hawaii cited various nineteenth-century concealed carry laws, laws that "regulated only the[] carry" of arms are not "proper historical analogues" to a law like §134-53(a) that "categorically ban[s] the possession of any type of [arms]" for a simple reason: "[T]hey regulate different conduct," Op.24, and thus do not "impose a comparable burden on the right of armed self-defense," *Bruen*, 142 S.Ct. at 2133.

<u>Argument</u>

### I. The Panel Opinion Does Not Conflict With Any Appellate Precedent.

1. Hawaii does not and cannot claim that the panel opinion "conflicts with an existing opinion by another court of appeals," let alone does so "directly." 9th Cir. R. 35-1. That is because no other court of appeals has decided a case involving a ban on *any* class of arms, let alone one involving a ban on a type of knife or other non-firearm or non–firearm component, since the Supreme Court decided *Bruen*. Hawaii thus does not cite a single appellate decision with which it claims the panel opinion conflicts. Indeed, it does not even cite a single district court decision involving knives or bladed instruments. Simply put, there is no circuit conflict to resolve.

6

2. Hawaii's claim of a conflict with this Court's decision in *Alaniz* fares no better. The issue in *Alaniz* was whether U.S.S.G. §2D1.1(b)(1), which requires "an enhancement of the Guidelines calculation if a defendant possessed a dangerous weapon at the time of a felony drug offense, is constitutional under the Second Amendment following [*Bruen*]." 69 F.4th at 1126. In answering that question, the Court "assume[d], without deciding, that step one of the *Bruen* test"—i.e., whether "the Second Amendment's plain text covers an individual's conduct," *Bruen*, 142 S.Ct. at 2129-30—was "met." *Alaniz*, 69 F.4th at 1129. *Alaniz*, in other words, assumed that "lawfully possessing firearms" is conduct covered by the Second Amendment's plain text and is therefore presumptively protected. *Id.* The Court then moved to the historical tradition inquiry and held that §2D1.1(b)(1) "comports with a history and tradition of regulating the possession of firearms during the commission of felonies involving a risk of violence." *Id.*

None of that has anything to do with the question the panel opinion addressed, which is whether a Hawaii law making it a crime even just to "possess a butterfly knife" violates the Second Amendment. Op.4, 5. Nor does anything about how *Alaniz* decided the question before it conflict with the panel opinion here. To be sure, *Alaniz* contains one clause of dicta in one sentence of dicta that is in tension with the panel opinion's conclusion that "the plain text of the Second Amendment" covers keeping and bearing all instruments that "facially constitute 'arms' within the meaning of the

Second Amendment." Op.19. *See* 69 F.4th at 1129 (emphasis added) ("In alignment with *Heller*, [*Bruen*] requires a textual analysis, determining whether the challenger is part of the people whom the Second Amendment protects, whether the weapon at issue is in common use today for self-defense, and whether the proposed course of conduct falls within the Second Amendment." (cleaned up)). But *Alaniz* did not *hold* otherwise. To the contrary, *Alaniz* explicitly "assume[d], *without deciding*, that step one of the *Bruen* test [was] met" there. 69 F.4th at 1129 (emphasis added).

*Alaniz*'s drive-by summation of its understanding of *Bruen*'s plain text inquiry is thus quintessential dicta—"discussions that are 'unnecessary to the Court's holdings.'" *United States v. Pedregon*, 520 F.App'x 605, 608 (9th Cir. 2013) (quoting *Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581, 592 n.5 (1993)); *see also* Black's Law Dictionary 1102 (8th ed. 2004) ("A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential."). And because this Court is "not bound by dicta in decisions from our court or any other circuit," *United States v. Pinjuv*, 218 F.3d 1125, 1129 (9th Cir. 2000), that dicta cannot create any intra-circuit conflict. Indeed, judges on this Court have an "obligation … to reconcile [precedents], if possible, so as to avoid an intracircuit conflict necessitating en banc consideration." *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 840 n.17 (9th Cir. 2023) (ellipsis added) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004)). There is no reason to accept Hawaii's invitation to

8

assume a conflict that does not actually exist—especially since *Alaniz*'s drive-by dicta is flatly inconsistent with *Bruen*, as explained below.

