No. 20-15948

# In the United States Court of Appeals
## for the Ninth Circuit

ANDREW TETER; JAMES GRELL,

*Plaintiffs-Appellants*,

v.

ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII, MARK HANOHANO, IN HIS OFFICIAL CAPACITY AS THE STATE SHERIFF DIVISION ADMINISTRATOR,

*Defendants-Appellees*.

**Appeal from the United States District Court
For the District of Hawaii
Civ. No. 19-cv-00183-ACK-WRP
United States District Court Judge Alan C. Kay**

**BRIEF OF *AMICUS CURIAE* THE SECOND AMENDMENT FOUNDATION IN SUPPORT OF APPELLANTS AND REVERSAL**

EDWARD ANDREW PALTZIK
 COUNSEL OF RECORD
SERGE KRIMNUS
MEREDITH LLOYD
BOCHNER PLLC
1040 Avenue of the Americas, 15th Floor
New York, New York 10018
(516) 526-0341
edward@bochner.law

*Counsel for Amicus Curiae*

# CORPORATE DISCLOSURE STATEMENT

The Second Amendment Foundation (SAF) has no parent corporation. It has no stock, hence, no publicly held corporation owns 10% or more of its stock.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................... i

TABLE OF AUTHORITIES ................................................................................. iii

IDENTITY AND INTEREST OF *AMICUS CURIAE* ............................................ 1

SUMMARY OF ARGUMENT ............................................................................... 1

ARGUMENT ......................................................................................................... 3

    I.    The Second Amendment Presumptively Applies to All Bearable Arms ..... 3

    II.   Butterfly Knives are in Common Use ........................................................ 5

        A. Definition, Origin and Early History ....................................................... 6

        B. Butterfly Knives in the United States ..................................................... 7

        C. Statistics ................................................................................................... 8

CONCLUSION ...................................................................................................... 9

CERTIFICATE OF COMPLIANCE ................................................................... 11

CERTIFICATE OF SERVICE ............................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ........................................................................... 2, 3, 4, 5, 6

*Kanter v. Barr*,
    919 F.3d 437 (7th Cir. 2019) ........................................................................... 4

*Konigsberg v. State Bar of California*,
    366 U.S. 36 (1961) ........................................................................................... 5

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
    597 U.S. 1 (2022) .............................................................................. 1, 2, 4, 5, 6

*United States v. Greeno*,
    679 F.3d 510 (6th Cir. 2012) ........................................................................... 5

*United States v. Miller*,
    307 U.S. 174 (1939) ..................................................................................... 5, 6

**Constitutional Provisions and Statutes**

U.S. CONST. amend. II ............................................................................................ 3

H.R.S. § 134-53(a) ............................................................................................. 1, 6

**Other Authorities**

*Balisongs in the Movies*, BALISONGCOLLECTOR.COM,
    http://www.balisongcollector.com/movies.html .................................................. 8

BATANGAS HISTORY, HOW AMERICAN GIS HELPED REVIVE BATANGAS' BALISONG
    INDUSTRY (Batangas History, Culture & Folklore 2020) ..................................... 7

Paul A. Clark, *Criminal Use of Switchblades: Will the Recent Trend Towards
    Legalization Lead to Bloodshed*, 13 CONN. PUB. INT. L.J. 219 (2014) ............. 8, 9

*Crime in the United States 2010, Table 19*, FBI, http://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2010/crime-in-the-u.s.-2010/tables/10tbl19.xls ........9

*Drunken Master II* (Golden Harvest 1994) ...........................................................8

*Enter The Dragon* (Warner Brothers 1973) ..........................................................8

JEFF IMADA, THE BALISONG MANUAL
  (Know How Publishing Company 1984) .................................................6, 7, 8

*John Wick* (Summit Entertainment 2014) .............................................................8

Louis Lim, *Filipino Knife Fighting In A Nutshell*, STICK FIGHTING SPORT,
  Mar. 18, 2019 .................................................................................................7

Mark W. Smith, *What Part of "In Common Use" Don't You Understand?: How Courts Have Defied* Heller *in Arms-Ban Cases-Again*, 2023 HARV. J. L. & PUB. POL'Y PER CURIAM 41 (2023), ...............................................................4, 5, 6

*Police Story* (Golden Harvest 1985) .....................................................................8

