No. 20-15948

# In the United States Court of Appeals for the Ninth Circuit

ANDREW TETER and JAMES GRELL

*Plaintiffs-Appellants*,

v.

ANNE E. LOPEZ, in her official capacity as the Attorney General of the State of Hawaiʻi, and DARRYL NG, in his official capacity as the State Sheriff Division Administrator,

*Defendants-Appellees*.

Appeal from a Judgment of United States District Court
For the District of Hawaiʻi
Civ. No. 19-cv-00183-ACK-WRP
United States District Court Judge Alan C. Kay

**Brief of the Office of the Public Defender as *Amicus Curiae* in Support of Plaintiffs-Appellants and Reversal of the Judgment Entered by the United States District Court**

BENJAMIN E. LOWENTHAL (HAW. BAR NO. 8645)
The Office of the Public Defender
1130 North Nimitz Highway, Suite A-254
Honolulu, Hawaiʻi 96817
Telephone: (808) 586-2080
Email: benjamin.e.lowenthal@hawaii.gov

*Counsel for Amicus Curiae*

## Table of Contents

1. Statement of Interest of *Amicus Curiae* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.1    The Office of the Public Defender . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

    1.2    The Second Amendment is the only viable constitutional check on State prosecutions for possessing weapons in Hawaiʻi . . . . . 1

2. HRS § 134-53(a) infringes on the Second Amendment rights of people keeping and carrying butterfly knives for self-defense . . . . . . . . . . . . .3

    2.1    HRS § 134-53(a) criminalizes conduct covered by the plain text of the Second Amendment and is presumptively unconstitutional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    2.2    The State failed to meet its burden to show that banning butterfly knives is part of the Nation's historic tradition of weapons regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

3. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# Table of Authorities

**Cases**

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) .................................. 5

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ........................ 3, 5, 6

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ............................. 3

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) . . .4, 5, 6, 7, 8, 9

*State v. Delgado*, 298 Or. 395, 692 P.2d 610 (Or. 1984) ........................ 8

*State v. Wilson*, 154 Hawai'i 8, 543 P.3d 440 (Haw. 2024) ..................... 2

*Teter v. Lopez*, 76 F.4th 938 (9th Cir. 2023) ................................ 8, 9

*United States v. Alaniz*, 69 F.4th 1124 (9th Cir. 2023) ...................... 4, 5

*United States v. Miller*, 307 U.S. 174 (1939) ................................ 6

**Constitution**

U.S. Const. Am. II ......................................................... 3, 4

**Statutes**

Hawaiʻi Revised Statutes § 134-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Hawaiʻi Revised Statutes § 134-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Hawaiʻi Revised Statutes § 134-9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Hawaiʻi Revised Statutes § 134-25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Hawaiʻi Revised Statutes § 134-51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Hawaiʻi Revised Statutes § 134-53 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Hawaiʻi Revised Statutes § 706-660 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Rules**

Federal Rules of Appellate Procedure Rule 29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Circuit Court Rule 29-2(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Brief of the Office of the Public Defender as *Amicus Curiae***

The Office of the Public Defender supports reversal of the judgment below. Prosecuting people who carry pocketknives for self-protection infringes on their constitutional rights. The State of Hawai'i should not be permitted to expose them to its criminal legal system.

**1.    Statement of Interest of *Amicus Curiae***

   **1.1    The Office of the Public Defender.**

The Office of the Public Defender is the largest criminal defense organization in Hawai'i. Public defenders represent indigent people facing criminal charges, involuntary commitment, and other forms of carceral control by the State in every courtroom—from the Hawai'i Supreme Court to traffic court— and in every county throughout the islands.

   **1.2    The Second Amendment is the only viable constitutional check on State prosecutions for possessing weapons in Hawai'i.**

Hawai'i strictly regulates weapons for personal use. Stringent licensing requirements dictate how, when, and who can acquire, transfer, and carry a firearm. Hawai'i Revised Statutes §§ 134-2, 134-4, and 134-9. The penalties for carrying a firearm without the required license are severe. For example, a person who carries their own firearm outside an "enclosed container" anywhere beyond the home,

business, or "sojourn" without a license may be committing a crime and is punishable for up to 10 years imprisonment. HRS §§ 134-25(a) and 706-660(1)(a).

Given the stringent licensing requirements and the severe penalties that come with firearms, less lethal weapons should be a viable alternative for those who want to arm themselves in self-defense. And yet, possessing some of these weapons—like daggers and brass knuckles—are still subject to criminal penalties. Anyone, "not authorized by law," who is carrying a "deadly or dangerous weapon" is guilty of a misdemeanor. HRS § 134-51.

