# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANDREW TETER and JAMES GRELL<br>  Plaintiffs-Appellants,<br><br>v.<br><br>ANNE E. LOPEZ, in her Official Capacity as the Attorney General of the State of Hawaii and DARRYL NG., in his Official Capacity as the State Sheriff Division Administrator,<br><br>  Defendants-Appellees. | No. 20-15948 |

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

Plaintiffs are entitled to attorneys' fees due to their successful litigation. Here, Plaintiffs are two residents of the State of Hawaii who wished to own butterfly knives but were prohibited by Hawaii law. For the reasons laid out below, Plaintiffs' successful litigation entitles them to attorney fees.

### I. **Plaintiffs are Entitled to Attorney Fees Because They are the Prevailing Party**

In an action brought under 42 U.S.C. § 1983, a prevailing plaintiff is entitled to reasonable attorney's fees. *See* 42 U.S.C. § 1988(b). "A plaintiff prevails for purposes of § 1988 when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. ..." *Higher Taste, Inc. v. City of Tacoma*, 717

1

F.3d 712, 715 (9th Cir. 2013) (citation and internal quotation marks omitted).[1] The Ninth Circuit has found prevailing party status in situations similar to this.

### A. As Prevailing Parties, Plaintiffs Are Entitled to a Reasonable Award of Fees

Plaintiffs are the prevailing parties because they prevailed before the three-judge panel, and this case was mooted before the en banc court could rule on the merits of their claims. "We have previously held that when a plaintiff wins a preliminary injunction and the case is rendered moot before final judgment, either by the passage of time or other circumstances beyond the parties' control, the plaintiff is a prevailing party eligible for a fee award." *Higher Taste, Inc.*, 717 F.3d at 717.[2] A typical scenario: The plaintiff wins a preliminary injunction prohibiting enforcement of a particular statute, and the defendant renders the case moot by repealing the statute before final judgment is entered. In that circumstance, courts have held that the plaintiff is a prevailing party under § 1988. *See, e.g., Common*

---

[1] "A party does not need to prevail on every motion in the course of a case in order to obtain attorneys' fees. The work, however, must be associated with the relief requested and be reasonably necessary to achieve the results obtained." *Brandon E. v. Dep't. of Educ., State of Hawaii*, 2008 WL 4602533 at *8 (D. Haw. Oct. 16, 2008).
[2] *See Teter v. Lopez*, 2025 U.S. App. LEXIS 1352, at *12-13 (9th Cir. Jan. 22, 2025) ("After all, in a case such as this one, the defendant is an executive official (here, the Hawaii Attorney General), a change in the statute results from the actions of an independent branch of government (here, the Hawaii Legislature) rather than from the defendant."). Thus, it appears that this Court held the change is law is not attributable to the Attorney General, or in other words, "circumstances beyond the parties' control…"

*Cause/Georgia v. Billups,* 554 F.3d 1340, 1356 (C.A.11 (Ga.),2009); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233–34 (3d Cir. 2008); *Dearmore v. City of Garland*, 519 F.3d 517, 523–24 (C.A.5 (Tex.) 2008). There is no concern that the relief Plaintiffs secured at the panel stage is ephemeral. "The defendants' action in rendering the case moot ensures that the alteration of the parties' legal relationship will not be undone by subsequent rulings in the litigation." *"." Higher Taste, Inc.,* 717 F.3d at 717.

Here, Plaintiffs' win at the panel stage entitles them to prevailing party status in the same way as had they prevailed on a preliminary injunction in the same circumstances.³ "[T]wo recurrent questions arise when making prevailing-party determinations in this context: First, is the court's preliminary injunction ruling sufficiently 'on the merits' to satisfy [*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res*., 532 U.S. 598 (2001)]'s 'judicial imprimatur' requirement? And second, has the plaintiff obtained relief sufficiently enduring to satisfy the

---

³ The Supreme Court is currently deciding a case to determine whether prevailing parties in a preliminary injunction posture can be awarded attorneys' fees. *See Lackey v. Stinnie, et al*. No. 23-621, https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/23-621.html. The questions presented were "[w]hether a party must obtain a ruling that conclusively decides the merits in its favor, as opposed to merely predicting a likelihood of later success, to prevail on the merits under 42 U.S.C. § 1988 [and] [w]hether a party must obtain an enduring change in the parties' legal relationship from a judicial act, as opposed to a non-judicial event that moots the case, to prevail under 42 U.S.C. § 1988." *Stinnie* was argued on October 8, 2024, and a decision is expected by June 2025.

