IN THE

# United States Court of Appeals
# for the Ninth Circuit

ANDREW TETER and JAMES GRELL,

Plaintiffs-Appellants,

v.

ANNE E. LOPEZ, in her Official Capacity as the Attorney General of the State of Hawai'i and DARRYL NG, in his Official Capacity as the State Sheriff Division Administrator,

Defendants-Appellees.

On Appeal from the United States District Court for the District of Hawai'i
Honorable Alan C. Kay, Senior United States District Judge
(Civil No. 19-cv-00183-ACK-WRP)

## OPPOSITION TO MOTION FOR ATTORNEY'S FEES

ANNE E. LOPEZ
   *Attorney General of the State of Hawai'i*
KALIKO'ONĀLANI D. FERNANDES
   *Solicitor General*
STATE OF HAWAI'I
DEPARTMENT OF THE ATTORNEY GENERAL
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

REEDY C. SWANSON
DANA A. RAPHAEL
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
reedy.swanson@hoganlovells.com

*Counsel for Defendants-Appellees Anne E. Lopez and Darryl Ng*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ................................................................................1

ARGUMENT ....................................................................................2

    I.     PLAINTIFFS ARE NOT "PREVAILING PARTIES" IN
          THIS LITIGATION .........................................................2

    II.    PLAINTIFFS' FEE REQUEST IS UNREASONABLE ...........8

         A.     Binding Precedent Forecloses Plaintiffs' Request For
               A Modifier ........................................................8

         B.     Plaintiffs' Lodestar Calculation Includes Numerous
               Entries That Are Not Compensable ............................14

         C.     Plaintiffs Are Not Entitled To Expenses......................21

CONCLUSION ................................................................................22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

C<small>ASES</small>:

*Berry v. Air Force Cent. Welfare Fund*,
115 F.4th 948 (9th Cir. 2024) ............................................................ 12

*Blum v. Stenson*,
465 U.S. 886 (1984) ........................................................................... 9

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*,
532 U.S. 598 (2001) ................................................................... *passim*

*Carrera v. Ford Motor Co.*,
No. 2:18-cv-09781, 2020 WL 13042577 (C.D. Cal. July 22, 2020) ................. 16

*Carver v. Lehman*,
558 F.3d 869 (9th Cir. 2009) ............................................................. 5

*Chambers v. Whirlpool Corp.*,
980 F.3d 645 (9th Cir. 2020) ............................................ 8, 9, 10, 11

*Citizens For Better Forestry v. U.S. Dep't of Agric.*,
567 F.3d 1128 (9th Cir. 2009) ......................................................... 6, 7

*City of Burlington v. Dague*,
505 U.S. 557 (1992) ......................................................... 8, 10, 11

*City of Riverside v. Rivera*,
477 U.S. 561 (1986) ......................................................................... 19

*Clark v. City of Los Angeles*,
803 F.2d 987 (9th Cir. 1986) ........................................................... 12

*Corbett v. Wild W. Enters., Inc.*,
713 F. Supp. 1360 (D. Nev. 1989) .................................................... 19

*Dep't of Educ. Hawai'i v. C.B. ex rel. Donna B.*,
    No. 1:11-cv-00576, 2012 WL 7475406 (D. Haw. Sept. 28, 2012),
    *report and recommendation adopted*, 2013 WL 704934 (D. Haw.
    Feb. 26, 2013) ................................................................................. 15

*Farrar v. Hobby*,
    506 U.S. 103 (1992).................................................................... 6, 14

*Fitzgerald v. L. Off. of Curtis O. Barnes*,
    No. 1:12-cv-00071, 2013 WL 1627740 (E.D. Cal. Apr. 15, 2013),
    *report and recommendation adopted*, 2013 WL 1896273 (E.D. Cal.
    May 6, 2013)................................................................................. 16

*Franco v. Gennaco*,
    No. 2:09-cv-00893, 2010 WL 11596657 (C.D. Cal. Nov. 10, 2010)................ 21

*Gros v. New Orleans City*,
    No. 2:12-cv-02322, 2014 WL 2506464 (E.D. La. June 3, 2014),
    *reconsideration granted in part on other grounds*, 2014 WL
    3894371 (E.D. La. Aug. 8, 2014) ..................................................... 17

*Grove v. Wells Fargo Fin. Cal., Inc.*,
    606 F.3d 577 (9th Cir. 2010) .................................................... 21, 22

*Hanrahan v. Hampton*,
    446 U.S. 754 (1980)........................................................................ 7

*Hawaii Def. Found. v. City & Cnty. of Honolulu*,
    No. 1:12-cv-00469, 2014 WL 2804448 (D. Haw. June 19, 2014).............. 18, 19

*Heller v. District of Columbia*,
    832 F. Supp. 2d 32 (D.D.C. 2011)............................................... 17, 20

*Hernandez v. Grullense*,
    No. 3:12-cv-03257, 2014 WL 1724356 (N.D. Cal. Apr. 30, 2014) ................. 17

*Hewitt v. Helms*,
    482 U.S. 755 (1987).......................................................................... 7

# TABLE OF AUTHORITIES—Continued

Page(s)

*Higher Taste, Inc. v. City of Tacoma*,
   717 F.3d 712 (9th Cir. 2013) ..................................................4, 5, 6

