IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANDREW TETER and JAMES GRELL<br>  Plaintiffs-Appellants,<br><br>v.<br><br>ANNE E. LOPEZ, in her Official Capacity as the Attorney General of the State of Hawaii and DARRYL NG., in his Official Capacity as the State Sheriff Division Administrator,<br><br>  Defendants-Appellees. | No. 20-15948 |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

Plaintiffs are prevailing parties. The State argues that "an appellate opinion is not enforceable between the parties until the mandate issues." Opposition at 6. However, entry of the mandate is merely a "ministerial act," *White v. Klitzkie*, 281 F.3d 920, 924 n. 4 (9th Cir. 2002), that "formally marks the end of appellate jurisdiction." *Northern California Power Agency v. Nuclear Regulatory Com'n*, 393 F.3d 223, 224 (D.C. Cir. 2004) (internal quotation marks omitted). The panel decision became precedent and binding on lower courts as soon as it was published.[1]

---

[1] "A panel decision of the Ninth Circuit is binding on lower courts as soon as it is published, even before the mandate issues, and remains binding authority until the decision is withdrawn or reversed…" *Uzzanti v. Kelsar Inc.,* 2022 U.S. Dist. LEXIS 87699, at *6 (D. Ariz. Apr. 11, 2022) (citations omitted) *See Gonzalez v. Arizona,* 677 F.3d 383, 389 n. 4 (9th Cir. 2012) (en banc) ("[A] published decision of this court

1

Thus, Hawaii's butterfly knife ban became unenforceable the moment that the panel published its opinion. With the panel opinion, Plaintiffs were able to do two things that the State did not want them to do. First, they obtained the right to own butterfly knives, and they compelled the permanent legalization of butterfly knives via passage of the new law.[2] Thus, the panel opinion "materially altered the parties' legal relationship[.]" *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013). The State misconstrues what it means to be "sufficiently enduring." This term has to do with whether it is possible the relief to be undone by a subsequent opinion of this court. Here, "[t]he plaintiff therefore received relief that was as enduring as a permanent injunction would have been and, by virtue of the case's mootness, that relief was no longer subject to being 'reversed, dissolved, or otherwise undone by the final decision in the same case.'" *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d

---

constitutes binding authority which 'must be followed unless and until overruled by a body competent to do so.'") (citation omitted))*; see also United States v. Gomez–Lopez,* 62 F.3d 304, 306 (9th Cir. 1995) (rejecting government's argument to ignore case based on stayed mandate); *see also Hernandez-Gutierrez v. United States Dist. Court (In re Zermeno-Gomez)*, 868 F.3d 1048, 1052 (9th Cir. 2017).

[2] The State argues that Act 21 was not in response to this lawsuit because it was a comprehensive amendment of multiple weapons regulations, pointing to removal of the prohibitions on the possession of switchblades and the carry of billy clubs. However, the State had already agreed to a stipulated injunction to its billy club law. *See Yukutake et. al. v. Lopez* 1:22-cv-00323-JAO-WRP Doc. No. [41]. Act 21's removal of its billy club carry ban was to put Hawaii law in line with the terms of that stipulated injunction. And Mr. Beck was also litigating a challenge to Hawaii's switchblade law at the time of Act 21's passage. *See Roa et al v. Lopez* 1:23-cv-00079-MWJS-RT. This is more evidence that Act 21was in response to litigation.

712, 717 (9th Cir. 2013). Plaintiffs' success at the panel level is not ephemeral because the State robbed the en banc panel of the opportunity of ruling on this case.

