**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| ANDREW TETER; JAMES GRELL, | No. 20-15948 |
|---|---|
| *Plaintiffs-Appellants*, | D.C. No. 1:19-cv-00183-ACK-WRP |
| v. | |
| ANNE E. LOPEZ; DARRYL NG, | ORDER |
| *Defendants-Appellees*. | |

Filed April 30, 2025

Before: Mary H. Murguia, Chief Judge, and Ronald M. Gould, Jacqueline H. Nguyen, Ryan D. Nelson, Eric D. Miller, Bridget S. Bade, Daniel P. Collins, Kenneth K. Lee, Lawrence VanDyke, Gabriel P. Sanchez and Ana de Alba, Circuit Judges.

Order;
Concurrence by Judge Miller;
Concurrence by Judge Collins;
Concurrence by Judge VanDyke

# SUMMARY[*]

### Attorney's Fees

The en banc court denied plaintiff Andrew Teter's motion for attorney's fees pursuant to 42 U.S.C. § 1988(b) in a case involving a Second Amendment challenge to a Hawaii statute prohibiting butterfly knives.

In a prior decision, the en banc court vacated, as moot, the district court's summary judgment for the Hawaii Attorney General and the Hawaii Sheriff Division Administrator, concluding that the Hawaii Legislature's amendment to the challenged statute gave plaintiff everything he hoped to achieve in this litigation. Because no further relief could be granted, the case was moot, and this court lacked Article III jurisdiction.

Concurring, Judge Miller, joined by Chief Judge Murguia and Judge Gould, joined in the court's decision to deny fees under § 1988(b), because Teter was not a prevailing party. Judge Miller wrote separately to respond to Judge Collins's and VanDyke's concurrences, which took issue with the court's prior decision dismissing the case as moot. First, nothing in the Supreme Court's recent opinion in *Lackey v. Stinnie*, 145 S. Ct. 659 (2025), changed the law on mootness because *Lackey* did not consider whether the legislative repeal mooted the case before it. Instead, it simply reiterated the principles articulated in the voluntary-cessation cases that this court applied in the prior decision. Second, Judge VanDyke's proposed remedy of "vacating the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

vacatur"—thereby "reinstating the panel's judgment"—would require the court to exercise judicial power by entering an order resolving the merits of the case. But because this case is moot, the court lacks jurisdiction to enter such an order.

Concurring, Judge Collins, joined by Judge Lee, wrote that under the Supreme Court's opinion in *Lackey*, plaintiffs were not the prevailing parties in light of the en banc court's decision in this case dismissing the case as moot. He therefore concurred in the court's order denying attorney's fees. On the other hand, *Lackey* itself confirmed that the en banc court's prior decision was incorrect and plaintiffs should have been the prevailing parties because, under the voluntary cessation mootness standard, the governmental defendants had not satisfied their burden of showing that Hawaii could not reasonably be expected to resume its challenged conduct. Nevertheless, because the mandate has issued, the court is powerless to correct the error on the merits.

Concurring, Judge VanDyke wrote that the decision to deny attorney's fees highlighted additional problems with the en banc majority's prior resolution of this case. This court's practice of automatically vacating panel opinions upon the grant of rehearing en banc creates perverse incentives for government defendants. Parties like Hawaii can strategically deploy mootness to lock in the effect of the court's auto-vacatur without the risk of losing on the merits before the en banc court. And now, the order denying plaintiffs their fees in this case shows even more unwarranted upside for government defendants like Hawaii: by gaming this court's en banc process they can also eliminate the risk of attorney's fee awards, even when the government lost the only decision on the merits before this

court. In response to Judge Miller's statement about mootness, Judge VanDyke explained that his proposed remedy of vacating the prior vacatur order would be consistent with the court's practice in other cases, as the court has long vacated prior orders in moot cases and has issued opinions in moot cases to explain the basis for a prior order.