## II.   The Panel Opinion Faithfully Applied *Bruen*.

1. Far from conflicting with the Supreme Court's decision in *Bruen*, the panel opinion faithfully applied it.  As *Bruen* explained, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.'"  142 S.Ct. at 2126.  *Bruen* later "reiterate[d] that" point: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."  *Id.* at 2129-30.  The Court went on to use the phrase "plain text" twice more to describe the threshold inquiry, i.e., the inquiry into whether conduct is presumptively protected.  *Id.* at 2134, 2135.  And the Court dispensed with the application of that threshold inquiry in just a few short paragraphs, which principally looked to "the Second Amendment's text" and the definitions that *Heller* supplied for its key words ("keep," "bear," "arms").  *Id.* at 2134-35.  Indeed, the Court's conclusion on the threshold textual inquiry boiled down to a single sentence: "Nothing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms."  *Id.* at 2134.

The plain text inquiry is equally clear here.  The Supreme Court has already supplied the definition of arms: "[w]eapons of offence, or armour of defence" or "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast

9

at or strike another." *Heller*, 554 U.S. at 581. Accordingly, so long as something fits within that definition, the Constitution "presumptively guarantees" individuals the right to keep and bear it. *Bruen*, 142 S.Ct. at 2132. Indeed, that is what it means to say that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms." *Id.* (quoting *Heller*, 554 U.S. at 582); *accord Caetano v. Massachusetts*, 577 U.S. 411, 411 (2016) (per curiam); *and Baird v. Bonta*, 2023 U.S. App. LEXIS 23760, at *13 (9th Cir. Sep. 7, 2023) ("… if the Second Amendment's plain text covers the regulated conduct, the regulation will stand only if the government can 'affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms' in the United States.").

To be sure, that is just a presumption, which the government can rebut by showing that a prohibition on keeping and/or bearing a particular type of arm "is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2135. But if the government succeeds in doing so, that does not make the instrument any less of an "arm"; it just means it is the type of arm may be prohibited consistent with this Nation's historical tradition.

None of that is particularly novel. Just as the plain text of the Second does not distinguish among different types of "Arms," the plain text of the First Amendment does not distinguish among different types of "speech." *See Bruen*, 142 S.Ct. at 2130 (drawing this analogy). That is why, in the speech context, "the government must

10

generally point to *historical* evidence about the reach of the First Amendment's protections" "to carry [its] burden" to show that "expressive conduct falls outside of the category of *protected* speech." *Bruen*, 142 S.Ct. at 2130 (emphasis added); *see id.* (noting that *United States v. Stevens*, 559 U.S. 460 (2010), "plac[ed] the burden on the government to show that a type of speech belongs to a 'historic and traditional categor[y]' of constitutionally unprotected speech"). The government bears that burden precisely because speech that falls outside "the category of protected speech" is still speech within the plain meaning of that term. By the same token, arms that fall outside the category of *protected* arms are still arms within the plain meaning of that term. Thus, if the government wants to prohibit a class of arms, it must meet its burden of proving that they belong to a historic and traditional category of *unprotected* arms.

2. As the panel opinion correctly concluded, all of that makes this an easy case. Hawaii does not dispute that butterfly knives fit the Second Amendment's definition of "arms." Nor do they dispute that the conduct in which Plaintiffs wish to engage— keeping and bearing a type of arm—is conduct covered by the Second Amendment's plain text and presumptively protected. That is the end of the threshold inquiry, for "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S.Ct. at 2126.

Hawaii therefore bore the burden to prove that §134-53(a), which imposes an outright ban on possessing a class of arms, "is consistent with the Nation's historical

11

tradition." *Id.* at 2130. *Bruen* instructs how a state may make that showing in the specific context of laws like §134-53(a) that ban the possession of arms outright. The key question is whether the arms a state wants to ban are "in common use today" for lawful purposes like self-defense, or rather "'are highly unusual in society at large.'" *Id.* at 2143 (quoting *Heller*, 554 U.S. at 627). Hawaii's efforts to carry that burden came up far short. As to dangerousness, their theory that "the butterfly knife has uniquely dangerous propensities" because it is easy to conceal not only is "not support[ed]" by "[t]he record," Op.21, but borders on frivolous. After all, handguns are "designed to be 'easy to conceal,'" yet the Supreme Court has deemed them "the quintessential self-defense weapon." Pet.9, 15. As to common use, not only did "Hawaii's own witness concede[]" the obvious reality "that butterfly knives may be used for self-defense," Op.22, but Hawaii put on zero evidence to contradict the equally obvious reality that butterfly knives are the furthest thing from "highly unusual in society at large," *Bruen*, 142 S.Ct. at 2143 (quoting *Heller*, 554 U.S. at 627).