SQUID INDUSTRIES BLOG, https://www.squidindustries.co/blogs/squid-industries-blog/tagged/west-coast-flipping-championship ......................................................8

*The Cultural Symbolism of Knives in the Philippines*, PREFERRED KNIVES, Sept. 20, 2023 ..................................................................................................................7

*The Expendables* (Lionsgate 2010) .......................................................................8

*The Walking Dead* (AMC television broadcast 2010-2022) ....................................8

*The Young Master* (Golden Harvest 1980) ...........................................................8

*Way of the Dragon* (Golden Harvest 1972) ..........................................................8

## IDENTITY AND INTEREST OF AMICUS CURIAE[1]

**The Second Amendment Foundation** ("SAF"), is a non-profit membership organization founded in 1974 with over 720,000 members and supporters in every State of the Union. Its purposes include education, research, publishing, and legal action focusing on the constitutional right to keep and bear arms. *Amicus Curiae* has an intense interest in this case because it has many members who reside in the state of Hawaii who are prevented from exercising their right to keep and bear arms under the statute at issue, H.R.S. § 134-53(a), contrary to "the Second Amendment's text, as informed by history." *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 2 (2022).

## SUMMARY OF ARGUMENT

Constitutional analysis of the butterfly knife ban codified in H.R.S. § 134-53(a)—as with analysis of any weapons ban—must begin by answering a simple question: Are butterfly knives "arms" protected by the Second Amendment? The answer is a resounding yes. Appellees seek to require that Appellants (or for that matter any plaintiff challenging an arms regulation) make a "threshold" showing that "the weapon at issue is 'in common use today for self-defense.'" (Reh'g Pet. at 1). This is not only an improper attempt to shift to Appellants the burden of

---

[1] All parties received timely notice and consented to the filing of this brief. No counsel for any party authored the brief in whole or in part. Only *amicus curiae* funded its preparation and submission.

1

demonstrating the unconstitutional nature of the challenged law but injects additional requirements that *Bruen* does not demand. In short, Appellees are attempting to rewrite the test applied to Second Amendment challenges to narrow the scope of its protection.

Considering the plain text of the Second Amendment, a law that seeks to regulate "arms" is presumptively unconstitutional and it is the government's burden to demonstrate that (1) there is a historical tradition of regulation of the arms at issue that carves out an exemption from the protections of the Second Amendment; and (2) that the modern regulation fits within that tradition. *See Bruen,* 579 U.S. at 28-29. It is thus Hawaii's burden to demonstrate that this Nation's history and traditions would allow butterfly knives to be regulated in the manner the law at issue does (i.e., a complete ban). That is an impossible task in view of the longstanding history of ownership and use of butterfly knives by the American public. And if an arm is in common use, it cannot be banned. *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008).

Thus, this Court should reject Appellees' improper attempt to inject the "common use" analysis as part of the threshold textual inquiry, and confirm that any such analysis belongs in the historical inquiry to be made—where the government bears the burden—as *Bruen* requires.

# ARGUMENT

## I. The Second Amendment Presumptively Applies to All Bearable Arms

The text of the Second Amendment unambiguously requires that "the right of the people to keep and bear *Arms*, shall not be infringed." U.S. CONST. amend. II (emphasis added). The Supreme Court was clear in *Heller* that this means "the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms." *Heller*, 554 U.S. at 582.

*Heller* expounded on the definition of "arms" in the context of the Second Amendment, identifying historical definitions and connecting 18th-century definitions of "arms" to the meaning of "arms" in the modern day. *Id*. at 581 (concluding that, based on a comparison of dictionary definitions, "[t]he 18th-century meaning is no different from the meaning today"). Analyzing the term "arms" further, the Court observed that the term includes weapons other than firearms, citing examples of historical usage of the term. *See id.* ("Servants and labourers shall use bows and arrows on Sundays, &c. and not bear *other arms*.") (emphasis added) (internal quotation marks omitted). Thus, the historic and modern definitions of "arms" are synonymous, and both are understood to include a variety of weapons, which include butterfly knives.