Butterfly knives are banned altogether:

> Whoever knowingly manufactures, sells, transfers, possesses, or transports in the State any butterfly knife, being a knife having a blade encased in a split handle that manually unfolds with hand or wrist action with the assistance of inertia, gravity or both, shall be guilty of a misdemeanor.

HRS § 134-53(a). No exceptions exist for people keeping and carrying them in self-defense.

The Hawaiʻi Constitution offers no recourse. Although nearly identical to the text of the Second Amendment, "[t]here is no individual right to keep and bear arms under article I, section 17" of the Hawaiʻi Constitution. *State v. Wilson*, 154 Hawaiʻi 8, 27, 543 P.3d 440, 459 (Haw. 2024). That means the only constitutional challenge for criminal defendants prosecuted for possessing and carrying weapons lies in the

Second Amendment to the United States Constitution. The Office of the Public Defender has an interest in this Court's approach to the Second Amendment and how it will determine the constitutionality of HRS § 134-53(a). This brief is filed pursuant to Circuit Court Rule 29-2(e)(2) and Federal Rules of Appellate Procedure Rule 29(a)(2).

**2. HRS § 134-53(a) infringes on the Second Amendment rights of people keeping and carrying butterfly knives for self-defense.**

The State of Hawaiʻi has made it a crime for anyone to possess a butterfly knife for any reason. When people who carry a butterfly knife for their personal safety and self-defense are prosecuted, the State's violates the Second Amendment to the United States Constitution.

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Am. II. The Second Amendment protects "the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). Incorporation through the Fourteenth Amendment compels recognition of this individual right "equally [by] the Federal Government and the States." *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010).

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court provided the test to determine when the State's regulation of weapons has oversteps its bounds:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Id.* at 24 (cleaned up).

The appellate panel in this case duly applied this test and determined that the butterfly-knife ban in HRS § 134-53(a) violated the Appellants' right to bear and keep arms. This Court should again reverse the judgment below.

### 2.1 HRS § 134-53(a) criminalizes conduct covered by the plain text of the Second Amendment and is presumptively unconstitutional.

The first part of *Bruen* calls on the Court to determine if the plain text of the Second Amendment covers an individual's conduct in HRS § 134-53(a). This is a "threshold inquiry" and "a textual analysis." *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023).

The operative clause of Second Amendment states that "the right of the people to keep and bear Arms, shall not be infringed." The word "Arms" includes

"weapons that were not specifically designed for military use and were not employed in a military capacity." *Heller*, 554 U.S. at 581. *See, e.g., Caetano v. Massachusetts*, 577 U.S. 411, 411 (2016) (stun guns fall under definition of "arms"). It "extends, **prima facie**, to all instruments that constitute bearable arms" and "that general definition covers modern instruments that facilitate armed self-defense." *Bruen*, 597 U.S. at 28 (emphasis added).

The State contends that the "threshold inquiry" demands a searching and detailed analysis requiring the challenger to provide ample evidence that butterfly knives are "in common use today for self-defense." Not so. The first part of *Bruen* is a "threshold inquiry" and a "textual analysis" of the Second Amendment's operative clause. *Alaniz*, 69 F.4th at 1128.

The Supreme Court's application of the test in *Bruen* is instructive. There, the Supreme Court focused on the relationship between the words of the Second Amendment and the regulated conduct:

> It is undisputed that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of "the people" whom the Second Amendment protects. Nor does any party dispute that handguns are weapons "in common use" today for self-defense. We therefore turn to whether the plain text of the Second Amendment protects Koch's and Nash's proposed course of conduct—carrying handguns publicly for self-defense.

*Id.* at 31-32 (cleaned up).

5

The Court had "little difficulty concluding that it [did]" because "[n]othing in the Second Amendment's text" distinguished carrying a handgun in public from keeping one in the home. *Id.* at 32. The kind of evidentiary basis proposed by the State in this case was not required.

The "common use" inquiry is tied to the text and history of the Second Amendment. The challenger does not need to present extensive evidence. In *United States v. Miller*, 307 U.S. 174 (1939), the Supreme Court relied on historical materials to conclude that "Arms" were the kind of weapons militia men were expected to bring "by themselves and [were] of the kind in common use at the time." *Id.* at 179. The Court later interpreted this to mean commonly held weapons:

> We . . . read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the historical understanding of the scope of the right[.]

*Heller*, 554 U.S. at 625.

Requiring more conflicts with the Supreme Court's approach in *Heller* and *Miller*. It goes beyond the prima facie standard in *Bruen* and it no longer becomes the "threshold inquiry" and "textual analysis" described in *Alaniz*. Butterfly knives are a type of pocketknife. Before the 1999 ban they were available for anyone to have in their homes and carry in Hawaiʻi. They are still widely available in the United States.