'material alteration of the parties' legal relationship' requirement?" *Id* at 716. Here, Plaintiffs' win at the panel stage easily satisfies this test.

First, the panel opinion was clearly made on the merits after motions for summary judgment. *See Teter v. Lopez*, 76 F.4th 938, 942 (9th Cir. 2023), reh'g en banc granted, opinion vacated, 93 F.4th 1150 (9th Cir. 2024) ("On cross-motions for summary judgment…"). Thus, the parties had conducted full discovery, fully briefed this case on the merits, and participated in oral argument. Second, the panel opinion expressly found Hawaiʻi Rev. Stat. § 134-53(a) unconstitutional and remanded the case to the trial court to enter a judgment in favor of the Plaintiffs. Thus, the panel opinion, issued on August 7, 2023, caused a material alteration of the parties' legal relationship.

This en banc Court set forth the timeline of events, stating that while the Attorney General's petition for en banc was pending (meaning, while the panel opinion was still in effect), the "Speaker of the Hawaii House of Representatives Scott Saiki introduced House Bill 2342, which proposed various changes to Hawaii's weapons laws, including section 134-53(a)." *Teter v. Lopez*, 2025 U.S. App. LEXIS 1352, at *10 (9th Cir. Jan. 22, 2025). Then, "on February 22, 2024, the Committee voted unanimously to recommend that House Bill 2342 be passed…" *Id*. at *11. Rehearing en banc was granted "the same day…" *Id*. In other words, from August 7, 2023 to when en banc rehearing was granted, there was material alteration

4

of the parties' legal relationship, which, due to Hawai'I's Act 21, is now codified into law.

Hawaii's act of passing Act 21 § 6 "ensures that the [panel opinion's] alteration of the parties' legal relationship will not be undone by subsequent rulings in the litigation." *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 717 (9th Cir. 2013). Therefore, Plaintiffs are the prevailing party in this matter. As prevailing party, Plaintiffs are entitled to a reasonable award of attorney fees. *Roberts v. City of Honolulu*, 938 F.3d 1020, 1023–24 (9th Cir. 2019). As shown below, the hours spent on this litigation and the hourly rates requested are reasonable based on the market rate and the complexity of the litigation at issue in this matter.

### B. The Hourly Rates Requested are Reasonable

Here, the rates Plaintiffs' attorneys request are reasonable based on the market at issue in this litigation which is Hawaii. Plaintiffs are represented by attorneys Alan Beck and Stephen Stamboulieh. Mr. Beck has been an attorney since 2009. *See* Exhibit 1, Declaration of Alan Beck.[4] Mr. Beck requests a rate of $400.00 an hour. Mr. Stamboulieh has been an attorney since 2008, and he requests a rate of $400.00 an hour. *See* Exhibit 2, Declaration of Stephen D. Stamboulieh. "[T]he established standard when determining a reasonable hourly rate is the 'rate prevailing in the

---

[4] *See also* https://hsba.org/HSBA_2020/For_the_Public/Find_a_Lawyer/HSBA_2020/Public/Find_a_Lawyer.aspx?hkey=5850e9dd-227b-4556-8ec8-cf8878106f77.