*HRPT Props. Tr. v. Lingle*,
   775 F. Supp. 2d 1225 (D. Haw. 2011) ............................................. 15

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................. 9

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ........................................................... 20

*Kelly v. City of Oakland*,
   198 F.3d 779 (9th Cir. 1999), *as amended* (Jan. 12, 2000) .............. 12

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ............................................................... 9

*Lesnik v. Eisenmann SE*,
   No. 5:16-cv-01120, 2023 WL 4477211 (N.D. Cal. July 11, 2023) ................... 21

*McKenzie v. Cooper, Levins & Pastko, Inc.*,
   990 F.2d 1183 (11th Cir. 1993) ...................................................... 11

*Missouri v. Jenkins ex rel. Agyei*,
   491 U.S. 274 (1989) ........................................................................ 15

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ........................................................ 14

*Nat'l Fam. Farm Coal. v. EPA*,
   No. 19-70115, 2023 WL 7017704 (9th Cir. Mar. 1, 2023) .............. 22

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010) ....................................................... 8, 9, 10, 13

*Prison Legal News v. Stolle*,
   129 F. Supp. 3d 390 (E.D. Va. 2015), *aff'd*, 681 F. App'x 182 (4th
   Cir. 2017) .............................................................................. 17, 18

Page(s)

*Rendine v. Pantzer*,
  661 A.2d 1202 (N.J. 1995) .............................................. 10

*Richardson v. Ala. State Bd. of Educ.*,
  935 F.2d 1240 (11th Cir. 1991) ........................................ 11

*Schefke v. Reliable Collection Agency, Ltd.*,
  32 P.3d 52 (Haw. 2001), *as amended* (Oct. 11, 2001) .................... 10

*Sole v. Wyner*,
  551 U.S. 74 (2007) ...................................................... 5

*Taleff v. Sw. Airlines Co.*,
  No. 11-16173, 2013 WL 12581383 (9th Cir. Mar. 21, 2013) ............ 15, 16

*Teter v. Lopez*,
  76 F.4th 938 (9th Cir. 2023) ........................................... 2

*Teter v. Lopez*,
  93 F.4th 1150 (9th Cir. 2024) .......................................... 3

*United States v. Foumai*,
  910 F.2d 617 (9th Cir. 1990) ........................................... 5

*Vogel v. Harbor Plaza Ctr., LLC*,
  893 F.3d 1152 (9th Cir. 2018) ......................................... 14

*Walker v. City of Los Angeles*,
  No. 2:08-cv-04707, 2010 WL 11512210 (C.D. Cal. May 17, 2010) ......... 20

*Welch v. Metro. Life Ins. Co.*,
  480 F.3d 942 (9th Cir. 2007) .......................................... 16

*Woods v. Carey*,
  722 F.3d 1177 (9th Cir. 2013) .......................................... 8

*Yamada v. Snipes*,
  786 F.3d 1182 (9th Cir. 2015) ....................................... 2, 7

Page(s)

*Zeleny v. Becerra*,
  No. 3:17-cv-07357, 2022 WL 562824 (N.D. Cal. Feb. 24, 2022) .........11, 12, 18

CONSTITUTIONAL PROVISIONS:

Haw. Const. art. III, §§ 14-17 ..................................................................... 5

STATUTES:

28 U.S.C. § 1920 ....................................................................................... 22

42 U.S.C. § 1988 ............................................................................... *passim*

RULES:

Fed. R. App. P. 39(d) ...............................................................................22

Cir. R. 39-1.1 ...........................................................................................22

Cir. R. 39-1.4 ...........................................................................................22

Cir. R. 39-1.9 .............................................................................................8

LEGISLATIVE MATERIAL:

Act 21, An Act Relating to Weapons (adopted May 13, 2024) ................................3

OTHER AUTHORITIES:

Jacob Charles, *By the Numbers: How Disruptive Has* Bruen *Been?*,
  Duke Center for Firearms Law (Mar. 27, 2023),
  https://firearmslaw.duke.edu/2023/03/by-the-numbers-how-
  disruptive-has-bruen-been/ ...............................................................11

*Law360 Names Practice Groups Of The Year*, Law360 (Jan. 20, 2025),
  https://www.law360.com/articles/2284848 .......................................12

## INTRODUCTION

Section 1988 authorizes an award of attorney's fees only for a "prevailing party."  But Plaintiffs have not prevailed in this litigation:  The Hawai'i legislature voluntarily amended the challenged statute months after the only judicial opinion in Plaintiffs' favor had already been vacated.  The Supreme Court has squarely held that plaintiffs are not "prevailing parties" under Section 1988 even when the plaintiffs' lawsuit is the "catalyst" for "a voluntary change in the defendant's conduct."  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600, 605 (2001) (quotation marks omitted).  Thus, even assuming this lawsuit in some sense motivated the legislature—despite the absence of any evidence supporting such a motive—Plaintiffs would still not be entitled to attorney's fees.

At minimum, the nearly half-million dollars that Plaintiffs request is manifestly unreasonable.  Plaintiffs seek to increase their lodestar award by nearly 50% through an across-the-board multiplier that is not permissible as a matter of law or warranted by the circumstances.  Plaintiffs also significantly inflate their hours through non-compensable work.  Plaintiffs' motion should be denied.