The State also argues that it is premature for this Court to rule on the merits of this fee petition. However, the matter which entitles plaintiffs to fees has been fully resolved, i.e. the constitutionality of Hawaii's previous ban on butterfly knives. On remand, the only issue will be the constitutionality of the new law. Thus, assuming this Court otherwise agrees with Plaintiffs' arguments, their entitlement to fees is undisputed. "We have previously recognized that "[t]here is no reason to delay receipt of ... undisputed fees." *Fadhl v. City and County of San Francisco*, 804 F.2d 1097, 1099 (9th Cir. 1986) (noting that delays in the payment of fees may deter attorneys from undertaking representation). *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 703 (9th Cir. 1996). The State's only citation is to *Yamada v. Snipes*, 786 F.3d 1182 (9th Cir. 2015) which deals with the propriety of attorney fees after an preliminary injunction appeal. "Because the preliminary injunction order could be negated by a final decision on the merits, it was an interlocutory order that did not confer prevailing party status on the plaintiffs when the defendants dismissed their appeal." *Id.* at 1209. Here, Plaintiffs entitlement to fees cannot be negated by a final decision because by the State has removed the challenged law. It is undisputed Plaintiffs are entitled to fees, assuming this Court

3

otherwise agrees with Plaintiffs. Thus, pursuant to precedent, this Court should rule on Plaintiffs' attorney fees motion.

### Plaintiffs Are Entitled To Expenses

The State argues that Plaintiffs are not entitled to expenses because they have not proven it is the prevailing practice in Hawaii for lawyers to bill those costs separate from their hourly rates. Opp. at 21. However, the case the State cites for this proposition did not reject a request for expenses despite the Plaintiff providing no evidence of the community practice regarding expenses.[3] This Court found "the district court is authorized to award non-taxable costs as part of the attorney's fee award, we reverse the rejection of Grove's claim for non-taxable costs and remand for the district court to consider Grove's claim for $6,770.60 in non-taxable costs." *Grove v. Wells Fargo*, 606 F.3d 577, 583 (9th Cir. 2010). This issue can be decided by this Court because Plaintiffs have provided evidence that it is common practice in Hawaii for lawyers to bill expenses to their client. *See* Declarations of Kevin O'Grady, Alan Beck, Richard Holcomb and Donald Wilkerson.

### This Case Qualifies for an Upward Modifier Because it Was Undesirable

This case was highly undesirable. As established in the second Declaration of Alan Beck, there were no other attorneys willing to take Mr. Teter and Mr. Grell's case. *See* Declaration of Alan Beck. This is true both locally in the Hawaiian market

---

[3] *See Grove*, 606 F.3d at 584 (Rymer, J., concurring).

4

and nationally. The State makes much to do about the fact that Erin Murphy advised during the drafting of Plaintiffs' response to the State's petition for rehearing en banc. Opp. at 13. However, that does nothing to show this case was not undesirable. Ms. Murphy only offered assistance after Plaintiffs' case was proceeding to potential en banc proceedings and after Hawaii retained the former Solicitor General. And there was a concern an adverse ruling would impact litigation in *Duncan v. Bonta,* No. 23-55805. *See* Declaration of Alan Beck. It certainly does not indicate that she or anyone else at her firm would have been willing to file Plaintiffs' case in the district court. The same reasoning applies to the participation of amicus. The amici only participated on appeal after a negative precedent might impact other cases. Moreover, willingness to file an amicus brief does not indicate a willingness to litigate a case from trial court to appeal.

Finally, the State references Mr. O'Grady's declaration and that he practices Second Amendment litigation. However, Mr. O'Grady has litigated all his cases *with* Mr. Beck and was not litigating Second Amendment cases at the onset of litigation. Thus, this does nothing to dispute there were no attorneys willing to accept Plaintiffs' case. This is especially true since Plaintiffs are unable to provide upfront payment and this case had to be taken on a contingency basis.[4]

---

[4] At a bare minimum, that a case is taken on contingency should go to the level of its desirability. A case representing an ultra-wealthy client that could pay upfront a high