## COUNSEL

Alan A. Beck (argued), Law Offices of Alan Beck, San Diego, California; Stephen D. Stamboulieh, Stamboulieh Law PLLC, Olive Branch, Mississippi; for Plaintiffs-Appellants.

Reedy Swanson (argued), Neal K. Katyal, and Dana A. Raphael, Hogan Lovells US LLP, Washington, D.C.; Robert T. Nakatsuji, First Deputy Solicitor General; Ryan M. Akamine and Caron M. Inagaki, Deputy Attorneys General; Kalikoonalani D. Fernandes, Deputy Solicitor; Kimberly T. Guidry, Solicitor General; Clare E. Connors, Al Cummings, William Oku Jr., and Holly T. Shikada, Attorneys General of Hawaii; Office of the Attorney General Hawaii, Honolulu, Hawaii; Neal K. Katyal, Milbank, LLP, Washington, D.C.; for Defendants-Appellees.

Kevin O'Grady, Law Office of Kevin O'Grady LLC, Honolulu, Hawaii; David T. Hardy, David T. Hardy PC, Tucson, Arizona; for Amicus Curiae Hawaii Firearms Coalition.

Cody J. Wisniewski, Mountain States Legal Foundation, Lakewood, Colorado, for Amicus Curiae Mountain States Legal Foundation.

John W. Dillon, Dillon Law Group APC, Carlsbad, California, for Amici Curiae San Diego County Gun Owners Political Action Committee, Firearms Policy Coalition, and Knife Rights Foundation Inc..

Michael R. Dreeben and David K. Roberts, O'Melveny & Myers LLP, Washington, D.C.; Danielle R. Feuer and Vincent S. Weisband, O'Melveny & Myers LLP, New York, New York; Wendy F. Hanakahi and Pamela W. Bunn, Dentons US LLP, Honolulu, Hawaii; William J. Taylor Jr., Lisa M. Ebersole, Carina B. Gryting, and Janet Carter, Everytown Law, New York, New York; for Amici Curiae Gun-Violence Prevention Groups and Policy Researchers.

John D. Echeverria, Deputy Attorney General; Mica L. Moore and Helen H. Hong, Deputy Solicitors General; Michael J. Mongan, Solicitor General; Rob Bonta, Attorney General of California; Los Angeles, California; Kristen K. Mayes, Attorney General of Arizona, Phoenix Arizona; Philip J. Weiser, Attorney General of Colorado, Denver, Colorado; William Tong, Attorney General of Connecticut, Hartford, Connecticut; Kathleen Jennings, Attorney General of Delaware, Wilmington, Delaware; Kwame Raoul, Attorney General of Illinois, Chicago, Illinois; Anthony G. Brown, Attorney General of Maryland, Baltimore, Maryland; Andrea J. Campbell, Attorney General of the Commonwealth of Massachusetts, Boston, Massachusetts; Dana Nessel, Attorney General of Michigan, Lansing, Michigan; Keith Ellison, Attorney General of Minnesota, St. Paul, Minnesota; Matthew J. Platkin, Attorney General of New Jersey, Trenton, New Jersey; Letitia James, Attorney General of New York, New York, New York; Ellen F. Rosenblum, Attorney General of Oregon, Salem, Oregon; Michelle Henry, Attorney General of the Commonwealth of Pennsylvania, Harrisburg, Pennsylvania; Peter F. Neronha,

Attorney General of Rhode Island, Providence, Rhode Island; Robert W. Ferguson, Attorney General of Washington, Olympia, Washington; Brian L. Schwalb, Attorney General of the District of Columbia, Washington, D.C.; for Amicus Curiae States of California, Arizona, Colorado, Connecticut, Delaware, Illinois, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Washington, and the District of Columbia.

Daniel M. Gluck, Deputy Corporation Counsel; Dana M. O. Viola, Corporation Counsel; Honolulu City & County Department of the Corporation Counsel, Honolulu, Hawaii, for Amicus Curiae City & County of Honolulu.