Unable to carry its burden, Hawaii tries to eliminate it, insisting that common use belongs in the threshold textual inquiry. But just as "[n]othing in the Second Amendment's text draws a home/public distinction," *id.* at 2134, nor does anything in its text draw a common/uncommon distinction. As *Bruen* explained, the rule that "the Second Amendment protects the possession and use of weapons that are "'in common use at the time'" derives from "the *historical tradition* of prohibiting the carrying of

12

'dangerous and unusual weapons.'" *Bruen*, 142 S.Ct. at 2128 (quoting *Heller*, 554 U.S. at 627; emphasis added). Indeed, *Heller* itself made that clear. While Hawaii notes that *Heller* "stressed that the Second Amendment 'is not a right to keep and carry any weapon whatsoever,'" Pet.9 (quoting *Heller*, 554 U.S. at 626), it misses the critical point: That statement came *in the historical tradition analysis*, nearly 45 pages after the Court explained that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms." *Heller*, 554 U.S. at 582.

Thus, while handguns are *ultimately* "protected" "not merely because they are 'bearable arms,'" but because they are "'overwhelmingly chosen by American society'" for lawful purposes like self-defense, Pet.9 (quoting *Heller*, 554 U.S. at 628), they are *presumptively* protected simply and solely because they are "bearable arms." So too with butterfly knives: Because they fit comfortably within the Second Amendment's definition of "arms," Hawaii may justify its anomalous ban only by proving that they are *not* "in common use" for lawful purposes like self-defense.

None of that means, as Hawaii insists, that the panel opinion somehow "erased self-defense" from the analysis. Pet.6. Self-defense can be a part of the inquiry into whether an arm is "typically possessed by law-abiding citizens for *lawful* purposes[,]" *Heller*, 554 U.S. at 628, but "lawful purposes" is not limited *solely* to self-defense. And *Bruen* makes clear that it is *the state*'s burden to prove that a class of arms does not satisfy

13

that historical test. Hawaii's failure to do so does not begin to justify its plea for en banc review.

3. Hawaii's failure to prove that butterfly knives are "dangerous and unusual" can and should end the historical tradition inquiry. But the panel's conclusion that Hawaii's purported historical analogues do not justify its novel ban was also eminently correct.

As *Bruen* explained, in determining with a state has met its historical tradition burden, courts must focus on "how and why" historic regulations "burden[ed] a law-abiding citizen's right to armed self-defense," and then determine whether the how and why of the challenged law are "relevantly similar." *Bruen*, 142 S.Ct. at 2133. And how close of a fit is needed for historic laws to justify a modern law depends on whether the "challenged regulation addresses a general societal problem that has persisted since the 18th century," *id.* at 2131, or instead "implicat[es] unprecedented societal concerns or dramatic technological changes," *id.* at 2132. In the former case, only "a distinctly similar historical regulation addressing that problem" will suffice. *Id.* at 2131. And a past law is not "distinctly similar" to a modern law, *Bruen* explained, if it "addressed the societal problem … through materially different means," such as by regulating different conduct. *Id.*

Again, that makes the historical traditional analysis straightforward here. As the panel explained, "the problem of people using easily concealable, foldable knives in

14

violent crimes predates 1999 by hundreds of years." Op.29. That means only "a distinctly similar historical regulation addressing that problem" could suffice. Op.29 (quoting *Bruen*, 142 S.Ct. at 2131). Yet no historical law addressed that problem through similar means, as *none* prohibited the possession of *any* class of arms outright, let alone arms that were not "dangerous and unusual" at the time. *See* Op.23-28.