Having established that butterfly knives are "arms" within the plain text of the Second Amendment, it is the burden *of the government* to affirmatively demonstrate

that they may still be banned consistent with a valid historical tradition of firearm regulation. The Supreme Court has already undertaken the relevant historical work, having recognized in *Heller* that the type of arms that are protected is limited by "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" 554 U.S. at 527. Because only dangerous and unusual weapons can be banned, it follows that arms "in common use at the time" are protected. *Id.* at 627; *Bruen*, 597 U.S. at 21; *see also* Mark W. Smith, *What Part of "In Common Use" Don't You Understand?: How Courts Have Defied Heller in Arms-Ban Cases Again*, 2023 HARV. J. L. & PUB. POL'Y PER CURIAM 41 (2023) ("Smith, *How Courts Have Defied Heller*"). Therefore, unless the government can demonstrate that butterfly knives are "dangerous and unusual," including by proving they are not in common use, the government will not be able to carry its burden under *Bruen*. Appellees incorrectly attempt to place the burden on individuals to show that an arm is in common use for self-defense.

Put simply, neither *Heller* nor *Bruen* permits this sort of burden shifting. In fact, *Bruen* requires that *the government, not the challenging party,* justify its regulation by "establish[ing] that the challenged law regulates activity falling outside the scope of the right as originally understood." *Bruen*, 597 U.S. at 18 (citing *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019)). As the Supreme Court observed in *Heller*, the scope of the Second Amendment was originally understood to stem from

"[t]he traditional militia … formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense." *Heller*, 554 U.S. at 627 (citing *United States v. Miller,* 307 U.S. 174, 179 (1939)).

*Bruen* clearly requires that only when the "government can prove that the regulated conduct falls beyond the Amendment's original scope," the analysis stops and the "regulated activity is categorically unprotected." *Bruen*, 597 U.S. at 18 (citing *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012) (internal quotation marks omitted)). Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Id.* (citing *Konigsberg v. State Bar of California*, 366 U.S. 36, 50 (1961)).

In sum, the government bears the threshold burden of proving that arms are not in common use, rather than the burden falling on individuals to prove that they are in common use, and therefore are exempt from the *Bruen* framework.

## II.     Butterfly Knives are In Common Use

Hawaii's burden in this case, as established herein, is to show that butterfly knives are *not* in common use. That is an impossible task in view of the longstanding history of ownership and use of butterfly knives by the American public. Although it is not Appellants' burden to prove that the arms at issue are subject to the *Bruen* test, the statute here clearly restricts instruments that are in common use for self-defense purposes. *Bruen* confirms that "common use" is a rule derived from history.

*See* Smith, *How Courts Have Defied Heller*. The type of arms that are protected is limited by "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627 (citation omitted).

Because only dangerous and unusual weapons can be banned, it follows that arms "in common use at the time" are protected. *Id*. After all, an arm that is in common use cannot be both dangerous and unusual. This conclusion was supported by history as well, because normally "when called for [militia] service, [able-bodied] men were expected to appear bearing arms supplied by themselves and of the kind in common use at the time." *Id*. at 624 (brackets in original) (quoting *Miller*, 307 U.S. at 179).

### A. Definition, Origin, and Early History

As defined by Hawaii, butterfly knives are sharp instruments that have "a blade encased in a split handle that manually unfolds with hand or wrist action with the assistance of inertia, gravity, or both." H.R.S. § 134-53(a). When closed, the two handle sections fully encase the blade of the knife. JEFF IMADA, THE BALISONG MANUAL 9 (Know How Publishing Company 1984). The origins of the butterfly knife can be traced back to the Philippines, where it emerged as a practical tool and weapon among Filipino tribes in the Eighteenth Century. *Id*. Known locally as the "balisong" or "butterfly," these knives were used both as utilitarian tool and formidable weapon. *Id*.

During the colonial era, contact between traders and the Philippines encouraged more widespread use of butterfly knives. *Id*. Their compact size made them popular among sailors and other parties travelling the conflict-laden waters of Southeast Asia. Louis Lim, *Filipino Knife Fighting In A Nutshell*, STICK FIGHTING SPORT, Mar. 18, 2019. Originally used as a utility tool, the balisong evolved into a symbol of Filipino craftsmanship and ingenuity. *The Cultural Symbolism of Knives in the Philippines*, PREFERRED KNIVES, Sept. 20, 2023.