6

The record amply shows that they are non-military grade weapons civilians use to protect themselves in the event of a confrontation. That makes them "Arms" covered by the plain text of the Second Amendment and HRS § 134-53(a) presumptively unconstitutional.

**2.2    The State failed to meet its burden to show that banning butterfly knives is part of the Nation's historic tradition of weapons regulations.**

The State has not shown how the butterfly knife ban in HRS § 134-53(a) is consistent with the Nation's tradition of other regulations. *See Bruen*, 597 U.S. at 17 and 24. The Supreme Court identified three instances in which a modern regulation is inconsistent and unconstitutional:

> [W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional. And if some jurisdictions actually attempted to enact analogous regulations during this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality.

*Id.* at 26-27.

The Court explained that this "straightforward historical inquiry" was at work in *Heller*. *Id.* at 27.

7

> One of the District's regulations challenged in *Heller* totally banned handgun possession in the home. The District . . . addressed a perceived societal problem—firearm violence in densely populated communities—and it employed a regulation—a flat ban on the possession of handguns in the home—that the Founders themselves could have adopted to confront that problem. Accordingly, after considering founding-era historical precedent, including various restrictive laws in the colonial period, and finding that none was analogous to the . . . ban, *Heller* concluded that the handgun ban was unconstitutional.

*Bruen*, 597 U.S. at 27.

Like the District of Columbia in *Heller*, the Hawaiʻi Legislature promulgated a total ban on the possession of butterfly knives to address a long-standing societal problem that earlier generations could have done, but did not do: prevent minors and notorious criminals from carrying knives that "are easy to conceal and are more intimidating when brandished." *Teter v. Lopez*, 76 F.4th 938, 954 (9th Cir. 2023). In the eighteenth century, folding pocketknives were used by the militia "primarily for work, but also for fighting." *State v. Delgado*, 298 Or. 395, 692 P.2d 610, 613 (Ore. 1984). Nearly every statute from the nineteenth and early twentieth centuries provided by the State did not come close to the all-out ban promulgated in HRS § 134-53(a). *See Teter*, 76 F.4th at 951-53.

The State takes issue with the way the panel examined the historical record, but the panel's approach is faithful to the Supreme Court in *Bruen* and *Heller*.

8

Nothing in the State's historic record convinced the panel that the total ban on folding pocketknives promulgated to disarm a discrete and perceived problematic population—minors and gang members—was consistent with the country's "historic tradition" of weapons regulations. *See Teter*, 76 F.4th at 954.

Finally, the panel's approach gave overburdened trial judges in Hawaiʻi a practical way to resolving the second part of the *Bruen* test. HRS § 134-53 is a misdemeanor so unless it is accompanied by a felony offense, constitutional challenges are heard by trial judges assigned to the criminal docket in the State's district courts. Unlike their colleagues in other courts, the judges there tend to have busier calendars, more cases, less time, and no law clerks.

When a defendant raises a constitutional challenge to the application of HRS § 134-53(a) and meets the "threshold inquiry" in their criminal case, the burden shifts to the State to provide the trial court with evidence that its application of the statute is consistent with the Nation's tradition. *See Bruen, supra.* A trial judge—especially those hearing misdemeanor cases in district courts—cannot be expected to parse through the historical record in the way the State suggests.

It is only natural for these judges to do what the panel has already done: rely on one of the three instances of unconstitutionality identified in *Bruen* for guidance. The panel correctly held that the State did not meet its burden under *Bruen*.

9

**3.   Conclusion**

The panel did not err. It duly applied the *Bruen* test to HRS § 134-53(a) and held that the statute infringes on constitutionally protected conduct. The judgment of the District Court should be reversed.

Dated: Honolulu, Hawaiʻi: April 22, 2024.

                                        Respectfully submitted,

                                        <u>/s/ Benjamin Lowenthal</u>
                                        Benjamin E. Lowenthal
                                        Attorney for *Amicus Curiae*
                                        The Office of the Public Defender

## **Certificate of Compliance**

1.  This brief complies with the type-volume limitations of Federal Rules of Appellate Procedure Rule 32(f) because, excluding the parts of the document exempted by the rule, it contains 2,077 words and it also complies with the word limit of Circuit Court Rule 32-1.

2.  This brief complies with the typeface and type size requirements of FRAP Rule 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Equity Text A, a roman style text.

Dated: Honolulu, Hawaiʻi: April 22, 2024.

/s/ Benjamin Lowenthal
Benjamin E. Lowenthal
Counsel for *Amicus Curiae*
The Office of the Public Defender

## **Certificate of Service**

I hereby certify that on April 22, 2024, I served the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing all registered CM/ECF users.

/s/ Benjamin Lowenthal
Benjamin E. Lowenthal
Counsel for *Amicus Curiae*
The Office of the Public Defender