5

community for similar work performed by attorneys of comparable skill, experience, and reputation.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997) (internal citations omitted).[5]

Mr. Beck is one of the most experienced Second Amendment litigators in the nation and has litigated Second Amendment cases across the country. This includes prevailing at the United States Supreme Court in a case dealing with Hawaii's restriction on carrying a handgun. *See* Declaration of Alan Beck. And overturning electric gun and billy club restrictions across the nation. *Id*. He is Hawaii's most experienced Second Amendment attorney and has successfully litigated many Second Amendment cases in Hawaii. *Id.* He maintains an active practice in California and Hawaii. He is also an experienced appellate advocate. He has practiced in the Third, Fifth, Sixth, Ninth, D.C and Federal Circuit Courts of Appeal. He has been or is appellate counsel in 17 federal appeals. *See* Exhibit 1 Declaration of Alan Beck. He has argued before the Ninth Circuit eight times including twice before the *en banc* court. *Id.* He is also experienced in other areas of federal law. *Id.*

---

[5] Courts have approved the use of current, rather than historic rates as a means of compensating for delay in payment. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) ("We agree, therefore, that an appropriate adjustment for delay in payment - whether by the application of current rather than historic hourly rates or otherwise - is within the contemplation of [Section 1988]."); *Houston Indep. Sch. Dist. v. V.P.*, 2010 WL 11626892, at *5 (S.D. Tex. Apr. 29, 2010), report and recommendation adopted, 2010 WL 11626893 (S.D. Tex. June 30, 2010).

And served as amicus counsel in several important matters. *Id*. As shown below, Mr. Beck's requested rate is well within the range for an attorney of his skill and experience.

Attorney Stephen Stamboulieh has been licensed to practice law since 2008. He is licensed in approximately 30 federal courts, including all Circuit Courts of Appeal and the United States Supreme Court. He has argued multiple appellate cases, including in this Circuit, and the Second, Third, and Fifth Circuits. And he is counsel of record in multiple current cases, as listed in his declaration, attached as Exhibit 2.

It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate. *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019). Here, Mr. Beck and Mr. Stamboulieh have submitted the Declarations of Donald Wilkerson (Exhibit 3), Kevin O'Grady (Exhibit 4) and Eric Seitz[6] (Exhibit 5) to demonstrate the requested rates are within the market rate of Hawaii.[7] *See* Declarations of Eric Seitz, Kevin O'Grady and Donald Wilkerson.

---

[6] Mr. Seitz's declaration was prepared for Mr. Beck for use in a different matter in 2024, however, the underlying opinion, that Mr. Beck's "hourly rate of $400.00 is reasonable" remains true in 2025.

[7] Eric Seitz is Hawaii's most experienced civil rights attorney. As such, his evaluation of the propriety of Mr. Beck's rates should hold great weight with this court.

The burden is on the State to rebut this evidence with its own evidence. The party opposing the fee application "has a burden of rebuttal that requires submission of evidence ... challenging the accuracy and reasonableness of the ... facts asserted by the prevailing party in its submitted affidavits." *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1110–11 (9th Cir. 2014) (quoting *Camacho v. Bridgeport Fin., Inc.,* 523 F. 3d 973, 981 (9th Cir. 2008) (internal quotation marks omitted)). To the extent prior rates from this Court have been lower than the ones asked here, the Ninth Circuit has expressly disavowed the use of prior fee awards to justify a current one. *See Camacho v. Bridgeport Fin., Inc*., 523 F. 3d 973, 981 (9th Cir. 2008) (citation omitted) ("[A] district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services.") *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008) ("If the lodestar leads to an hourly rate that is higher than past practice, the court must award that rate ...").