# ARGUMENT

## I. PLAINTIFFS ARE NOT "PREVAILING PARTIES" IN THIS LITIGATION.

A litigant is not "prevailing" within the meaning of 42 U.S.C. § 1988 merely because she has "achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon*, 532 U.S. at 600. A plaintiff "does not become a prevailing party until it obtains relief that is no longer subject to being reversed, dissolved, or otherwise undone by the final decision in the same case." *Yamada v. Snipes*, 786 F.3d 1182, 1208 (9th Cir. 2015) (quotation marks omitted).

These principles are fatal to Plaintiffs' request for fees here. Plaintiffs claim that they are prevailing because the legislature of Hawai'i amended the statute while this appeal was pending. But the amendment in question was a voluntary action by the legislature, not a response to a coercive judicial order. Not only was the panel opinion in Plaintiffs' favor "subject to being . . . undone," *id.* (quotation marks omitted), it *was in fact vacated* before Hawai'i amended the relevant statute. Thus, the only reason Plaintiffs received any relief was the legislature's voluntary action—not a judicial order.

Here is the complete timeline: The panel opinion in Plaintiffs' favor issued on August 7, 2023. *Teter v. Lopez*, 76 F.4th 938 (9th Cir. 2023). Hawai'i timely sought rehearing en banc on September 20, 2023, Dkt. 135-1, and the Court issued

an order granting the rehearing petition and vacating the panel opinion on February 22, 2024.  93 F.4th 1150 (mem.).  Only months *after* that vacatur order did the legislature pass the relevant statutory amendment (on April 18, 2024) and the Governor sign it into law (on May 13, 2024).

Thus, at the time the legislature acted, there was *no* operative decision from this Court—in either party's favor.  The judicial backdrop when the legislature acted was thus not materially different from *Buckhannon*:  The parties knew further litigation was yet to come, but did not have any indication about which side would ultimately prevail.[1]  The legislature's action was thus entirely "voluntary" under *Buckhannon*.  Even assuming for argument's sake that the existence of Plaintiffs' lawsuit "brought about" the statutory amendment, that does not render Plaintiffs a "prevailing party" in litigation.  *Buckhannon*, 532 U.S. at 600.[2]  On the

---

[1] In fact, the operative judicial decision at the time the legislature acted was the summary judgment opinion below, which was in Hawaiʻi's favor.

[2] Plaintiffs have not pointed to any evidence that the legislature was in fact responding to their lawsuit; on the contrary, as Hawaiʻi detailed in its Suggestion of Mootness, the statute was a comprehensive amendment of multiple weapons regulations.  Among other things, it clarified certain aspects of Hawaiʻi's firearms permitting requirements, expanded the prohibition on using firearms to commit felonies to include misdemeanors, eliminated open-carry prohibitions on certain weapons like daggers and blackjacks, clarified the removal of open- and concealed-carry prohibitions on billies, removed certain obsolete statutory language, and eliminated certain prohibitions related to switchblades.  *See generally* Act 21, An Act Relating to Weapons (adopted May 13, 2024); Dkt. 178-1 at 3-4.

contrary, *Buckhannon* directly rejected the idea that a plaintiff might be entitled to fees merely because its lawsuit served as the "catalyst" for legislative action. *Id.* at 605 (quotation marks omitted).

Plaintiffs attempt to wedge themselves into a narrow exception that this Court has recognized to *Buckhannon*'s general rule, but in doing so they stretch this Court's precedents beyond the breaking point. This Court has held that a plaintiff who receives a favorable interlocutory order can qualify as "prevailing" where that plaintiff achieves a victory on the merits that is "sufficiently enduring" such that it results in a "material alteration of the parties' legal relationship." *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013) (quotation marks omitted).[3] Plaintiffs can satisfy neither requirement here.

The panel opinion in this case was not "sufficiently enduring" to confer prevailing-party status. Plaintiffs contend otherwise only by obscuring the true "timeline of events." Fee Mot. 4. Plaintiffs point out that the Court's order granting rehearing and vacating the panel opinion issued on the same day that a *committee* in the Hawaiʻi House of Representatives recommended passage of a

---

[3] As Plaintiffs have noted, Fee Mot. 3 n.3, the Supreme Court has granted certiorari to clarify the law in this area. *See Lackey v. Stinnie*, No. 23-621 (U.S.). But there is no dispute in *Lackey* over the relevant question in this case: "all agree that if the plaintiff's victory and gains are reversed, the plaintiff is not a prevailing party." Resp. Br. 21, *Lackey*, No. 23-621 (Aug. 5, 2024).

statutory amendment.  *Id.*  But Plaintiffs are simply wrong that a committee vote constituted a "material alteration of the parties' legal relationship"—needless to say, a statute cannot become law in Hawaiʻi until it has satisfied the constitutional requirements of bicameralism and presentment.  *See* Haw. Const. art. III, §§ 14-17. Plaintiffs thus "secure[d] only an 'ephemeral' victory" before the three-judge panel and thus are "*not* a prevailing party under § 1988."  *Higher Taste*, 717 F.3d at 717; *see also Sole v. Wyner*, 551 U.S. 74, 83 (2007) (holding that "[p]revailing party status . . . does not attend achievement of a preliminary injunction that is . . . undone by the final decision in the same case").