Furthermore, litigating this case and Second Amendment law generally is very undesirable because it pits solo practitioners like Plaintiffs' counsel against major law firms and prominent attorneys such as lead opposing counsel, Mr. Neal Katyal, who is the former Solicitor General of the United States.[5] On three separate occasions, the State has retained Mr. Katyal and his former firm, Hogan Lovells[6] to oppose Mr. Beck (and two times for Mr. Stamboulieh). *See* Declaration of Alan Beck. The State routinely hires elite lawyers to represent it.[7] Thus, Second Amendment litigation is also undesirable because attorneys must accept they will be opposed by massive law firms and prominent attorneys. Thus, a prevailing attorney, especially a solo practitioner working on a contingency basis, should be given an upward modifier to account for how undesirable it is to take a case when there is a gross disparity in resources, manpower and legal experience. Furthermore, this and other Second Amendment litigation is undesirable because it attracts negative attention. Mr. Beck has received many threatening and insulting messages, phone

---

hourly rate is much more desirable than a case where one is representing a client on contingency with the hope of obtaining payment if successful.

[5] https://www.milbank.com/en/professionals/neal-katyal.html

[6] https://www.hoganlovells.com/en/news/hogan-lovells-achieves-record-financial-results-for-calendar-year-financial-year-2023 (Showing Hogan Lovells generated nearly 2.7 billion dollars in revenue in 2023).

[7] In another Second Amendment case where Mr. Beck is counsel, the State retained the former general counsel to the United States House of Representatives , Mr. Douglas Letter. *See* http://en.wikipedia.org/wiki/Douglas_Letter; *See also Pinales, et al. v. Lopez* 1:24-cv-00496-JAO-WRP.

calls and comments because of this case and his overall Second Amendment litigation. *See* Declaration of Alan Beck. Thus, this case is on all fours with *Guam Soc'y of Obstetricians,* 100 F.3d at 699, which found a lack of other attorneys willing to take a case and "death threats, and encountered overt hostility from members of the community" sufficient to find a case undesirable. Pursuant to *Guam Soc'y of Obstetricians,* Plaintiffs' case fulfills the standard for an upward modifier because of its undesirability.

## Plaintiffs' Time Entries Are All Compensable

The State argues that many of Plaintiffs' time entries are not compensable and invites this Court to conduct a line-by-line inventory of Plaintiff counsels' time entries. However, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Ghadiri v. Carpet & Linoleum City*, 833 F. App'x 106, 108 (9th Cir. 2020) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

This case began nearly 7 years ago, had discovery, experts, and went through both an appeal and en banc proceedings. Based on that, the amount requested and the hours expended are reasonable. This Court's "sense of the suit" should show that the amount requested is reasonable. And because it is, it should not turn itself into a

7

"green-eyeshade accountant[.]" But if this Court does conduct a line-by-line review of Plaintiffs' time entries, it will see that the time requested is fully compensable.

### Time Spent Collaborating is Compensable

The State has not cited to a single Ninth Circuit case that precludes billing for time spent collaborating with co-counsel. Every Ninth Circuit case cited simply gave reductions for *excessive* attorney collaboration. Thus, by implication, the Ninth Circuit found that time spent collaborating among attorneys is compensable as along as it is reasonable. Here, the State has made no showing that the time spent collaborating with co-counsel is unreasonable. Nor could it. The State claims that Plaintiffs' counsel billed 175 hours over the course of this litigation collaborating with one another. This case began nearly 7 years ago, had discovery, experts and went through both an appeal and en banc proceedings. It involved a novel issue of constitutional law. And Plaintiffs' counsel had to oppose the best efforts of one of America's top law firms. The time spent collaborating is eminently reasonable.