Joseph G.S. Greenlee and Erin M. Erhardt, National Rifle Association of America, Institute for Legislative Action, Fairfax, Virginia, for Amicus Curiae National Rifle Association of America.

Edward A. Paltzik, Serge Krimnus, and Meredith Lloyd, Bochner PLLC, New York, New York, for Amicus Curiae Second Amendment Foundation.

Benjamin E. Lowenthal, Law Office of Benjamin E. Lowenthal, Honolulu, Hawaii, for Amicus Curiae the Office of the Public Defender.

## ORDER

The motion for attorney's fees (Dkt. No. 200) is DENIED.

MILLER, Circuit Judge, with whom MURGUIA, Chief Circuit Judge, and GOULD, Circuit Judge, join, concurring:

I join the court's unanimous decision denying Teter's motion for attorney's fees. Under 42 U.S.C. § 1988(b), we may award attorney's fees to "the prevailing party" in an action under section 1983. In *Lackey v. Stinnie*, the Supreme Court clarified that "a plaintiff 'prevails' under the statute when a court conclusively resolves a claim by granting enduring judicial relief on the merits that materially alters the legal relationship between the parties." 145 S. Ct. 659, 669 (2025). Teter did not receive such "enduring" relief: He lost before the district court, and although he received a favorable decision from a three-judge panel of this court, that decision was vacated, and we then dismissed the case as moot. *Lackey* also reaffirmed prior Supreme Court precedent clarifying that plaintiffs are not prevailing parties under § 1988(b) even when the plaintiffs' lawsuit, such as the one here, is the catalyst for "a voluntary change in the defendant's conduct." *Id.* at 668 (quoting *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598, 601 (2001)). Teter therefore is not a prevailing party. *See Maryville Baptist Church v. Beshear*, 132 F.4th 453, 456 (6th Cir. Mar. 25, 2025).

I write separately to respond to Judges Collins and VanDyke, who agree that Teter is not a prevailing party but who continue to take issue with our prior decision to dismiss the case.

Judge Collins argues that *Lackey* shows that this case continues to present a live controversy and that we should not have dismissed it as moot. That is incorrect. As we acknowledged in our prior opinion, the Supreme Court has made clear that a defendant may not "'automatically moot a

case' by the simple expedient of suspending its challenged conduct after it is sued." *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). Nevertheless, we have held that "the repeal, amendment, or expiration of challenged legislation is generally enough to render a case moot." *Board of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) (en banc). That is so for two reasons. First, in a case such as this one, the repeal of legislation is not an action of the defendant (the Attorney General) but of an independent branch of government (the Legislature). And second, the difficulty of strategically repealing and reenacting legislation means that once the challenged statute has been repealed, a defendant can show that enforcement "cannot 'reasonably be expected to recur'"—at least in the absence of some unusual circumstance not present here. *Fikre*, 601 U.S. at 241 (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

Nothing in *Lackey* changes that analysis. There, the plaintiffs had obtained a preliminary injunction against the enforcement of a Virginia statute. 604 U.S. at 664. The Virginia Legislature then repealed the statute, and "the parties agreed that the action had become moot," an agreement entirely consistent with our holding here. *Id.* at 665. In explaining why the preliminary injunction was not enough to make the plaintiffs prevailing parties, the Court addressed the concern "that government defendants who have lost at the preliminary injunction stage will strategically moot litigation rather than risk a fee award." *Id.* at 669. The Court dismissed that concern by pointing to the voluntary-cessation exception to mootness and explaining that a defendant cannot easily moot a case by abandoning its

challenged conduct. *Id.* As Judge Collins concedes, the Court in *Lackey* did not consider whether the legislative repeal mooted the case before it—as I have already explained, the parties agreed on that point—so its opinion did nothing to change the law on mootness. Instead, it simply reiterated the principles articulated in the voluntary-cessation cases that we applied in our prior decision.