To be sure, historical laws regulated these and other arms in *other* ways, such as by prohibiting the concealed carry of certain arms. But a concealed carry law deprives citizens of (at most) one-half of one-half of the Second Amendment "right to armed self-defense" with respect to the covered arms; the people retain the right to openly carry those arms, and they of course remain free to keep them as well. A law that regulates by banning the possession of a class of arms outright, by contrast, deprives citizens of the entire "right to armed self-defense" with respect to the banned arms; keeping and bearing (both concealed and open) are now off the table. Concealed carry laws thus do not begin to justify possession bans. Indeed, *Bruen* deemed concealed carry laws insufficiently analogous to support *carry* bans; *a fortiori* they are insufficient to justify possession bans. *See Bruen*, 142 S.Ct. at 2143. Hawaii's insistent otherwise defies not just *Bruen*, but *Heller*. After all, if the mere existence of historical laws regulating concealed carry, or gunpowder storage, or other facets of keeping and bearing arms sufficed to justify a modern law banning a class of arms, then *Heller* should have come out the other way.

15

In sum, while Hawaii is certainly correct that "prohibitions on carrying weapons are relevant when analyzing bans," Pet.12, that unremarkable principle simply does not get it anywhere in this case. That is because the "historical tradition" in this country is one of "prohibit[ing] the carrying of '*dangerous and unusual* weapons.'" *Bruen*, 142 S.Ct. at 2143 (quoting *Heller*, 554 U.S. at 627; emphasis added). If an arm is not "dangerous and unusual," then that tradition does not and cannot justify a prohibition on carrying it, let alone a prohibition on even possessing it. Simply put, the historical tradition of bans on dangerous and unusual weapons is relevant if and only if the state meets its burden of proving that the weapons it has banned are dangerous and unusual. Once again, Hawaii's failure to meet that burden does not begin to justify its plea for en banc review.[1]

Hawaii Revised Statute §134-53(a) is an extreme outlier. Indeed, 16 states filed an amicus brief that parrots Hawaii's arguments, yet notably mentions *zero* similar laws.

---

[1] Nor would it justify the extraordinary step of "vacat[ing]" the panel opinion "and remand[ing] for the District Court to analyze the challenged law under *Bruen*'s framework in the first instance." Pet.17. While it is true the trial court evaluated Plaintiffs' claims under the pre-*Bruen* two-step test, "[s]tep one [was] broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, at 2117-18. Hawaii already had an opportunity to present all the evidence it claims it needs a remand for. Its failure to do so is not grounds for a remand. Moreover, Hawaii had multiple opportunities to present all the evidence it could muster after *Bruen*, filing a 9,553-word supplemental brief to which it attached a 227-page Addendum. Hawaii's failure to muster sufficient support to justify §134-53(a) is no reason for a remand, let alone for rehearing.

16

*See* Dkt.139.  The panel opinion thus does not presage any falling sky.  It simply does what the Supreme Court itself has repeatedly done:  hold an extreme outlier restriction on the right to keep and bear arms inconsistent with this Nation's historical tradition.  Given that reality, there is no reason either to grant Hawaii's petition or to "hold the petition … pending the en banc court's resolution of *Duncan*," as Hawaii now "requests."  Dkt.138-1.  This case has been pending—and Hawaiians' rights have been infringed—for long enough.

## Conclusion

For the foregoing reasons, the Court should deny the petition.

Respectfully submitted,

*s/ Alan Alexander Beck*
ALAN ALEXANDER BECK
Attorney at Law
2692 Harcourt Drive
San Diego, California 92123
Telephone: (619) 905-9105
Email: alan.alexander.beck@gmail.com

*s/ Stephen D. Stamboulieh*
STEPHEN D. STAMBOULIEH
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
Telephone: (601) 852-3440
Email: stephen@sdslaw.us

17

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 35(b)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 4,198 words and complies with the word limit of Cir. R. 35-1 and 40-1.

2.      This brief complies with the typeface and type size requirements of Fed. R. App. P. 32(a)(4) through (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Garamond.

Dated: October 13, 2023.

*/s/ Alan Alexander Beck*
Alan Alexander Beck

18

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 13, 2023, I filed the foregoing Appellants'
Response to Appellees' Petition for Rehearing and Rehearing En Banc with the Clerk
of the Court for the United States Court of Appeals for the Ninth Circuit by using the
appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and
that service will be accomplished by the appellate CM/ECF system.

<u>*/s/ Alan Alexander Beck*</u>
Alan Alexander Beck