### B. Butterfly Knives in the United States

In World War II, American servicemen stationed in the Pacific region encountered butterfly knives and adopted them for various purposes, including self-defense and utility. BATANGAS HISTORY, HOW AMERICAN GIS HELPED REVIVE BATANGAS' BALISONG INDUSTRY (Batangas History, Culture & Folklore 2020). Upon their return from the War, servicemen introduced butterfly knives to their communities, and they quickly increased in popularity. *Id*. Indeed, knife instructors have published manuals that state that "the balisong was as common as baseball to American kids." IMADA, THE BALISONG MANUAL at 9. Although their popularity waned somewhat in the 1950s, butterfly knives made a resurgence into the

mainstream in the 1980s, propelled by the captivating portrayal in action movies[2] featuring icons including Bruce Lee[3] and Jackie Chan.[4] *Id*. at 10.

In more recent years, butterfly knives remained prominent in popular culture through literature and film. Writers and filmmakers have often portrayed the butterfly knife as a symbol of rebellion in their works (e.g., *The Expendables* (Lionsgate 2010), *John Wick* (Summit Entertainment 2014), and *The Walking Dead* (AMC television broadcast 2010-2022), solidifying its presence in the public consciousness. And, intricate knife-flipping techniques have become increasingly popular in recent years, as evidenced by the debut of the "West Coast Flipping Championship" in 2019, where competitors demonstrate their mastery of butterfly knife handling.[5]

**C. Statistics**

Despite their prevalence in pop culture and widespread use, butterfly knives have faced unwarranted scrutiny due to misconceptions about their use in criminal activity. *See* Paul A. Clark*, Criminal Use of Switchblades: Will the Recent Trend*

---

[2] For a representative list of films in which balisongs are used, *see Balisongs in the Movies*, BALISONGCOLLECTOR.COM, http://www.balisongcollector.com/movies.html (last visited March 27, 2024).
[3] *See Enter The Dragon* (Warner Brothers 1973), *Way of the Dragon* (Golden Harvest 1972).
[4] *See The Young Master* (Golden Harvest 1980), *Drunken Master II* (Golden Harvest 1994), *Police Story* (Golden Harvest 1985).
[5] SQUID INDUSTRIES BLOG, https://www.squidindustries.co/blogs/squid-industries-blog/tagged/west-coast-flipping-championship

*Towards Legalization Lead to Bloodshed,* 13 CONN. PUB. INT. L.J. 219, 222 (2014) (finding that the movement of expanding knife rights has no significant effect on crime). FBI statistics which detail weapons use in criminal activity rank knives and other cutting instruments (generally) in last place for robbery, even behind "other weapon." *Crime in the United States 2010, Table 19*, FBI, http://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2010/crime-in-the-u.s.-2010/tables/10tbl19.xls.

Similarly, in the category of aggravated assault, sharp objects are in last place for weapon type (47.9/100,000 people), behind firearms (51.8), personal weapons (69.0), and other weapons (83.3). *Id.* Perhaps unsurprisingly, the data overwhelmingly demonstrates that knives, including butterfly knives, are not the weapon of choice for criminals. Rather, these arms have significant utility and cultural impact, and are far more commonly used for lawful purposes than unlawful ones.

## CONCLUSION

This Court should hold that the government bears the initial burden of demonstrating that butterfly knives are wholly outside the protections afforded by the Second Amendment, and that, under this standard, Appellees have failed to make the requisite showing that these arms are not in common use. Butterfly knives have long been used by the American people for lawful purposes, and thus these weapons

are arms "in common use" within the scope of protection afforded by the Second Amendment.

For these reasons, this Court should reverse the decision of the District Court.

Dated: March 28, 2024

Respectfully Submitted,
s/ Edward Andrew Paltzik
EDWARD ANDREW PALTZIK
  *Counsel of Record*
SERGE KRIMNUS
MEREDITH LLOYD
Bochner PLLC
1040 Avenue of the Americas
15th Floor
New York, New York 10018
(516) 526-0341
edward@bochner.law

*Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Local Rule 29 because this brief contains 2,056 words, excluding the parts of this brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

                                                Respectfully Submitted,

                                                /s/ Edward Andrew Paltzik
                                                EDWARD ANDREW PALTZIK

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 28, 2024. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Respectfully Submitted,

/s/ Edward Andrew Paltzik
EDWARD ANDREW PALTZIK