Furthermore, the rates awarded by the Hawaii District Court are within the range requested.[8,9] In 2022, Judge Porter found that $400 an hour was a reasonable hourly rate for an attorney with 18 years of experience. "[G]iven Mr. DiPasquale's 18 years of experience, $400 is a reasonable hourly rate for this type of case." *Oliver v. Merlo*, 2022 WL 20656414, at *5 (D. Haw. Oct. 21, 2022); *See Arc in Hawaii v. DB Ins. Co., Ltd.*, 2021 WL 4566723, at *3 (D. Haw. Sept. 17, 2021) (awarding a rate of $350 for an attorney practicing since 2006 for work performed in 2021). Judge Mansfield has awarded comparable rates. *MFY Funding LLC v. Ohia Opportunities*, LLC, 2023 WL 8678623, at *7 (D. Haw. Oct. 25, 2023), report and recommendation adopted, 2024 WL 327002 (D. Haw. Jan. 29, 2024) (Awarding $360 an hour for an attorney with <9 years of experience for work performed in 2023); *See P. Cold Storage v. Refrigeration Sys. Constr. and Serv. Co., Inc.*, 2022 WL 4125104, at *4 (D. Haw. July 19, 2022), report and recommendation adopted, 2022 WL 3446015 (D. Haw. Aug. 17, 2022) (Awarding a rate of $350 an hour for an attorney with a little over twelve years of experience for work performed in 2021).

---

[8] "[I]n the District of Hawaii most motions for attorney's fees are handled by the magistrate judges." *Roberts v. City and Cnty. of Honolulu*, 2020 WL 234617, at *3 (D. Haw. Jan. 15, 2020). There are currently three active magistrate judges in Hawaii. *See* https://www.hid.uscourts.gov/Judges (last visited 1/23/2025). While the District Court's website has Judge Kurren and Judge Chang listed, they are effectively retired and no longer preside over cases.

[9] Based on a Westlaw search, Magistrate Judge Barry M. Kurren has not issued an attorney fee award since 2016. And Magistrate Judge Kevin Chang has not issued an attorney fee award since 2017.

The requested rates are within the range assigned by this District's magistrate judges. Here, both Mr. Beck and Mr. Stamboulieh are requesting a rate of $400.00 an hour. They both have at least as much district court litigation experience and more appellate and Supreme Court experience than the attorneys referenced in the previous decisions. And the work in this litigation occurred during a period of high inflation,[10] and began in 2018.[11] Thus, a rate of $400.00 an hour is reasonable.

### C. The Number of Hours Spent on This Litigation Is Reasonable

In civil rights actions such as this, the Supreme Court has held that plaintiff's counsel "should recover a fully compensatory fee" for "excellent results." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).[12] "As noted by the Supreme Court in *Hensley*, attorney's fees should "encompass all hours reasonably expended on the

---

[10] *See* https://www.cnbc.com/select/why-is-inflation-so-high/ (last visited 1/23/2025); *See also* https://data.bls.gov/cgi-bin/cpicalc.pl?cost1=1.00&year1=202201&year2=202401 (Federal government inflation calculator that shows one needs $1.06 in December 2024 to have the same purchasing power of $1.00 in December 2022.

[11] *See Gordon v. L.A. Unified Sch. Dist.,* Nos. 19-55806, 19-55874, 2021 U.S. App. LEXIS 32196, at *6 (9th Cir. Oct. 27, 2021) (citing *Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989) "(holding that, in awarding fees, a court may make 'an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise')."

[12] As the Supreme Court said in rejecting an argument that fees should be proportionate to damage awards "since counsel might not have found it economically feasible to expend the amount of time respondents' counsel found necessary to litigate the case properly, it is even less likely that counsel would have achieved the excellent results that respondents' counsel obtained here." *City of Riverside v. Rivera*, 477 U.S. 561, 579 (1986)

litigation," that is, work completed by attorneys to advance the litigation of the case." *Roberts v. City of Honolulu*, 938 F.3d 1020, 1026 (9th Cir. 2019) (*quoting Hensley*, 461 U.S. at 435). Here, Plaintiffs' counsel spent 658.15 hours to bring this case to completion. Mr. Beck spent 431.3 hours primarily researching and drafting documents during this litigation. The matter before this Court was a novel Second Amendment issue. It required many hours to research and brief these novel issues. The district court has found comparable amounts of time are reasonable to draft a brief that is comparably complicated as the briefs filed in this case. "[T]he Court finds that Mr. Henkin's claimed 90.5 hours expended drafting the opposition brief are reasonable and compensable." *See Hawai'i Wildlife Fund v. Cnty. of Maui*, 2022 WL 617987, at *10 (D. Haw. Feb. 15, 2022), report and recommendation adopted, 2022 WL 614944 (D. Haw. Mar. 2, 2022). The work done on each individual brief was comparable to the opposition brief at issue in *Hawai'i Wildlife Fund*. Thus, the time spent is reasonable.