In any event, the *judicial* "relief" that Plaintiffs rely on—the panel opinion—worked no "material alteration of the parties' legal relationship."  *Higher Taste*, 717 F.3d at 716 (quotation marks omitted).  A "material alteration" occurs when a "plaintiff can force the defendant to do something he otherwise would not have to do."  *Id.* (quotation marks omitted).  The panel opinion in this case never took effect and Plaintiffs were never authorized to enforce its holding.  *See Carver v. Lehman*, 558 F.3d 869, 878 (9th Cir. 2009) ("No opinion of this circuit becomes final until the mandate issues, and the opinion issued by the prior majority was only part way through its finalization process."); *see also United States v. Foumai*, 910 F.2d 617, 620 (9th Cir. 1990) ("[F]inality of an appellate order hinges on the mandate, as does a [party's] expectation of finality.").  As the Supreme Court has

explained, "the moral satisfaction that results from any favorable statement of law cannot bestow prevailing party status." *Farrar v. Hobby*, 506 U.S. 103, 112-113 (1992) (citation, quotation marks, and alterations omitted). "No material alteration of the legal relationship occurs between the parties until the plaintiff becomes entitled to enforce [an order] against the defendant." *Id.* at 113.

The fact that an appellate opinion is not enforceable between the parties until the mandate issues makes the situation here fundamentally different from a preliminary injunction. This Court has held that a preliminary injunction can confer prevailing party status precisely because "the whole point of an injunction" is that it immediately "force[s] [the defendant] to do something it would not otherwise have had to do." *Higher Taste*, 717 F.3d at 716-717. The same cannot be said of a non-final panel opinion. At no point in this case did *any* judicial order—including the panel opinion—require Hawai'i to cease enforcement of the subsequently repealed statute. Plaintiffs have therefore failed to establish the necessary "material alteration of the parties' legal relationship . . . accompanied by 'judicial *imprimatur* on the change.' " *Id.* at 715 (quoting *Buckhannon*, 532 U.S. at 605)). Accordingly, they are not prevailing parties under Section 1988.[4]

---

[4] Plaintiffs also ignore that a party is not a prevailing party just because "it received a ruling from this court that the [defendant] had violated [Plaintiffs'] rights," if the result was only a remand and the plaintiff ultimately "never received a formal declaratory judgment or other relief." *Citizens For Better Forestry v. U.S. Dep't of*

At minimum, Plaintiffs' fee request is premature because the en banc Court did not direct that the case be dismissed as moot. Although Hawai'i argued that the amendment to the statute fully mooted this case, the Court disagreed and remanded for further proceedings instead. This Court has held that a party "cannot immediately request attorney's fees from this court" merely by prevailing on "an interlocutory appeal." *Yamada*, 786 F.3d at 1210.[5] Instead, the proper procedure is to seek fees for all work—including the intermediary appeal—at the conclusion of the District Court proceedings if a plaintiff ultimately achieves prevailing-party status. *See id.*; *Buckhannon*, 532 U.S. at 609 ("If a case is not found to be moot, and the plaintiff later procures an enforceable judgment, the court may of course award attorney's fees."). Should Plaintiffs ultimately achieve prevailing-party status on remand, they can request fees for all work on the case at that time.

---

*Agric.*, 567 F.3d 1128, 1132 (9th Cir. 2009). That describes the panel's decision here: The panel concluded that the challenged statute violated the Second Amendment, but remanded for further proceedings without issuing any relief.

[5] Plaintiffs have not argued that they are prevailing parties because the en banc Court vacated the adverse summary judgment ruling against them—nor could they, under controlling precedent. *See, e.g.*, *Hanrahan v. Hampton*, 446 U.S. 754, 758-759 (1980) (per curiam) (holding that a party is not "prevailing" when an appellate court reverses a directed verdict against it and grants a new trial); *Hewitt v. Helms*, 482 U.S. 755, 760 (1987) (holding that "an interlocutory ruling that [a] complaint should not have been dismissed . . . is not the stuff of which legal victories are made").

## II. PLAINTIFFS' FEE REQUEST IS UNREASONABLE.

If this Court concludes that Plaintiffs are entitled to fees, it should follow its well-established practice and "refer this matter to the Appellate Commissioner to determine the amount of such fees" and permit the parties to "brief the lodestar analysis question before the Commissioner." *Woods v. Carey*, 722 F.3d 1177, 1180 n.2, 1184 (9th Cir. 2013); *see* Cir. R. 39-1.9 (referral appropriate where "a party opposes the amount of attorneys fees requested").

Plaintiffs are not entitled to the amount of fees they seek. First, binding precedent forecloses Plaintiffs' requested 45% modifier above the lodestar. Second, Plaintiffs' lodestar calculation is itself unreasonable because Plaintiffs include multiple entries that are not compensable. Third, Plaintiffs are not entitled to expenses.

### A. Binding Precedent Forecloses Plaintiffs' Request For A Modifier.

Plaintiffs contend (at 14-17) that they are entitled to a 45% modifier above the lodestar. But there is "a 'strong presumption that the lodestar is sufficient,' " and so "a multiplier is warranted only in 'rare and exceptional circumstances.' " *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546-552 (2010)).[6] Plaintiffs attempt to

---

[6] "[C]ase law construing what is a 'reasonable' fee applies uniformly to all" "federal fee-shifting statutes," including Section 1988. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

justify an enhancement based on the factors in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), but this Court has since recognized that "many of the *Kerr* factors for determining reasonable attorney's fees are 'subsumed within the initial calculation of hours reasonably expended at a reasonable rate,' " *Chambers*, 980 F.3d at 665 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 n.7 (9th Cir. 2011)), and it is black-letter law that "[a] multiplier 'may not be awarded based on a factor that is subsumed in the lodestar calculation,' " *id.* (quoting *Perdue*, 559 U.S. at 553).