The State also claims that only one attorney can bill for time spent collaborating. However, the State's only authority is *Hawaii Def. Found. v. City & Cnty. of Honolulu*, 2014 WL 2804448 (D. Haw. June 19, 2014) which is a trial court opinion. Thus, they have done nothing to refute the weight of authority cited by Plaintiffs in their Motion which demonstrates that both attorneys should be compensated for time reasonably spent collaborating. Moreover, Judge Kay simply

erred in making this finding. The legal rule that court should have applied was to determine whether the time spent by both attorneys was "reasonably expended on the litigation." *Hensley v. Eckerhart,* 461 U. S. 424, 433 (1983). And that is the legal rule this Court should apply here. As shown in the Motion, the time spent collaborating was reasonably spent to further this litigation. Similar reasoning applies to every other complaint the State makes regarding Plaintiffs counsels' time sheets. The State claims that Plaintiffs' counsel are not entitled to be compensated for travel time. Every single citation relied upon by the State holds that attorneys are entitled to travel time at a 50% rate. Thus, in line with precedent, this Court should find that Plaintiffs are entitled to at least a 50% travel rate for their travel time.

The same reasoning applies to the State's claim that some of the hours billed were clerical work. Much of the work that the State claims is clerical simply is not. The State claims that "checking citations and quotations" is clerical work. Opp. at 20. Checking the accuracy of citations and quotations requires a knowledge of legal citations that a person without a legal education does not possess. Thus, it is lawyer's work. It also involves either Lexis or Westlaw to find a case and to check quotations accuracy. Again, that requires a lawyer's knowledge. However, if this Court finds any of the time spent in this litigation is clerical work, then it still should still award Plaintiffs fees. The trial court recently held an hourly rate of $210 reasonable "in light of the prevailing rates in the community" for a paralegal with 28 year

9

experience.[8] Other cases have approved $100 per hour for paralegals some of which had only 5 year of experience. *See Mueller v. Dep't of Pub. Safety*, 2022 WL 1207322, at *4 (D. Haw. Apr. 7, 2022), report and recommendation adopted as modified, 2022 WL 1204931 (D. Haw. Apr. 22, 2022).[9] Working in this range, Plaintiffs request $150.00 per hour for any work this Court deems clerical.

Finally, Plaintiffs did not block bill despite the State's arguments. A review of the time entries show that Plaintiffs billed with specificity. Furthermore, much of their protests regarding block billing are based on the premise that Plaintiffs merged clerical and lawyer work into one entry. As shown above, what the State labels clerical work simply is not clerical and is compensable at full rates. If this Court finds any of these entries block billed the case law the State relies upon does not support not awarding fees. It supports a reduction in the award. *Hawaii Def. Found.*, 2014 WL 2804448, at *6 (imposing 15% reduction for block billing).

## Conclusion

Plaintiffs' request $10,810.85 in fees and expense for the reply plus an upward modifier of 45%. *See* Declaration of Alan Beck. The motion should be granted.

---

[8] *Skydiving Sch., Inc. v. GoJump Am., LLC,* 2024 WL 4988884, at *5 (D. Haw. Sept. 30, 2024), rep. and rec'm adopted, 2024 WL 4892574 (D. Haw. Nov. 26, 2024).
[9] *See also Arc in Hawaii v. DB Ins. Co.,* 2021 WL 4566723, at *6 (D. Haw. Sept. 17, 2021), rep. and rec'm adopted, 2021 WL 4558196 (D. Haw. Oct. 5, 2021) (approving 100 dollars an hour for a paralegal).

10

    Respectfully Submitted,

Dated: February 24, 2025

***/s/ Alan Alexander Beck***
Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Alan.alexander.beck@gmail.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
stephen@sdslaw.us
*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify the following:

1. This Reply complies with the type-volume limitation of Fed. R. App. P. 27(d)(2), as it contains 2592 words, calculated by Microsoft Word 365.

2. This Reply complies with the format, typeface, and type-style requirements of Rule 32(a)(4-6) as it is drafted in Times New Roman 14 Point font.

*/s/ Alan Alexander Beck*
Alan Alexander Beck

## CERTIFICATE OF COMPLIANCE

I certify, that on February 24, 2025, I filed the foregoing document or pleading with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the Ninth Circuit's CM/ECF system.

*/s/ Alan Alexander Beck*
Alan Alexander Beck