For his part, Judge VanDyke reasserts his position that the en banc court should have vacated what he calls the "ministerial order" that vacated the panel's opinion upon the grant of rehearing en banc. As he put it in his previous dissent, "even if the majority was correct that this case is moot," the appropriate remedy would be "reinstating the panel's judgment." *Teter v. Lopez*, 125 F.4th 1301, 1310 (9th Cir. 2025) (VanDyke, J., dissenting).

Judge VanDyke believes that this court should not vacate panel opinions when we grant rehearing en banc. Whether or not that *should* be our practice, there is no denying what our practice *is*, or, more relevantly, what it was in this case: Like it or not, the panel's decision was vacated more than a year ago. At this point, no decision on the merits is in effect. Judge VanDyke's proposed remedy of "vacating the vacatur"—thereby "reinstating the panel's judgment"—would require us to exercise judicial power by entering an order resolving the merits of the case. But because this case is moot, we lack jurisdiction to enter such an order. *See Already, LLC*, 568 U.S. at 90–91.

COLLINS, Circuit Judge, with whom LEE, Circuit Judge, joins, concurring:

Plaintiffs' motion for attorney's fees places me in a difficult position. On the one hand, I am compelled to concur in the court's order denying Plaintiffs' motion for attorney's fees because, under the Supreme Court's recent opinion in *Lackey v. Stinnie*, 145 S. Ct. 659, 669 (2025), Plaintiffs are plainly not prevailing parties in light of the en banc court's decision in this case. On the other hand, *Lackey* itself confirms that, as I argued in my dissent, the en banc court's decision was incorrect and Plaintiffs *should* have been the prevailing parties. However, because we have already issued the mandate, we are powerless to correct our error on the merits. I thus reluctantly concur in denying Plaintiffs' motion.

A party prevails for purposes of an attorney's fee award under 42 U.S.C. § 1988(b) "when a court conclusively resolves his claim by granting enduring relief on the merits that alters the legal relationship between the parties." *Lackey*, 145 S. Ct. at 671. Plaintiffs fail to satisfy that "bright-line rule." *Id*. at 669. Although a three-judge panel of this court had previously rendered an opinion in Plaintiffs' favor on the merits, that opinion was vacated *before* the legislative repeal that (according to a majority of the en banc court) mooted this case. *See Teter v. Lopez*, 125 F.4th 1301, 1305–06 (9th Cir. 2025) (en banc). Therefore, at the time that this case became moot (according to the en banc court), Plaintiffs' claim had *not* been conclusively resolved by judicially sanctioned, enduring relief on the merits that altered the legal relationship between the parties. Accordingly, given the en banc court's mootness holding, Plaintiffs do not satisfy *Lackey*'s bright-line test.

Having said that, I cannot avoid noting that *Lackey* further confirms that, as I argued in my dissent, the en banc majority's mootness holding is wrong.

As I explained, because the asserted mootness here "occurred only through the voluntary action of the appropriate state actors (namely, the Hawaii Legislature)," this case can be deemed to be moot only if "the *defendant*" can carry the "formidable burden" of showing that Hawaii "cannot reasonably be expected to resume its challenged conduct." *Teter*, 125 F.4th at 1318 (Collins, J., dissenting) (citations omitted). That is, the governmental Defendants here must satisfy the same voluntary-cessation mootness standard that applies to private defendants, and in this case, Defendants made no effort to carry that heavy burden. And, as I noted, it is particularly important to hold Defendants to that burden here, given that "there are strong reasons to suspect that the very lawsuit at hand *was* in fact the impetus for the legislative amendment." *Id*. at 1319. Although the majority acknowledged that the mootness standards for governmental and private defendants are *generally* the same, it nonetheless held that, in the specific context of a *legislative repeal*, a burden-shifting presumption applies in which the *plaintiff* must "establish[] that there is 'a reasonable expectation that the legislative body is likely to enact the same or substantially similar legislation in the future.'" *Teter*, 125 F.4th at 1307 (majority opinion) (citation omitted). But as I argued, this special rule for legislative repeals lacks any support in Supreme Court caselaw and is "flatly contrary" to another recent Court decision, namely, *FBI v. Fikre*, 601 U.S. 234, 240 (2024). *Teter*, 125 F.4th at 1320 (Collins, J., dissenting).