Mr. Stamboulieh spent 226.85 hours during this litigation. He was responsible for managing the plaintiffs, discovery and depositions, and spent considerable time in revising and editing briefs. Managing multiple clients required a substantial amount of time which was reasonably spent to further this litigation. "The Ninth Circuit has acknowledged that 'lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees,' thus, 'the court should defer

11

to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.'" *Id* (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

Moreover, the time Mr. Beck and Mr. Stamboulieh spent discussing and otherwise collaborating on the case was also reasonable because it was vital to perfecting the legal theory. "[T]he participation of more than one attorney does not necessarily constitute an unreasonable duplication of effort." *See McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) (quoting *Kim v. Fujikawa,* 871 F.2d 1427, 1435 n.9 (9th Cir.1989).[13] "[A]ttorney collaboration is essential in

---

[13] *See also Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) ("Participation of more than one attorney does not necessarily amount to unnecessary duplication of effort."). Rather, "[c]ourts must exercise judgment and discretion, considering the circumstances of the individual case, to decide whether there was unnecessary duplication." *Id*. at 1286-87. The Ninth Circuit has distinguished between a lawyer at a hearing "merely [to] watch so that they can learn and use their knowledge in subsequent cases" as compared to a lawyer who is aiding the other lawyer during the argument or "who has worked on the case and will be working on it subsequently may need to observe argument to judge how to proceed later." *Id*. "Under section 1988, prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983). Hawaii also had multiple attorneys involved in this litigation, and then brought in additional outside counsel to file for and litigate the en banc rehearing. *See* https://www.abajournal.com/news/article/this-biglaw-firm-charges-nearly-2500-an-hour-for-top-billers-bankruptcy-work (showing a $2,465 per hour rate for Mr. Neal Katyal, who worked on the en banc rehearing brief in this matter).

12

complex litigation." *Zeleny v. Becerra*, 2022 WL 562824, at *6 (N.D. Cal. Feb. 24, 2022), appeal dismissed sub nom. *Zeleny v. City of Menlo Park*, 2022 WL 4459901 (9th Cir. May 6, 2022).[14,15] In *City of Riverside*, the Supreme Court upheld an attorney fee award which included 197 hours in discussion between the attorneys. *City of Riverside v. Rivera*, 477 U.S. 561, 590 (1986) (Rehnquist, J., dissenting) ("The court approved some 197 hours of time spent in conversations between respondents' two attorneys, for a total of $24,625.").[16] The time expended here is entirely reasonable considering the results obtained and the complicated nature of this case which required attorney collaboration.

### D. This Court Should Award Fee on Fees.

---

[14] *See City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) (finding that lawsuits brought under 42 U.S.C. § 1983 are "complex Federal litigation.")

[15] *See also Hawai'i Wildlife Fund*, 2022 WL 617987 at *10, report and recommendation adopted, 2022 WL 614944 (D. Haw. Mar. 2, 2022) ("Mr. Nelson described in his declaration the highly collaborative nature of preparing Supreme Court briefs, thereby discrediting Defendant's assertion that the work amongst multiple attorneys during proceedings before the Supreme Court was overstaffed and duplicative.")

[16] *See also Chaudhry v. City of L.A.,* 751 F.3d 1096, 1111-12 (9th Cir. 2014)("We held in Moreno that duplicative work is not inherently inappropriate.") (Vacating 88% percent reduction without explanation of time spent attorneys spent in collaboration); *see also ONDA v. BLM,* 223 F. Supp. 3d 1147, 1154 (D. Or. 2016) ("I am not concerned about any 'excessive staffing.' ONDA's attorneys [Lacy and Becker] were judicious in the tasks on which they collaborated and efficiently used each other in strategic discussions and on editing submissions").