Indeed, every one of Plaintiffs' arguments for a modifier is foreclosed by binding precedent. Plaintiffs say that a modifier is warranted because "firearms litigation is an undesirable area of law," Fee Mot. 15, but this Court reversed a modifier awarded for the "undesirability" of a case because "a multiplier should not be based on the legal or factual merits of a claim," *Chambers*, 980 F.3d at 667. Plaintiffs also contend that a modifier is justified because this was a "novel and difficult case," Fee Mot. 16, but "[t]he novelty and difficulty of issues are inappropriate factors to use in enhancing a fee award," *Chambers*, 980 F.3d at 666 (citation omitted); *see also Blum v. Stenson*, 465 U.S. 886, 898-999 (1984) ("Neither complexity nor novelty of the issues . . . is an appropriate factor in determining whether to increase the basic fee award.").

The pattern continues.  Plaintiffs say they are entitled to a modifier for "the lack of success most plaintiffs have had in Second Amendment law," Fee Mot. 16, but "the lodestar typically reflects the difficulty of establishing the merits of a claim," making an enhancement inappropriate.  *Chambers*, 980 F.3d at 667; *see Dague*, 505 U.S. at 565 (fee-shifting statutes "bar a prevailing plaintiff from recovering for the risk of loss").  And Plaintiffs' final argument for a modifier—because "this case was performed on a contingency basis," Fee Mot. 16—ignores that the Supreme Court held more than three decades ago that an "enhancement for contingency is not permitted under the fee-shifting statutes," *Dague*, 505 U.S. at 567; *see also Perdue*, 559 U.S. at 558 ("[T]he [district] court's reliance on the contingency of the outcome contravenes our holding in *Dague*.").

Plaintiffs do not acknowledge these precedents, let alone make any attempt to distinguish them.  Of Plaintiffs' handful of citations, two cases involve *state* fee shifting statutes that expressly reject federal precedents interpreting federal fee-shifting statutes.  *See Schefke v. Reliable Collection Agency, Ltd.*, 32 P.3d 52, 94 (Haw. 2001), *as amended* (Oct. 11, 2001) ("*Dague* is a federal case interpreting fee-shifting provisions of federal statutes, it is not binding on" the state court when interpreting Hawai'i law) (cited at Fee Mot. 15, 17); *Rendine v. Pantzer*, 661 A.2d 1202, 1224 (N.J. 1995) (similar, interpreting New Jersey law) (cited at Fee Mot. 17).  Plaintiffs cite a decades-old case to support their contingency-fee argument,

*see* Fee Mot. 17 (citing *Richardson v. Ala. State Bd. of Educ.*, 935 F.2d 1240, 1248 (11th Cir. 1991)), without acknowledging that the case was since "overruled" by *Dague*, *see McKenzie v. Cooper, Levins & Pastko, Inc.*, 990 F.2d 1183, 1186 (11th Cir. 1993). And the only case Plaintiffs cite as purportedly awarding a modifier for "undesirability," Fee Mot. 15-16 (citing *Zeleny v. Becerra*, No. 3:17-cv-07357, 2022 WL 562824 (N.D. Cal. Feb. 24, 2022)), is an unpublished district court decision that did not cite this Court's precedents forbidding enhancements based on "undesirability," *see Chambers*, 980 F.3d at 667, or any authority in favor of a multiplier, for that matter.

Even if Plaintiffs' grounds for a modifier were not so obviously foreclosed, Plaintiffs have not offered any "specific evidence on the record . . . that the lodestar amount is unreasonably low." *Chambers*, 980 F.3d at 665 (citation and quotation marks omitted). None of Plaintiffs' claims withstand scrutiny. For example, Plaintiffs' suggestion (at 16 n.18) that Second Amendment claims fail in 88% of cases is based almost entirely on unsuccessful (and noncomparable) criminal appeals.[7] And Plaintiffs' sweeping claim about the "undesirability" of Second Amendment litigation apparently rests on a single law firm's decision to forgo

---

[7] Jacob Charles, *By the Numbers: How Disruptive Has* Bruen *Been?*, Duke Center for Firearms Law (Mar. 27, 2023), https://firearmslaw.duke.edu/2023/03/by-the-numbers-how-disruptive-has-bruen-been/ (noting civil Second Amendment claims have a nearly 50% success rate after *Bruen*).

certain representations, Fee Mot. 15 n.17,[8] and the unpublished decision in *Zeleny*,

*id.* at 15-16.

Even *Zeleny* rejected the plaintiff's desired "50% multiplier" in that case as

plainly "excessive," and so cannot support Plaintiffs' requested 45% modifier here.