Only one month after we issued our en banc decision, *Lackey* has confirmed that it is wrong. In *Lackey*, the case

was rendered moot by a legislative repeal of the challenged statute, but at that point in the litigation the plaintiffs had only obtained a preliminary injunction. *See Lackey*, 145 S. Ct. at 664–65. The plaintiffs argued that a "bright-line rule" requiring plaintiffs to secure enduring relief to be eligible for attorney's fees could create "perverse incentives" by enabling governmental defendants who faced a likely loss to "strategically moot litigation rather than risk a fee award." *Id*. at 669. But the Supreme Court reasoned that any such risk of manipulation was sufficiently remote, even in injunctive-relief-only cases, precisely because a governmental defendant bears the "formidable" burden of showing that "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id*. (simplified). The Court thus squarely confirmed that the *same* "formidable" burden applies even in a case, such as *Lackey*, involving *a legislative repeal*.[1] *Lackey* is thus directly contrary to the en banc majority's government-friendly rule in which we instead "*presume* that the repeal . . . of legislation will render an action challenging the legislation moot" and shift the burden to the plaintiff to "rebut[] that presumption." *Teter*, 125 F.4th at 1307 (emphasis added) (citation omitted). Indeed, this case perfectly illustrates the "perverse incentives" that, under *Lackey*, should have been avoided by application of the regular demanding standards: even though the repeal here seems to have been suspiciously strategically timed to maximize its litigation impact, *see id*. at 1314 (VanDyke, J., dissenting in part), Hawaii's own voluntary actions have

---

[1] The Court in *Lackey* was not presented with any issue as to whether and how the defendant in that case had properly carried that burden, because all parties stipulated in the district court that the case was moot and should be dismissed. *See Lackey*, 145 S. Ct. at 665.

now succeeded both in mooting the original suit and in avoiding fees.

Regrettably, there is nothing this court can do at this point to correct our error on the merits. Although we have "an inherent power" to recall our mandates, "the power can be exercised only in extraordinary circumstances." *Calderon v. Thompson*, 523 U.S. 538, 549–50 (1998). "The sparing use of the power demonstrates it is one of last resort, to be held in reserve against grave, unforeseen contingencies." *Id*. at 550. Although we had previously held that we could recall our mandate "when an intervening . . . Supreme Court decision has undermined the basis of our decision," *Thompson v. Calderon*, 120 F.3d 1045, 1048 (9th Cir. 1997) (en banc) (collecting cases), *rev'd*, 523 U.S. 538, I do not think that line of authority survived the Supreme Court's reversal in *Calderon*, and I have found no post-*Calderon* case in which we have recalled a mandate on that basis.

For these reasons, I concur, with misgivings, in the denial of attorney's fees in this case.

VANDYKE, Circuit Judge, concurring:

Our decision today highlights additional problems with the en banc majority's prior resolution of this case. *See Teter v. Lopez*, 125 F.4th 1301 (9th Cir. 2025) (en banc). While it is too late to fix those errors now that our mandate has issued, it is never too late to shine a spotlight on them. As I explained in my partial dissent from our prior en banc decision, "this court's practice of automatically vacating panel opinions upon the grant of rehearing en banc creates perverse incentives for government defendants." *Id.* at 1310 (VanDyke, J., dissenting in part). "[P]arties like Hawaii can strategically deploy mootness to lock in the effect of our auto-vacatur without the risk of losing on the merits before the en banc court." *Id.* It's all upside and no downside for the government in mooting a case after taking it en banc.