Plaintiffs are entitled to an award of fees for the time they have spent preparing this fee application and the inevitable time they will spend on the reply brief to Defendants' opposition to this motion. "We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable." *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986). Here, Mr. Beck and Mr. Stamboulieh both spent time, as reflected in their timesheets, preparing this fee petition. This time is well within the range that was deemed reasonable in *Hawai'i Wildlife Fund*, 2022 WL 617987 at *10*, as shown above, for preparing a complex brief. Plaintiffs respectfully request an award for the time Plaintiffs' counsel spent preparing this motion.

E.  **This Court Should Award a Lodestar Modifier**

In this Circuit, a trial court may modify a fee award due to a number of factors. These being:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

"[T]rial courts may consider other factors pertaining to contingency fee agreements, including whether "a case involve[d] an issue of public importance," "the plaintiff's ... unpopular[ity] in the community," or the "defendant['s] ... obstreperous[ness.]" *Schefke v. Reliable Collection Agency, Ltd.*, 32 P.3d 52, 99 (Haw. 2001), as amended (Oct. 11, 2001) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987). Here, Plaintiffs satisfy several of these factors. Notably, firearms litigation is an undesirable area of law due to the politically contentious nature of it.[17] At least one court in this circuit has found the undesirability of firearms related litigation deserves an upward modifier.

*Zeleny v. Becerra* deals with a challenge to California law and a municipal ordinance. "The case stems from a series of protests Zeleny staged against a venture capital fund on Sand Hill Road in Menlo Park. He was protesting its decision to continue doing business with a man he believed had committed sex crimes. He carried a military-style rifle at these protests until California expanded its ban on openly carrying firearms in 2012." *Zeleny v. Becerra*, 2022 WL 562824, at *1 (N.D. Cal. Feb. 24, 2022), appeal dismissed sub nom. *Zeleny v. City of Menlo Park*, 2022 WL 4459901 (9th Cir. May 6, 2022). The Court found his case warranted an upward

---

[17] See https://www.reuters.com/legal/legalindustry/paul-clement-start-new-litigation-firm-kirkland-eschews-gun-cases-2022-06-23/ (discussing Paul Clement starting new firm as Kirkland & Ellis "will no longer represent clients in Second Amendment matters."

modifier due to the undesirability of his case. "Zeleny is correct that he should be given some multiplier on top of the lodestar for delivering victory in an unpopular and difficult case, one that will benefit citizens of the city (and the state) with clearer law and guidelines." *Id* at *6. "Something on the order of a 5–10% increase over the lodestar amount is appropriate." *Id.* Plaintiffs' case deals with the same undesirable issue which is constitutional rights associated with weapons. In addition, Plaintiffs' case satisfies several of the other factors for an upward modifier.

  This was also a very novel and difficult case. No court had ruled on the merits of the Second Amendment claim at issue in this case. As a Second Amendment case, this case was also very difficult as shown by the lack of success most plaintiffs have had in Second Amendment law following the *Bruen* opinion.[18] Thus, this case required a high level of skill to prevail. Furthermore, this case was performed on a contingency basis. *See* Declaration of Alan Beck; Declaration of Stamboulieh. As the Hawaii Supreme Court has said, "[i]t has been observed that 'contingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases

---

[18] "According to Jake Charles, a Second Amendment scholar at Pepperdine University, courts have upheld gun laws from Second Amendment challenges post-Bruen in approximately 88% of cases." *See* https://giffords.org/memo/second-amendment-challenges-following-the-supreme-courts-bruen-decision/ (citing https://firearmslaw.duke.edu/2023/03/by-the-numbers-how-disruptive-has-bruen-been )

16

ranging between twenty and thirty-five percent of the lodestar.'" *Schefke v. Reliable Collection Agency, Ltd.*, 32 P.3d 52, 99 (Haw. 2001), as amended (Oct. 11, 2001) (quoting *Rendine v. Pantzer*, 661 A.2d 1202, 1231 (N.J. 1995)). *See also Richardson v. Ala. State Bd. of Educ.,* 935 F.2d 1240, 1248 (11th Cir. 1991) ("A fees award may be increased by 100% to compensate attorneys for the risk of accepting a case on a contingency basis and to attract competent counsel.").