2022 WL 562824, at *6 (holding that no more than 5-10% was appropriate and

ultimately cancelled out by vague billing and unnecessary work).[9] But in any case,

the factual bases underpinning the modifier in *Zeleny* do not exist here: The court

based its decision on evidence that the plaintiff had "tried to get other attorneys to

take this case . . . but none would," given the plaintiff's "provocative

conduct." *Zeleny*, 2022 WL 562824, at *2, 6. That "provocative conduct"

included public protests in which the plaintiff "often featur[ed] animated

depictions of child molestation," carried "military-grade firearms," and donned

---

[8] The attorneys in question have subsequently founded a new and highly successful firm where they continue their Second Amendment work, including apparently by advising Plaintiffs' counsel and drafting briefs in this case. *See* Beck Decl. at 18-22 (16 entries for collaboration with Erin Murphy); *see also Law360 Names Practice Groups Of The Year*, Law360 (Jan. 20, 2025), https://www.law360.com/articles/2284848 (naming Clement & Murphy among appellate groups of the year).

[9] Plaintiffs are also not entitled to a multiplier on the hours spent on their fee application, as this Court has repeatedly held. *Kelly v. City of Oakland*, 198 F.3d 779, 786 (9th Cir. 1999) ("the multiplier should not have been applied to the hours spent on the fee application"), *as amended* (Jan. 12, 2000); *accord Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986), *overruled on other grounds*, *Berry v. Air Force Cent. Welfare Fund*, 115 F.4th 948 (9th Cir. 2024).

"live ammunition belts and tactical combat fatigues, presumably to the alarm of passing motorists."  Order on Summary Judgment at 2, *Zeleny v. Becerra*, No. 3:17-cv-07357 (N.D. Cal. July 13, 2021), ECF No. 192.

This case involves no comparable evidence of an unpopular plaintiff, or any evidence that other attorneys were unwilling to take Plaintiffs' case as a result.  To the contrary:  Prominent lawyers advised Plaintiffs' counsel on this case, *see supra*, p. 12 n.8; Plaintiffs enjoyed the support of multiple amici; and Plaintiffs' fee application even identifies another attorney who has "been counsel for several [Second] Amendment cases in Hawaii," O'Grady Decl. ¶ 3.

Finally, Plaintiffs' chosen 45% rate is "essentially arbitrary"—why 45% "rather than 50% or 25% or 10%?"—and Plaintiffs have "not point[ed] to anything in the record that shows that this is an appropriate figure for the relevant market." *Perdue*, 559 U.S. at 557.  Courts may not "award[ ] an enhancement on an impressionistic basis" because doing so would undermine "a major purpose of the lodestar method—providing an objective and reviewable basis for fees." *Id.* at 558.  Moreover, such "unjustified enhancements that serve only to enrich attorneys are not consistent with the statute's aim." *Id*. at 559.  Attorney's fees under Section 1988 are paid "by state and local taxpayers, and because state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services." *Id*.

## B. Plaintiffs' Lodestar Calculation Includes Numerous Entries That Are Not Compensable.

The goal of awarding attorneys' fees under Section 1988 is to "strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel," and "[t]he way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citations omitted). This "lodestar amount is calculated by multiplying the number of hours *reasonably* expended on the litigation by a *reasonable* hourly rate." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) (citation and quotation marks omitted).

Here, Plaintiffs' calculation is unreasonable because Plaintiffs include numerous entries that are not compensable or not compensable at attorneys' rates—particularly given that Plaintiffs' "success" in this lawsuit was limited to a panel decision that was subsequently vacated before the mandate issued. *See Farrar*, 506 U.S. at 114 ("the most critical factor in determining the reasonableness of a fee award is the degree of success obtained" (citation and quotation marks omitted)); *see also id.* at 115-116 (affirming denial of attorney's fees where Plaintiffs had obtained only nominal damages).

1. Plaintiffs are not entitled to fees for the nearly 100 hours of clerical work they submit. *See* Exhs. 1, 2 (highlighted in pink). As a general rule, "[c]lerical or

ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate"; they are not separately compensable. *HRPT Props. Tr. v. Lingle*, 775 F. Supp. 2d 1225, 1241 (D. Haw. 2011) (citation omitted) (collecting cases). In all events, a plaintiff must demonstrate that separately billing clerical work is "the prevailing practice" in the legal community. *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 (1989). And even then, clerical work "may not be billed at attorneys' hourly rates." *Taleff v. Sw. Airlines Co.*, No. 11-16173, 2013 WL 12581383, at *3 (9th Cir. Mar. 21, 2013).

Clerical work includes "reviewing Court-generated notices, notifying clients of court hearings, filing documents with the Court, communication with court staff, scheduling, and corresponding regarding deadlines," *HRPT Props.*, 775 F. Supp. 2d at 1241, as well as "confirming that court documents have been filed; organizing and maintaining files and binders for intra-office use; delivering or transmitting documents; preparing memoranda for office files; bates stamping or other labeling of documents; organizing documents for production; coordinating service of documents; and formatting or printing documents," *Dep't of Educ. Hawai'i v. C.B. ex rel. Donna B.*, No. 1:11-cv-00576, 2012 WL 7475406, at *10 (D. Haw. Sept. 28, 2012), *report and recommendation adopted*, 2013 WL 704934 (D. Haw. Feb. 26, 2013). Plaintiffs bill numerous hours in each of these categories at their $400/hour rate. *See, e.g.*, Ex. 1 (multiple entries for "read[ing] ECF"

notifications,[10] "filing" documents, "talk[ing]" to court clerks, and formatting,

proofing, and transmitting documents).