And now, our order denying Plaintiffs their fees in this case shows even more unwarranted upside for government defendants like Hawaii: by gaming our en banc process they can also eliminate the risk of attorney's fee awards, even when the government lost the only decision on the merits before our court.

The law is clear enough, particularly after the Supreme Court's recent clarification: a plaintiff can receive a fee award for actions under 42 U.S.C. § 1983 only if he is a "prevailing party." § 1988(b). "A party 'prevails' when a court conclusively resolves his claim by granting enduring relief on the merits that alters the legal relationship between the parties. Critically, both the change in relationship and its permanence must result from a judicial order." *Lackey v. Stinnie*, 145 S. Ct. 659, 671 (2025).

So given the posture of this case—where our court concluded that Hawaii mooted the appeal after we took the case en banc and vacated the panel opinion—the plaintiffs here cannot be prevailing parties within the meaning of § 1988(b). The en banc court's decision concluding the appeal was moot, vacating the district court's order, and remanding is not a final judgment on the merits. *See Teter*, 125 F.4th at 1310. And while Plaintiffs obtained much—if not all—of the relief that they sought through Hawaii's legislative enactment, that win isn't enough to render Plaintiffs the prevailing party for purposes of § 1988(b), as the legislative enactment "lacks the necessary judicial *imprimatur* on the change" in the legal relationship. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001).

But if our en banc court had done what I urged—if it had "reinstate[d] the panel opinion by vacating our prior vacatur order"—not only would it have eliminated the undesirable governmental incentives I previously discussed, *Teter*, 125 F.4th at 1310–11 (VanDyke, J., dissenting in part), it would have also fixed the additional perverse incentive illustrated by today's order. If we had reinstated the three-judge panel opinion that had been administratively vacated, the plaintiffs here would almost certainly be the prevailing parties under § 1988(b) upon the conclusion of proceedings on remand. The three-judge panel of our court concluded on the merits that Hawaii's law violated the Second Amendment as incorporated against the states through the Fourteenth Amendment. *See Teter v. Lopez*, 76 F.4th 938, 954–55 (9th Cir. 2023), *vacated on grant of rehearing en banc*, 93 F.4th 1150 (9th Cir. 2024). But Plaintiffs were then stripped of their prevailing party status when our court issued an unreasoned, ministerial vacatur of the panel's opinion.

*Teter*, 93 F.4th at 1150. And then the en banc majority mooted the case for Hawaii, eliminating any possibility of a decision on the merits from our court. *Teter*, 125 F.4th at 1308. So our automatic vacatur and Hawaii's strategic mooting are all that prevented Plaintiffs from receiving the fee award they would otherwise be due under § 1988(b).

That only exacerbates the improper incentives we've specially created for government defendants. Plaintiffs were vindicated by the only decision on the merits they received from our court, and were further vindicated by Hawaii's legislative capitulation, yet they are somehow no better off than when they initiated their appeal—all because our court has applied en banc procedural rules that encourage and invite governmental gamesmanship and manipulation. Given this obvious one-sided injustice, our practice of "automatic vacatur plainly flouts the requirement of an individualized, circumstance-driven fairness evaluation, which … is the hallmark of an equitable remedy." *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 16 (2023) (Jackson, J., concurring in the judgment).

Again, I would have avoided such unfairness in this case by vacating our court's ministerial vacatur order. *Teter*, 125 F.4th at 1315 (VanDyke, J., dissenting in part). By refusing to do so, our court further undermined the availability of competent attorneys representing litigants who bring challenges against disfavored rights in our circuit. Given our undefeated record for en banc calls of panel opinions upholding a Second Amendment challenge, the likelihood that a Second Amendment plaintiff can ever be a prevailing party in our circuit is already slim. *See id.* at 1314 & n.3. And now, to add insult to injury, even when a case goes to an en banc panel one might *think* could be favorable to a Second Amendment challenge, states can play their two-for-

one get-out-of-bad-precedent-free *and* get-out-of-attorney's-fees card by intentionally mooting the case after the panel opinion is ministerially vacated. So the slim chance of winning on the merits is effectively diminished to none. This means attorneys bringing Second Amendment civil rights challenges—some of whom presumably depend upon attorney's fee awards by representing prevailing parties—essentially have no chance of victory. Among other problems, that disincentive surely carries bad consequences for the quality of the advocacy in our circuit.