Had Plaintiffs not prevailed, Plaintiffs' counsel would not have been entitled to payment. By representing Plaintiffs who otherwise could not afford an attorney to vindicate their constitutional rights, Plaintiffs' counsel has fulfilled Congress' purpose in passing 42 U.S.C. §1988. Due to these factors, this Court should award Plaintiffs an upward modifier of 45%.

### F. This Court Should Award G.E.T.

This Court should add 4.712% to Plaintiffs' award to account for Honolulu's GET tax.[19] "Generally, it is common practice for district courts to award general excise tax when awarding attorney's fees." *Almodova v. City and County of Honolulu*, 2012 WL 3255140, at *9 (D.Haw. Aug. 8, 2012). "This Court has also awarded GET in IDEA cases without requiring an invoice. *Sam K. ex rel. Diane C. v. Department of Educ., State of Hawaii*, 2013 WL 3071317, at *7 (D. Haw. June 17, 2013) (awarding GET in an IDEA case); *Department of Educ., State of Hawaii v.*

---

[19] https://tax.hawaii.gov/geninfo/countysurcharge/

17

*C.B. ex rel. Donna B.*, 2012 WL 7475406, at *12 (D.Haw. Sept. 28, 2012) (same)." *Annette K. v. Hawaii Dept. of Educ.*, 2013 WL 3731102, at *3 (D. Haw. July 13, 2013). This Court should award an additional 4.712% to Plaintiffs' award to account for Honolulu's GET tax.

### G. This Court Should Award Expenses

During the litigation of this matter, Plaintiffs incurred $11,802.33 in expenses. This Circuit holds "that attorneys' fees awards can include reimbursement for out-of-pocket expenses including . . . travel, courier and copying costs." *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010) (citation omitted). Plaintiffs' costs and expenses include travel expenses for discovery, hotel expenses and travel, courtesy copies, and printing. *See* Declaration of Beck, Exhibit 1; Declaration of Stamboulieh, Exhibit 2. These expenses were reasonable and necessary to effectuate the litigation and appeal and should be reimbursed.

### H. Total Amount Requested

The total amount requested by Plaintiffs is $406,120.68, which includes expenses, GET at 4.712% and an upward modifier of 45% for all fees other than expenses.

### Conclusion

Plaintiffs are the prevailing party in this matter. They are entitled to a reasonable rate for the time they spent on this litigation and reimbursement of

expenses. The amount asked for is reasonable.  For the reasons laid out above, this Court should grant Plaintiffs' motion.

 Respectfully Submitted,

Dated: February 2, 2025

| | |
|---|---|
| */s/ Stephen D. Stamboulieh* | */s/ Alan Alexander Beck* |
| Stephen D. Stamboulieh | Alan Alexander Beck |
| Stamboulieh Law, PLLC | Law Office of Alan Beck |
| P.O. Box 428 | 2692 Harcourt Drive |
| Olive Branch, MS  38654 | San Diego, CA  92123 |
| (601) 852-3440 | (619) 905-9105 |
| stephen@sdslaw.us | Alan.alexander.beck@gmail.com |
| | *Counsel for Plaintiffs* |

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I certify the following:

1. This Motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2), as it contains 4,658 words, calculated by Microsoft Word 365.

2. This Motion complies with the format, typeface, and type-style requirements of Rule 32(a)(4-6) as it is drafted in Times New Roman 14 Point font.

　　　　　　　　　　　*/s/ Stephen D. Stamboulieh*
　　　　　　　　　　　Stephen D. Stamboulieh

**CERTIFICATE OF COMPLIANCE**

I certify, that on February 2, 2025, I filed the foregoing document or pleading with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the Ninth Circuit's CM/ECF system.

　　　　　　　　　　　*/s/ Stephen D. Stamboulieh*
　　　　　　　　　　　Stephen D. Stamboulieh