Plaintiffs have offered no justification to depart from the general rule that

clerical work is not compensable. They have offered no evidence that the

prevailing practice is to separately bill these expenses, nor any evidence of what an

appropriate rate might be, given that such work "may not be billed at attorneys'

hourly rates." *Taleff*, 2013 WL 12581383, at *3. As a result, these fees should be

excluded. *Fitzgerald v. L. Off. of Curtis O. Barnes*, No. 1:12-cv-00071, 2013 WL

1627740, at *6 (E.D. Cal. Apr. 15, 2013), *report and recommendation adopted*,

2013 WL 1896273 (E.D. Cal. May 6, 2013).

2. Plaintiffs are not entitled to fees for the almost 175 hours (often block-

billed) on meetings and other communications among Plaintiffs' counsel. *See*

Exhs. 1, 2 (highlighted in blue); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949

(9th Cir. 2007) (affirming reduction of hours for attorney conferences as

---

[10] The hours spent on reading ECF notifications are plainly excessive. Over the life of this case, Plaintiffs charge 0.1 hours for virtually every ECF notification entered in this case. That adds up to about 13 hours throughout the case for reading automated notifications. The docket sheets in *total* span less than 20 pages, *see* Exh. 3—it could not take more than an hour to read them in their entirety. It is not a reasonable billing practice to charge the equivalent of six minutes for reading each separate billing entry as it came in. *Carrera v. Ford Motor Co.*, No. 2:18-cv-09781, 2020 WL 13042577, at *5 (C.D. Cal. July 22, 2020) ("[E]xperienced counsel must exercise billing judgment to avoid excessive accumulation of 0.1 hour entries in reviewing such routine documents and court communications." (citation omitted)).

"unnecessary"); *Gros v. New Orleans City*, No. 2:12-cv-02322, 2014 WL 2506464, at *11 (E.D. La. June 3, 2014) ("It would be unfair to require Defendants to pay such high hourly rates for excessive emails and telephone conferences between attorneys."), *reconsideration granted in part on other grounds*, 2014 WL 3894371 (E.D. La. Aug. 8, 2014).  Many of these entries are also for 0.1 hours.  *Hernandez v. Grullense*, No. 3:12-cv-03257, 2014 WL 1724356, at *9 (N.D. Cal. Apr. 30, 2014) (fees excessive for "repeated entries for .1 hours to 'strategize' with co-counsel, as it is extremely inefficient to repeatedly confer for only a few minutes at a time").

Additionally, most of these entries have not provided "the minimum level of detail needed for meaningful analysis":  There are "numerous entries concerning meetings and conferences that, although they include information concerning the identities of the individuals involved, are nevertheless devoid of any descriptive rationale for their occurrence."  *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 51 (D.D.C. 2011) (citation omitted); *see also Prison Legal News v. Stolle*, 129 F. Supp. 3d 390, 400 (E.D. Va. 2015) (reducing hours where "many of such entries fail to document what matters were discussed, how they were related to the case, or why they advanced the efficient litigation of this matter," and where "some of the conferences with [co-counsel] were included within blocks of time spent on

multiple tasks such that the time spent in the internal conference cannot be specifically identified"), *aff'd*, 681 F. App'x 182 (4th Cir. 2017) (per curiam).

Moreover, numerous entries are duplicative where both Mr. Beck and Mr. Stamboulieh billed for their internal communications with each other. *E.g.*, Exhs. 1, 2 (entry on 3/16/2021 to "discuss case"); *see Hawaii Def. Found. v. City & Cnty. of Honolulu*, No. 1:12-cv-00469, 2014 WL 2804448, at *7 (D. Haw. June 19, 2014) ("[A]s a general rule, the court does not permit more than one attorney to bill for attending: (1) a meeting between co-counsel; (2) a client meeting; or (3) a meeting with opposing counsel."). The hours Plaintiffs' counsel "spent discussing the status of filings is redundant." *Hawaii Def. Found.*, 2014 WL 2804448, *8; *see, e.g.*, Exhs. 1, 2 (entry on 9/6/2022 for conversation about the "status" of edits).

Plaintiffs contend (at 12) that all this time is compensable because it was "vital to perfecting the legal theory." Plaintiffs' generic entries do not support that assertion: Plaintiffs have not demonstrated that the volume of communications catalogued only as "discuss case with [Mr. Stamboulieh]" or "read [Mr. Stamboulieh] email" were either essential to their legal theory or of the sort typically billed to private clients. Even Plaintiffs' cited cases recognize that fees should be reduced for voluminous attorney communications. *Zeleny*, 2022 WL 562824, at *6 (reducing fees for "unnecessary work, such as when [Plaintiff's counsel] reviewed routine emails").

Plaintiffs also cite the fee award affirmed in *City of Riverside v. Rivera*, 477 U.S. 561 (1986), but there was no majority opinion in that case. The concurrence—the controlling opinion[11]—had "serious doubts as to the fairness of the fees awarded," but ultimately concluded that the Court was constrained by the deferential standard of review of the district court's "detailed findings." *Id.* at 586 (Powell, J., concurring in the judgment). That appellate deference does not vindicate the reasonableness of an award that this Court is reviewing in the first instance. *See also id.* at 590 (Rehnquist, J., dissenting) (finding it "hard to understand how any attorney can be said to have exercised 'billing judgment' in spending such huge amounts of time on a case"). In any event, *Rivera* is not comparable to this case: *Rivera* was a suit against dozens of defendants and involved four-plus years of district court proceedings, "extensive discovery," and nine days of jury trial, *id.* at 582 (Powell, J., concurring in the judgment)—*and* the plaintiffs sought 50 hours less than the district court had expected for attorney communications in a case of that magnitude, *id.* at 573 n.6 (plurality).