Judge Miller's concurrence makes a few points in response to my concerns. First, he contends that "our practice" was to "vacate[]" a panel opinion upon the grant of rehearing en banc, so "like it or not, the panel's decision was vacated more than a year ago." But that's not exactly true. To reiterate what I said before, it is not correct that it was "our practice"—in the sense of a practice actually authorized by our court—to vacate the panel's decision. The full court never voted to vacate the panel decision. Nor did the en banc panel. And the court never voted on a rule authorizing the automatic vacatur in this case. Instead, "the court just issue[d] a ministerial order under the Chief Judge's name taking the case en banc and vacating the panel opinion"—with no authorization for the vacatur whatsoever. *Id.* at 1312. While Judge Miller noticeably uses the passive voice to elide who it was that vacated the panel's decision (it certainly wasn't any action authorized by "our" court), this effort only goes so far toward papering over this procedural irregularity and ignoring the ultra vires character of the original vacatur order.

Second, Judge Miller contends that because this case was deemed moot, we lack jurisdiction to enter an order reinstating the panel's judgment. But I already explained

why that argument is wrong. I did not propose that we simply reinstate the panel's judgment. Rather, I would have "reinstate[d] the panel opinion *by vacating our prior vacatur order*." *Id.* at 1310–11 (emphasis added). Judge Miller does not explain why we lack jurisdiction to do that. Nor could he, given that our court has long vacated prior orders in moot cases, as I explained. *Id.* at 1316.

It is true that vacating our prior order would have had substantially the same effect as directly reinstating the panel's judgment. But it is not as clear as Judge Miller asserts that we would not have jurisdiction to do even the latter, as reinstating the decision would be consistent with our court's practice in other cases. As I (again) previously explained, it would be odd for us to not have jurisdiction to reinstate a decision here but to still have jurisdiction to "(a) take a moot case en banc and vacate it and (b) issue an opinion in a moot case to explain the basis for a prior order." *Id.* at 1317. Rather than issuing a new opinion that makes lots of brand new law, as our court has done in other moot cases, *see, e.g.*, *United States v. Perez-Garcia*, 96 F.4th 1166 (9th Cir. 2024), we would simply be reinstating the reasoned decision made in a case back before it was moot, which seems far less problematic.

The reality is that none of the procedural irregularities that happened in this case were required or permitted by our court's rules. No rule required or authorized the automatic vacatur of the panel's opinion without the vote of the entire en banc panel. And nothing prevented our court from remedying that earlier ultra vires action by vacating the vacatur—certainly no clearly established and uniformly applied mootness doctrine. To pretend otherwise now by simple ipse dixit unfortunately does little to shake the perception that our court is willing to play fast-and-loose

with our procedural rules—so long as it undermines the Second Amendment.

* * *

Whether intentionally or not, Hawaii has played the "panel-erasure game" here like a champ—ridding itself of adverse panel precedent, sidestepping the risk of losing on the merits before the en banc court, and now dodging a fee award. Whatever Hawaii is paying its own counsel, it should double it. But as clever as Hawaii's strategy was, it never would have worked unless our en banc court played along. None of this gamesmanship would have been rewarded if we, as the en banc court, had simply vacated the ministerial order vacating the panel opinion. But we did not. In the Ninth Circuit, at least when it comes to the Second Amendment, if you're litigating against the government, even when you're winning, you're losing.