3. Plaintiffs are also not entitled to fees for their dozens of other entries that are block-billed and/or "lacking in any amount of specificity." *Hawaii Def. Found.*, 2014 WL 2804448, at *6 (imposing 15% reduction "in the face of their block billing and vague descriptions"); Exhs. 1, 2 (block-billing highlighted in

---

[11] *Corbett v. Wild W. Enters., Inc.*, 713 F. Supp. 1360, 1369 (D. Nev. 1989).

green; vague entries in purple). "[G]eneric entries" are "inadequate to meet a fee applicant's heavy obligation to present well-documented claims." *Heller*, 832 F. Supp. 2d at 51 (citation omitted). Plaintiffs' application is littered with generic entries such as "read email." *E.g.*, Exh. 1 (4/13/2020). And Plaintiffs repeatedly block-billed time containing tasks that are not compensable, or not compensable at attorney rates. *See, e.g.*, Exh. 1 (billing 5.8 hours on 4/5/2019 for "finalizing brief[,] formatting the spacing[,] rewrite brief and going through fbi data"); Exh. 2 (billing 3.1 hours on 8/12/2020 for clerical work of "checking citations and quotations" combined with revising brief).

4. Nor are Plaintiffs entitled to travel time—including a "very long lay over in Maui"—at the full $400/hour rate. *See* Exhs. 1, 2 (highlighted in orange); *Walker v. City of Los Angeles*, No. 2:08-cv-04707, 2010 WL 11512210, at *4 (C.D. Cal. May 17, 2010) (cutting rate in half for hours where "counsel were not required to work on this case" and "could have been working on other cases, checking emails, returning phone calls, etc., during that time"); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1298-99 (9th Cir. 1994) (affirming 50% reduction where "attorneys generally billed the entire duration of time spent in transit").

### C. Plaintiffs Are Not Entitled To Expenses.

Plaintiffs are also not entitled to the nearly $12,000 in expenses they seek. Fee Mot. 18. Although this Court has interpreted "reasonable attorney's fees" to "include litigation expenses," it does so only when the plaintiff has demonstrated that it is "the prevailing practice in a given community for lawyers to bill those costs separate from their hourly rates." *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010) (citation and quotation marks omitted). And where, as here, "Plaintiff's counsel does not state, either in the Motion or in the attached declarations, that it is the prevailing practice to bill for such out-of-pocket expenses," "Plaintiff has made an insufficient showing that it is the prevailing practice for Plaintiff's counsel to bill the costs requested by Plaintiff separate from the hourly rate" such that the request must be denied. *Franco v. Gennaco*, No. 2:09-cv-00893, 2010 WL 11596657, at *4 (C.D. Cal. Nov. 10, 2010); *see also Lesnik v. Eisenmann SE*, No. 5:16-cv-01120, 2023 WL 4477211, at *2 (N.D. Cal. July 11, 2023) (similar).

Moreover, the en banc Court has already held that the parties should bear their own costs on appeal. That order is the law of the case as to the costs that Plaintiffs request associated with this appeal. There is no reason to treat the District Court expenses differently—particularly when Plaintiffs did not prevail to any degree in the District Court.

And, in any case, Plaintiffs have not timely filed a bill of costs and therefore cannot collect the taxable costs they seek, like printing, copying, and filing fees. *See* Fed. R. App. P. 39(d); Cir. R. 39-1.1, 39-1.4; 28 U.S.C. § 1920; *see also*, *e.g.*, *Nat'l Fam. Farm Coal. v. EPA*, No. 19-70115, 2023 WL 7017704, at *7 (9th Cir. Mar. 1, 2023) (appellate commissioner's decision disallowing filing and copying costs because they were "taxable costs that had to be claimed within 14 days after the entry of judgment").  Nor can Plaintiffs excuse their failure to file a bill of costs by claiming these expenses as attorney's fees under Section 1988.  *See Grove*, 606 F.3d at 582 (interpreting "attorney's fees" to "include the recovery of costs *other than those taxable under § 1920*" (emphasis added)).

## CONCLUSION

The motion for attorney's fees should be denied.

Respectfully submitted,

February 19, 2025

/s/ Reedy C. Swanson

ANNE E. LOPEZ
   *Attorney General of the State of Hawaiʻi*
KALIKOʻONĀLANI D. FERNANDES
   *Solicitor General*
STATE OF HAWAIʻI
DEPARTMENT OF THE ATTORNEY GENERAL
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

REEDY C. SWANSON
DANA A. RAPHAEL
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
reedy.swanson@hoganlovells.com

*Counsel for Defendants-Appellees Anne E. Lopez and Darryl Ng*

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with Circuit Rules 27-1(1)(d) and 32-3(2) in that it contains 5,333 words, excluding the items exempted by Fed. R. App. P. 32(f). I further certify that the brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

Dated: February 19, 2025

/s/ Reedy C. Swanson
Reedy C. Swanson

## CERTIFICATE OF SERVICE

I certify that on February 19, 2025, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system

/s/ Reedy C. Swanson
Reedy C. Swanson